Nos. 14-1470 and 14-1658
Consolidated with No. 14-1471

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, *et al.*,
Plaintiffs-Appellees,

v.

RADIOSHACK CORPORATION,
Defendant-Appellee.

APPEAL OF: MICHAEL ROSMAN, *et al.*,
Objectors-Appellants.

On Appeal from the United States District Court
for the Northern District of Illinois, No. 1:11-cv-06741,
Magistrate Judge Maria G. Valdez

Appendix of Appellants Michael Rosman, Jessica Kasten, and Robert Scott
(Pages 42 – 179)

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C.  20036
(703) 203-3848
*Attorney for Appellants Michael Rosman and
Jessica Kasten* (14-1470)

LAW OFFICES OF DARRELL PALMER PC
Joseph Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, California  92008
(858) 215-4064
*Attorney for Appellant Robert Scott* (14-1658)

**Statement of Compliance**
**with Circuit Rule 30(d)**

All materials required by Cir. R. 30(a) & (b) are included in the Appendix of

Appellants Michael Rosman, Jessica Kasten, and Robert Scott.

<u>/s/ *Theodore H. Frank*</u>

Theodore H. Frank

CENTER FOR CLASS ACTION FAIRNESS

1718 M Street NW, No. 236

Washington, DC 20036

Telephone:  (703) 203-3848

Email:  tedfrank@gmail.com

*Attorney for Appellants Michael Rosman and*
*Jessica Kasten*

## <u>APPENDIX</u>
## <u>TABLE OF CONTENTS</u>

<u>Appendix Page</u>

Memorandum Opinion and Order of
The Honorable Maria Valdez
     filed February 7, 2014 (Docket No. 158) . . . . . . . . . . . . . . . . . . . . . . . A1

Final Approval Order of
The Honorable Maria Valdez
     filed February 25, 2014 (Docket No. 161) . . . . . . . . . . . . . . . . . . . . . A38

APPENDIX
TABLE OF CONTENTS

Appendix Page

Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A42

Exhibit to
Plaintiffs Mario Aliano's, Victoria Radaviciute's, and
Scott D.H. Redman's Motion for Preliminary Approval of
Class Action Settlement
        filed May 16, 2013 (Docket No. 94):

        1.      Class Action Settlement Agreement and Release,
                With Exhibit,
                [Pages 2-20]
                        dated May 16, 2013 (Docket No. 94-1) . . . . . . . . . . . . . A57

Preliminary Approval Order of
The Honorable Maria Valdez
        filed May 29, 2013 (Docket No. 101) . . . . . . . . . . . . . . . . . . . . . . . . A76

Objectors Michael Rosman's and Jessica Kasten's
Objection to Proposed Settlement
        filed August 27, 2013 (Docket No. 115) . . . . . . . . . . . . . . . . . . . . . . A80

Excerpts of Declaration of Jennifer M. Keough
Regarding Notice Dissemination and Claims Administration
[Pages 1-2, 10-12]
        filed September 10, 2013 (Docket No. 135) . . . . . . . . . . . . . . . . . . . A101

Supplemental Declaration of Jennifer M. Keough
Regarding Objectors' Claims Status,
With Exhibit,
[Pages 1-5]
        filed September 17, 2013 (Docket No. 139) . . . . . . . . . . . . . . . . . . . A106

        Exhibit:

        A.      List of Objectors with Timely, Valid Claim Forms . . . . . . . A109

Transcript of Proceedings before
The Honorable Maria Valdez
[Pages 1-35]
        on September 17, 2013 (Docket No. 150)  . . . . . . . . . . . . . . . . . . . . A111

        Proceedings heard in open court . . . . . . . . . . . . . . . . . . . . . . . . . . A113

Transcript of Proceedings before
The Honorable Maria Valdez
[Pages 36-68]
        on September 17, 2013 (Docket No. 151)  . . . . . . . . . . . . . . . . . . . . A146

        Proceedings heard in open court . . . . . . . . . . . . . . . . . . . . . . . . . . A148

Notification of Docket Entry of
The Honorable Maria Valdez
        filed February 7, 2014 (Docket No. 157)  . . . . . . . . . . . . . . . . . . . . A179

APPEAL,CONSALL,PROTO,TERMED,VALDEZ

**United States District Court**
**Northern District of Illinois – CM/ECF LIVE, Ver 6,1 (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:11–cv–06741**

| | |
|---|---|
| Redman v. Radioshack Corporation | Date Filed: 09/26/2011 |
| Assigned to: Honorable Maria Valdez | Date Terminated: 04/07/2014 |
| Demand: $9,999,000 | Jury Demand: Both |
| Case in other court:  14–01470 | Nature of Suit: 890 Other Statutory |
|                14–01471 | Actions |
| Cause: 15:1681 Fair Credit Reporting Act | Jurisdiction: Federal Question |

**Plaintiff**

**Scott D.H. Redman**                    represented by    **Paul F. Markoff**
Markoff Leinberger LLC
134 N LaSalle St
Ste 1050
Chicago, IL 60602
3127264162
Fax: 3126747272
Email: paul@markleinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Karl G. Leinberger**
Markoff Leinberger LLC
134 N. LaSalle Street
Suite 1050
Chicago, IL 60602
(312) 726–4162
Email: karl@markleinlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mario Aliano**                    represented by    **Thomas A. Zimmerman , Jr.**
Zimmerman Law Offices, P.C.
77 West Washington Street
Suite 1220
Chicago, IL 60602
(312) 440–0020
Fax: (312) 440–4180
Email: tom@attorneyzim.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M. Tamburelli**
Zimmerman Law Offices PC
77 West Washington Street
Suite 1220
Chicago, IL 60602
(312) 440–0020
Fax: (312) 440–4180
Email: adam@attorneyzim.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Victoria Radaviciute**                    represented by    **Thomas A. Zimmerman , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M. Tamburelli**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Radioshack Corporation** | represented by | **James R. Daly** |

Jones Day
77 West Wacker Drive
Suite 3500
Chicago, IL 60601−1692
(312)782−3939
Email: jrdaly@jonesday.com
*LEAD ATTORNEY*

**Elizabeth Jenkins Marino**
Jones Day
77 W. Wacker Dr.
Chicago, IL 60601
(312) 782−3939
Email: ehjenkins@jonesday.com
*ATTORNEY TO BE NOTICED*

**Irene Savanis Fiorentinos**
Jones Day
77 West Wacker Drive
Suite 3500
Chicago, IL 60601−1692
(312)782−3939
Email: ifiorentinos@jonesday.com
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **Service List** | represented by | **Joseph Darrell Palmer** |

Law Offices Of Darrell Palmer Pc
2244 Faraday Avenue
Suite 121
Carlsbad, CA 92008
858−215−4064
Fax: 866−583−8115
Email: darrell.palmer@palmerlegalteam.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A. Zimmerman , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam M. Tamburelli**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/26/2011 | 1 | COMPLAINT filed by Scott D.H. Redman; Jury Demand. Filing fee $ 350, receipt number 0752−6410967.(Markoff, Paul) (Entered: 09/26/2011) |
| 09/26/2011 | 2 | CIVIL Cover Sheet (Markoff, Paul) (Entered: 09/26/2011) |
| 09/26/2011 | 3 | ATTORNEY Appearance for Plaintiff Scott D.H. Redman by Paul F. Markoff (Markoff, Paul) (Entered: 09/26/2011) |

| | | |
|---|---|---|
| 09/26/2011 | 4 | ATTORNEY Appearance for Plaintiff Scott D.H. Redman by Karl G. Leinberger (Leinberger, Karl) (Entered: 09/26/2011) |
| 09/26/2011 | | CASE ASSIGNED to the Honorable John F. Grady. Designated as Magistrate Judge the Honorable Maria Valdez. (daj, ) (Entered: 09/26/2011) |
| 09/26/2011 | | SUMMONS Issued as to Defendant Radioshack Corporation (mh, ) (Entered: 09/26/2011) |
| 09/29/2011 | 5 | MOTION by Plaintiff Scott D.H. Redman to certify class (Markoff, Paul) (Entered: 09/29/2011) |
| 09/29/2011 | 6 | NOTICE of Motion by Paul F. Markoff for presentment of motion to certify class 5 before Honorable John F. Grady on 10/12/2011 at 11:00 AM. (Markoff, Paul) (Entered: 09/29/2011) |
| 09/29/2011 | 7 | MEMORANDUM by Scott D.H. Redman in support of motion to certify class 5 (Markoff, Paul) (Entered: 09/29/2011) |
| 09/29/2011 | 8 | NOTICE by Scott D.H. Redman re memorandum in support of motion 7 (Markoff, Paul) (Entered: 09/29/2011) |
| 10/12/2011 | 9 | MINUTE entry before Honorable John F. Grady:Plaintiff's motion for class certification 5 is taken under advisement. Mailed notice (cdh, ) (Entered: 10/12/2011) |
| 10/17/2011 | 10 | SUMMONS Returned Executed by Scott D.H. Redman as to Radioshack Corporation on 10/3/2011, answer due 10/24/2011. (Markoff, Paul) (Entered: 10/17/2011) |
| 10/19/2011 | 11 | ATTORNEY Appearance for Defendant Radioshack Corporation by Irene Savanis Fiorentinos (Fiorentinos, Irene) (Entered: 10/19/2011) |
| 10/19/2011 | 12 | MOTION by Defendant Radioshack Corporation for extension of time to file answer regarding complaint 1 (Fiorentinos, Irene) (Entered: 10/19/2011) |
| 10/19/2011 | 13 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion for extension of time to file answer, motion for relief 12 before Honorable John F. Grady on 10/26/2011 at 11:00 AM. (Fiorentinos, Irene) (Entered: 10/19/2011) |
| 10/19/2011 | 14 | ATTORNEY Appearance for Defendant Radioshack Corporation by James R. Daly (Daly, James) (Entered: 10/19/2011) |
| 10/21/2011 | 15 | MINUTE entry before Honorable John F. Grady:The parties' agreed motion for an extension of time up to and including December 8, 2011 for defendant to answer or otherwise plead to the complaint 12 is granted. No appearance is required on October 26, 2011. A status hearing is set for December 14, 2011 at 11:00 a.m. Mailed notice (cdh, ) (Entered: 10/21/2011) |
| 11/30/2011 | 16 | ATTORNEY Appearance for Defendant Radioshack Corporation by Elizabeth Hunt Jenkins (Jenkins, Elizabeth) (Entered: 11/30/2011) |
| 12/02/2011 | 17 | MOTION by Defendant Radioshack Corporation for extension of time to file answer regarding complaint 1 (Fiorentinos, Irene) (Entered: 12/02/2011) |
| 12/02/2011 | 18 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion for extension of time to file answer, motion for relief 17 before Honorable John F. Grady on 12/7/2011 at 11:00 AM. (Fiorentinos, Irene) (Entered: 12/02/2011) |
| 12/05/2011 | 19 | MINUTE entry before Honorable John F. Grady: Defendant's unopposed motion to extend time until January 18, 2012 to answer or otherwise plead to the complaint 17 is granted. No appearance is necessary on December 7, 2011. Status hearing set for December 14, 2011 is canceled and reset to February 1, 2012 at 11:00 a.m. Mailed notice (cdh, ) (Entered: 12/05/2011) |
| 01/04/2012 | 20 | MOTION by Defendant Radioshack Corporation to reassign case *as related* (Attachments: # 1 Exhibit A)(Fiorentinos, Irene) (Entered: 01/04/2012) |
| 01/04/2012 | 21 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion to reassign case 20 before Honorable John F. Grady on 1/11/2012 at 11:00 AM. |

| | | (Fiorentinos, Irene) (Entered: 01/04/2012) |
|---|---|---|
| 01/06/2012 | 22 | RESPONSE by Mario Aliano, Victoria Radaviciutein Support of MOTION by Defendant Radioshack Corporation to reassign case *as related* 20 (Zimmerman, Thomas) (Entered: 01/06/2012) |
| 01/09/2012 | 23 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute to consolidate cases (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Zimmerman, Thomas) (Entered: 01/09/2012) |
| 01/09/2012 | 24 | NOTICE of Motion by Thomas A. Zimmerman, Jr for presentment of motion to consolidate cases 23 before Honorable John F. Grady on 1/11/2012 at 11:00 AM. (Zimmerman, Thomas) (Entered: 01/09/2012) |
| 01/09/2012 | 25 | RESPONSE by Scott D.H. Redman to MOTION by Defendant Radioshack Corporation to reassign case *as related* 20 (Markoff, Paul) (Entered: 01/09/2012) |
| 01/11/2012 | 26 | MINUTE entry before Honorable John F. Grady: Hearing on motions held. Defendant's motion for reassignment based on relatedness 20 is granted. The court finds that Aliano v. Radioshack Corp., No. 11–CV–7819, currently pending before Judge Bucklo, is related to the instant case, and that the Aliano case should be reassigned to this court pursuant to Local Rule 40.4. The motion of Mario Aliano and Victoria Radaviciute to consolidate the two cases for trial and all other purposes 23 is granted. A status hearing is set for January 25, 2012 at 11:00 a.m. Defendant's oral motion for extension of time to answer or otherwise plead to the complaint in the instant case is granted, and that time is extended to January 30, 2012. Mailed notice (tlm) (Entered: 01/13/2012) |
| 01/17/2012 | 27 | ATTORNEY Appearance for Plaintiffs Mario Aliano, Victoria Radaviciute by Thomas A. Zimmerman, Jr (Zimmerman, Thomas) (Entered: 01/17/2012) |
| 01/17/2012 | 28 | ATTORNEY Appearance for Plaintiffs Mario Aliano, Victoria Radaviciute by Adam M. Tamburelli (Tamburelli, Adam) (Entered: 01/17/2012) |
| 01/17/2012 | 29 | CERTIFICATE of Service by Thomas A. Zimmerman, Jr on behalf of Mario Aliano, Victoria Radaviciute regarding attorney appearance 27 , attorney appearance 28 (Zimmerman, Thomas) (Entered: 01/17/2012) |
| 01/25/2012 | 30 | MINUTE entry before Honorable John F. Grady: Status hearing held and continued to March 21, 2012 at 11:00 a.m. By agreement of the parties, this case is referred to Magistrate Judge Valdez for settlement conference. Magistrate Judge Valdez shall have discretion to determine what other pleadings, if any, need to be filed in order for her to conduct the settlement conference. The status hearing set for February 1, 2012 is stricken. Plaintiff's motion for class certification 18 in the related case number 11–CV–7819 is entered and continued generally. Plaintiff's original motion for class certification in case number 11–CV–7819 5 is denied as superceded by 18 . Defendant's motion to stay proceedings 21 in case number 11–CV–7819 pending resolution in case number 11–CV–6741 is denied as moot in light of our order consolidating the two cases for trial and all other purposes. Mailed notice (tlm) (Entered: 01/27/2012) |
| 01/25/2012 | 31 | MINUTE entry before Honorable John F. Grady: This case is hereby referred to the calendar of Magistrate Judge Maria Valdez pursuant to Local Rule 72.1. This case is referred for the purpose of holding proceedings related to a settlement conference. Mailed notice (cdh, ) (Entered: 02/09/2012) |
| 01/25/2012 | 33 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Maria Valdez for the purpose of holding proceedings related to: settlement conference.(tmh, )Mailed notice. (Entered: 02/13/2012) |
| 02/13/2012 | 32 | MINUTE entry before Honorable Maria Valdez: Magistrate Judge Status hearing set for 2/14/2012 at 09:30 AM. to discuss other pleadings, if any, need to be filed in order to conduct the settlement conference as stated pursuant to order dated 1/25/12 doc. no. 30 .Mailed notice (yp, ) (Entered: 02/13/2012) |
| 02/13/2012 | 34 | MINUTE entry before Honorable Maria Valdez: Settlement Conference set for 3/13/2012 at 02:00 p.m. in Courtroom 1300. Judge Valdez requires full compliance with the Court's Standing Order on Settlement Conference found on Judge Valdez's |

| | | website available at www.ilnd.uscourts.gov, or the parties can contact courtroom deputy, Yolanda Pagan, at 312/408–5135 for a copy. Failure to comply with the provisions of the Court's Standing Order may result in the unilateral cancellation of the settlement conference by the Court. Absent leave from the Court, cancellation will result if the Plaintiff fails to submit to chambers copies of the settlement letters four days prior to the settlement conference. Because of the volume of settlement conferences conducted by Judge Valdez, once a settlement conference date has been agreed upon, no continuance will be granted without a motion showing extreme hardship. Mailed notice (yp, ) (Entered: 02/13/2012) |
|---|---|---|
| 02/14/2012 | 35 | MINUTE entry before Honorable Maria Valdez: Magistrate Judge Status hearing held on 2/14/2012. Court will not require responsive pleadings at this time. Court reminds the plaintiff that the letter to be submitted to defendant for settlement purposes will be a thorough analysis of this case. Mailed notice (yp, ) (Entered: 02/15/2012) |
| 03/13/2012 | 36 | MINUTE entry before Honorable Maria Valdez:Settlement conference held on 3/13/2012. Parties unable to reach settlement at this time. Parties shall contact Yolanda Pagan at 312–408–5135 if parties feel an additional settlement conference may be fruitful. Mailed notice (yp, ) (Entered: 03/14/2012) |
| 03/21/2012 | 37 | MINUTE entry before Honorable John F. Grady:Status hearing held and continued to June 27, 2012 at 11:00 a.m. Defendants may have until April 4, 2012 to answer or otherwise plead to the complaint. Docketing Mailed notice (tg, ) (Entered: 03/23/2012) |
| 04/04/2012 | 38 | ANSWER to Complaint with Jury Demand by Radioshack Corporation(Fiorentinos, Irene) (Entered: 04/04/2012) |
| 04/04/2012 | 39 | ANSWER to Complaint with Jury Demand *Aliano v. RadioShack Corporation (Amended)* by Radioshack Corporation(Fiorentinos, Irene) (Entered: 04/04/2012) |
| 04/05/2012 | 40 | MINUTE entry before Honorable Maria Valdez: Parties agree to set a second Settlement Conference for 6/6/2012 at 02:00 p.m. in Courtroom 1300. If there are any revisions to the previous demand letter and response, parties are directed to forwarded the revisions to the Court 4 days prior to settlement conference date. Mailed notice (yp, ) (Entered: 04/05/2012) |
| 05/23/2012 | 41 | MOTION by Defendant Radioshack Corporation to transfer case (Attachments: # 1 Exhibit A (Declaration of Donald Faries))(Fiorentinos, Irene) (Entered: 05/23/2012) |
| 05/23/2012 | 42 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion to transfer case 41 before Honorable John F. Grady on 6/20/2012 at 11:00 AM. (Fiorentinos, Irene) (Entered: 05/23/2012) |
| 06/06/2012 | 43 | MOTION by Plaintiff Scott D.H. Redman for protective order *(Agreed Motion)* (Attachments: # 1 Text of Proposed Order 1–Proposed Protective Order)(Markoff, Paul) (Entered: 06/06/2012) |
| 06/06/2012 | 44 | NOTICE of Motion by Paul F. Markoff for presentment of motion for protective order 43 before Honorable John F. Grady on 6/20/2012 at 11:00 AM. (Markoff, Paul) (Entered: 06/06/2012) |
| 06/06/2012 | 45 | MINUTE entry before Honorable Maria Valdez:Settlement conference held on 6/6/2012. Settlement not reached at this time. Status on continued settlement conference setting to be set before Judge Valdez on 7/10/2012 at 10:00 AM.Mailed notice (yp, ) (Entered: 06/07/2012) |
| 06/20/2012 | 46 | STIPULATED PROTECTIVE ORDER Signed by the Honorable John F. Grady on June 20, 2012. Mailed notice(cdh, ) (Entered: 06/21/2012) |
| 06/20/2012 | 47 | MINUTE entry before Honorable John F. Grady:Motion hearing held. The plaintiff's agreed motion for a protective order 43 is granted. The defendant's motion to transfer venue to the Northern District of Texas (Fort Worth Division) 41 is taken under advisement. The defendant may file a further memorandum addressing the issues raised in open court by July 20, 2012; the plaintiff may respond to the defendant's motion (and any supplement thereto) by August 10, |

A46

| | | 2012; and the defendant may reply by August 24, 2012. Mailed notice (tg, ) (Entered: 06/22/2012) |
|---|---|---|
| 06/22/2012 | 48 | MINUTE entry before Honorable John F. Grady: The status hearing set for June 27, 2012 is canceled. No appearance is required on June 27, 2012. Mailed notice (cdh, ) (Entered: 06/22/2012) |
| 07/09/2012 | 49 | TRANSCRIPT OF PROCEEDINGS held on 6/20/2012 before the Honorable John F. Grady. Court Reporter Contact Information: Laura Renke, CSR, RDR, CRR 708.447.0905.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/30/2012. Redacted Transcript Deadline set for 8/9/2012. Release of Transcript Restriction set for 10/9/2012. (td, ) (Entered: 07/10/2012) |
| 07/10/2012 | 50 | MINUTE entry before Honorable Maria Valdez: Magistrate Judge Status hearing held on 7/10/2012. Parties continue to work diligently on settlement discussions. Status hearing continued to 8/9/2012 at 10:00 a.m. on report of settlement. Mailed notice (yp, ) (Entered: 07/11/2012) |
| 07/16/2012 | 51 | MOTION by Plaintiff Scott D.H. Redman to compel (Attachments: #1 Exhibit 1–Plaintiffs' Discovery Requests, #2 Exhibit 2–Defendant's Interrogatory Response–public, #3 Exhibit 3–Defendant's Document Response)(Markoff, Paul) (Entered: 07/16/2012) |
| 07/16/2012 | 52 | NOTICE of Motion by Paul F. Markoff for presentment of motion to compel, 51 before Honorable John F. Grady on 7/18/2012 at 11:00 AM. (Markoff, Paul) (Entered: 07/16/2012) |
| 07/16/2012 | 53 | MEMORANDUM by Scott D.H. Redman in support of motion to compel, 51 (Attachments: #1 Exhibit A–Visa Rules Excerpts, #2 Exhibit B–Industry Notices, #3 Exhibit C–Merchant Services Contract)(Markoff, Paul) (Entered: 07/16/2012) |
| 07/16/2012 | 54 | SEALED EXHIBIT by Plaintiff Scott D.H. Redman *(sealed exhibit 2)* regarding MOTION by Plaintiff Scott D.H. Redman to compel 51 (Markoff, Paul) (Entered: 07/16/2012) |
| 07/18/2012 | 57 | MINUTE entry before Honorable John F. Grady:The plaintiff's motion to compel 51 is taken under advisement because it should be decided after the court rules on the defendant's pending motion to transfer venue. In the event that the court denies the motion to transfer, the court will set a status hearing at that time. Mailed notice (tg, ) (Entered: 07/20/2012) |
| 07/20/2012 | 55 | MOTION by Defendant Radioshack Corporation to quash *subpoenas* (Attachments: #1 Exhibit A, #2 Exhibit B)(Fiorentinos, Irene) (Entered: 07/20/2012) |
| 07/20/2012 | 56 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion to quash 55 before Honorable John F. Grady on 9/19/2012 at 11:00 AM. (Fiorentinos, Irene) (Entered: 07/20/2012) |
| 07/20/2012 | 58 | MEMORANDUM by Radioshack Corporation in support of motion to transfer case 41 *Supplement* (Attachments: #1 Exhibit June 20, 2012 Hearing Transcript)(Fiorentinos, Irene) (Entered: 07/20/2012) |
| 08/09/2012 | 59 | MINUTE entry before Honorable Maria Valdez:Magistrate Judge Status hearing held on 8/9/2012. Parties shall continue to meet and confer on settlement discussions. Status hearing continued to 9/27/2012 at 10:00 AM.Mailed notice (yp, ) (Entered: 08/09/2012) |
| 08/10/2012 | 60 | MEMORANDUM by Mario Aliano, Victoria Radaviciute, Scott D.H. Redman in Opposition to motion to transfer case 41 (Attachments: #1 Exhibit 1–Defendant |

| | | |
|---|---|---|
| | | response to requests to admit, #_2_ Exhibit 2–Defendant response to interrogatory, #_3_ Affidavit 3–Redman affidavit, #_4_ Affidavit 4–Aliano affidavit, #_5_ Affidavit 5–Radaviciute affidavit, #_6_ Exhibit 6–Defendant 10–Q excerpts, #_7_ Exhibit 7–non–party witness list, #_8_ Exhibit 8–court stats, #_9_ Exhibit 9–ND Tex decision list, #_10_ Exhibit 10–ND Ill decision list, #_11_ Exhibit 11–5th Cir decision list, #_12_ Exhibit 12–7th Cir decision list)(Markoff, Paul) (Entered: 08/10/2012) |
| 08/13/2012 | 61 | DECLARATION of Mario Aliano and Victoria Radaviciute regarding memorandum in opposition to motion,, _60_ (Zimmerman, Thomas) (Entered: 08/13/2012) |
| 08/13/2012 | 62 | CERTIFICATE of Service by Thomas A. Zimmerman, Jr on behalf of Mario Aliano, Victoria Radaviciute regarding declaration _61_ (Zimmerman, Thomas) (Entered: 08/13/2012) |
| 08/15/2012 | 63 | AMENDED memorandum in opposition to motion,, _60_ *(amended exhibit 7 to Plaintiffs' Opposition to Defendant's Motion to Transfer* (Markoff, Paul) (Entered: 08/15/2012) |
| 08/15/2012 | 64 | NOTICE by Scott D.H. Redman re amended document _63_ (Markoff, Paul) (Entered: 08/15/2012) |
| 08/24/2012 | 65 | REPLY by Defendant Radioshack Corporation to motion to transfer case _41_ (Attachments: #_1_ Declaration William D. Clugsten)(Fiorentinos, Irene) (Entered: 08/24/2012) |
| 09/18/2012 | 66 | MINUTE entry before Honorable John F. Grady: The defendant's motion to quash subpoenas _55_ is taken under advisement because, like the plaintiffs' motion to compel, it should be decided after the court rules on the defendant's pending motion to transfer venue. (Defendant states in the motion to quash that it should be "coordinated with" plaintiffs' pending motion to compel.) In the event that the court denies the motion to transfer, the court will set a status hearing at that time to address the pending discovery motions. No appearance is required on September 19, 2012. Mailed notice (cdh, ) (Entered: 09/18/2012) |
| 09/27/2012 | 67 | MINUTE entry before Honorable Maria Valdez: Magistrate Judge Status hearing held on 9/27/2012. Status hearing continued to 10/18/2012 at 10:00 AM. Parties are reminded to continue to work on settlement discussion. Mailed notice (yp, ) (Entered: 10/01/2012) |
| 10/05/2012 | 68 | TRANSCRIPT OF PROCEEDINGS held on July 18, 2012, before the Honorable John F. Grady. Court Reporter Contact Information: Laura LaCien, 312–408–5032, laura_lacien@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/26/2012. Redacted Transcript Deadline set for 11/5/2012. Release of Transcript Restriction set for 1/3/2013. (Lacien, Laura) (Entered: 10/05/2012) |
| 10/18/2012 | 69 | MINUTE entry before Honorable Maria Valdez: Magistrate Judge Status hearing held on 10/18/2012 and continued to 11/6/2012 at 10:00 AM.Mailed notice (yp, ) (Entered: 10/18/2012) |
| 11/06/2012 | 70 | MINUTE entry before Honorable Maria Valdez:Magistrate Judge Status hearing held on 11/6/2012. Parties feel a settlement conference may not be fruitful at this time. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. Judge Honorable Maria Valdez no longer referred to the case.Mailed notice (yp, ) (Entered: 11/06/2012) |
| 11/29/2012 | 71 | MOTION by Plaintiff Scott D.H. Redman to stay regarding MOTION by Defendant Radioshack Corporation to transfer case _41_ (Markoff, Paul) (Entered: |

| | | 11/29/2012) |
|---|---|---|
| 11/29/2012 | 72 | NOTICE of Motion by Paul F. Markoff for presentment of motion to stay, motion for relief 71 before Honorable John F. Grady on 12/5/2012 at 11:00 AM. (Markoff, Paul) (Entered: 11/29/2012) |
| 11/29/2012 | 73 | MINUTE entry before Honorable John F. Grady: The parties' agreed motion for a stay of any ruling on defendant's motion to transfer venue 71 is granted in light of the parties' settlement in principle. No appearance is necessary on December 5, 2012. Mailed notice (cdh, ) (Entered: 11/29/2012) |
| 01/11/2013 | 74 | MINUTE entry before Honorable John F. Grady: A status hearing is set for February 13, 2013 at 11:00 a.m. Mailed notice (cdh, ) (Entered: 01/11/2013) |
| 01/24/2013 | 75 | MINUTE entry before Honorable John F. Grady: The status hearing set for February 13, 2013 is canceled and reset to February 6, 2013 at 11:00 a.m. No appearance is required on February 13, 2013. Mailed notice (cdh, ) (Entered: 01/24/2013) |
| 02/06/2013 | 76 | MINUTE entry before Honorable John F. Grady: Status hearing held. The parties report that they are trying to finalize their settlement. The defendant Radioshack Corporation's motion to transfer venue to the Northern District of Texas (Fort Worth Division) 41 is denied without prejudice. The plaintiff's motion to compel 51 is denied without prejudice. The defendant Radioshack Corporation's motion to quash subpoenas 55 is denied without prejudice. The motions may be reinstated if the case does not settle. The parties are given until March 8, 2013 to file a motion for preliminary approval of class settlement. If the motion is not filed, a status hearing will be scheduled to set a discovery schedule, and the case will proceed forthwith. Mailed notice (cdh, ) (Entered: 02/07/2013) |
| 03/08/2013 | 77 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman to compel *(Renewed)* (Attachments: # 1 Exhibit 1–Plaintiff's Discovery Requests, # 2 Exhibit 2–Defendant's Interrogatory Response, # 3 Exhibit 3–Plaintiff's Document Response)(Markoff, Paul) (Entered: 03/08/2013) |
| 03/08/2013 | 78 | MEMORANDUM by Mario Aliano, Victoria Radaviciute, Scott D.H. Redman in support of motion to compel, 77 (Attachments: # 1 Exhibit A–Visa excerpts, # 2 Exhibit B–Trade Association documents, # 3 Exhibit C–Merchant Agreement)(Markoff, Paul) (Entered: 03/08/2013) |
| 03/08/2013 | 79 | MOTION by Plaintiff Scott D.H. Redman to certify class *(Amended)* (Markoff, Paul) (Entered: 03/08/2013) |
| 03/08/2013 | 80 | MEMORANDUM by Scott D.H. Redman in support of motion to certify class 79 (Markoff, Paul) (Entered: 03/08/2013) |
| 03/08/2013 | 81 | NOTICE of Motion by Paul F. Markoff for presentment of motion to certify class 79 , motion to compel, 77 before Honorable John F. Grady on 3/20/2013 at 11:00 AM. (Markoff, Paul) (Entered: 03/08/2013) |
| 03/15/2013 | 82 | MOTION by Defendant Radioshack Corporation to transfer case *(Renewed)* (Attachments: # 1 Exhibit A)(Daly, James) (Entered: 03/15/2013) |
| 03/15/2013 | 83 | NOTICE of Motion by James R. Daly for presentment of motion to transfer case 82 before Honorable John F. Grady on 3/20/2013 at 11:00 AM. (Daly, James) (Entered: 03/15/2013) |
| 03/20/2013 | 84 | MINUTE entry before Honorable John F. Grady: Motion hearing held. The parties report to the court that they are making progress on settlement. A further status hearing is set for April 10, 2013 at 10:30 a.m. for a report on settlement efforts. Mailed notice (cdh, ) (Entered: 03/22/2013) |
| 04/10/2013 | 85 | MINUTE entry before Honorable John F. Grady: Status hearing held. The parties report settlement is not feasible at this time. The court will rule on the defendant's renewed motion to transfer the case 82 in due course. If the court denies the motion, it will set a further status hearing. The stay of discovery is lifted and the parties shall proceed forthwith on discovery. Mailed notice (cdh, ) (Entered: 04/11/2013) |

| | | |
|---|---|---|
| 04/11/2013 | 86 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute to certify class *Amended Motion* (Attachments: # 1 Exhibit A–1, # 2 Exhibit A–2, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Zimmerman, Thomas) (Entered: 04/11/2013) |
| 04/11/2013 | 87 | MEMORANDUM by Mario Aliano, Victoria Radaviciute in support of motion to certify class 86 *(Amended)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15)(Zimmerman, Thomas) (Entered: 04/11/2013) |
| 04/11/2013 | 88 | CERTIFICATE of Service by Thomas A. Zimmerman, Jr on behalf of Mario Aliano, Victoria Radaviciute regarding MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute to certify class *Amended Motion* 86 , memorandum in support of motion, 87 (Zimmerman, Thomas) (Entered: 04/11/2013) |
| 04/15/2013 | 89 | MINUTE entry before Honorable John F. Grady: A status hearing is set for May 8, 2013 at 11:00 a.m. Mailed notice (cdh, ) (Entered: 04/15/2013) |
| 05/02/2013 | 90 | MOTION by Plaintiff Scott D.H. Redman to compel *(second)* (Attachments: # 1 Exhibit 1–Redman second doc request, # 2 Exhibit 2–Defendant response, # 3 Exhibit 3–9/26/12 email, # 4 Exhibit 4–11/6/12 email, # 5 Exhibit 5–4/17/13 email)(Markoff, Paul) (Entered: 05/02/2013) |
| 05/02/2013 | 91 | NOTICE of Motion by Paul F. Markoff for presentment of motion to compel, 90 before Honorable John F. Grady on 5/8/2013 at 11:00 AM. (Markoff, Paul) (Entered: 05/02/2013) |
| 05/02/2013 | 92 | MEMORANDUM by Scott D.H. Redman in support of motion to compel, 90 (Markoff, Paul) (Entered: 05/02/2013) |
| 05/08/2013 | 93 | MINUTE entry before Honorable John F. Grady: Status hearing held and continued to May 15, 2013 at 11:00 a.m. The plaintiff's second motion to compel 90 is entered and continued to May 15, 2013. Mailed notice (cdh, ) (Entered: 05/09/2013) |
| 05/15/2013 | 96 | MINUTE entry before Honorable John F. Grady: Status hearing held. The parties report that they have reached a settlement and anticipate filing a Consent to Exercise of Jurisdiction by a United States Magistrate Judge. Mailed notice (cdh, ) (Entered: 05/17/2013) |
| 05/16/2013 | 94 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman for settlement *(preliminary approval of class action settlement)* (Attachments: # 1 Exhibit 1–Settlement Agreement)(Markoff, Paul) (Entered: 05/16/2013) |
| 05/16/2013 | 95 | CONSENT to Magistrate Judge Disposition on MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman for settlement *(preliminary approval of class action settlement)* 94 (Markoff, Paul) (Entered: 05/16/2013) |
| 05/17/2013 | 97 | EXECUTIVE COMMITTEE ORDER: Case reassigned to the Honorable Maria Valdez, pursuant to Local Rule 73.1 for all further proceedings parties having consented to the reassignment. Signed by Honorable John F. Grady on 5/17/2013.(ym, ) (Entered: 05/21/2013) |
| 05/21/2013 | 98 | NOTICE of Motion by Paul F. Markoff for presentment of motion for settlement 94 before Honorable Maria Valdez on 5/29/2013 at 10:15 AM. (Markoff, Paul) (Entered: 05/21/2013) |
| 05/21/2013 | 99 | MEMORANDUM by Mario Aliano, Victoria Radaviciute, Scott D.H. Redman in support of motion for settlement 94 (Markoff, Paul) (Entered: 05/21/2013) |
| 05/29/2013 | 100 | MINUTE entry before Honorable Maria Valdez: Motion hearing held on 5/29/2013 regarding motion for settlement 94 . Plaintiff's Motion for preliminary approval of class action settlement agreement 94 is granted. Notice shall be implemented pursuant to the terms of the Settlement Agreement, and Plaintiffs' counsel shall submit, at least five (5) business days prior to the Fairness Hearing, an affidavit affirming that notice has been so given. Class Members shall have until August 27, 2013 to submit a claim, or opt out or object to the proposed Settlement Agreement. A Fairness Hearing on the fairness and reasonableness of the proposed Settlement Agreement shall be held before this Court on September 17, 2013 at 11:00 a.m. |

A50

| | | Enter Preliminary Approval Order. (For further details see separate order.)Mailed notice (yp, ) (Entered: 05/30/2013) |
|---|---|---|
| 05/29/2013 | 101 | PRELIMINARY APPROVAL ORDER Signed by the Honorable Maria Valdez on 5/29/2013.Mailed notice(yp, ) (Entered: 05/30/2013) |
| 06/23/2013 | 102 | TRANSCRIPT OF PROCEEDINGS held on 05/08/2013 before the Honorable John F. Grady. Court Reporter Contact Information: Pamela S. Warren https://www.ilnd.uscourts.gov/home/Transcript−Order−Form.aspx. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 7/15/2013. Redacted Transcript Deadline set for 7/24/2013. Release of Transcript Restriction set for 9/23/2013. (Warren, Pamela) (Entered: 06/23/2013) |
| 06/28/2013 | 104 | OBJECTION to claim settlement by Darryl Barton. (gcy, ) (Entered: 07/10/2013) |
| 07/08/2013 | 103 | LETTER from Class Member Lawrence Penna. (gcy, ) (Entered: 07/10/2013) |
| 07/12/2013 | 105 | LETTER from Michael Goodwin. (gcy, ) (Entered: 07/12/2013) |
| 07/22/2013 | 106 | LETTER from Joseph Bentley dated 7/9/13. (gcy, ) (Entered: 07/25/2013) |
| 08/09/2013 | 107 | ATTORNEY Appearance for Objectors Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr. by Curtis Charles Warner (Warner, Curtis) (Entered: 08/09/2013) |
| 08/09/2013 | 108 | OBJECTIONS by Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr. to order 101 (Attachments: #1 Declaration Declaration of Vanita Gupta, #2 Affidavit Affidavit of Charles H. Warner, Jr., #3 Declaration Declaration of Gregory Runyard)(Warner, Curtis) (Entered: 08/09/2013) |
| 08/09/2013 | 109 | Vanita Gupta's, Gregory Runyard's and Charles H. Warner, Jr's Notice of Intention to Appear in Redman, el al. v. RadioShack by Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr. (Warner, Curtis) (Entered: 08/09/2013) |
| 08/20/2013 | 110 | OBJECTIONS by Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr. to objections, 108 , order 101 *(AMENDED OBJECTIONS)* (Attachments: #1 Declaration Vanita Gupta with Exhibit A, #2 Declaration Charles H. Warner, Jr. with Exhibits A – D, #3 Declaration Gregory Runyard, #4 Appendix Vanita Gupta's Claims Paperwork, #5 Appendix Gregory Runyard's Claim Confirmation)(Warner, Curtis) (Entered: 08/20/2013) |
| 08/26/2013 | 111 | ATTORNEY Appearance for Objector Eduardo Vasquez by Curtis Charles Warner (Warner, Curtis) (Entered: 08/26/2013) |
| 08/26/2013 | 112 | OBJECTIONS by Eduardo Vasquez to order 101 *Preliminary Approval of Class Action Order* (Attachments: #1 Appendix 1 – Settlement Agreement Sosinov v. RadioShack Corp., Case No. BC449675, Superior Court for the State of California for the County of Los Angeles; 2 – Declaration of Eduardo Vasquez)(Warner, Curtis) (Entered: 08/26/2013) |
| 08/26/2013 | 113 | Eduardo Vasquez's Notice of Intention to Appear in Redman, et al. v. RadioShack by Eduardo Vasquez (Warner, Curtis) (Entered: 08/26/2013) |
| 08/27/2013 | 114 | ATTORNEY Appearance for Objectors Michael Rosman, Jessica Kasten by Melissa A Holyoak (Holyoak, Melissa) (Entered: 08/27/2013) |
| 08/27/2013 | 115 | Objection to Proposed Settlement by Jessica Kasten, Michael Rosman (Attachments: #1 Declaration of Michael Rosman and Jessica Kasten, #2 Declaration of Melissa A. Holyoak)(Holyoak, Melissa) (Entered: 08/27/2013) |
| 08/27/2013 | 116 | SUPPLEMENT to objections, 112 , objections, 110 *(Supplemental Authority) Holtzman v. Turza, No. 11−3188 &11−3746 (7th Cir. Aug. 26, 2013)* (Warner, Curtis) (Entered: 08/27/2013) |

A51

| 08/30/2013 | 117 | LETTER from Neil Freedman dated 8/27/13. (gcy, ) (Entered: 09/04/2013) |
| 08/30/2013 | 118 | LETTER from Edward F. Slegel dated 8/27/13. (gcy, ) (Entered: 09/04/2013) |
| 08/30/2013 | 119 | LETTER from Paul Spencer dated 8/27/13. (gcy, ) (Entered: 09/04/2013) |
| 09/03/2013 | 120 | OBJECTION by Robert Scott to proposed class action settlement. (mjc, ) (Entered: 09/06/2013) |
| 09/06/2013 | 121 | ATTORNEY Appearance for Objectors Jessica Kasten, Michael Rosman by Debra Jeannine Tucker (Tucker, Debra) (Entered: 09/06/2013) |
| 09/09/2013 | 122 | ATTORNEY Appearance for Objectors Jessica Kasten, Michael Rosman by Melissa Rachel Pavely (Pavely, Melissa) (Entered: 09/09/2013) |
| 09/10/2013 | 123 | RESPONSE by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman to other 115 *Michael Rosman and Jessica Kastman's Objection to Proposed Settlement* (Tamburelli, Adam) (Entered: 09/10/2013) |
| 09/10/2013 | 124 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman Final Approval of Settlement Agreement (Leinberger, Karl) (Entered: 09/10/2013) |
| 09/10/2013 | 125 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman for leave to file excess pages *for three briefs* (Leinberger, Karl) (Entered: 09/10/2013) |
| 09/10/2013 | 126 | NOTICE of Motion by Karl G. Leinberger for presentment of motion for miscellaneous relief 124 , motion for leave to file excess pages 125 before Honorable Maria Valdez on 9/17/2013 at 11:00 AM. (Leinberger, Karl) (Entered: 09/10/2013) |
| 09/10/2013 | 127 | RESPONSE by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman to objections 120 , letter 105 , objections, 112 , letter 117 , letter 103 , letter 106 , other 104 , letter 118 , letter 119 *to Miscellaneous Objections* (Tamburelli, Adam) (Entered: 09/10/2013) |
| 09/10/2013 | 128 | RESPONSE by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman to objections 112 , objections, 108 , objections, 110 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Zimmerman, Thomas) (Entered: 09/10/2013) |
| 09/10/2013 | 129 | MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman for attorney fees (Tamburelli, Adam) (Entered: 09/10/2013) |
| 09/10/2013 | 130 | MEMORANDUM by Mario Aliano, Victoria Radaviciute, Scott D.H. Redman in support of motion for miscellaneous relief 124 (Attachments: # 1 Exhibit 1)(Zimmerman, Thomas) (Entered: 09/10/2013) |
| 09/10/2013 | 131 | DECLARATION of Paul F. Markoff regarding Response 123 , motion for attorney fees 129 , Response, 127 , Response, 128 , memorandum in support of motion 130 (Markoff, Paul) (Entered: 09/10/2013) |
| 09/10/2013 | 132 | DECLARATION of Karl Leinberger regarding Response 123 , motion for attorney fees 129 , Response, 127 , Response, 128 , memorandum in support of motion 130 (Markoff, Paul) (Entered: 09/10/2013) |
| 09/10/2013 | 133 | DECLARATION of Thomas A. Zimmerman, Jr. regarding Response 123 , motion for attorney fees 129 , Response, 127 , Response, 128 , memorandum in support of motion 130 (Markoff, Paul) (Entered: 09/10/2013) |
| 09/10/2013 | 134 | DECLARATION of Edward O'Brien regarding Response 123 , motion for attorney fees 129 , Response, 127 , Response, 128 , memorandum in support of motion 130 (Markoff, Paul) (Entered: 09/10/2013) |
| 09/10/2013 | 135 | DECLARATION of Jennifer M. Keough regarding Response 123 , motion for attorney fees 129 , Response, 127 , Response, 128 , memorandum in support of motion 130 (Markoff, Paul) (Entered: 09/10/2013) |
| 09/11/2013 | 136 | CERTIFICATE of Service by Paul F. Markoff on behalf of Scott D.H. Redman regarding Response 123 , declaration 131 , MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman for leave to file excess pages *for three* |

| | | |
|---|---|---|
| | | *briefs* 125 , declaration 135 , MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman for attorney fees 129 , Response, 127 , MOTION by Plaintiffs Mario Aliano, Victoria Radaviciute, Scott D.H. Redman Final Approval of Settlement Agreement 124 , declaration 133 , Response, 128 , notice of motion 126 , memorandum in support of motion 130 , declaration 134 , declaration 132 (Markoff, Paul) (Entered: 09/11/2013) |
| 09/13/2013 | 137 | RESPONSE by Defendant Radioshack Corporation to objections, 110 *111* (Fiorentinos, Irene) (Entered: 09/13/2013) |
| 09/16/2013 | 138 | APPENDIX *Exhibit A* (Fiorentinos, Irene) (Entered: 09/16/2013) |
| 09/17/2013 | 139 | DECLARATION of Jennifer Keough regarding Response 123 , Response, 127 , memorandum in support of motion 130 *(supplemental)* (Markoff, Paul) (Entered: 09/17/2013) |
| 09/17/2013 | 142 | MINUTE entry before Honorable Maria Valdez: Final Approval hearing held. Objectors appear in court. Hearing held on objections. The matter is taken under submission. Written order to follow. Mailed notice (lp, ) (Entered: 09/25/2013) |
| 09/17/2013 | 145 | MINUTE entry before Honorable Maria Valdez: Motion by Plaintiffs' for leave to file three briefs in excess of fifteen pages 125 is granted.Mailed notice (lp, ) (Entered: 10/04/2013) |
| 09/24/2013 | 140 | MOTION by Defendant Radioshack CorporationTo Present Revisions to Proposed Final Approval Order (Attachments: # 1 Exhibit 1)(Fiorentinos, Irene) (Entered: 09/24/2013) |
| 09/24/2013 | 141 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion for miscellaneous relief 140 before Honorable Maria Valdez on 10/1/2013 at 10:15 AM. (Fiorentinos, Irene) (Entered: 09/24/2013) |
| 09/27/2013 | 143 | RESPONSE by Jessica Kasten, Michael Rosman to MOTION by Defendant Radioshack CorporationTo Present Revisions to Proposed Final Approval Order 140 (Holyoak, Melissa) (Entered: 09/27/2013) |
| 10/01/2013 | 144 | MINUTE entry before Honorable Maria Valdez: Motion hearing held on 10/1/2013. Defendants Motion to File Revisions to the Proposed Final Order 140 is granted.Mailed notice (lp, ) (Entered: 10/01/2013) |
| 10/04/2013 | 146 | Notice of Recent Authority by Mario Aliano, Victoria Radaviciute, Scott D.H. Redman (Attachments: # 1 Exhibit A–In re Southwest)(Markoff, Paul) (Entered: 10/04/2013) |
| 10/04/2013 | 147 | MOTION by Objectors Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. to consider the substance of the Response contained herein to the Notice of Supplemental Authority filed October 4, 2013, (Doc. 146) (Attachments: # 1 Exhibit A – RadioShack Gift Card Terms and Conditions; B – RadioShack Gift Cards for Sale on giftcardgranny.com)(Warner, Curtis) (Entered: 10/04/2013) |
| 10/04/2013 | 148 | NOTICE of Motion by Curtis Charles Warner for presentment of motion for miscellaneous relief, 147 before Honorable Maria Valdez on 10/10/2013 at 10:15 AM. (Warner, Curtis) (Entered: 10/04/2013) |
| 10/09/2013 | 149 | MINUTE entry before Honorable Maria Valdez: Motion by Objectors Gupta, Runyard, Warner, and the Vasquez's for the court to consider a response to the notice of supplemental authority 147 is granted. Motion hearing scheduled for 10/10/2013 at 10:15 a.m. is stricken. Mailed notice (lp, ) (Entered: 10/09/2013) |
| 10/25/2013 | 150 | TRANSCRIPT OF PROCEEDINGS held on 09/17/2013 before the Honorable Maria Valdez. Court Reporter Contact Information: Rosemary_Scarpelli@ilnd.uscourts.gov, Rosemary Scarpell, (312)435–5815.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, |

|  |  | see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 11/15/2013. Redacted Transcript Deadline set for 11/25/2013. Release of Transcript Restriction set for 1/23/2014. (Scarpelli, Rosemary) (Entered: 10/25/2013) |
|---|---|---|
| 10/25/2013 | 151 | TRANSCRIPT OF PROCEEDINGS held on 09/17/2013 before the Honorable Maria Valdez. Court Reporter Contact Information: Rosemary_Scarpelli@ilnd.uscourts.gov, Rosemary Scarpell, (312)435–5815. IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. Redaction Request due 11/15/2013. Redacted Transcript Deadline set for 11/25/2013. Release of Transcript Restriction set for 1/23/2014. (Scarpelli, Rosemary) (Entered: 10/25/2013) |
| 02/03/2014 | 152 | MOTION by Plaintiff Scott D.H. Redman to supplement (Attachments: # 1 Exhibit A–Toys R Us Ruling)(Markoff, Paul) (Entered: 02/03/2014) |
| 02/03/2014 | 153 | NOTICE of Motion by Paul F. Markoff for presentment of motion to supplement 152 before Honorable Maria Valdez on 2/6/2014 at 10:15 AM. (Markoff, Paul) (Entered: 02/03/2014) |
| 02/05/2014 | 154 | RESPONSE by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. to MOTION by Plaintiff Scott D.H. Redman to supplement 152 (Warner, Curtis) (Entered: 02/05/2014) |
| 02/05/2014 | 155 | MINUTE entry before the Honorable Maria Valdez: Joint Motion to Present to the Court Additional Authority in Support of Motion for Final Approval is granted. Motion Hearing set for 2/6/2014 at 10:15 AM is stricken. Mailed notice (lp, ) (Entered: 02/05/2014) |
| 02/05/2014 | 156 | NOTICE by Jessica Kasten, Michael Rosman re order on motion to supplement, terminate hearings, text entry 155 *of response to motion to supplement 152* (Holyoak, Melissa) (Entered: 02/05/2014) |
| 02/07/2014 | 157 | MINUTE entry before the Honorable Maria Valdez: Plaintiff's Motions for Final Approval of Settlement Agreement 124 and 129 are granted in part and denied in part. Enter Memorandum Opinion and Order. Mailed notice (lp, ) (Entered: 02/07/2014) |
| 02/07/2014 | 158 | MEMORANDUM Opinion and Order Signed by the Honorable Maria Valdez on 2/7/2014: Mailed notice(lp, ) (Entered: 02/07/2014) |
| 02/20/2014 | 159 | MOTION by Defendant Radioshack Corporation for leave to file *Proposed Final Approval Order* (Attachments: # 1 Exhibit A (Proposed Final Approval Order))(Fiorentinos, Irene) (Entered: 02/20/2014) |
| 02/20/2014 | 160 | NOTICE of Motion by Irene Savanis Fiorentinos for presentment of motion for leave to file 159 before Honorable Maria Valdez on 2/25/2014 at 10:15 AM. (Fiorentinos, Irene) (Entered: 02/20/2014) |
| 02/25/2014 | 161 | FINAL Approval Order Signed by the Honorable Maria Valdez on 2/25/2014: Mailed notice (lp, ) (Entered: 02/25/2014) |
| 03/04/2014 | 162 | NOTICE of appeal by Jessica Kasten, Michael Rosman regarding orders 161 , 158 Filing fee $ 505, receipt number 0752–9255980. (Holyoak, Melissa) (Entered: 03/04/2014) |
| 03/04/2014 | 163 | DOCKETING Statement by Jessica Kasten, Michael Rosman regarding notice of appeal 162 (Holyoak, Melissa) (Entered: 03/04/2014) |

| 03/04/2014 | 164 | NOTICE of appeal by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. regarding orders 161 , 158 , 100 , 101 Filing fee $ 505, receipt number 0752–9257783. (Warner, Curtis) (Entered: 03/04/2014) |
|---|---|---|
| 03/04/2014 | 165 | DOCKETING Statement by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. regarding notice of appeal 164 (Warner, Curtis) (Entered: 03/04/2014) |
| 03/05/2014 | 166 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 164 , notice of appeal 162 . (smm) (Entered: 03/05/2014) |
| 03/05/2014 | 167 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 162 . Notified counsel (smm) (Entered: 03/05/2014) |
| 03/05/2014 | 168 | DOCKETING Statement by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. regarding notice of appeal 164 (Warner, Curtis) (Entered: 03/05/2014) |
| 03/05/2014 | 169 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 164 . Notified counsel (smm) (Entered: 03/05/2014) |
| 03/05/2014 | 170 | Select Exhibits Presented at the September 17, 2013, Fairness Hearing on behalf of the Gupta–Vasquez Objectors by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. (Attachments: # 1 Certificate of Service)(Warner, Curtis) (Entered: 03/05/2014) |
| 03/05/2014 | 171 | ACKNOWLEDGMENT of receipt of short record on appeal regarding notice of appeal 164 ; USCA Case No. 14–1471. (gcy, ) (Entered: 03/06/2014) |
| 03/05/2014 | 172 | ACKNOWLEDGMENT of receipt of short record on appeal regarding notice of appeal 162 ; USCA Case No. 14–1470. (gcy, ) (Entered: 03/06/2014) |
| 03/12/2014 | 173 | SEVENTH CIRCUIT transcript information sheet by Jessica Kasten, Michael Rosman (Attachments: # 1 Certificate of Service)(Holyoak, Melissa) (Entered: 03/12/2014) |
| 03/18/2014 | 174 | DESIGNATION by Scott D.H. Redman of record on appeal (Leinberger, Karl) (Entered: 03/18/2014) |
| 03/18/2014 | 175 | DESIGNATION by Mario Aliano, Victoria Radaviciute of record on appeal : USCA Case No. 14–1470, 14–1471 (Zimmerman, Thomas) (Entered: 03/18/2014) |
| 03/18/2014 | 176 | DESIGNATION by Radioshack Corporation of record on appeal : USCA Case No. 14–1470, 14–1471 (Fiorentinos, Irene) (Entered: 03/18/2014) |
| 03/18/2014 | 177 | DESIGNATION by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. of record on appeal : USCA Case No. 14–1471 (Warner, Curtis) (Entered: 03/18/2014) |
| 03/18/2014 | 178 | DESIGNATION by Vanita Gupta, Gregory Runyard, Eduardo Vasquez, Charles H. Warner, Jr. of record on appeal : USCA Case No. 14–1470, 14–1471 (Warner, Curtis) (Entered: 03/18/2014) |
| 03/20/2014 | 179 | TRANSMITTED to the USCA for the 7th Circuit the long record on appeal 164 , 162 (USCA no. 14–1470 and 14–1471). (kj, ) (Entered: 03/20/2014) |
| 03/20/2014 | 180 | USCA RECEIVED on 3/20/2014 the long record. (kj, ) (Entered: 03/20/2014) |
| 03/27/2014 | 181 | ATTORNEY Appearance for Objector Robert Scott by Joseph Darrell Palmer (Palmer, Joseph) (Entered: 03/27/2014) |
| 03/27/2014 | 182 | NOTICE of appeal by Robert Scott regarding orders 161 , 158 (Palmer, Joseph) (Entered: 03/27/2014) |
| 03/27/2014 | 183 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 182 . (kj, ) (Entered: 03/27/2014) |
| 03/27/2014 | 184 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 182 . Notified counsel. (kj, ) (Entered: 03/27/2014) |

Case: 14-1470        Document: 24          Filed: 04/18/2014        Pages: 144

| 03/27/2014 | 185 | CIRCUIT Rule 3(b) Notice. (ea, ) (Entered: 03/28/2014) |
|---|---|---|
| 04/04/2014 | 186 | NOTICE by Elizabeth Hunt Jenkins of Change of Address *(Change of Attorney Name)* (Jenkins, Elizabeth) (Entered: 04/04/2014) |
| 04/07/2014 | 187 | MINUTE entry before the Honorable Maria Valdez: Civil case terminated. Mailed notice (lp, ) (Entered: 04/07/2014) |

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D.H. REDMAN, individually and on behalf) of all others similarly situated, ) | | |
| Plaintiff, ) | No. 11 C 6741 | |
| ) | (consolidated with 11 C 7819) | |
| v. ) | | |
| ) | Judge Grady | |
| RADIOSHACK CORPORATION, ) a Delaware corporation, ) | | |
| Defendant. ) | Magistrate Valdez | |
| _____) | | |
| MARIO ALIANO and VICTORIA ) RADAVICIUTE, individually and on behalf of ) all others similarly situated, ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| RADIOSHACK CORPORATION, ) a Delaware corporation, ) | | |
| Defendant. ) | | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

**IT IS HEREBY STIPULATED AND AGREED** by and among Scott D.H. Redman,

Mario Aliano and Victoria Radaviciute, individually and on behalf of all others similarly

situated, with the assistance and approval of Class Counsel, on the one hand, and RadioShack

Corporation, with the assistance of its counsel, on the other hand, as set forth below:

## INTRODUCTION

This Settlement Agreement is made for the sole purpose of consummating settlement of

the Lawsuits (as this term and all other capitalized terms are defined in Section 1 below) on a

class-wide basis. This Settlement Agreement is made in full compromise and release of all

disputed claims in the Lawsuits.

EXHIBIT 1

Settlement Agreement
Redman/Aliano v. RadioShack
Page 2 of 17

**NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED**

by and among the Class Representatives (for themselves and the Class Members) and Defendant,

with the assistance of their respective counsel, that, as among the Settling Parties, and all Class

Members, the Lawsuits and the Released Claims shall be finally and fully compromised, settled

and released, and the Lawsuits shall be dismissed with prejudice, as to each of the Settling

Parties, upon and subject to the terms and conditions set forth herein.

## <u>RECITALS</u>

**WHEREAS**, the Lawsuits were commenced by Plaintiffs, individually and on behalf of
all others similarly situated, and are currently pending and unresolved among the Settling Parties;

**WHEREAS**, in the Lawsuits, Plaintiffs allege that Defendant violated the Fair and
Accurate Credit Transactions Act ("FACTA"), specifically 15 U.S.C. § 1681c(g), by providing
to Plaintiffs and other consumers electronically-printed receipts that displayed those persons'
respective credit or debit card expiration date;

**WHEREAS**, in the Lawsuits, Plaintiffs do not allege any actual damages and seek only
statutory damages, attorneys' fees and costs;

**WHEREAS**, Defendant denies Plaintiffs' claims, denies any liability to Plaintiffs and the
putative class and denies any wrongdoing of any kind regarding the allegations asserted in the
Lawsuits;

**WHEREAS**, the Settling Parties agree that it is desirable that the Lawsuits and the
claims alleged therein be settled upon the terms and conditions set forth herein to avoid further
expense and uncertain, burdensome and potentially protracted litigation, and to resolve all claims
that have been or could have been asserted by Plaintiffs and any Class Members;

**WHEREAS**, the Settling Parties have engaged in extensive arms-length settlement
negotiations, and Class Counsel represent that they have otherwise conducted a thorough study
and investigation of the law and the facts relating to the claims that have been or might have
been asserted in the Lawsuits and have concluded, taking into account the benefits that Plaintiffs
and any Class Members will receive as a result of this Settlement Agreement and the risks and
delays of further litigation, that this Settlement Agreement is fair, reasonable and adequate and in
the best interests of Plaintiffs and Class Members; and

**WHEREAS**, in consideration of the foregoing and other good and valuable
consideration, it is hereby stipulated and agreed by and among the Settling Parties that the claims
of Plaintiffs and the Settlement Class in the Lawsuits be and are hereby compromised and

Settlement Agreement
Redman/Aliano v. RadioShack
Page 3 of 17

settled, subject to Court approval of this Settlement Agreement, upon the terms and conditions set forth below.

## DEFINITIONS

As used in all parts of this Settlement Agreement, the following terms have the meanings specified below:

1.1     "Action Deadline" means the date 90 days after entry of a Preliminary Approval Order or, if such date is not acceptable to the Court, the date set by the Court as the deadline for Class Members to submit claims, exclude themselves from this Settlement Agreement or object to this Settlement Agreement (see paragraphs 2.3(B) and 2.6).

1.2     "Claim Form" means the form attached hereto as **Exhibit A**.

1.3     "Class Counsel" means Paul F. Markoff and Karl G. Leinberger of Markoff Leinberger LLC, and Thomas A. Zimmerman, Jr. and Adam M. Tamburelli of Zimmerman Law Offices, P.C.

1.4     "Class Member" means a person who is a member of the Settlement Class as identified in paragraph 2.1.

1.5     "Class Notice" means the notice to be approved by the Court as set forth in paragraph 2.5.

1.6     "Class Representatives" means Plaintiffs.

1.7     "Class Settlement Administrator" means the third-party class settlement administrator identified in paragraph 2.9(A).

1.8     "Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

1.9     "Defendant" means RadioShack Corporation.

1.10     "Defendant Releasees" means Defendant and any parents, subsidiaries and affiliated companies and each of their respective current, former or future owners, officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents, executors, liquidators, administrators, insurers, co-insurers, re-insurers and attorneys.

1.11     "Effective Date" means the date on which the Final Approval Order becomes Final.

1.12     "Escrow Account" means the account described in paragraph 2.2.
1.13     "Escrow Agent" means Garden City Group.

Settlement Agreement
Redman/Aliano v. RadioShack
Page 4 of 17

1.14    "Escrow Amount" means the fund described in paragraph 2.2.

1.15    "Fairness Hearing" means a hearing set by the Court for the purpose of: (i) determining the fairness, adequacy and reasonableness of the Settlement Agreement and associated settlement pursuant to class action procedures and requirements; and (ii) entering the Final Approval Order.

1.16    "Final" means the later of (i) the date the Final Approval Order is entered by the Court if no objection(s) is filed; or (ii) the date of expiration for the time for noticing a valid appeal from the Final Approval Order if an objection(s) is filed and an appeal is not noticed; or (iii) the date of final affirmation or dismissal of the last pending appeal if an appeal is noticed.

1.17    "Final Approval Order" means an order to be entered by the Court entitled "Final Approval Order," substantially in the form attached hereto as **Exhibit G**.

1.18    "Lawsuits" means the following lawsuits currently pending in the Court:  *Scott D.H. Redman v. RadioShack Corporation*, case no. 11 C 6741, and *Mario Aliano and Victoria Radaviciute v. RadioShack Corporation*, case no. 11 C 7819, which were consolidated on January 11, 2012.

1.19    "Participating Claimant" means each Class Member who submits a Valid Claim Form.

1.20    "Plaintiffs" means Scott D.H. Redman, Mario Aliano and Victoria Radaviciute.

1.21    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

1.22    "Preliminary Approval Order" means an order to be entered by the Court, entitled "Preliminary Approval Order," substantially in the form attached hereto as **Exhibit F**.

1.23    "Redemption Deadline" means the date six (6) months after the Effective Date.

1.24    "Settlement Agreement" means this Settlement Agreement and all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the settlement among them and which is subject to Court approval.

1.25    "Settlement Amount" means the amount described in paragraph 2.2.

1.26    "Settlement Class" means the conditional class that the Settling Parties have consented to for purposes of settlement only, as identified in paragraph 2.1.

1.27    Settlement Voucher" means the document described in paragraph 2.3(B).

Settlement Agreement
Redman/Aliano v. RadioShack
Page 5 of 17

1.28    "<u>Settling Parties</u>" or "<u>Parties</u>" means Plaintiffs and Defendant.

1.29    "<u>Store</u>" means any point of sale owned or operated by Defendant in the United States of America.  Excluded from the definition of "Store" are all points of sale located in any RadioShack Authorized Dealer or franchisee location.

1.30    "<u>Valid Claim Form</u>" means a Claim Form that is (a) completed, (b) truthful and signed under penalty of perjury, (c) returned to the Class Settlement Administrator postmarked by the Action Deadline, and (d) determined by the Class Settlement Administrator to be eligible for the recovery set forth in paragraph 2.3(B).  Plaintiffs and Defendant shall have the right to review the eligibility determinations made by the Class Settlement Administrator and, if either Party challenges any eligibility determination, it shall apprise the other Party of the challenge, and the Parties, through their respective counsel, shall meet and confer in good faith in an attempt to resolve any challenged claim.  If the Parties are unable to resolve such a challenge, the Parties shall submit the challenge to the Court for resolution.  The Settling Parties shall each bear their own respective costs associated with any such challenge.

## TERMS AND CONDITIONS

2.1    **The Settlement Class**.  The Settling Parties stipulate to certification of the following class for settlement purposes only:

> All persons who, between August 24, 2010 and November 21, 2011, paid by credit or debit card for products or services and received an electronically-printed receipt from any Store that contained the expiration date of the person's credit or debit card.

> Excluded from the Settlement Class are Defendant, its officers, employees, and attorneys; transactions conducted with business credit or debit cards; and transactions made with RadioShack-branded debit or credit cards, as those cards do not contain expiration dates.

2.2    **Settlement Amount / Escrow Amount.**  Defendant agrees to settle all claims covered by this Settlement Agreement for a combination of cash and Settlement Vouchers having a combined value of up to $5,350,000 (the "Settlement Amount"), $3,250,000 of which (the "Escrow Amount") will be paid to Escrow Agent and placed in escrow within two (2) business days after execution of this Settlement Agreement ("Escrow Account").  The Escrow Agent shall disburse the Escrow Amount pursuant to an Escrow Agreement substantially in the form attached as **Exhibit H** hereto.

2.3    **Disbursement.**  As set forth in the Escrow Agreement, Escrow Agent shall disburse the Escrow Amount from the Escrow Account as follows:

> A.    <u>Notice and Administration Costs</u>.  Costs of Class Notice (set forth in paragraph 2.5) and Administration (set forth in paragraph 2.9) shall be paid by Escrow Agent at the time the Class Settlement Administrator requests such payment.

Settlement Agreement
Redman/Aliano v. RadioShack
Page 6 of 17

      B.    <u>Class Recovery</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), each Class Member who submits a Valid Claim Form will receive a Settlement Voucher in the amount of $10.00 redeemable at any Store or at www.RadioShack.com for any product or service, subject to *pro rata* reduction identified below.  Settlement Vouchers include an electronic bar code to be supplied by Defendant to the Class Settlement Administrator upon the Class Settlement Administrator's request, if such bar codes are available from Defendant; otherwise, Settlement Vouchers will include an equivalent method of store credit.  Settlement Vouchers will be emailed to each Participating Claimant who provides an email address with a Valid Claim Form and mailed to each Participating Claimant who does not provide an email address, but provides a postal mailing address, with a Valid Claim Form.  No Class Member will be entitled to more than one Settlement Voucher, regardless of the number of receipts that may have contained the expiration date of the Class Member's debit or credit card or that are claimed by the Class Member.  Each Settlement Voucher:  (1) shall be transferrable; (2) shall be redeemable only at a RadioShack-branded store or online at www.RadioShack.com; (3) shall be redeemable until the Redemption Deadline; (4) shall have no cash value; (5) shall not be replaced if lost, stolen or damaged; and (6) may be used only once, even if the user does not use the full amount of the credit available on the Settlement Voucher at one time.  Up to three Settlement Vouchers can be aggregated for use at one time.  No change will be provided for the purchase of products or services using any one or more (but not more than three) Settlement Vouchers having a price lower than the total value of the Settlement Vouchers used.

      Each Settlement Voucher issued to a Class Member pursuant to this paragraph 2.3(B) or to the *cy pres* recipient pursuant to paragraph 2.3(E) shall have a value of $10.00.  If claims for Settlement Vouchers, multiplied by $10.00, totals an amount in excess of the Settlement Amount remaining after all the deductions that are to be made pursuant to paragraphs 2.3(A), 2.3(C) and 2.3(D) have been taken into account, the amount of the Settlement Vouchers shall be reduced *pro rata*, and their value shall be reduced *pro rata* as well.  The total value of all Settlement Vouchers issued up to the Escrow Amount shall be wire-transferred to Defendant on the date the Settlement Vouchers are sent to Participating Claimants.

      C.    <u>Payment to Class Representatives</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), Class Representatives shall be paid $5,000 each for their individual claims and as an incentive award for their services as Class Representatives.

      D.    <u>Payment to Class Counsel</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), Class Counsel shall be paid $1,000,000 (18.69% of the Settlement Amount) as compensation for their reasonable attorneys' fees and costs as set forth in paragraph 2.9 below.  Defendant shall not contest any request by Class Counsel for an amount equal to or less than $1,000,000 (18.69% of the Settlement Amount) as payment for attorneys' fees and costs.

Case: 1:11-cv-06741 Document #: 94-1 Filed: 05/16/13 Page 8 of 45 PageID #:918
Case: 14-1470    Document: 24    Filed: 04/18/2014    Pages: 144

Settlement Agreement
Redman/Aliano v. RadioShack
Page 7 of 17

E.  <u>Cy Pres</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), and if the total amount paid under paragraphs 2.3(A), 2.3(B), 2.3(C) and 2.3(D) totals less than $3,250,000, Settlement Vouchers having a combined total value that is equivalent to the difference between such total and $3,250,000 will be provided to the independent, 501(c)(3) organization of the Boys & Girls Club of America (or such other independent, non-profit 501(c)(3) organization that the Parties agree to and the Court approves).  Settlement Vouchers provided to the *cy pres* recipient will take the same form and will carry the same rights and limitations on their use as the Settlement Vouchers issued to Participating Claimants.  Any accrued interest or any other cash that remains in the Escrow Amount after the transactions set forth in paragraphs 2.3(A), 2.3(B), 2.3(C), 2.3(D) and 2.3(E) have been completed and accounted, shall be wire-transferred by the Escrow Agent to RadioShack pursuant to the procedures outlined in **Exhibit H**.

F.  If the Court does not enter a Preliminary Approval Order (<u>see</u> paragraph 2.7 below), the Escrow Amount shall be paid to Defendant and none of the disbursements set forth in paragraph 2.3(A), 2.3(B), 2.3(C), 2.3(D) and 2.3(E) shall be made.

2.4  **Release**.

A.  <u>Release by Plaintiffs and Class and Class Counsel</u>.  Except for the obligations created by this Settlement Agreement, Plaintiffs, Class Counsel and each Class Member that has not excluded himself or herself from the Class (for themselves and their respective current and former heirs, executors, administrators, controlled companies, partners, employees, assigns, agents and attorneys) remise, release and forever discharge the Defendant Releasees from any and all claims, charges, complaints, demands, judgments, causes of action, rights of contribution and indemnification, attorneys' fees, costs and liabilities of any kind, whether known or unknown that were brought or that could have been brought in the Lawsuits and waive all rights against the Defendant Releasees with respect to any and all actions, causes of action, claims, counterclaims, breaches, controversies, demands, damages, expenses, losses, costs, attorneys' fees, court costs, loss of income, loss of value or loss of services of any type whatsoever, known or unknown, past or present, whether under foreign or domestic tort or contract law and/or any other foreign or domestic statute, law, regulation, ordinance, certificate of incorporation or by-law relating in any way to the claims made or that could have been made by Plaintiffs in the Lawsuits or relating in any way to the alleged printing of expiration dates on credit or debit card receipts or relating in any way to FACTA (the "Released Claims"), provided further that, in exchange for the good and valuable consideration set forth herein, Plaintiffs, on behalf of themselves and the Class Members, waive any and all rights or benefits that they as individuals or the class may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Lawsuits, or which could have been set forth in the Lawsuits, under the terms of Section 1542(a) of the California Civil Code, which provides as follows:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER

MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR; provided, however, that this release and waiver by Plaintiffs, Class Counsel and each Class Member shall be effective only upon full and timely performance of Settling Parties' obligations under this Settlement Agreement.

B.    <u>Release by Defendant</u>.    Except for the obligations created by this Settlement Agreement, Defendant (and each of its current and former officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents and attorneys) remises, releases and forever discharges Plaintiffs and Class Members (and each of their current and former heirs, executors, administrators, controlled companies, partners, employees, assigns, agents and attorneys) from any and all claims, charges, complaints, demands, judgments, causes of action, rights of contribution and indemnification, attorneys' fees, costs and liabilities of any kind, whether known or unknown, arising from the investigation, filing or prosecution of the Lawsuits; provided, however, that this release and waiver by Defendant shall be effective only upon full and timely performance of Settling Parties' obligations under this Settlement Agreement.

2.5    **Class Notice.**

A.    <u>First Class Mail</u>.  The Class Settlement Administrator shall cause Postcard Notice (**Exhibit B** hereto) to be sent, by first-class postcard, address service requested, to each Class Member for whom Defendant has a last known physical address and does not have an email address no later than 21 days after entry of a Preliminary Approval Order (<u>see</u> paragraph 2.7), which notice shall be sent to the Class Members' respective last known physical address, as reflected in Defendant's records and checked in the National Change of Address database.  If any of the foregoing mailings are returned, and a possible new address is noted on the returned mailings, the Class Settlement Administrator shall resend the mailings to the newly-noted addresses within seven (7) days following its receipt of any such returned mail.

B.    <u>Email</u>.  The Class Settlement Administrator shall cause Email Notice (**Exhibit C** hereto) to be sent, by electronic mail, to each Class Member for whom Defendant has an email address no later than 21 days after entry of a Preliminary Approval Order (<u>see</u> paragraph 2.7), which notice shall be sent to the Class Members' respective last known email address, as reflected in Defendant's records.  In the event Defendant has both a street address and an email address for a Class Member, notice shall be sent solely by electronic mail; provided, however, that if the Email Notice to any Class Member is returned as undeliverable, Postcard Notice shall be sent to that Class Member if Defendant has a physical address for that Class Member.

C.    <u>Print publication</u>.  The Class Settlement Administrator shall cause Publication Notice (**Exhibit D** hereto) to be published consistent with the Notice Plan attached hereto as **Exhibit I** and commencing as soon as possible after entry of a Preliminary Approval Order in accordance with the publication submission deadline of the relevant publications.

D.    <u>Website</u>.  The Class Settlement Administrator shall establish and maintain a website, on which it shall post the Full Notice (**Exhibit E** hereto), provide a mechanism for submitting claims electronically, provide a mechanism for Class Members to download Claim Forms and provide a toll-free number that Class Members can call to obtain Claim Forms or be directed to Class Counsel with inquiries.  The website shall be established within 20 days after entry of a Preliminary Approval Order and be maintained until 150 days after the Effective Date.

E.    <u>www.radioshack.com</u>.  Defendant shall post, on the bottom left-hand corner of the home page of its website, www.radioshack.com, a link, in the form of a box that states "RadioShack Credit/Debit Card Class Action Settlement-Click Here," which shall link to the website maintained by the Class Settlement Administrator (<u>see</u> paragraph 2.5(D) above).  The box shall be at least as tall as the social media buttons on Defendant's homepage and the text shall be at least as large as the bolded headings at the bottom of Defendant's homepage (e.g., "WHERE'S YOUR ORDER").  The link shall be established within 21 days after entry of a Preliminary Approval Order and be maintained through the Action Deadline.

F.    <u>Exclusivity</u>. The forms of notice described in this paragraph 2.5 shall be the sole and exclusive forms of notice to the Class and no other forms of notice of the Settlement shall be required or permitted except by Court order; provided, however, that Class Counsel may post the approved Claim Form (Exhibit A) and the Full Notice (Exhibit E) on their respective websites.

G.    <u>Class List</u>.  Within five (5) days after entry of a Preliminary Approval Order, Defendant shall provide, at Defendant's expense to the Class Settlement Administrator and to Class Counsel, a list of Class Members (which list it shall provide in electronic, searchable form) for whom Defendant has a last known mailing address (with mailing address included) and/or email address (with email address included).  Class Counsel shall use this information solely for verifying the identity of Class Members in the event Class Counsel receives inquiries regarding the settlement from persons purporting to be Class Members.  The Class List shall be kept confidential by both the Class Settlement Administrator and Class Counsel, and all copies of the Class List shall be returned to Defendant or destroyed immediately following the Redemption Deadline.

H.    <u>Costs</u>.  All costs of Class Notice shall be paid consistent with paragraph 2.3 from the Escrow Amount as such costs are incurred and as requested by the Class Settlement Administrator, except that the costs of providing notice on Defendant's website pursuant to paragraph 2.5(E) shall be borne by Defendant independent of and in addition to the Settlement Amount.

I.    <u>CAFA</u>.  Within ten (10) days after moving for a Preliminary Approval Order and at its expense, Defendant shall provide notice of this settlement to the appropriate government authorities pursuant to 28 U.S.C. § 1715(b).

2.6    **Opt-Out/Exclusion/Right to Object/Participation**.

A.    <u>Opt-Out/Exclusion</u>.  Any Class Member may exclude himself or herself from this Settlement Agreement and from the Settlement Class by submitting a written request, executed by the Class Member, to the Class Settlement Administrator, which shall include the requester's name, current address, date, signature and a statement to the effect of "I want to be excluded from the *Redman/Aliano v. RadioShack* Settlement." Exclusion requests must be post-marked by the Action Deadline.  Any Class Member so excluded shall not be bound by the terms of this Settlement Agreement and not be entitled to any of its benefits.  If 10,000 or more Class Members properly exclude themselves from the Settlement Class pursuant to this paragraph 2.6(A), then Defendant has the option to terminate this Settlement Agreement upon written notice to all other Settling Parties within 14 days after the Action Deadline.

B.    <u>Objection</u>.  Any Class Member may object to the terms of this Settlement Agreement in writing, as detailed in the Class Notice.  Any Class Member who exercises his or her right to object to this Settlement Agreement will be responsible for his or her own attorneys' fees and costs.  Except as the Court may order otherwise, no Class Member objecting to the Settlement shall be heard and no papers, briefs, pleadings, or other documents submitted by any such Class Member shall be received and considered by the Court unless such Class Member shall both file with the Court and mail to Class Counsel and counsel for Defendant a written objection with the caption *Redman/Aliano v. RadioShack,* No. 11 C 6741, that includes:  (a) the Class Member's full name and current address; (b) a signed declaration that he or she is a member of the Settlement Class and that identifies the Store where the Class Member made a credit/debit card purchase and approximate date of his/her purchase at the Store; (c) the specific grounds for the objection; (d) all documents or writings that such Class Member desires the Court to consider; and (e) a notice of intention to appear (if any).  All written objections shall be filed and postmarked no later than the Action Deadline.  Any member of the Settlement Class who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in these Lawsuits or in any other action or proceeding.  Any member of the Settlement Class not otherwise excluded who objects in the manner prescribed and whose objection is rejected by the Court remains a member of the Settlement Class and is bound by the terms and conditions of this Settlement Agreement.

2.7    **Preliminary Approval Order.**  As soon as practicable after execution of this Settlement Agreement, Plaintiffs shall seek an order from the Court that:

A.    preliminarily approves this Settlement Agreement;

B.    conditionally certifies for purposes of settlement the Settlement Class as defined in paragraph 2.1;

C.    schedules a hearing for final approval of this Settlement Agreement by the Court; and

Case: 1:11-cv-06741 Document #: 94-1 Filed: 05/16/13 Page 12 of 45 PageID #:922
Case: 14-1470     Document: 24     Filed: 04/18/2014     Pages: 144

Settlement Agreement
Redman/Aliano v. RadioShack
Page 11 of 17

D.  approves the form and manner of notice to the Settlement Class as set forth in paragraph 2.5 and finds that such notice satisfies the requirements of due process pursuant to Federal Rules of Civil Procedure 23, the United States Constitution and any other applicable law and finds that no further notice to the Class is required.

Plaintiffs shall request the form of Preliminary Approval Order attached hereto as **Exhibit F.** The fact that the Court may require changes to the Preliminary Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.8.  **Final Approval Order.**  At the conclusion of, or as soon as practicable after, the close of the Fairness Hearing, Plaintiffs shall request that the Court enter a Final Approval Order approving the terms of this Settlement Agreement as fair, reasonable and adequate; providing for the implementation of its terms and provisions; finding that the notice given to the Class satisfies the requirements of due process pursuant to Federal Rules of Civil Procedure, the United States Constitution and any other applicable law; dismissing the claims of Plaintiffs and the Class without prejudice and without costs, which dismissal shall automatically convert to a dismissal with prejudice exactly six (6) months after the Effective Date; and enjoining, from the date of entry of the Final Approval Order, all persons from filing, commencing or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who have not timely excluded themselves from the Class, if such other lawsuit is based on or related to the Released Claims and causes of action, or the facts and circumstances related to the Lawsuits; provided, however, that if Defendant files for bankruptcy protection prior to six (6) months after the Effective Date, the conversion to a dismissal with prejudice will be stayed until such time as the Settling Parties perform all of their respective obligations under this Settlement Agreement.  Plaintiffs shall request the form of Final Approval Order attached hereto as **Exhibit G.**  The fact that the Court may require changes to the Final Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.9  **Administration**.

A.  Settlement Administration.  Garden City Group shall be retained to act as a third-party Class Settlement Administrator to provide Class Notice, process Claim Forms, and distribute benefits to Class Members; provided, however, that if the Court requires retention of a different Class Settlement Administrator, the Settling Parties will abide by that determination.  The Class Settlement Administrator shall establish and maintain a toll-free number that allows Class Members to call and receive Claim Forms and be directed to Class Counsel with questions.   The toll-free number shall be established within 20 days of entry of a Preliminary Approval Order and shall be maintained until 120 days after the Effective Date.

B.  Eligibility.  The Class Settlement Administrator shall determine whether a Claim Form is a Valid Claim Form as defined above.  If the Class Settlement

Administrator receives an incomplete Claim Form or one that otherwise cannot be verified, but that is otherwise timely submitted, the Class Settlement Administrator shall contact the claimant and request such information as is needed to correct the deficiency. In order to avoid fraudulent claims, the Class Settlement Administrator can recommend that claimants be asked to provide additional information such as specific store information, the last four digits of the credit card that a claimant believes was used for his or her purchase, and/or the transaction number and store number listed on the receipt for his or her purchase.  Either Plaintiffs or Defendant can authorize the Class Settlement Administrator to request such additional information.   The Class Settlement Administrator and potential claimants shall have two weeks following the Action Deadline in which to correct any deficiencies in, or provide any additional information for, a Claim Form so long as such Claim Form was properly filed by the Action Deadline. If the deficiency is not corrected or additional information is not provided within 14 days following the Action Deadline or cannot be corrected by the Class Settlement Administrator, the Claim Form will not be considered a Valid Claim Form.

C.     **Distribution of Class Recovery**.  Within 21 days after the Effective Date, the Class Settlement Administrator shall acquire and send to each Participating Claimant his or her Settlement Voucher.  All costs of distribution of the class recovery will be paid from the Escrow Amount consistent with paragraph 2.3.

D.     **Distribution of Plaintiffs' Recovery**.  Within 21 days after the Effective Date, the payments to the Class Representatives as set forth in paragraph 2.3(C) shall be made.

E.     **Payment to Class Counsel.**  Within 21 days after the Effective Date, payment of $500,000 to Class Counsel (or one-half of the amount due to Class Counsel as set forth in paragraph 2.3(D)) shall be made from the Escrow Amount.  Upon the Parties' releases set forth in paragraph 2.4 becoming effective, payment of $500,000 (or the remaining one-half of the amount due to Class Counsel as set forth in paragraph 2.3(D)) shall be made from the Escrow Amount.

F.     **Distribution to *Cy Pres***.  Within 21 days after the Effective Date, the Class Settlement Administrator shall acquire and send to the *cy pres* recipient (see paragraph 2.3(E) above) its Settlement Voucher(s).

G.     **Costs**.  Costs of administration set forth in this paragraph 2.9 shall be paid consistent with paragraph 2.3 from the Escrow Amount as such costs are incurred and as requested by the Class Settlement Administrator.  The Class Representative, Class Members and Class Counsel shall have no responsibility for any costs related thereto.

2.10   **Release of Attorney's Lien**.  In consideration of this Settlement Agreement, upon the Parties' releases set forth in paragraph 2.4 becoming effective, Class Counsel hereby waive, discharge and forever release Defendant from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Class Counsel in connection with the Lawsuits. If any Party or his/her/its counsel is compelled to prosecute any further proceedings to obtain

Settlement Agreement
Redman/Aliano v. RadioShack
Page 13 of 17

compliance with this Settlement Agreement, and prevail in such proceedings, the prevailing Party shall be entitled to reasonable attorneys' fees and costs related to any such proceedings.

2.11    **No Admission of Liability**.    Whether or not this Settlement Agreement is consummated, this Settlement Agreement and all proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession by Defendant of a violation of FACTA, knowing, intentional, reckless or otherwise, or any other liability or wrongdoing whatsoever, which liability or wrongdoing is expressly denied by Defendant.

2.12    **Notices**.    Notices regarding this Settlement Agreement directed to Plaintiffs' and Class Counsel shall be sent to:

> Paul F. Markoff
> Markoff Leinberger LLC
> 134 N LaSalle St Ste 1050
> Chicago IL 60602
> Fax:    312.674.7272

> -and-

> Thomas A. Zimmerman, Jr.
> Zimmerman Law Offices, P.C.
> 77 W Washington St Ste 1220
> Chicago IL 60602
> Fax:    312.440.4180

Notices regarding this Settlement Agreement directed to Defendant's Counsel shall be sent to:

> James R. Daly
> Jones Day
> 77 W Wacker Dr
> Chicago IL 60601
> Fax:    312.782.8585

The persons and addresses designated in this paragraph may be changed by written notice to the other signatories hereto.

2.13    **Counterparts**.    This Settlement Agreement may be signed in counterparts, in which case the various counterparts shall constitute one instrument for all purposes.    The signature pages may be collected and annexed to one or more documents to form a complete counterpart.    Photocopies, facsimiles or scanned copies of the signature pages of this Settlement Agreement may be treated as originals.

2.14    **Nullification**.    The Settling Parties have agreed to resolve the Lawsuits through this Settlement Agreement; however, to the extent this Settlement Agreement is not approved or

the Effective Date does not occur, the Settling Parties do not waive, but rather expressly reserve, all rights to present any claims and defenses in the Lawsuits.

2.15    **Binding Agreement**.  Each and every term of this Settlement Agreement shall be binding upon and shall inure to the benefit of the Settling Parties and each of their respective current and former heirs, executors, administrators, parents, subsidiaries and affiliated companies, officers, directors, managers, shareholders, partners, employees, predecessors, successors, assigns, agents, insurers, co-insurers, re-insurers and attorneys, all of whom/which persons and entities are intended to be beneficiaries of this Settlement Agreement.

2.16    **Governing Law**.  This Settlement Agreement (and any exhibits hereto) shall be considered to have been negotiated, executed and delivered, and to have been wholly performed in the State of Illinois, and the rights and obligations of the Settling Parties to this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal substantive laws of the State of Illinois without giving effect to Illinois choice of law principles.

2.17    **Retention of Jurisdiction**.  The Court shall retain jurisdiction over this matter until the Lawsuits are dismissed with prejudice.

2.18    **Interpretation**.  The Settling Parties acknowledge that they have had an equal opportunity to participate in the drafting of this Settlement Agreement and that each Settling Party and its counsel reviewed and negotiated the terms and provisions of this Settlement Agreement and have contributed to its revisions.  Therefore, in any dispute over the construction or interpretation of this Settlement Agreement, the Settling Parties agree and understand that the Settlement Agreement shall be construed fairly as to all Settling Parties and shall not be construed against any Settling Party on the basis of authorship.  The Settling Parties further agree that in this Settlement Agreement the singular shall include the plural and vice versa where the context so requires.

2.19    **Entire Agreement**.  This Settlement Agreement constitutes the entire agreement of the Settling Parties hereto as to the matters raised herein.  The undersigned acknowledge that there are no communications or oral understandings contrary to, in addition to, or different from the terms of this Settlement Agreement and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon execution of this Settlement Agreement, superseded and merged into this Settlement Agreement and shall have no effect.  This Settlement Agreement may not be amended or modified in any respect whatsoever, except by a writing duly executed by the Settling Parties and their respective counsel.  The negotiation, terms and entry of this Settlement Agreement shall remain subject to the provisions of Federal Rule of Evidence 408 and applicable state law(s).

2.20    **Authority**.  The persons signing this Settlement Agreement hereby represent and warrant that they have read this Settlement Agreement, that they know and understand its terms, that they have consulted with counsel with respect hereto, that they have signed this Settlement Agreement freely, and that they intend that they and/or or any person or entity on whose behalf they are signing this Settlement Agreement will be fully bound by all the terms and provisions of this Settlement Agreement.  Such persons further represent and warrant that they are competent

Settlement Agreement
Redman/Aliano v. RadioShack
Page 15 of 17

to sign this Settlement Agreement and that, as necessary, all corporate or other legal formalities have been followed such that they have full authority to execute this Settlement Agreement on behalf of the person or entity for whom or for which they are signing this Settlement Agreement in a representative capacity.

2.21  **Headings**.  The headings of the several sections and paragraphs hereof are for convenience only and do not define or limit the contents of such sections or paragraphs.

2.22  **Severability**.  In case any one or more of the provisions contained in this Settlement Agreement shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected and/or impaired thereby; provided, however, that if the release provisions in paragraphs 2.4 and 2.10 are determined to be invalid, illegal or unenforceable in any respect, they are not severable and this Settlement Agreement shall be void.

2.23  **Sale of Assets / Change of Brand.**  If Defendant enters into an agreement to sell or otherwise transfer a material portion of its assets prior to the Redemption Deadline, said agreement must include as a condition precedent to the sale or other transfer, an agreement by the buyer(s)/transferee(s) to accept for redemption the Settlement Vouchers issued pursuant to the terms of this Settlement Agreement under the same terms and conditions as set forth in this Settlement Agreement.  If Defendant changes the trade name under which it operates, Defendant agrees to continue to accept for redemption the Settlement Vouchers issued pursuant to the terms of this Settlement Agreement under the same terms and conditions as set forth in this Settlement Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Settlement Agreement
Redman/Aliano v. RadioShack
Page 16 of 17

**IN WITNESS WHEREOF**, the Settling Parties hereto, have so agreed on the dates noted below.

**SCOTT D.H. REDMAN**,
Plaintiff and Class Representative

By: _____     5/16/2013
        Scott D.H. Redman                     Date

Approved as to form and paragraph 2.10:

By: _____     5/16/2013
        Paul F. Markoff                              Date
        Karl G. Leinberger
        Markoff Leinberger LLC
        134 N LaSalle St Ste 1050
        Chicago, IL 60602
        *Counsel for Plaintiff Redman and the Class Members*

**MARIO ALIANO**,
Plaintiff and Class Representative

By: _____     ___/___/_____
        Mario Aliano                                Date

**VICTORIA RADAVICIUTE**,
Plaintiff and Class Representative,

By: _____     ___/___/_____
        Victoria Radaviciute                    Date

Approved as to form and paragraph 2.10:

By: _____     ___/___/_____
        Thomas A. Zimmerman, Jr.           Date
        Adam M. Tamburelli
        Zimmerman Law Offices, P.C.
        77 W Washington St Ste 1220
        Chicago, IL 60602
        *Counsel for Plaintiffs Aliano and Radaviciute and the Class Members*

A72

Settlement Agreement
Redman/Aliano v. RadioShack
Page 16 of 17

**IN WITNESS WHEREOF**, the Settling Parties hereto, have so agreed on the dates noted below.

**SCOTT D.H. REDMAN,**
Plaintiff and Class Representative

By: _____    ___/___/_____
       Scott D.H. Redman                      Date

Approved as to form and paragraph 2.10:

By: _____    ___/___/_____
       Paul F. Markoff                            Date
       Karl G. Leinberger
       Markoff Leinberger LLC
       134 N LaSalle St Ste 1050
       Chicago, IL  60602
       *Counsel for Plaintiff Redman and the Class Members*

**MARIO ALIANO,**
Plaintiff and Class Representative

By: _____    5/15/13
       Mario Aliano                             Date

**VICTORIA RADAVICIUTE,**
Plaintiff and Class Representative,

By: _____    5/15/13
       Victoria Radaviciute                  Date

Approved as to form and paragraph 2.10:

By: _____    5/15/13
       Thomas A. Zimmerman, Jr.          Date
       Adam M. Tamburelli
       Zimmerman Law Offices, P.C.
       77 W Washington St Ste 1220
       Chicago, IL  60602
       *Counsel for Plaintiffs Aliano and Radaviciute and the Class Members*

Settlement Agreement
Redman/Aliano v. RadioShack
Page 17 of 17

**RADIOSHACK CORPORATION,**
Defendant

By: _____          Date  5/16/13

Robert Donohoo

Its:    General Counsel and Corporate Secretary

Approved as to form:

_____          5/16/13
                                                                         Date

James R. Daly
Irene S. Fiorentinos
Elizabeth H. Jenkins
Jones Day
77 W Wacker Dr
Chicago IL 60601
*Counsel for Defendant*

CHI-1889879v1

**CLAIM FORM**

**FILE YOUR CLAIM ONLINE AT WWW.SHACKSETTLEMENT.COM
OR MAIL THIS COMPLETED CLAIM FORM NO LATER THAN XXXXX XX, 2013 TO:**

**RadioShack Project Administration
c/o GCG
P.O. Box 35044
Seattle, WA 98124-3508
Toll-Free: 1 (855) 590-8701**

## I.    CLAIMANT INFORMATION

**Name**

| Last Name | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First Name | | | | | | | | | | | | | | | | | | |

**Address:**

| Line 1: | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line 2: | | | | | | | | | | | | | | | | | | |
| City/St/Zip | | | | | | | | | | | | | | | | | | |

**E-Mail Address (if you have one):**

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Day Time Phone (area code-number):**

| Telephone | | | | - | | | | - | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

## II.    PURCHASE INFORMATION

To support your claim, please provide the purchase information requested below for any purchase for which you paid by credit or debit card and received an electronically-printed receipt containing the expiration date of your credit or debit card. **Please Note: Each Class Member who submits a Valid Claim Form will be entitled to receive ONLY ONE (1) $10.00 RadioShack Settlement Voucher no matter how many purchases were made.** Excluded from the Class are transactions conducted with business credit or debit cards, and transactions made with RadioShack branded debit or credit cards.  The Claims Administrator may contact you to obtain additional information regarding your purchase to verify your claim.

**MONTH AND YEAR YOU BELIEVE YOU MADE YOUR PURCHASE:** _____

**CREDIT CARD TYPE YOU BELIEVE YOU USED:** _____

**CITY AND STATE WHERE YOU MADE YOUR PURCHASE:** _____

**I hereby certify under penalty of perjury that:**

    a.  Between August 24, 2010 and November 21, 2011, I paid by credit or debit card for products or services at a RadioShack store and received an electronically-printed receipt from the store.

    b.  The information contained in this Claim Form is true and correct to the best of my knowledge, information, and belief.

**YOU MUST SIGN OR YOUR CLAIM WILL BE REJECTED.**

EXHIBIT A

_____          _____
Signature                                                                      Date

**\* \* \***

A75

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT D.H. REDMAN, individually and on behalf) | | |
| of all others similarly situated, | ) | |
| Plaintiff, | ) | No. 11 C 6741 |
| | ) | (consolidated with 11 C 7819) |
| v. | ) | |
| | ) | Magistrate Valdez |
| RADIOSHACK CORPORATION, | ) | (consent filed) |
| a Delaware corporation, | ) | |
| Defendant. | ) | |
| _____ | ) | |
| MARIO ALIANO and VICTORIA | ) | |
| RADAVICIUTE, individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RADIOSHACK CORPORATION, | ) | |
| a Delaware corporation, | ) | |
| Defendant. | ) | |

## PRELIMINARY APPROVAL ORDER

This matter coming before the Court on Plaintiffs' request for preliminary approval of a Class Action Settlement Agreement and Release, and having considered the papers submitted to the Court and proceedings to date, **THE COURT FINDS AS FOLLOWS**:

1. The Parties have reached an agreement to settle all claims in the Lawsuits;

2. For purposes of settlement only, the Court preliminarily concludes that (a) the Settlement Class is ascertainable and sufficiently numerous such that joinder of all members of the Settlement Class is impracticable; (b) there exist common questions of law and fact, including whether Defendant's display of credit and debit card expiration dates on consumer copies of electronically-printed receipts constitutes a violation of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681, *et seq*.; (c) the claims of Plaintiffs Scott D.H. Redman, Mario Aliano and Victoria Radaviciute are typical of the Class Members' claims; (d) Plaintiffs Scott D.H. Redman,

A76

Mario Aliano and Victoria Radaviciute are appropriate and adequate representatives for the Settlement Class and their attorneys, Paul F. Markoff, Karl G. Leinberger, Thomas A. Zimmerman, Jr. and Adam M. Tamburelli are adequate and qualified to serve as Class Counsel; (e) common questions of law and fact predominate over any questions affecting only individual Class Members; and (f) a class action is the superior method for the fair and efficient adjudication of the claims of the Class Members;

3.     The proposed settlement is within the range of fairness and reasonableness and meets the requirements for preliminary approval; and

4.     The notice to the Settlement Class proposed in the Settlement Agreement is the best practicable notice under the circumstances, is the only notice to the Class Members that is required, and such notice satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B).

**THEREFORE, IT IS HEREBY ORDERED:**

A.     All defined terms contained herein shall have the same meanings as set forth in the Class Action Settlement Agreement and Release executed by the Settling Parties and filed with this Court (the "Settlement Agreement");

B.     Pursuant to Fed. R. Civ. P. 23, the Settlement Agreement is preliminarily approved;

C.     The following Settlement Class is certified pursuant to Fed. R. Civ. P. 23(b)(3):

All persons who, between August 24, 2010 and November 21, 2011, paid by credit or debit card for products or services and received an electronically-printed receipt from any Store that contained the expiration date of the person's credit or debit card.

Excluded from the class are Defendants, its officers, employees, and attorneys; transactions conducted with business credit or debit cards; and transactions made with RadioShack-branded debit or credit cards, as those cards do not contain expiration dates.

D.     Paul F. Markoff, Karl G. Leinberger, Thomas A. Zimmerman, Jr. and Adam M. Tamburelli are hereby appointed as Class Counsel, and Plaintiffs Scott D.H. Redman, Mario Aliano and Victoria Radaviciute are hereby appointed the Class Representatives;

2

E.      Notice shall be implemented pursuant to the terms of the Settlement Agreement, and Plaintiffs' counsel shall submit, at least five (5) business days prior to the Fairness Hearing, an affidavit affirming that notice has been so given;

F.      Class Members shall have until August 27, 2013 to submit a claim, or opt out or object to the proposed Settlement Agreement; and

G.      A Fairness Hearing on the fairness and reasonableness of the proposed Settlement Agreement shall be held before this Court on September 17, 2013 at 11:00 a.m.;

H.      If the proposed Settlement Agreement is not finally approved by this Court or consummated for any reason whatsoever:

1.  The Settlement Agreement and all proceedings had in connection therewith shall be without prejudice to the *status quo ante* (as of the date one day preceding execution of the Settlement Agreement) rights of the Plaintiffs and Defendant, and

2.  The portions of this Order allowing the certification of this action as a provisional class action shall be vacated;

I.      Pending final determination of whether the Settlement Agreement should be approved, Plaintiffs and all Class Members, or those purporting to act on their behalf, unless and until they have timely excluded themselves as a Class Member, are enjoined directly, indirectly, representatively or in any other capacity, from filing, commencing, prosecuting, continuing, litigating, intervening in, participating in as class members or otherwise, or seeking to certify a class in, or organizing a separate class of persons in, a purported class action or otherwise (including by seeking to amend a complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction), or receiving any benefits or other relief from any other lawsuit, arbitration or administrative, regulatory or proceeding or order in any jurisdiction based on or relating in any way whatsoever to the claims and causes of action, or the facts or the circumstances

A78

alleged in the Lawsuits; and

      J.      Pending final determination of whether the Settlement Agreement shall be approved, all persons are enjoined from filing, commencing or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who have not timely excluded themselves from the Class, if such other lawsuit is based on or related to the Claims and causes of action, or the facts and circumstances related to the Lawsuits.

Dated:  May 29, 2013

                    _____
                    Honorable Maria Valdez
                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, | Case No. 11 C 6741 (consolidated with 11 C 7819) |
|       Plaintiff, | <u>CLASS ACTION</u> |
| v. | **OBJECTION TO PROPOSED SETTLEMENT** |
| RADIOSHACK CORPORATION, a Delaware corporation, | Hon. John F. Grady |
|       Defendant. | |
| MARIO ALIANO and VICTORIA RADA VICIUTE, individually and on behalf of all others similarly situated, | |
|       Plaintiffs, | |
| v. | |
| RADIOSHACK CORPORATION, a Delaware corporation, | |
|       Defendant. | |
| MICHAEL ROSMAN and JESSICA KASTEN, | |
|       Objectors. | |

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
melissaholyoak@gmail.com

*Attorney for Objectors Michael Rosman and Jessica Kasten*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................. I

**TABLE OF AUTHORITIES** ......................................................................................... II

**INTRODUCTION** ........................................................................................................ 1

I.      Objectors Rosman and Kasten Are Members of the Class and Intend to Appear Through
        Counsel at the Fairness Hearing. ........................................................................ 2

II.     A Court Owes a Fiduciary Duty to Unnamed Class Members. ................................ 2

III.    The Class Action Fairness Act Requires Heightened Scrutiny of this Coupon Settlement and
        Rejection of Class Counsel's Attorney Fee Request. ............................................ 3

        A.      Class Counsel's Fee Request Must be Rejected Because It Is Not Based on the
                Number of Settlement Coupons Redeemed. ............................................... 4

        B.      The Fee Award Should Be Deferred Until the Actual Number of Redeemed
                Coupons Is Known. ................................................................................... 8

        C.      Class Counsel's Failure to Provide Their Fee Motion Prior to the Objection Deadline
                Is a Violation of Rule 23(h). ..................................................................... 8

IV.     The Settlement's *Cy Pres* Component is Unfair. .................................................. 10

        A.      The Settlement Improperly Prefers a Non-Class Third-Party Charity Over Class
                Members. ................................................................................................. 10

        B.      "Next best" Requires a Nexus Between the Class's Identity, Interests, the Lawsuit's
                Objectives, and the *Cy Pres* Beneficiary. ................................................ 102

V.      The Incentive Awards Are Excessive. .................................................................. 12

VI.     The Court Should Not Infer Settlement Approval from a Low Number of Objectors,
        Especially Because the Parties Have Artificially Reduced the Number of Objections. ........... 13

**CONCLUSION** ............................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Crawford v. Equifax Payment Servs.*,
    201 F.3d 877 (7th Cir. 2000) ........................................................................................... 13

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) .......................................................................................... 12

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    989 F. Supp. 375 (D. Mass. 1997) .................................................................................... 8

*Fleury v. Richemont N. Am., Inc.*,
    No. C-05-4525 EMC,
    2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .................................................................... 6

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK,
    2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ................................. 14, 15

*In re Airline Ticket Comm'n Antitrust Litig.*,
    268 F.3d 619 (8th Cir. 2001) .......................................................................................... 12

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .................................................................. 1, 3, 7, 8, 11, 12

*In re Bank of Am. Corp. Secs. Litig.*,
    2013 U.S. Dist. LEXIS 88133 (E.D. Mo. June 24, 2013),
    *appeal pending* No.13-2620 (8th Cir.) ........................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................. 3, 8, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    292 F. Supp. 2d 184 (D. Me. 2003) .................................................................................. 8

*In re GMC Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) ....................................................................................... 3, 13

*In re Heartland Payment Systems, Inc.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................................................... 7

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .............................................................................. 4, 5, 7

*In re Mercury Interactive Corp. Secs. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ..........................................................................1, 9

*In re Motor Fuel Temperature Sales Practices Litig.*,
    No 07-md-01840-KHV-JPO
    Order (Dkt. No. 3019) (D. Kan. Nov. 10, 2011)...........................................14

*In re Motor Fuel Temperature Sales Practices Litig.*,
    No 07-md-01840-KHV-JPO
    2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012)....................14

*In re Pampers Dry Max Litig.*,
    2013 WL 3957060 (6th Cir. Aug. 2, 2013) ...................................................13

*Klier v. Elf Atochem N. Am., Inc.*,
    658 F.3d 468 (5th Cir. 2011) ................................................................. 11, 12

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
    834 F.2d 677 (7th Cir. 1987).....................................................................3, 13

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ................................................................. 10, 12

*Mayer v. Spanel Int'l Ltd.*,
    51 F.3d 670 (7th Cir. 1995) ..............................................................................9

*McClintic v. Lithia Motors*,
    No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) ..........................14

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ....................................................................3, 10

*Mirfasihi v. Fleet Mortg. Corp.*,
    450 F.3d 745 (7th Cir. 2006) ....................................................................2, 11

*Mifasihi v. Fleet Mortg. Corp.*,
    551 F.3d 682 (7th Cir. 2008) ........................................................................10

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), *overruled on other grounds by*
    *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ................10-11

*Moody v. Sears Roebuck & Co.*,

664 S.E.2d 569 (N.C. App. 2008)...........................................................................................6

*Murray v. GMAC Mortg. Corp.,*
 434 F.3d 948 (7th Cir. 2006) ...........................................................................................13

*Pecover v. Electronic Arts, Inc.,*
 No. 8-2820 (N.D. Cal.) .......................................................................................................5

*Reynolds v. Beneficial Nat'l Bank,*
 288 F.3d 277 (7th Cir. 2002) ..........................................................................................2, 9

*Smith v. Levine Leichtman Capital,*
 No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) .................14

*Sobel v. Hertz Corp.,*
 No. 3:06-cv-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27,
 2011) .............................................................................................................................6, 7

*Synfuel Technologies v. DHL Express (USA),*
 463 F.3d 646 (7th Cir. 2006) ...................................................................................2, 3, 4, 7

*True v. Am. Honda Motor Co.,*
 749 F. Supp. 2d (C.D. Cal. 2010) .......................................................................................6

*Union Fidelity Life Ins. Co. v. McCurdy,*
 781 So.2d 186 (Ala. 2000) ..................................................................................................6

*Vought v. Bank of Am.,*
 901 F. Supp. 2d 1071 (C.D. Ill. 2012).........................................................................3, 8, 13

## Rules and Statutes

15 U.S.C. § 1681...............................................................................................................11

15 U.S.C. § 1681n(a)(1)(A) ...............................................................................................11

28 U.S.C. § 1711 note § 2(a)(3)(A) ....................................................................................3

28 U.S.C. § 1712(a) ...............................................................................................1, 3, 4, 5, 8

28 U.S.C. § 1712(e) ...........................................................................................................7

Fed. R. Civ. Proc. 23 .........................................................................................................15

Fed. R. Civ. Proc. 23(a)(4) ............................................................................ 12-13

Fed. R. Civ. Proc. 23(e) ...................................................................................... 9

Fed. R. Civ. Proc. 23(h) ..................................................................... 1, 8, 9, 10, 15


**Other Authorities**

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07 ...................... 11

Klonoff, Robert H.,
    *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727
    (2008) .............................................................................................. 14

Leslie, Christopher R.,
    *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L.
    Rev. 71 (2007) ..................................................................................... 13

Miller, Geoffrey P. & Lori S. Singer, Nonpecuniary Class Action Settlements,
    60 L. CON-TEMP. PROBS. 97 (1997) ............................................................. 5-6

Nagareda, Richard A., *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75
    U. CHI. L. REV. 603, 644 (2008) ................................................................... 8

Notes of Advisory Committee to 2003 Amendments to Rule 23 .......................................... 8, 9

Raghubir, Priya, *Coupons in context: discounting prices or decreasing profits?*,
    JOURNAL OF RETAILING 80 (2004) .................................................................. 6

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
    18 GEO. J. LEGAL ETHICS 1443 (2005) ............................................................ 6

Weitz, Barton & Robin Wensley,
    Handbook of Marketing, at 327 (2002) ............................................................. 6

## INTRODUCTION

This is a quintessential coupon settlement: class members that file a claim receive a $10 RadioShack coupon. Yet the settling parties make no mention of the Class Action Fairness Act (CAFA) and the limitations CAFA places on coupon settlements. Because this is a coupon settlement, the court must apply heightened judicial scrutiny of fairness and any attorney fee award must be "based on the value to class members of the coupons that are **redeemed**." 28 U.S.C. § 1712(a) (emphasis added).

The settlement indicates that $1 million fee request is 18% of the $5.35 million "Settlement Amount." The estimate falsely presumes both a maximum claims rate and 100% redemption rate. Even if the court were to assume an improbable maximum claims rate ($3.35 million) and a generous 10% redemption rate of the claimed settlement coupons, class counsel would still receive **three times** more than the class ($335,000). Failure to apply CAFA's limitations on attorneys' fees would result in an impermissibly disproportionate class counsel fee award. *See, e.g., In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees.").

Class members cannot fully understand the impropriety of the fee request, however, as counsel's fee application has not yet been filed. This is a plain violation of Rule 23(h) because "[t]he plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). While the settlement allows class counsel to seek an attorney award of $1 million, without the fee application, class members have no information as to the actual amount of the fee request, class counsel's lodestar and the basis for such request. The settlement should be rejected for this reason alone.

Further, the settlement must be rejected because it provides *cy pres* distributions although the class members will not be fully compensated under the settlement and it is administratively feasible to increase the coupon value to claimants. Indeed, the settlement's choice of *cy pres* recipient (Boys &

Girls Club) is improper because it is unrelated to the class members or their claims. For these and other reasons outlined below, the settlement should be rejected.

## I.     Objectors Rosman and Kasten Are Members of the Class and Intend to Appear Through Counsel at the Fairness Hearing.

As documented in the accompanying Declarations of Michael Rosman and Jessica Kasten ("Rosman Decl."; "Kasten Decl."), Objectors Rosman and Kasten are members of the class. Mr. Rosman and Ms. Kasten are married, their address is 5305 Danbury Road, Bethesda, MD and their phone number is (301) 530-7637. *See* Rosman Decl. ¶¶ 2-3; Kasten Decl. ¶¶ 2-3.

On July 10, 2011, Mr. Rosman or Ms. Kasten made a credit card purchase at Radio Shack at 8125 Wisconsin Avenue in Bethesda, MD. *See* Rosman Decl. ¶¶ 2-3; Kasten Decl. ¶¶ 2-3. The receipt contained their credit card's expiration date. *See* Rosman Decl. ¶ 4; Kasten Decl. ¶ 4; Exhibit 1 to Rosman Decl.; Kasten Decl. Ms. Kasten received a notice from the claims administrator regarding this settlement. *See* Kasten Decl. ¶ 5; Exhibit 1 to Rosman Decl.; Kasten Decl.

Objectors Rosman and Kasten intend to appear through their counsel at the final approval hearing, in the above-captioned matter, scheduled for September 17, 2013 at 11:00 a.m. Objectors Rosman and Kasten wish to discuss matters raised in this Objection. Objectors Rosman and Kasten reserve the right to make use of all documents entered on to the docket by any settling party or objector. Rosman and Kasten also reserve the right to cross-examine any witnesses who testify at the hearing in support of final approval. They join any objections not inconsistent with the objections they make below.

## II.    A Court Owes a Fiduciary Duty to Unnamed Class Members.

A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) ("*Mirfasihi II*") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)). The Seventh Circuit has instructed district courts as fiduciaries "to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement. *Synfuel Technologies v. DHL Express (USA)*,

463 F.3d 646, 652 (7th Cir. 2006). There should be no presumption in favor of settlement approval: "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979). Because the settlement here is pre-certification, an even higher degree of careful scrutiny is required. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

An arm's length negotiation, likewise, is necessary but not itself sufficient for approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). As the Seventh Circuit has described it, "[b]ecause class actions are rife with potential conflicts of interest between class counsel and class members … district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) ("*Mirfasihi I*"). This settlement presents one such instantiation of the conflict because the settlement's failure to comply with the Class Action Fairness Act will inevitably result in a class counsel award that will exceed the actual recovery of the class. *Bluetooth*, 654 F.3d at 945; *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) ("There must be some point at which the recovery to the class is so outweighed by attorneys' fees that … the allocation is not fair.").

## III. The Class Action Fairness Act Requires Heightened Scrutiny of this Coupon Settlement and Rejection of Class Counsel's Attorney Fee Request.

Low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act (CAFA). 28 U.S.C. § 1711 note § 2(a)(3)(A). Coupon settlements are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *Synfuel,* 463 F.3d at 654. Because of the inherent dangers of coupon settlements, CAFA requires a district court to apply "heightened judicial scrutiny," *id.* at 654, and to limit the attorneys' fee award based "on the value to class members of the coupons that are redeemed," 28 U.S.C. §1712(a); *cf. In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013) (citing § 1712).

### A.    Class Counsel's Fee Request Must be Rejected Because It Is Not Based on the Number of Settlement Coupons Redeemed.

Section 1712(a) of CAFA requires that:

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are **redeemed.**

28 U.S.C. § 1712(a) (emphasis added). This coupon settlement provides that upon successful submission of a claim, class members will receive a $10 voucher redeemable at a RadioShack store or on www.radioshack.com for any product or service. *See* Class Action Settlement Agreement and Release ("Settlement") (Dkt. 94-1) at 7. The Settlement provides that class counsel will request $1 million in fees, treating the settlement coupons as cash without regard for the number of coupons that will actually be redeemed. *See id.* at 7. This is a violation of the plain language of the statute and requires rejection.

The Ninth Circuit's recent decision in *In re HP Inkjet Printer Litigation* reversed a class action settlement for this same statutory violation. 716 F.3d 1173, 1175 (9th Cir. 2013). The *HP Inkjet* settlement provided coupon relief in the form of "e-credits" redeemable for printers and printer supplies. *Id.* at 1176. While class counsel had submitted bills for a $7 million lodestar, they requested $2.3 million in fees, and the district court decreased to $1.5 million. *Id.* at 1177. The district court reasoned that the fee award should not outstrip the "ultimate value" of the settlement to the class, which the court had valued at roughly $1.5 million. *Id.* Despite the district court's reduction, the Ninth Circuit nevertheless held that the attorneys' fee award violated CAFA. *Id.* at 1175-76. CAFA applied to the settlement that involved e-credits, which were a "euphemism for coupons." *Id.* at 1176.[1] The Ninth Circuit found that because the fee award was not based on the number of

---

[1] CAFA applies to this coupon settlement despite the fact that the settling parties have termed the coupons "Vouchers" under the settlement. *See* Settlement at 7. In *Synfuel*, the offered relief included pre-paid envelopes from defendant DHL Express. 463 F.3d at 654. The Seventh Circuit "recognize[d] that the pre-paid envelopes are not identical to coupons, since they represent an entire product, not just a discount on a proposed purchase." *Id.* But the court recognized that the envelopes were the type of "in-kind compensation" that "shares characteristics" with coupons and involved inherent dangers from which CAFA was designed to

---

redeemed coupons, that the award did not comply with 1712(a) of CAFA. *Id.* The Ninth Circuit held that Section 1712(a) is mandatory in calculating attorneys' fee awards in coupon settlements: "If the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons,' then the fees award must be calculated in the manner prescribed by § 1712(a) (i.e., using the redemption value of the coupons)." *Id.* at 1181. The Court made clear that in a coupon settlement (like the settlement here), any fee award *must* be based on the number of coupons redeemed.

The settlement indicates that the $1 million request is 18.69% of the $5.35 million "Settlement Amount." *See* Settlement at 7. Under the Settlement, however, the maximum amount of coupons that will be issued is the Settlement Amount ($5.35 million) less attorneys' fees ($1 million) and administrative costs ($1 million)[2]. *See id.* at 7. Thus, it is likely that the maximum amount of coupons that will be issued is $3.35 million. RadioShack is *only* issuing coupons to those who successfully submit a claim form. Even assuming the maximum $3.35 million in claims, for a class member to redeem the coupon, the claimant must actually *use* the settlement coupon before the expiration date. *See HP Inkjet*, 716 F.3d at 1179 n.6 ("[W]e strongly disagree with the dissent's assessment that … it was fair for the district court to assume that most of the individuals who had applied for the [coupons] would redeem them.")

Class counsel's request for $1 million assumes both a maximum number of claims and a *100% redemption rate* of those coupons. Settling parties use coupons to inflate the apparent value of the proposed settlement by claiming the coupons' nominal value is the actual value to the class

---

protect. *Id.* Indeed, relief takes a variety of nominal forms in coupon settlements. This is because CAFA is not seeking to regulate semantics. Instead, it is protecting class members from worthless settlements that fall under the umbrella of coupon relief.

[2] While it is unknown what the administrative costs total, a conservative estimate is $1 million. The class here is estimated to include 16,000,000 members. *See* Memo in Support of Motion to Certify Class (Dkt. 80) at 4. In a recent case where the claims administrator was similarly to provide email notification to 14.7 million (and direct notice if email was bounced back), plaintiffs' fee request included administration costs of $927,012. *Pecover v. Electronic Arts, Inc.*, 4:08-cv-2820 (N.D.Cal.), (Dkt. 207-1) at 10 and (Dkt. 389) at 23.

members. *See* Geoffrey P. Miller & Lori S. Singer, Nonpecuniary Class Action Settlements, 60 L. &

CONTEMP. PROBS. 97, 108 (1997). Class counsel's inflated valuation of the settlement violates

CAFA.[3] Failure to consider the redemption value is egregious because coupon redemption rates are

famously low, *see* 28 U.S.C. § 1711, note § 2(a)(3)(A).[4] But the parties are asking this Court to adopt

the economic fiction that there is no difference between a settlement where class members have to

affirmatively make claims *and* then actually use the coupon, and a settlement where the class benefit

is direct-deposited into class members' bank accounts.

Indeed, numerous factors will negatively affect the redemption of the RadioShack coupons

here. The coupons expire just six months after the Final Approval Order becomes final. *See*

Settlement at 4, 5, 7. When claimants actually receive the coupon, they may have only a few months

to use them. Such a short period of time will likely decrease redemption because redemption rates of

coupons decrease as a function of expiration date.[5] Indeed, the coupon's low $10 face value, will

affect redemption as coupons with lower face values are less likely to be redeemed.[6] Indeed, the face

---

[3] In *Fleury v. Richemont N. Am., Inc.*, the court rejected class counsel's argument that a settlement involving
$100 credits to consumer class members was valued at $10 million because the valuation "assumes that 100%
of the credits will be used" and does not reflect "how many credits are actually redeemed." 2008 U.S. Dist.
LEXIS 112459, *12 (N.D. Cal. Aug. 6, 2008). So too here. The court cannot accept class counsel's
"Settlement Amount" to support a fee request when it has presented no evidence of *actual redemption* as
required under CAFA.

[4] "[R]edemption rates are tiny" "typically mirror[ing] the annual corporate issued promotional coupon
redemption rates of 1-3%." James Tharin & Brian Blockovich, Coupons and the Class Action Fairness Act,
18 Geo. J. Legal Ethics 1443, 1445, 1448 (2005); *see, e.g., True v. American Honda Motor Co.,* 749 F. Supp. 2d.
1052, 1074-75 (C.D. Cal. 2010) (rebuffing witness's suggested redemption rate and citing two cases with
redemption rates under 2%); *Moody v. Sears Roebuck & Co.,* 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317
valid claims filed out of 1,500,000 member class, for total of $2,402 in total redemption of coupons as
compared to more than $1,000,000 in attorneys' fees and costs); *Union Fidelity Life Ins. Co. v. McCurdy*, 781
So.2d 186, 188 (Ala. 2000) (113 redemptions out of 104,000 member class).

[5] *See* Weitz, Barton & Robin Wensley, *Handbook of Marketing*, at 327 (2002).

[6] *See* Priya Raghubir, Coupons in context: discounting prices or decreasing profits?, JOURNAL OF
RETAILING 80 (2004); *Sobel v. Hertz Corp.,* No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984, at *35
(D. Nev. Jun. 27, 2011) (redemption rates "may be particularly low in cases involving low-value coupons.").

---

value may be even lower as the Settlement decreases the face value *pro rata* if the number of claims exceeds the funds from the Settlement Amount available for coupons. *See* Settlement at 7.

"Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlement's actual value to the class." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *36; *Synfuel*, 463 F.3d at 653-54 (requiring this assessment). For example, assuming a generous 10% redemption rate of the maximum $3.35 million in coupons, the amount actually redeemed would be $335,000, which is only a third of class counsel's $1 million fee request. Not only is awarding fees based on redeemed coupons required by CAFA, it will ensure that a fee award will be appropriately proportionate to the actual class benefit. *HP Inkjet*, 716 F.3d at 1185-86 & n.18.

Further, any *cy pres* distribution of vouchers cannot be considered in calculating attorneys' fees. The settlement provides that if the total amounts for administration costs, incentive fees and coupons is less than $3,250,000, then RadioShack coupons "having a combined total value that is equivalent to the difference between such total and $3,250,000" will be provided to the Boys & Girls Club of America. *See id.* at 8. Section 1712(e) of CAFA provides that if a portion of the value of unclaimed coupons is distributed to *cy pres* recipients, the distribution and redemption of the *cy pres* coupons "shall not be used to calculate attorneys' fees." 28 U.S.C. 1712(e). Accordingly, the value of any coupons distributed to the Boys & Girls Club (or any other *cy pres* recipient) cannot be considered in awarding attorneys' fees.[7]

If CAFA's requirement that the attorney-fee award be based on redeemed coupons is ignored, class counsel would receive "a disproportionate distribution of the settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).[8] In performing the *Bluetooth*

---

[7] "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178; *cf. In re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (calculating class counsel award based on discounted *cy pres* award because "discounting the payment by 50% best values the benefit conferred on the class").

[8] Indeed, the settlement's clear-sailing provision, *see* Settlement at 7, is another *Bluetooth* red flag of unfairness.

disproportionality analysis, courts should compare the fees and the value of the funds actually available, rather than the amount potentially available.[9] "[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees." *Baby Prods.*, 708 F.3d 163, 179. The settlement should be rejected both because it fails to comply with CAFA and because the $1 million class counsel award will greatly exceed the class benefit.

### B.    The Fee Award Should Be Deferred Until the Actual Number of Redeemed Coupons Is Known.

The number of issued coupons that will *actually be used* – which is the value CAFA requires for purposes of the attorney fee award – will not be known until after the coupons are issued and the six-month expiration is over. Even before 28 U.S.C. § 1712(a) mandated this method of valuing coupon settlements, deferring and staggering fee awards was an accepted practice.[10] Indeed, staggering the fee properly incentivizes class counsel to bestow maximum value upon class members. Objectors Rosman and Kasten formally request that the Court abstain from awarding fees until the number of redeemed coupons is known.

### C.    Class Counsel's Failure to Provide Their Fee Motion Prior to the Objection Deadline Is a Violation of Rule 23(h).

Class members are impeded from understanding the extent of class counsel's improper fee award because the fee application has not yet been filed. Under the plain language of Fed. R. Civ. P.

---

654 F.3d at 948-49. Class counsel has negotiated protection from scrutiny on the fee award from RadioShack.

[9] *See, e.g., Vought*, 901 F. Supp. 2d at 1091-92 (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement).

[10] *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (deferring "award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) (staging the fee award based on actual value created for the class); Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."). Since implementation of CAFA, it has been all the more clear. *See* Richard A. Nagareda, *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75 U. CHI. L. REV. 603, 644 (2008) ("What rightly matters in this corner of the class settlement world is not the overall value of the coupons made available to class members but, rather, the value of those actually redeemed.").

23(h), notice of a motion for class counsel attorneys' fees must be "directed to class members in a reasonable manner." Thus, class counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). Under the Preliminary Approval Order, objections must be postmarked by August 27, 2013, but the legal basis and evidence in support of the fee request (i.e., the fee application) has not been filed. Preliminary Approval Order (Dkt. 101) at 3.

As a matter of law, this is insufficient notice in violation of Rule 23(h).[11] "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *Mercury*, 618 F.3d at 993. Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* at 993-94. *See also* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("For motion by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e).").[12]

This lack of notice was actually prejudicial. "A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008) ("*Mirfasihi III*"). The failure to file a timely fee motion deprives class members of a chance to analyze any lodestar data that will be presented for

---

[11] It's worth noting that even before the adoption of 23(h) in 2003, the Seventh Circuit recognized that objectors should not be deprived of the fee application. *See Reynolds*, 288 F.3d at 284, 286 ("To conceal the application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge.").

[12] Although the Seventh Circuit has not weighed in on the question, a circuit split should not be created "without strong cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 754 (7th Cir. 1995) (Easterbrook, J.), *cert denied*, 516 U.S. 1008 (1995).

crosscheck purposes. *See, e.g., Bluetooth*, 654 F.3d at 945 (noting that lodestar cross-check can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."). Moreover, the clear sailing clause that class counsel negotiated for themselves, *see* Settlement at 7, means that no one—neither defendant nor objectors—will be able to scrutinize or challenge class counsel's fee request. The breach of Rule 23(h) unfairly shrouds class counsel's fee request from scrutiny and is independent reason to reject the settlement.

## IV.    The Settlement's *Cy Pres* Component is Unfair.

The settlement provides for a *cy pres* distribution of coupons to the Boys & Girls Club of America if the total amounts for administration costs, incentive fees and coupons is less than $3,250,000. *See* Settlement at 8. The *cy pres* component should be rejected for two independent reasons.

### A.    The Settlement Improperly Prefers a Non-Class Third-Party Charity Over Class Members.

*Cy pres* distributions are unwarranted when class members are less than fully compensated and it is administratively feasible to make further distributions to them. *Mirfasihi I*, 356 F.3d at 784 (rejecting proposed *cy pres* distribution where potential damages were sufficient to make individual payments feasible); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (disparaging cy *pres* distribution where neither side contended that "it would be onerous or impossible to locate class members or [that] each class member's recovery would be so small as to make an individual distribution economically impracticable"); *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (rejecting *cy pres* as an inadequate substitute for individual damages when "there is no evidence that proof of individual claims would be burdensome or that distribution of damages would be costly."); ALI Principles § 3.07(a)-(c). Feasible compensation to class members legally trumps *cy pres* payments that do not directly benefit the class.

Rather than permitting class proceeds to be funneled to inferior "next-best" *cy pres*

beneficiaries, courts recognize the precept that class members are entitled to receive their own property, property that has been procured in their name and by their claims. *See, e.g., Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) ("The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.") (citing ALI Principles § 3.07 cmt. b). "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178. This settlement fails in this basic function. A *cy pres* distribution is proper only after further distribution to class members is infeasible.

The settling parties have transgressed these bounds by attempting to use *cy pres* prior to the full and administratively feasible compensation. This class action is based on violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681. *See* Complaint (Dkt. 1) at 1. Statutory damages for such violations are "not less than $100 and not more than $1,000." *See* 15 U.S.C. § 1681n(a)(1)(A). Here, the settlement provides claimants with $10 Radioshack coupons. *See* Settlement at 7. If class members are legally entitled to compensation of their underlying FACTA claims ($100 minimum), and that compensation can be feasibly distributed to individual class members (e.g., increase in the settlement coupon amount to claimants) without unreasonable administrative burden, class counsel violates its fiduciary duties to put the financial interests of third parties ahead of their clients. And the court's "fiduciary" must prevent it from ratifying such a provision. *See Mirfasihi II*, 450 F.3d at 748. Because the settlement contemplates decreasing the coupon amounts *pro rata*, there is no reason such coupons could not be increased rather than being distributed to *cy pres* recipients. Any *cy pres* distribution in a settlement such as this one is unjustifiable unless and until reasonable measures are taken to ensure that the class members are completely compensated.

### B.    "Next best" Requires a Nexus Between the Class's Identity, Interests, the Lawsuit's Objectives, and the *Cy Pres* Beneficiary.

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible")

has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625 (8th Cir. 2001). In the class action context, courts require that "unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.* at 682; *Dennis v. Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2012) (reversing where *cy pres* beneficiary had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved"); *Baby Prods.*, 708 F.3d at 169 (under certain circumstances "courts have permitted the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class."); *Klier*, 658 F.3d at 476 ("[T]he court's discretion remains tethered to the interest of the class, the entity that generated the funds."); *Masters*, 473 F.3d at 436 ("[T]he purpose of [c]y [p]res distribution is to put the unclaimed fund to its *next best* compensation use.") (emphasis in original).

Nothing in the record suggests that the Boys & Girls Club is related to the purpose of the lawsuit (litigation of FACTA claims) or the class members in this case. *See, e.g., In re Bank of Am. Corp. Secs. Litig.,* 2013 U.S. Dist. LEXIS 88133 (E.D. Mo. June 24, 2013), *appeal pending* No.13-2620 (8th Cir.) (rejecting Boys & Girls Clubs as *cy pres* recipient because it was unrelated to the "underlying purpose" of securities fraud action). This settlement's *cy pres* component does not provide the "next-best" solution to which the class is entitled.

## V.    The Incentive Awards Are Excessive.

The incentive awards of $5,000 for each of the three class representatives, *see* Settlement at 7, are excessive and shed light on whether 23(a)(4)'s requirement of adequacy of representation is satisfied. In *Murray v. GMAC Mortg. Corp.*, the court found the disproportionate incentive award of $3,000 proof that "the class device had been used to obtain leverage for one person's benefit." 434 F.3d 948, 952 (7th Cir. 2006). The Seventh Circuit contrasted the class relief ($1 per class member) with the $3,000 class representative award. *Id*; *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877,

882 (7th Cir. 2000); *In re Pampers Dry Max Litig.*, 2013 WL 3957060, at *7 (6th Cir. Aug. 2, 2013). This case is no different. The requested $5,000 incentive award is 500 times more than the $10 RadioShack coupon. Plaintiffs have offered no justification for the disproportionately excessive award. The requested incentive awards should be rejected and indicate an unfair settlement.

**VI. The Court Should Not Infer Settlement Approval from a Low Number of Objectors, Especially Because the Parties Have Artificially Reduced the Number of Objections.**

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 901 F. Supp. 2d. at 1093 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is simply *not* consent. *GMC Engine Interchange*, 594 F.2d at 1137 ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp.*, 834 F.2d at 680-81. The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 901 F. Supp. 2d at 1093.

Yet more conducive to apathetic inaction the parties have elected a process of objecting and opting out which is "unnecessarily onerous". *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone). The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated

in 2012.[13] "One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent processes and ultimately rejecting settlement).

Preferring a more costly, inefficient alternative over seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members.[14] It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727, 766 n. 251 (2008). Indeed, personal notice was distributed via internet, yet absent class members' responses cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

Together, these hurdles create doubt as to whether the settlement appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out from the class certification. Not only do they constitute a reason to reject the settlement in this case, *see e.g., Galloway*, 2012 U.S. Dist. LEXIS 147148, at *16, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

---

[13] *See Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations.").

[14] Other settlements permit the relatively efficient (indeed, close to costless) method of transmitting objections by a single electronic submission; *see e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically"). Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail).

---

## CONCLUSION

The Court should deny approval. Even if the Court were to approve the settlement, it should defer awarding fees until the actual number of redeemed coupons is known, and then scale the Rule 23(h) award to reflect proportionality with the benefit actually realized by the class.


Dated: August 27, 2013.                    /s/ Melissa A. Holyoak
                                           Melissa A. Holyoak, (DC Bar No. 487759)
                                           Center for Class Action Fairness
                                           1718 M Street NW, No. 236
                                           Washington, DC 20036
                                           Phone: (573) 823-5377
                                           Email: melissaholyoak@gmail.com

                                           *Attorney for Objectors Michael Rosman and Jessica Kasten*



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, | ) No.: 11 C 6741 ) (CONSOLIDATED WITH 11 C 7819) ) ) |
| Plaintiff, | ) ) |
| v. | ) **DECLARATION OF JENNIFER M.** ) **KEOUGH REGARDING NOTICE** |
| RADIOSHACK CORPORATION, a Delaware corporation, | ) **DISSEMINATION AND CLAIMS** ) **ADMINISTRATION** ) ) Judge John F. Grady |
| Defendant. | ) ) Magistrate Judge Maria Valdez |
| MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| RADIOSHACK CORPORATION, a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) |

# <u>INTRODUCTION</u>

JENNIFER M. KEOUGH declares and states as follows:

1.      I am Chief Operating Officer of The Garden City Group, Inc. ("GCG"). The following statements are based on my personal knowledge and information provided by other GCG employees working under my supervision and, if called on to do so, I could and would testify competently thereto. I have over 20 years of experience working in the legal field.  The overwhelming majority of that time has been spent managing complex projects and class action administrations.  I have particular expertise in the innovative construction of administration protocols, plan-of-allocation design and interpretation, and processes involving highly complex data issues, to name a few.  Attached as **Exhibit A** is my curriculum vitae.

2.      GCG has been providing comprehensive legal administrative and notice services for over 28 years.  GCG is a recognized leader in legal administration services for class action settlements, bankruptcy cases, and legal noticing programs, and has operational offices in New York, Washington, Ohio, Louisiana, Illinois, Oregon, and Florida.  GCG has a staff of more than 1,000 individuals, including lawyers, a team of software engineers, call center professionals, in-house legal advertising specialists, and graphic artists with extensive website design experience.

3.      GCG handles the administration of a wide variety of class action settlements and notice programs, including but not limited to, consumer, securities, mass tort, antitrust, product liability, labor and employment, ERISA, civil and human rights, insurance and healthcare.  Our team has served as administrator for over 2,500 cases.  In the course of its history, GCG has mailed over 290 million notices, disseminated over 800 million emails, handled over 28 million phone calls, processed over 50 million claims, and distributed over $35 billion in settlement benefits.

* * *

17.    GCG has also received requests from individuals for the Full Notice and Claim Form ("Long Form Notice Packets") to be mailed.  All such requests were complied with in a timely manner, and as of the week ending September 8, 2013, GCG had mailed 4,055 Full Notice Packets to requestors.  Copies of the Full Notice and Claim Form available on the Settlement Website and mailed upon request are attached hereto as **Exhibit H** and **Exhibit I**, respectively.

18.    <u>Toll-Free Telephone Line</u>.    Pursuant to the Order and Paragraph 2.5(D) of the Settlement Agreement, GCG established a toll-free telephone line, 1-855-590-8701, which Class Members can call to obtain Claim Forms or be directed to Class Counsel with inquiries.  As of September 8, 2013, there had been 18,007 calls to the toll-free telephone line.  GCG has and will continue to maintain the toll-free line and expeditiously handle Class Member inquiries.

## **CLAIMS ADMINISTRATION**

19.    Pursuant to the Order, Claimants were required to submit Claim Forms online or postmarked by August 27, 2013.  As of September 8, 2013, GCG had received and processed 83,332 timely Claim Forms.  As of September 8, 2013, GCG had received and processed 29 late claims, and will process any additional late claims that may be submitted.

20.    Pursuant to section 2.9(B) of the Settlement Agreement, GCG is reviewing Claim Forms in order to determine whether a Claim Form is a Valid Claim Form as defined by the terms of the Settlement.  As part of this validation process, GCG is reviewing all Claim Forms for duplicate submissions, ineligible purchases, known fraudulent filers, and any individuals excluded from the Class based on the Class definition, including RadioShack, its officers, employees, and attorneys; transactions conducted with business credit or debit cards; and transactions made with RadioShack-branded debit or credit cards. The validation process is ongoing, but as of September 8, 2013, a total of 82,498 claims have been

1  validated.

2  <u>**OBJECTIONS AND EXCLUSION REQUESTS**</u>

3      21.   <u>Exclusion Requests</u>.  Pursuant to Section 2.6(A) of the Settlement
4  Agreement, Class Members who wish to be excluded from the Settlement are
5  required to submit their written and executed exclusion request to GCG, postmarked
6  no later than August 27, 2013.  As of September 8, 2013, GCG had received 1,555
7  timely, valid exclusion requests from Class Members.  As of September 8, 2013,
8  GCG had received six (6) untimely postmarked exclusions, and may continue to
9  receive untimely exclusion requests from Class Members.

10      22.   <u>Objections</u>.  Pursuant to Section 2.6(B) of the Settlement Agreement,
11  Class Members who wish to object to the Settlement are required to file their
12  objection with the Court no later than August 27, 2013.  As of September 8, 2013,
13  GCG had received six (6) timely potential objections from Class Members.  GCG is
14  also aware that the Court has received additional timely and untimely submitted
15  objections.

16  <u>**NOTICE AND ADMINISTRATION COSTS**</u>

17      23.   As detailed above, GCG has completed dissemination of notice, has
18  processed and continues to process claims, and has maintained and continues to
19  maintain and update the toll-free telephone line and Website.  GCG's fees and
20  expenses up to July 31, 2013 are $2,121,860.54, of which a total of $98,000 relates
21  to preparing and sending direct notice by email and printing the Direct Postcard
22  Notice; a total of $1,064,642.89 relates to postage for the Postcard Notice mailing;
23  and a total of $515,277.86 relates to executing the Publication Notice Plan per this
24  Court's Order.

25      24.   GCG will continue to administer the settlement and is prepared to make
26  distributions to Valid claimants and handle all related follow-up through closure of
27  this matter.  Based on our review of the Agreement, GCG estimates its remaining

28

1  fees and expenses will be approximately $134,441.20.  If the scope of administration
2  or the project assumptions change, the aforementioned estimate will adjust
3  accordingly.

4  ## **CONCLUSION**

5      25.    It is generally accepted that a Due Process Notice Program should
6  reach at least 70 percent of all Class Members.  GCG obtained the customer data
7  from RadioShack for a comprehensive direct mail notice program to Class Members.
8  After final calculations, the Notice Program has an estimated total reach of 70
9  percent of the target of "RadioShack consumers who have a credit or debit card."
10  Under the circumstances, this Notice Program was reasonably calculated to ensure
11  the highest standard of individual notice to Class Members.  In my opinion, this
12  Notice Program adequately satisfied due process and the rules governing class
13  actions.

14      I declare under penalty of perjury under the laws of the United States that
15  the foregoing is true and correct.

16

17  Executed this 10th day of September, 2013, at Seattle, Washington.

18

19

20  Jennifer M. Keough

21

22

23

24

25

26

27

28  DECLARATION OF JENNIFER M. KEOUGH REGARDING NOTICE DISSEMINATION AND CLAIMS
    ADMINISTRATION
    Page 12

A105

* * *

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, | ) ) ) | No.: 11 C 6741 (CONSOLIDATED WITH 11 C 7819) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **SUPPLEMENTAL DECLARATION OF JENNIFER M. KEOUGH REGARDING OBJECTORS' CLAIMS STATUS** |
| RADIOSHACK CORPORATION, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | Judge John F. Grady |
| _____ | ) | Magistrate Judge Maria Valdez |
| MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| RADIOSHACK CORPORATION, a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## INTRODUCTION

JENNIFER M. KEOUGH declares and states as follows:

1. I am Chief Operating Officer of The Garden City Group, Inc. ("GCG"). The following statements are based on my personal knowledge and information provided by other GCG employees working under my supervision and, if called on to do so, I could and would testify competently thereto.

2. GCG was selected and engaged in the above-captioned action (the "Action") to serve as Class Settlement Administrator for the Settlement, as described in the Class Action Settlement Agreement and Release (the "Settlement Agreement"),[1] and preliminarily approved by this Court in its Preliminary Approval Order (the "Order"). I submit this Declaration in order to provide the Court with information regarding the implementation of notice, pursuant to the terms of the Settlement Agreement and in accordance with the Court's Order, and to report on the claims administration.

## CLAIMANT OBJECTIONS REQUESTS

3. Objections. Pursuant to Section 2.6(B) of the Settlement Agreement, Class Members who wish to object to the Settlement are required to file their objection with the Court no later than August 27, 2013. As of September 15, 2013, GCG had received six (6) timely potential objections from Class Members. GCG is also aware that the Court has received additional timely and untimely submitted objections. Attached as **Exhibit A** and **Exhibit B**, respectively, is a list of the nine (9) objectors for whom GCG received a timely, valid claim form, and a list of the 12

---

[1] Unless otherwise defined or identified herein, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement.

objectors for whom GCG did not receive a claim form.  GCG did not receive a late or invalid claim form from any objector.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

      Executed this 16th day of September, 2013, at Seattle, Washington.

                            Jennifer M. Keough

# EXHIBIT A

**Objectors with Timely, Valid Claim Forms**

| | |
|---|---|
| 1 | Vanita Gupta, |
| 2 | Gregory Runyard |
| 3 | Charles H. Warner, Jr. |
| 4 | Jessica Kasten |
| 5 | Eduardo Vasquez |
| 6 | Mary Greene |
| 7 | Edward Siegel |
| 8 | Neil Freedman |
| 9 | Robert Scott |

* * *

1

2              TRANSCRIBED FROM DIGITAL RECORDING

3              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
4                     EASTERN DIVISION

5    SCOTT D.H. REDMAN, et al.,          )
                                         )
6                     Plaintiffs,        )
                                         )
7                                        )
     -vs-                                )   Case No. 11 C 6741
8                                        )
                                         )   Chicago, Illinois
9    RADIOSHACK CORPORATION,             )   September 17, 2013
                                         )   11:00 o'clock a.m.
10                    Defendant.         )

11                  TRANSCRIPT OF PROCEEDINGS
12    BEFORE THE HONORABLE MAGISTRATE JUDGE MARIA VALDEZ

13   APPEARANCES:

14   For Plaintiff Redman:     MR. PAUL F. MARKOFF
                               MARKOFF LEINBERGER LLC
15                             134 South LaSalle Street
                               Suite 1050
16                             Chicago, Illinois 60602

17   For Plaintiff Aliano      MR. THOMAS A. ZIMMERMAN, JR.
     & Radavicute:             ZIMMERMAN LAW OFFICES PC
18                             77 West Washington Street
                               Suite 1220
19                             Chicago, Illinois 60602

20   For the Defendant:        MR. JAMES R. DALY
                               MS. IRENE S. FIORENTINOS
21                             JONES DAY
                               77 West Wacker Drive
22                             Chicago, Illinois 60601

23   Transcriber:         ROSEMARY SCARPELLI
                          Official Court Reporter
24            219 South Dearborn Street, Suite 2304A
                    Chicago, Illinois  60604
25              Telephone:  (312) 435-5815
        e-mail:  Rosemary_Scarpelli@ilnd.uscourts.gov

```
 1   APPEARANCES:  (Continued)

 2   For Objectors Gupta          MR. CURTIS C. WARNER
     Runyard, Warner, Jr.         WARNER LAW FIRM, LLC
 3   & Vasquez:                   1400 East Touhy Avenue
                                  Suite 260
 4                                Chicago, Illinois 60018

 5   For Objectors Rosman         MS. MELISSA A. HOLYOAK
     & Kasten:                    CENTER FOR CLASS ACTION FAIRNESS
 6                                1718 M Street NW
                                  No. 236
 7                                Washington, D.C. 20036

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (Proceedings heard in open court:)

2           THE CLERK:  We have case 11 C 6741, Redman versus

3    RadioShack Corporation, in-court hearing.

4           MR. MARKOFF:  Good morning, your Honor, Paul

5    Markoff, M-A-R-K-O-F-F, for plaintiff Scott Redman and the

6    settlement class, and joined in court by Mr. Redman.

7           MR. ZIMMERMAN:  Good morning, your Honor, Tom

8    Zimmerman, Z-I-M-M-E-R-M-A-N, for plaintiffs Aliano,

9    Radaviciute and the class.

10           MR. DALY:  Good morning, Jim Daly, D-A-L-Y, and

11    Irene Fiorentinos for Radioshack.

12           MS. FIORENTINOS:  That is F-I-O-R-E-N-T-I-N-O-S.

13    Good morning.

14           THE COURT:  Good morning.  Thank you.

15           MS. HOLYOAK:  Good morning, your Honor, Melissa

16    Holyoak, H-O-L-Y-O-A-K, from the Center For Class Action

17    Fairness for objectors Rosman and Kasten.

18           MR. WARNER:  Good morning, your Honor, Curtis

19    Warner on behalf of the objectors Gupta, Runyard, Warner and

20    Vasquez.  Mr. Vasquez is in court today.  And the spelling of

21    my last name is W-A-R-N-E-R.

22           THE COURT:  Anyone else?  No other attorneys are

23    making their appearance here.

24           The Court is in receipt, for the record, of three

25    sets of objections.  We have the appearances of the attorneys

1    on behalf of the objectors.  Are there any other objections

2    to be raised at this time other than the Rosman-Kasten

3    objectors, the Gupta-Runyard-Warner -- Warner, Jr. objectors

4    and the Vasquez objections?

5              No other objectors?

6              All right.  On behalf of the plaintiff class do you

7    want to respond to the objections?

8              MR. MARKOFF:  Yes.  The order you would prefer to

9    -- does the -- I guess in -- I will take the Warner

10   objections first.  The primary argument sort of overriding

11   the entire objection is that the parties in this case

12   colluded to come to this settlement.  It was, frankly, an

13   outright accusation that the parties colluded, albeit without

14   a scintilla of any evidence of collusion.

15             The parties in this case, as your Honor is aware,

16   were very much adversarial throughout this case on everything

17   with your Honor, Judge Grady and even -- and with each other.

18   Everybody was pleasant for the most part, but everybody -- it

19   was certainly adversarial.  There was no collusion in this.

20             The next primary argument that the Warner objectors

21   made is that they seem to think victory is guaranteed in this

22   case, that it is an absolute slam dunk, that we should come

23   in and file a case, get summary judgment, and go collect a

24   billion and a half dollars, as though it were that easy.

25             This case has a number of obstacles to it.

1  Procedurally there is an obstacle to class certification

2  itself, especially given the customer mix of RadioShack.

3  They have both consumer customers and business customers.

4  Under FACTA -- under the Fair Credit Reporting Act, of which

5  FACTA is a part, in my view only natural persons in the claim

6  sense can recover.  That leads to a manageability issue on

7  certification.  Unlike many other FACTA cases where they are

8  generally consumer-oriented cases, this one is a mix of

9  consumers and businesses.

10       That was raised -- highlighted even more when Judge

11  Grady, when we were discussing issues we had while we were

12  trying to work out the settlement, on notice when Judge Grady

13  made clear as part of the certification he would require all

14  class members to show proof that they were members of the

15  class when we were discussing what would be appropriate in

16  the claim form.

17       That certainly leads to questions about

18  certification and manageability as to the group that were

19  members of the class, and that would take -- be quite an

20  undertaking to weed out the business customers because

21  RadioShack certainly doesn't have those records.

22       Additionally, the liability portion of it, we

23  certainly were not assured of liability -- of getting a

24  liability finding.  To show willfulness we need to show under

25  Safeco knowledge or reckless disregard.  And it is a -- very

1   much an open question because there are no trials.  Very much

2   an open question what constitutes willfulness.  Is it

3   knowledge about the statute itself or is it knowledge or is

4   it required that the -- that defendant has to have knowledge

5   of the violations?  And that is a -- very much an open

6   question.  And Judge Grady said, "I have never heard of such

7   a thing that it was just enough to have knowledge of the

8   statute itself."  Down the road we would argue otherwise, but

9   other courts have actually found that, no, there is no

10  violation.  And we have no evidence of that, so --

11          Overriding all of that, however, in determining

12  what is reasonable, is the defendant's poor financial

13  standing.  We have submitted evidence of this.  Your Honor

14  has -- the defendant has come in and said, "Look, the stock

15  is going downhill."  And it has gotten worse since then.

16  Since we were in front of your Honor for the settlement

17  conferences and follow-ups, it has only gone down.  And the

18  stock price in and of itself isn't enough.  However, it is an

19  asset of the company for the shares that RadioShack owns.

20  And they have bought back many of their shares, so it is part

21  of an asset which they have as a collateral to pledge for

22  liquidity for their loans and debt financing.  So that is a

23  function of their financial standing.

24          More importantly perhaps is the fact that they are

25  burning cash.  They are -- they have spent -- they have gone

1  through more than $300 million in cash in the last three --

2  in the last six months, the (inaudible) months.  They

3  certainly don't have the money to withstand a judgment in

4  this case, even with minimum statutory damages.  They are

5  teetering on the edge, in the view of virtually all analysts,

6  if not all of them.  And that was an overriding factor.

7         It was not, as Warner alleges, the motion to --

8  defendant's motion to transfer this case to Texas.  That is a

9  roadblock.  It is something we deal with.  If it goes to

10  Texas, it goes to Texas.  So what?  We certainly didn't

11  concede that in the case, having it transferred, but it

12  certainly was not an impetus to drive this settlement.  It

13  was finances.

14         And then under the 7th Circuit precedent of what is

15  appropriate analysis to determine -- to decide whether the

16  settlement is appropriate is in fact the most important step.

17  Most important factor is weighing the strength of the case

18  against the settlement.  The first step is to quantify net

19  expected value in any litigation.  If this company fails, as

20  most analysts think it is going to, there is zero net value

21  of continued litigation.  Zero.

22         Right now we have the ability to give class members

23  the settlement vouchers that are useable at RadioShack stores

24  and online.  They can buy more than 6,000 products with them,

25  all for $10.  And in my view they have actual -- they have

1    zero actual damages.  So this is a benefit, a tangible

2    benefit to these class members versus potentially, perhaps

3    likely -- I think definitely zero benefit down the road.

4            The Warner objections go on to state that the claim

5    form requirements were not proper.  They didn't like the

6    penalty of perjury language in the claim form.  There is

7    actually nothing that holds that that is inappropriate.  It

8    seems -- maybe "ironic" is the right word because Mr. Warner

9    has been class counsel in several types of cases with a claim

10   form.  In fact there is a declaration under (inaudible).  So

11   I am really unsure of the positional conflict raised there,

12   but -- and give an opinion that are perhaps that they can

13   release (inaudible).  My blunt response to that is I have no

14   idea what is related, to be honest with you, to the

15   objections.

16           This is an organization whose primary motivation is

17   to in fact thwart settle -- class action settlements.  And a

18   subset of that is -- what they really do is they go after

19   fees.  They look to reduce class counsels' fees and as a

20   secondary matter a settlement proposal.

21           Their argument relies almost exclusively on a

22   recent 9th Circuit case, HP against Inkjet, which rejected a

23   settlement that was in fact a coupon settlement in the form

24   of e-credits that could be used at HP for printers and

25   printer-related supplies.  These coupons were $2, $5 and $6.

1   As set forth in the papers, HP in fact has one product that

2   was under $6, one, some cable.  I don't know if that is -- so

3   at least -- they were truly coupons.  You couldn't buy

4   anything but for a higher-priced item because they discount a

5   coupon.

6            This is not a coupon settlement.  These are

7   settlement vouchers.  They are gift cards.  You can buy over

8   6,000 products with this $10 gift card.  You don't have to

9   buy $50 to get $10 off.  You don't have to buy $100 to get

10  $10 off.  You can walk in, get something under $10, give them

11  the voucher, give them the code, and walk out without paying

12  a penny further.

13           Missing -- missing from CCAF's objection -- and in

14  fact the Warner objector raised this as well -- missing from

15  this is any case that says that these are coupons, these no-

16  purchase-necessary vouchers.  The 7th Circuit in fact

17  distinguished no-purchase-necessary in-kind benefits with --

18  from -- from coupons.  Other courts have actually held that

19  they are not coupons if there are no purchase necessary.

20  What is missing from this is any court to say that they are

21  coupons when there is no purchase necessary.  No court has

22  found that to be the case.

23           So the argument that attorneys' fees -- and this is

24  -- CCAF objections have focused on that, so this is perhaps

25  getting ahead of the final approval issues -- but their

A119

1   argument is that under Section 1712(a) of CAFA that the fees

2   proportion should be tied to the redemption rate of these

3   so-called coupons.  Well, if they aren't coupons as a

4   threshold issue, their entire objection falls by the wayside.

5   It is irrelevant.  And HP Inkjet lets them know (inaudible)

6   on that because HP Inkjet was in fact a coupon settlement,

7   where this isn't.

8            Notwithstanding that, even if they were to be

9   deemed coupons, contrary to any other court that has

10  addressed this, lode star is appropriate.  To not allow lode

11  star would obviate the remaining subsections of 17 -- 1712 of

12  CAFA that say lode star is -- is allowable.  And in fact

13  court after court, including the 7th Circuit, has said under

14  fee shifting statutes, which the Fair Credit Reporting Act

15  is, that lode star is the appropriate thing to determine

16  fees.

17           So it is available to have lode star presented.

18  And the Court will do what the Court will do with the lode

19  star analysis if we get to that point if the settlement is

20  proved.  But lode star is appropriate.  We have submitted the

21  papers related to what our lode star is, all of our detailed

22  billing records and such.

23           THE COURT:  I guess what they are arguing, though,

24  is that if this is indeed a coupon settlement, then the

25  calculation of attorneys' fees for the determination as to

1   whether the appropriation of fees is fair is best left to

2   after there has been redemption of the coupon.

3              MR. MARKOFF:  That is their argument, Judge, and --

4   but -- but again they aren't coupons under our view and other

5   cases.

6              THE COURT:  Yes, I am -- my --

7              MR. MARKOFF:  Notwithstanding --

8              THE COURT:  My argue -- my question to you presumes

9   that --

10             MR. MARKOFF:  That they are.

11             THE COURT:  Yes.

12             MR. MARKOFF:  And even if they are, that is still

13  inappropriate because the statute says to the extent that the

14  fees are attributable to the coupon redemption rate, then

15  1712(a) comes into play.  Nothing in the settlement agreement

16  attributes them to the redemption rate.  Nothing.  There is

17  nothing that says our fees are going to be X percent of the

18  redemption rate.  There is nothing that says our fees are

19  going to be X percent of the issuance rate.

20             It is a set number, a flat number, negotiated after

21  the fact once we determine the class relief and the notice of

22  administration costs.  Then we got to attorney's fees.  And

23  then we got to (inaudible) actually but after that. So I get

24  their argument, but it doesn't carry any water.  It would

25  read out the remaining parts of 1712 that say that lode star

1  is appropriate. So there is no basis for their -- for their

2  objection in that sense.

3          The further argument that they make is that the

4  exclusion and objection requirements are unnecessarily

5  onerous, which is untrue. And in fact Judge Kennelly just

6  ruled on this in the Southwest Airline voucher litigation

7  case just a couple weeks ago. The same requirements were

8  there, and he rejected them. Other courts have this --

9  objection requirements, exclusion requirements, are extremely

10 commonplace and they get accepted in court after court.

11 They have carried a couple from other jurisdictions that

12 don't quite go as far as to say they are -- you know, they

13 have rejected the settlement because of them. There are many

14 other factors in those cases. But in this case it has been

15 rejected here and elsewhere.

16          So those are the CCFA objections.

17          The other -- the one other I guess that comes into

18 play is the failure to file a fee petition prior to the

19 objection deadline, which is actually untrue. It was filed

20 with the preliminary approval order and settlement agreement.

21 That number was in -- there was no floating number. It was

22 disclosed -- disclosed in the notice, as evidenced in fact by

23 the objectors that mentioned the fee. So they were certainly

24 aware of it. If anything was filed, it didn't come as any

25 surprise to anybody. It didn't change the recovery to the

1  class because (inaudible) in this case, so that is -- so it

2  is -- it doesn't reduce anything available to the class.

3          So those are the specific objections and responses.

4          And then there were several miscellaneous

5  objections that are not in court today but were also

6  addressed in the brief.  Many of them fall under the rubric

7  of this.  Many of them, including one of the -- at least one

8  of the objectors here, did not file a claim, so they don't

9  have standing to object anyway.  But to the extent that there

10  are other factors leading -- that lend itself to approval of

11  the settlement, final approval, I can certainly go into those

12  factors as well, but I just went through them line-by-line

13  objections (inaudible).

14          THE COURT:  All right.  Well, do you want to deal

15  with the cy pres argument that has been made.

16          MR. MARKOFF:  Yeah.  Well, it is mooted because it

17  doesn't come into play, your Honor, because there -- the

18  amount that is going to be paid out in the settlement, if it

19  is approved, there is going to be a cy pres.  And there is no

20  -- I am not sure how to go any further with that.

21          THE COURT:  All right.  All right, thank you.

22          On behalf of anyone else is there any reply to the

23  argument that has been made?  Just state your name when you

24  take the podium, please.

25          MR. WARNER:  Good afternoon, your Honor.  I am

1   Curtis Warner on behalf of the objectors Gupta, Runyard,

2   Warner, Jr. and also Mr. Vasquez who is in court with us

3   today.  There are several things that a reply is appropriate

4   to here.

5          The Gupta-Vasquez objectors have raised very

6   substantial arguments to show that this agreement was not

7   fair, adequate, reasonable and shouldn't be approved under

8   Rule 23.  The transcripts of the in-court hearings do

9   demonstrate the appearance of such collusions.  Statements by

10  plaintiffs and his counsel, "RadioShack got a good deal."

11  Good deal is not what is fair to the class members.  That is

12  counsel looking after their own interest of attorneys' fees,

13  which in this case are substantial for the amount -- or

14  little work that has been done here.  They are also

15  disproportionate to the other settlement agreement that

16  RadioShack entered into in California.

17         Now, RadioShack itself here is trying to say that

18  that is the deal as you look at apples and apples,

19  apparently.  But you really can't.  They are apples and

20  oranges.  This case is brought under the Fair Credit

21  Reporting Act.  Under that the Court or jury must award

22  damages of no less than $100 per transaction.

23         THE COURT:  Upon victory, though?

24         MR. WARNER:  Upon victory.

25         THE COURT:  And isn't the Court to consider the

1    merits of a potential victory in determining whether or not

2    the settlement that has been reached is fair and adequate?

3          MR. WARNER:  Absolutely, your Honor.  And there is

4    -- these is two issues.  I can first address those issues, is

5    that -- it is a matter of law.  The 7th Circuit in Shell Oil

6    made very clear that questionableness is -- is an issue of

7    law.  As pointed out by the concurring opinions stated in

8    Mr. Vasquez' objections is that where the statute is clear,

9    that is as far as you need to look for willfulness.  It is

10   the same as the Tommy Hilfiger.  Those cases show that even

11   though the plaintiffs in those cases lost, the defendant had

12   actually taken some action to truncate some parts of the

13   card's numbers, the cardholder numbers.  And they proffered a

14   reasonable reading, which gets into the second step of the

15   Safeco analysis.

16          In this case it is not there.  They did not --

17   RadioShack did not think that the expiration dates were

18   there.  You don't even get to any proffer, you know,

19   subjective reasonableness standards.  You just have to hear

20   willfulness because it is a clearly-established law.   In

21   fact, this law was passed twice.  There is the Clarification

22   Act of 2008 which actually wiped out liability in hundreds of

23   cases where just the expiration date was printed.

24          And Congress, in codifying 15 1681(m), Subsection

25   D, says moving forward and printing the expiration dates,

1    that there is liability to willfulness.  And that is also the

2    United States Attorney's position -- United States position

3    in Brickwall, a case that was filed here in the Northern

4    District of Illinois cited in the briefs.

5         There is also the 800-pound gorilla in the room.

6    If the Court was to look at this as a factual matter, either

7    the plaintiffs' counsel or RadioShack now want to admit --

8    acknowledge Ferron, the case in which RadioShack was sued for

9    printed expiration dates in Ohio.  Plaintiffs' counsel during

10   the progression of this litigation on the record made quite a

11   statement about the Ferron case in Ohio as a cornerstone of

12   why at the end of the day they are going to find willfulness

13   against RadioShack.

14        There is also the partial court agreements that

15   don't net RadioShack for printing expiration dates.  There is

16   also the questions of, you know, what records does RadioShack

17   keep.  Nobody knows that, except for, you know, Mr. Warner

18   has put on the record that he, as a former employee of

19   RadioShack, used to be micromanaged.  And he believes that

20   there was knowingness of this.  Discovery could show that

21   there are files, especially files that delineate between

22   businesses and files that delineate between consumers.

23        Also as far as class certification goes, a claim

24   form could be submitted by the plaintiff to show that they

25   were a -- you know, check a box that they were a -- used a

1  personal card.

2       The other thing about these cases is that the
3  consumer can submit their credit card statement for like Visa
4  or Master Card, American Express or Discover, or their debit
5  statement from their bank which would show the purchase and
6  it would show the line, as the Gupta and Vasquez objectors
7  have done.  That clearly shows they are individuals.  They
8  are entitled to it.

9       That is a very simplistic, straight-forward way
10 that a claim form can be submitted.  And classes have gone
11 forward on those strengths where the claimant has to submit
12 something that would show that they are a consumer as opposed
13 to a business.

14      Now, as far as the damages issue goes, the 7th
15 Circuit in Murray versus GMAC Mortgage Company sets a formula
16 in which the Court can reduce the damages.  Plaintiff is not,
17 you know, taking the position that a $16 billion judgment
18 would be enter -- if it is, it would be on RadioShack to seek
19 the Court to adjust it to whatever its finances can pay.

20      Now, plaintiffs' counsel stated that the Court does
21 need to quantity the net expected value of the case.  What is
22 that?  What is that number?  We don't know.  If there hasn't
23 been a statement by RadioShack of any of its financials -- it
24 hasn't been produced to any client -- that says that
25 RadioShack, meeting the constitutional threshold, can pay

1    only X amount of dollars.  We don't have that.

2         What we do have is we have the related Security &

3    Exchange Commission's filing that says that the aggregate of

4    liability that they are facing is $16 million and that that

5    will not affect the company's finances.  The objectors argue

6    that there is no reason why there could not be a $16 million

7    judgment in this case or a $16 million settlement fund to go

8    towards the class members.

9         The individual, Mr. O'Brien, that defendant -- or

10   that plaintiffs have submitted a declaration of in this case

11   -- one, it is -- it was filed at 11:00 o'clock at night six

12   days before this hearing.  It really doesn't give an

13   opportunity for a Daubert motion which would be proper in

14   this case.  If the Court was to consider it, you know, it

15   needs to be looked into that he is only a stock picker.  He

16   has given his analysis of stock picks.  And, in fact, if we

17   go to his website -- I will give the Court and counsel a copy

18   here -- if we go to the Berkeley Research website, they are

19   not a CPA firm and they do not provide audits at all.

20   Clearly under a Daubert motion --

21        THE COURT:  Are you trying to provide something to

22   the Court?

23        MR. WARNER:  Under a Daubert motion --

24        THE COURT:  Thank you.

25        MR. WARNER:  -- his opinion wouldn't stand.  And

1    anyways he doesn't give an opinion on what the valuation of

2    the amount of damages would be.  And here we are looking at

3    16 million as the amount that RadioShack could pay without

4    damaging its financial (inaudible) SEC.  And there is no

5    reason to believe that that isn't true.

6            THE COURT:  That is presuming a victory today,

7    given the financial situation of the company, as opposed to

8    what might be the situation upon a complete adjudication of

9    the claims, presuming, as you are, that the Court very well

10   may find that liability is present and liability needs to be

11   adjusted, which might take a couple of years down the road?

12           MR. WARNER:  Correct.  And if you look -- if you

13   look at the timing, though, these cases should not take a

14   couple years.  Adequate counsel should be able to --

15           THE COURT:  Have you -- have you litigated in this

16   building?

17           MR. WARNER:  Yes, your Honor, I have.

18           THE COURT:  Okay.

19           MR. WARNER:  I actually have a case right now.

20           THE COURT:  Good.  And how long has that case been

21   pending?

22           MR. WARNER:  Well, there are certain issues in that

23   case, which I won't go into in the court, but I would

24   stipulate to the Court there is another case currently

25   pending.  We just completed discovery.  Discovery opened up

1    in March and completed in September.  And we have already --

2    there is already summary judgment motions for class

3    certification on file.

4              THE COURT:  It has not been ruled upon yet?

5              MR. WARNER:  Correct.  But this litigation is going

6    on for two years.  Really should not be that much more left.

7    But that does provide some sort of discount.  But we are

8    looking at what exactly is the discount here.  Fair Credit

9    Reporting Act, $100 per class member, minus whatever they

10   pay.  So we still don't know what that number is.

11             Now, if you look at the California case there, the

12   -- they got $11 for a circuit -- for a coupon that was sent

13   immediately out to the individuals.  But that is under the

14   Beverly Song Act.  And -- or Song Beverly Act.  And under

15   that Act, California Civil Code, Section 1747.08(e), it is in

16   an amount that is not to exceed a thousand dollars.  It is

17   somewhat the same as the Fair Debt Collection Practices Act

18   in which the damages could get up to $1,000.  But that could

19   also -- that amount could also be zero, of which a court

20   could award.

21             There is a case -- it is P-I-E-T-R-O-S-K-I versus

22   Merchants Benefit Credit Corporation, 256 F.R.D. 544, out of

23   the Eastern District of Michigan, 2009, in which under the

24   FPCPA there was a jury award of nothing for the plaintiffs.

25   In the Beverly -- Song Beverly Act it is the same thing, is

1    there could come back a court award, because there is not --

2    they are not entitled to a jury under California law, of

3    nothing or a penny.

4            So we are looking at hundreds of times of multiples

5    of what that plaintiff's counsel was able to obtain in

6    settlement against RadioShack.  And their fee petition was

7    almost a third less than what is going on here.  And we are

8    just saying that these statements -- you know, these

9    situations, along with the timing of the potential ruling on

10   the transfer order and plaintiffs' erroneous perception that

11   RadioShack was going to file bankruptcy, give the appearance

12   that there was all of a sudden some sort of collusion.

13           When you have two hard-fighting parties and all of

14   a sudden you have something that really doesn't give a lot to

15   the class, if really anything at all, and there is a

16   substantial amount of attorneys' fees and a large plaintiffs'

17   incentive awards, you know, it just kind of smells just a

18   little bit more than what a hard-fought battle should be.

19   And that is where the Court comes in and looks at these and

20   is -- you are the gatekeeper to make the determination of

21   whether this is fair, adequate and reasonable to the class

22   members.

23           We -- if you look at the consideration itself,

24   given the merits of the case, we are talking about a $10

25   coupon.  And I -- I understand that there were settlement

1    talks, and the Court would recall.  But I don't know -- and

2    this of course wouldn't refer to it.  It doesn't show up in

3    any of the briefs.  But the question is is that the parties'

4    comment to the Court that RadioShack on its Facebook page

5    provides customers -- Facebook users the things --

6              THE COURT:  It is the second exhibit?

7              MR. WARNER:  Second exhibit, yes.  If they spend

8    $10 or more.  I mean RadioShack, you know, frequently shows

9    up on Facebook as -- you know, if you get $10 back, you get

10   the promotion.  And it seems to be this $10 number that

11   RadioShack likes to provide Facebook users to generate

12   business, they do that to make a minimum purchase of 20 or

13   $30.  But there is nothing in the record that shows that

14   somebody is just going to come in to buy something less than

15   $10, you know, some batteries, and that is all they are going

16   to buy.  I mean usually batteries operate a remote-controlled

17   part and so the --

18             THE COURT:  But I am -- I am a little confused

19   about your argument.

20             MR. WARNER:  Sure.  Okay.

21             THE COURT:  So if this is a coupon, as you

22   described it --

23             MR. WARNER:  Yes.

24             THE COURT:  -- and it is for $10, and you go in and

25   you use a coupon for $10 and you spend $20, you are saying

A132

1    that that does not provide a real benefit to the class?

2          MR. WARNER:  It really doesn't provide what should

3    be a fair, reasonable and adequate benefit.  I mean there is

4    a de minimis value that is to it.  But in the strengths of

5    the plaintiffs' case -- and we can't even really address that

6    issue without the financials about what the defendant can pay

7    if the plaintiffs were successful in their case.  We can't

8    even get to that point.  We are just looking now at something

9    that is of low value, that is something that is just

10   promotional in nature.

11         THE COURT:  Well, I think you would have to agree

12   it provides a value.  Your argument is whether or not it

13   provides a reasonable value.

14         MR. WARNER:  Yes, right.  It is really de minimis.

15         The other thing too is that plaintiffs' counsel

16   stated that it is a gift card.  That is absolutely incorrect.

17   Gift card under federal law has a specific meaning.  There

18   cannot be an expiration date that occurs within six months.

19   It is therefore -- it is a coupon because of that expiring

20   nature.  As pointed out in the objectors' briefs is that

21   there is really no difference.  I can take the coupon here

22   and use other -- we have other coupons online.  I can give it

23   to anybody else.  And so long as they use it within the

24   expiration date, that -- that -- that is fine.

25         This is an exhibit, so we can -- there is no

1    difference in the nature of the coupon of which I am saying

2    to the Court is still useful.  Your Honor, you can use it at

3    RadioShack with the expiration date of X.  But you could use

4    it as anybody else, even though it came from me or it came

5    from the Internet.  Other websites such as bradsdeals.com and

6    couponcabin.com also regularly have significant amounts of

7    RadioShack coupons, which the consumers who are looking for

8    good deals can go online and save some money.  You have a

9    little box that show extreme coupon.  And there are people

10   out there making it a business.

11              THE COURT:  Okay.

12              MR. WARNER:    Some consider it a lifestyle to

13   actively look for coupons to reduce the amount of cost that

14   they are spending on goods.  There is really not too much

15   difference --

16              THE COURT:  Thank you.

17              MR. WARNER:  -- of the documents that I am handing

18   you or the lengths that people go, which leads you to the

19   RadioShack site itself.

20              THE COURT:  Well, except there is a difference.

21   The difference of what you have provided me in your exhibits

22   is that you have to spend an amount greater than the value of

23   the coupon.

24              MR. WARNER:  That's right.  For some of it it is a

25   significantly smaller amount.  It is $10.  But still it is --

1    under what is fair and adequate it really is -- it is not.

2    The coupon -- they are coupons here because of the expiring

3    nature of them.  They are not gift vouchers.  They are not

4    gift cards, they are not vouchers, because they do expire

5    and --

6                THE COURT:  So just because of an expiration you

7    would argue it is a coupon rather than a voucher?

8                MR. WARNER:  Yes, that is -- that is -- that is the

9    reason for that.

10                THE COURT:  I just want to make sure that the

11    record is clear. I have received -- I have labeled them as

12    Warner exhibits because you are the one arguing, and there is

13    a Warner, Jr., at least in terms of the objectors.

14                MR. WARNER:  Yes.

15                THE COURT:  So I have Warner Exhibit 1, 2, 3, 4, 5

16    and a Group Exhibit 6, and those will be part of the record.

17                MR. WARNER:  Yes.  And Warner, Jr. is actually my

18    father.

19                THE COURT:  I am not going to ask about that.  But

20    go ahead.

21                MR. WARNER:  The -- there was some other issues

22    about the question of law that was raised by RadioShack's

23    counsel.  There was the Todd v. Target case.  And it comes in

24    as the footnote where they -- where RadioShack argued that

25    because summary judgment for the plaintiffs was denied, it is

1   clearly an issue of fact.  RadioShack disagrees with that

2   case.  It was actually defendant's judgment where a motion

3   for summary judgment was denied in which the defendant was

4   trying to argue that the document that they provided

5   customers called a sales audit copy was not a receipt.

6          Judge Chang found that that was indeed a receipt

7   under the statute and, therefore, as long as they

8   intentionally provided it to the customer, it could be found

9   as a matter of law to have wilfully violated.  Judge Chang

10  wrote that opinion while --- after the parties had issued

11  supplemental briefing in the Tommy Hilfiger case out of the

12  4th Circuit which clearly states that the expiration dates,

13  if you don't trump both the year and the month, it is a

14  violation of law and it will be found willful, which has been

15  cited in the Shell Oil case.  So the position is that if you

16  are following 7th Circuit law, following Safeco, it is an

17  issue of willfulness.

18         If the Court doesn't have anymore questions on the

19  substantive arguments of the Gupta-Vasquez objectors, I can

20  move on to the procedural.

21         THE COURT:  You may move on.

22         MR. WARNER:  Thank you, your Honor.

23         The first one is the penalty of perjury requirement

24  that was here.  There was a clear statement by Judge Grady

25  that he wasn't going to permit a penalty of perjury

1   requirement to be there.  Yes, he wanted them to provide

2   sufficient documentation.  I already explained how that can

3   work.  You can have the consumer card holders present a

4   statement from their debit card bank statements or through

5   their Visa statements.  That seems to be what Judge Grady was

6   asking for.  The parties knew that he was not going to permit

7   penalty of perjury language and yet they bypassed Judge Grady

8   and both consented to you.

9       THE COURT:  You know, just -- interestingly the

10  affirmative act of somebody having to go through their

11  records and pull, you know, some information in order to

12  evince their ability to be part of a class as opposed to

13  signing something under penalty of perjury, you know, you are

14  saying that affirmative act would actually result in a

15  greater amount of folks joining in as opposed to a signature

16  on a document?

17      MR. WARNER:  Well, the contention is, is what did

18  Judge Grady inform the parties?  And that is where we are.

19  It is that.

20      THE COURT:  But this Court, you know, overarching

21  is, you know, what is fair and adequate.

22      MR. WARNER:  Correct.  And what is fair and

23  adequate, it is not that difficult in this modern age to go

24  into the bank wanting the bank statements.  They are usually

25  online for six or seven years.  It doesn't show a great

1    concern.  It fulfills any concerns of any fraud.  It also

2    fulfills any concerns that there are also issues of whether

3    the person is a consumer card holder or if they are a

4    business card.

5            Now, for $10 I would guarantee you that hardly

6    anyone is ever going to do that, okay, because it is a $10

7    voucher.  Now, if it was substantial such as the Christ Oil

8    case in the Western District of Michigan where I was the

9    plaintiffs' counsel, we had one obviously frequent traveler

10   go back and submit 295 verified statements by the claims

11   administrator which was Analytics.  And they went through and

12   they followed it.

13           Of course now if there is a value to the class

14   members, they are going to go do that because it is a value

15   to them.  If there is no value, of course you are absolutely

16   right, they are not going to do that further, they are not

17   going to go back, they are not going to look at it.  And it

18   is -- they are just going to put it in the trash, which seems

19   to have happened a lot here.

20           I mean if you look at the claims process, you know,

21   as -- as the parties point out through the affidavit of Miss

22   Keough from Garden City, the plaintiff administrator, there

23   was approximately 84,000 plaintiffs, but yet there was over

24   130,000 people who visited the website.  Well, that equates

25   to 40 percent of the people who went to that website do file

1  a claim.  I mean that really should stand out.  Forty percent

2  of the --

3          THE COURT:  That is a presumption that everybody

4  who went to the website would have filed a claim as opposed

5  to somebody who went to the website and said, "Oh, geez, I am

6  not actually within this class"?

7          MR. WARNER:  That's correct.  But we don't have

8  that.  But it just shows that there is a significant number.

9  I mean the first -- the first thing is, why would those

10  members -- class members go to the website in the first

11  place?  They would have gotten an e-mail or they would have

12  gotten a postcard or they would have read the notice.  That

13  is the logical explanation of why people would go to the

14  website.  I am sure there is a small amount of individuals

15  that went to the website to look at it, maybe some attorneys

16  went to the website, to see what it was all about.

17          But, you know, so if you want to do standard

18  deviations on it, on a 2t, you know, give or take, you know,

19  we are still talking within -- or at least a range of 30

20  percent of the class members who are still not filing claims,

21  people who have received notice who go on that website and

22  are not filing claims.  It just shows that there is some, you

23  know, statistical support that there is a showing of fact on

24  the penalty of perjury or for the claims processes as set up

25  -- as the way it was set up.  Or they looked there, they

1  said, "Ten bucks, forget it.  I am not -- I am not going to

2  give more personal information about myself to --- to get

3  this."  And the form did require the user to provide quite a

4  bit of personal information.

5          The other part, the release being too broad, and

6  what -- what am I reading?

7          THE COURT:  Let me just stop you because the

8  penalty of perjury -- counsel made an argument that you as a,

9  you know, class counsel in other cases have also used that

10  method.

11          MR. WARNER:  Well, first of all, your Honor, it is

12  not about me.  I mean that is -- that is -- that is the easy

13  answer.  It is not about me.

14          The other one is we have -- penalty of perjury is

15  whether or not there are actually claimants submitting the

16  documentation that that is really them.

17          And the other issue is like, for example, the

18  Medieval Times settlement.  They had some stores that were in

19  compliance, some stores that were out of compliance.  For a

20  very brief period of time after the filing of my lawsuit they

21  all went out of compliance in the gift shop.  And there was a

22  counsel in New Jersey that brought them in, but -- so the

23  class -- there was a lot of concern in that case -- the

24  defendants said we don't have a really -- we have a defined

25  class subjectively of the people who received a non

1   (inaudible) client receipt, but without either a bank
2   statement that shows where they were and they made a purchase
3   at one of the stores during that time period, of which they
4   knew that they were out of compliance, that could be an
5   issue.  And that it had to be at the gift shop, it couldn't
6   be at the tickets -- either online or the ticket sale at the
7   door, and it  couldn't be at the bar.  So there was some --
8   there was some rationale for that being there.

9           But going forward as far as the penalty of perjury,
10  this class is also different.  Here we have admissions by
11  RadioShack's counsel on the record that they knew for certain
12  that they were printing expiration dates on the receipts.
13  There is other cases that I have been involved in where the
14  defendants have taken the approach and say, "We don't know
15  what was on our customer copies."  I am not going to mention
16  any names of those cases, Judge, but they have taken the
17  position, well, we don't know what was printed on the
18  customer copies; we only retained the merchant receipts.
19  None of our store managers know what was printed on.  We can
20  produce five of them for their depositions and nobody knows
21  what was printed.

22          So in some of those cases the penalty of perjury
23  requirement where if you can't show that other than the
24  customer receipts have an -- expiration dates on, that might
25  be an appropriate time for a penalty of perjury statement to

1  be included.  But it is up to the Court's discretion of

2  whether or not -- and the only reason it was specifically

3  raised as an objection here is that the timing of the parties

4  all of a sudden to -- coming together.  The instructions that

5  the parties had received from Judge Grady about not wanting

6  the penalty of perjury language to be in there and the

7  immediate settlement gives the appearance of some collusion

8  that was involved of -- to ignore the District Court's

9  wording and his wishes and consent to the Magistrate Judge.

10           As -- the issue of the release being too broad

11  here, we are looking at the language here -- it is a little

12  bit more than halfway down.  It goes through and then it

13  says, you know, "In any way the claims made or could have

14  been made by the plaintiffs in this lawsuit" -- and then it

15  used the disjunctive "or" "relate to in any way alleged

16  string of expiration dates on the credit cards relating in

17  any way to FACTA."  So you have two sets of claims that are

18  being released, anything that could have been brought by

19  plaintiffs or anything else that relates to this lawsuit.

20           So it is the concern -- and RadioShack hasn't filed

21  anything that says plaintiffs really know this is wrong.

22  RadioShack knows what they got.  They are -- they are getting

23  a release.  We don't know if one of the named plaintiffs had

24  a minor slip-and-fall accident where RadioShack is involved

25  in serious litigation with a class member where they have

1   suffered severe injury at a RadioShack store at RadioShacks's

2   fault and that this can be -- this release thing can be used

3   to deny that their claim in that substantive -- in that other

4   litigation.  We don't know that.

5          And it is because of that disjunctive "or" it

6   separates two sets of claims, any claims under the universe

7   like made or could have been made and then "or," on the other

8   hand, just claims relating to this lawsuit.  That is where we

9   have raised the objection that the release is too broad.

10         THE COURT:  Okay.

11         MR. WARNER:  Any questions?

12         Okay.  The other procedural issue that we have here

13  is that -- and it has been brought up by today's 926

14  supplemental filing, Miss Keough's supplemental affidavit,

15  stating that some of the objectors didn't file claims.  It is

16  on class counsels' form to the class members that in order if

17  -- to object, you need to preserve your -- you need to file a

18  claim.  They are -- the class counsel has the responsibility

19  of protecting all rights of the class members, even those who

20  might not agree with them.  And it is very -- they even

21  mention, well, those objections should be ignored because

22  they don't have standing, your Honor; they didn't file a

23  claim form.  They are right, because they didn't file a claim

24  form they don't have standing.

25         But on behalf of all class members the objectors

1  who I represent have raised the objection that they should

2  have been told that in order to preserve their objections,

3  regardless of the merit of their objections, they should have

4  been informed that they needed to file a claim form.  And

5  that wasn't done.  And at any subsequent class notice that

6  was to be done, the plaintiff -- class members need to be

7  informed that if they want to object to the settlement, they

8  need to file a claim in order to have their arguments

9  considered by the Court.

10              And we have mentioned that we believe it is a

11  coupon.  We believe it is subject to CAFA.  And the reason

12  why is because of the -- of the expiration date.

13              Now, the last thing that I have procedurally -- or

14  as to the attorneys' fees issue here -- and I am sure the

15  other objectors will address those in more detail -- is that

16  the actual agreement between the parties -- it says on

17  Document 94-1, Page 7, Subpart D, "Payment to class counsel.

18  Class counsel shall be paid $1 million, 18.69 percent of the

19  settlement amount, as compensation for their reasonable

20  attorneys' fees and costs."  It doesn't allow them to seek a

21  lode star.  It clearly -- it is their way again to the

22  percentage.

23              And so by the four corners of the agreement, of

24  which the class members are looking at, is that the

25  plaintiffs' counsel is only entitled to a percentage of the

1    settlement fund and nothing more.  And if it is -- if it is

2    subject to CAFA, then the cap analysis has to be taken into

3    effect.  The agreement doesn't provide for them to obtain a

4    lode star amount.

5              If there are no further questions from the Court --

6              THE COURT:  I don't.  Thank you.

7              MR. WARNER:  Thank you, your Honor.

8              THE COURT:  I am going to ask that -- I have a -- I

9    apologize, I have a lunch meeting.  So we are going to take a

10    one-hour break, and we will reconvene at 1:00 o'clock.

11              THE CLERK:  All rise.

12              (Proceedings recessed until 1:00 o'clock p.m.)

13                              CERTIFICATE

14         I certify that the foregoing is a correct transcript

15    from the digital recording of proceedings in the

16    above-entitled matter to the best of my ability, given the

17    limitations of using a digital-recording system.

18

19    /s/Rosemary Scarpelli                    October 10 , 2013

20    _____         _____
      *Rosemary Scarpelli*                      *Date*
21    *Official Court Reporter*

22

23

24

25

A145

<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3    SCOTT D.H. REDMAN, et al.,        )  No. 11 C 6741
                                        )
 4                       Plaintiffs,    )  Chicago, Illinois
                                        )  September 17, 2013
 5                                      )  1:00 o'clock p.m.
      -vs-                              )
 6                                      )
                                        )
 7    RADIOSHACK CORPORATION,           )
                                        )
 8                       Defendant.     )

 9                     TRANSCRIPT OF PROCEEDINGS
10      BEFORE THE HONORABLE MAGISTRATE JUDGE MARIA VALDEZ

11    APPEARANCES:

12    For the Plaintiffs:      MARKOFF LEINBERGER LLC
                               134 North LaSalle Street
13                             Suite 1050
                               Chicago Illinois 60602
14                             BY:  MR. PAUL F. MARKOFF
                                    and
15                             ZIMMERMAN LAW OFFICES, P.C.
                               77 West Washington Street
16                             Suite 1220
                               Chicago Illinois 60602
17                             BY:  MR. THOMAS A. ZIMMERMAN, JR.

18
      For the Defendant:       JONES DAY
19                             77 West Wacker Drive
                               Suite 3500
20                             Chicago Illinois 60601
                               BY:  MR. JAMES R. DALY
21                                  MS. IRENE S. FIORENTINOS

22

23    Court Reporter:          ROSEMARY SCARPELLI
                               219 South Dearborn Street
24                             Room 2304A
                               Chicago, Illinois  60604
25                             (312) 435-5815
</pre>

```
 1   APPEARANCES:   (Cont.)

 2   For Objectors              WARNER LAW FIRM, LLC
     Gupta, Runyard            1400 East Touhy Avenue
 3   & Warner:                 Suite 260
                               Des Plaines, Illinois 60018
 4                             BY:   MR. CURTIS C. WARNER

 5
     For Objectors Rosman      CENTER FOR CLASS ACTION FAIRNESS
 6   & Kasten:                 1718 M Street NW
                               No. 236
 7                             Washington DC 20036
                               BY:   MS. MELISSA A. HOLYOAK
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    THE CLERK:  Case 11 C 6741, Redman versus

2    Radioshack Corporation, is now resumed.

3         MR. MARKOFF:  Judge, may I raise a logistical

4    point?

5         THE COURT:  Yes.

6         MR. MARKOFF:  Mr. Redman had a previous engagement

7    and he will be delayed by 1:30, unless your court needs him

8    for something else, but I wanted to raise that in case your

9    Honor wanted to hear from him prior to that time.  I know it

10   might be somewhat out of order, but I just wanted to raise

11   that.

12        THE COURT:  All right.  I would be happy to hear

13   from him so that he doesn't have to stick around.  There is

14   nothing in particular that I am interested in.  If he wants

15   to make any statement, that is fine, but I have no questions

16   for him.

17        MR. MARKOFF:  Okay.  Unless you had something in

18   particular, we don't have any question-and-answer or

19   anything.

20        THE COURT:  Right.

21        MR. MARKOFF:  Thank you, Judge.

22        THE COURT:  All right.  Thank you very much.

23        Where were we?

24        MS. HOLYOAK:  I guess, your Honor, we are not sure

25   who should proceed first.

1           MR. DALY:  I had a couple of things I wanted to

2    say.

3           THE COURT:  Let me just say, you know, the Court

4    has a court reporter who is assisting at this time.  She was

5    not here, obviously, for the first half of the arguments.  So

6    when you -- before you speak just state your name and who you

7    are representing.

8           MR. DALY:  Jim Daly representing Radioshack.

9           MS. HOLYOAK:  Melissa Holyoak representing

10   objectors Rosman and Kasten.

11          THE COURT:  I would prefer to hear from objectors

12   first, and then I would be happy to hear from defendant.

13          MR. DALY:  Thank you, Judge.

14          MS. HOLYOAK:  Thank you, your Honor.  Melissa

15   Holyoak representing objectors Rosman and Kasten.

16          In response to plaintiffs' argument I think the

17   first thing that they have argued is that this is not a

18   coupon settlement because these aren't coupons.  And the

19   basis of their argument is that, well, these $10.00 vouchers,

20   you can buy a variety of entire products.  And this

21   distinction is wrong for several reasons.  The first is that

22   the statutory text of CAFA is they don't make any exceptions

23   for that.  They don't provide any sort of definition that the

24   plaintiffs are relying on.

25          And more importantly the legislative history

A149

1   provides the opposite.  And I will provide you the cite.  It

2   is Senate Report No. 109-14 2005.  In that the legislative

3   history provides examples of coupon settlements, and in that

4   they provide samples where free spring water were given,

5   where golf balls were given.  These were entire products that

6   were given but again examples of coupon settlements.

7          And then third or -- the courts have rejected any

8   such --

9          THE COURT:  In any of the examples that you are

10  alerting the Court to that come from legislative history is

11  there an example such as what we have here where there is

12  some value to a piece of paper, that there is no limitation,

13  that is not saying how to spend $25.00 but just that you can

14  use this piece of paper towards, you know, money in our --

15  products in our store?

16         MS. HOLYOAK:  Not that I am aware of.  But there

17  are court cases that -- and in fact I guess the court case

18  that is most important here is the Synfuel case.  And I would

19  disagree with the plaintiffs that it provides that entire

20  products are not coupons because the Synfuel case provides an

21  expansive view of what should be scrutinized as coupons.  In

22  Synfuel the settlement provided prepaid envelopes.  And the

23  court said, oh, yes, these envelopes are not exactly like

24  coupons, but they should be treated like them because they

25  are the same -- they provide in-kind compensation.  And it

1  requires the plaintiffs to return to the defendant to do

2  business.  Has all of the warnings signs and dangers of

3  coupon settlements.

4          Another case that -- the plaintiff said there is no

5  cases out there that say -- that reject this entire product

6  argument.  And there are.  One case, Dardarian versus Office

7  Max.  And I will give you the cite.  2013 U.S. District

8  Lexus, 98653, from the Northern District of California, July

9  12th, 2013.  And in that case -- it is very similar to this

10  case.  It was an Office Max where there was $5.00 vouchers

11  and $10.00 vouchers that were offered.  And Office Max said,

12  Oh, no, there is a variety of products available from five to

13  $10.00.  Well, the court rejected that and said --

14          THE COURT:  Were there any cases within the 7th

15  Circuit that you can rely upon for me?

16          MS. HOLYOAK:  No, not District Court cases with

17  similar -- with similar facts, other than Synfuel, which is a

18  7th Circuit case, explaining that coupon scrutiny should

19  extend beyond -- to other forms of in-kind compensation.

20          But in that Dardarian case it was the $5 to $10

21  Office Max products, the Court rejected and said, well, you

22  know, look -- first let's look to the dictionary definition

23  which definitely includes entire products because the

24  dictionary provide -- provides a definition that is "a form

25  surrendered in order to obtain an article, service or

1    accommodation." And the court said coupons are commonly used

2    for which no cash payment is expected in exchange. In other

3    words, you have a coupon, you provide something, you get a

4    service or an article in return. And you would have to --

5         THE COURT: So a gift card could also be a coupon

6    then under that kind of analysis?

7         MS. HOLYOAK: I don't know, your Honor. I --

8         THE COURT: They --

9         MS. HOLYOAK: I would have to look at the facts of

10   that case.

11        THE COURT: A gift card to let's say Target. Every

12   kid gets a little gift card to target every holiday season.

13        MS. HOLYOAK: Yes.

14        THE COURT: That is -- under the definition that

15   you are describing, would that be a coupon?

16        MS. HOLYOAK: Yes. And gift cards have been viewed

17   as coupons under CAFA.

18        The other problem with this -- the argument that

19   the entire -- this entire product argument is that it ignores

20   what the problem is with coupon settlements, is that it hides

21   what the class counsel fee is relative to what the class is

22   actual receiving. That was one of the major purposes of

23   CAFA, was to tie the class counsel award to the actual amount

24   received by the class. That is why CAFA requires that any

25   fee award be tied to the redemption of the coupons.

1        So plaintiffs' fee motion argues that the

2    settlement doesn't require the fee to be tied to redemption.

3    But of course you can draft whatever settlement fee --

4    agreement you want.  If it violates the law, it violates the

5    law.

6        THE COURT:  All of this is presuming that the

7    determination was this is a coupon --

8        MS. HOLYOAK:  Absolutely.

9        THE COURT:  -- right?

10        MS. HOLYOAK:  Absolutely.  And here if this is a

11    coupon settlement, which we believe it is, then HP Inkjet has

12    provided the answer here.  Class counsel argues both in their

13    fee motion and here today that 1712(b) provides lode star.

14    That ignores the complete holding of HP Inkjet.  That would

15    create a circuit split.  And the HP Inkjet went through a

16    very thorough statutory analysis of why 1712(a) requires

17    redemption.  And what the -- what the 9th Circuit held was

18    that if there is an award of attorney's fees that is

19    attributable to coupons, then it must be based on number of

20    coupons redeemed, the ones that are used.  This Section

21    1712(a) is mandatory if there are coupons that are issued.

22        So here what happens is failure to follow this

23    statute results in extremely disproportionate results.  Based

24    on the fee motion it appears that there is going to be about

25    825,000 coupons issued.  But that is just issued, not

1  redeemed.  So even if we assume the very, very generous ten

2  percent redemption rate, that means the class would actually

3  be getting $82,000.00 and class counsel would be getting a

4  million, 12 times what the class is actually getting.  Of

5  course the real winners are the administrators who get  2.2

6  million, which is not a benefit to the class under Aqua Dots,

7  the 7th Circuit case, 654 F.3d 748.

8        But class counsel may dispute my -- my estimation.

9  That is fine.  That is precisely why in our objection we

10  said, well, let's wait and see.  We -- you are going to issue

11  these $825,000 worth of coupons; let's see who actually

12  redeems them and how much.

13        But even setting that aside, setting aside CAFA --

14  and they are basing their award on lode star -- if we look at

15  these numbers, even without looking at redemption rates,

16  825,000 to the class, a million to the class counsel?  I mean

17  that is disproportionate under many court opinions.  It would

18  be disproportionate under -- and these are the

19  disproportionate awards, Warnda (phonetic) and Bluetooth in

20  the 9th Circuit and Pampers in the 6th Circuit and Baby

21  Products in the 3rd Circuit.

22        But leads me to my second point which is the

23  requested fee award is particularly problematic here because

24  the class members did not get sufficient notice.  And the

25  plaintiffs argue, oh, well, they got sufficient notice

1  because the settlement agreement said it was up to a million

2  dollars.  Well, that is not sufficient because the whole

3  basis of their fee motion was all about lode star.  The

4  settlement agreement provides no information about lode star.

5  There is no evidence about lode star.  And in Mercury

6  Securities the 9th Circuit held that the fee motion must be

7  filed prior to the objections deadline.

8          And the plaintiffs in their fee motion argue that

9  the Mercury Securities is -- can be distinguished because

10 that was a common fund case, but that distinction falls apart

11 because of course 23(h), the statutory language which

12 requires this notice, doesn't make any such distinction.

13         And, second, the fee scrutiny is appropriate in

14 constructive common fund cases such as this.

15         And, third, their whole basis for lode star that is

16 in their fee motion -- we would have no idea what their

17 multiplier is.  And all of that information that is required

18 if -- when objectors want to object to the fee motion and

19 understand what evidence is behind the fee motion.  And now

20 we know that the fee motion is based on the lode star where

21 they are asking for a 1.25 multiplier, again which exceeds 1,

22 which is -- and in this case which would -- is contrary to

23 Kenny and -- Perdue versus Kenny A., 130 Supreme Court 1662,

24 2010, which held that a multiplier more than one can --

25 should only be provided in extraordinary circumstances.  And

1  I think even the objector before me would -- would agree that

2  this is not an extraordinary settlement by any means.

3          That is all I have, your Honor.  Did you have any

4  questions?

5          THE COURT:  I did not.

6          All right.  On behalf of RadioShack.

7          MR. DALY:  Good afternoon, your Honor, Jim Daly on

8  behalf of RadioShack.  Judge, I just want to make a few quick

9  points that I think would respond to both of the objectors.

10  With respect to the Gupta objection presented by Mr. Warner,

11  I just want to emphasis I think that willfulness, in our

12  view, is the big issue here.  And if knowledge -- if

13  knowledge of the law does not equal a violation, if that were

14  true, we would be in strict liability land.  And if we were

15  in strict liability land, there would be judgments and

16  filings all over the place.  And instead of that what we have

17  is a world where there has never been a judgment of

18  willfulness, there has never been a jury that has found

19  willfulness, there has never been a summary judgment issued

20  that found willfulness.  The only summary judgment ruling

21  that there have been have found lack of willfulness in favor

22  of a defendant.

23          And so when you boil all that down -- and remember

24  that if you don't prove willfulness, you get zero as a

25  plaintiff.  Zero.  When you boil all that down, it is our

1    view that this is a sensible, rational assessment of risk by

2    the parties resulting with an eye towards the vagaries of

3    litigation and making a reasonable settlement.

4              I think it should be not forgotten here that we had

5    a situation where there isn't even an allegation of a -- of

6    any actual damage to anyone.  There is no damage here.  There

7    is no injury here.  So under all of those circumstances I

8    think a $10.00 gift card makes a lot of sense.

9              Another way to look at it is start out with the

10   fact that we have 16 million potential members of the class,

11   83,000 claims.  The $10.00 gift card would buy 6,000 items at

12   RadioShack, as counsel for the plaintiff has pointed out.  I

13   would like to emphasize that the settlement agreement also

14   allows these things to be stacked, Judge, so a class member

15   can come up with up to three of these and have $30.00.  I

16   shudder to think how many things can be bought at RadioShack

17   for $30.00.

18             So if you put all that together, I think our

19   settlement looks a lot like the very large settlements that

20   you have when you have a very large class.  What you see are

21   relatively smaller settlements.  I point the Court to the

22   Weis Markets case which had 15 million potential class

23   members and you had a $7.50 voucher to be used in the store

24   and to the Olive Garden case which had 36 million people in

25   it and the award was a free appetizer up to a value of $9.00.

1    I think we are very much like those cases.

2    And, you know, when we look at the cases cited by

3    Mr. Warner in his brief, many of them -- well, the Todd case,

4    for example, it has -- it had three -- it has a thousand

5    dollars per claim, but I will tell the Court there were only

6    three claims. So it is a $3,000.00 case. Similarly the

7    Behringer versus Standard Parking case that he cites, $65.00

8    per claimant, but there were only 123 claims filed. Another

9    case, Halperin versus Interpark, $100.00 per claimant. Okay?

10   Twenty-five claim forms submitted.

11   So you are talking about peanuts in those cases it

12   seems to me, Judge, compared to the exposure and risk that

13   the parties were dealing with in our case. And I think that,

14   you know, to try to compare a person -- a case with three

15   claims to a case with 83,000 claims is not a very good

16   comparison. So for all those reasons, Judge, I think that

17   when you put it altogether, that this settlement is fair and

18   reasonable.

19   On the coupon issue, Judge, I think our position is

20   that it is not a coupon because there is no purchase

21   necessary. It is not a percentage off. I think what the

22   sign -- the Synfuel case that was mentioned, I think what

23   that goes to is it says if you have any of in-kind

24   distribution, there is some scrutiny that is applied. We are

25   okay with that. I mean I think plaintiff -- everybody is

1    okay with the Court applying scrutiny.  But scrutiny doesn't

2    equal coupon.  And I don't think a golf ball is a coupon.  I

3    think that may result in additional scrutiny.

4            But here we have no purchase necessary.  You can

5    stack these things.  You can buy things.  You don't have to

6    buy anything else.  And even all the examples that were

7    handed out during the earlier presentation, as the Court has

8    already pointed out, are all $10.00 off a purchase of $40.00

9    or 20 percent off a purchase but $125.00.  Those are coupons.

10   That is a very different thing than what we have here is

11   where you can just walk in and use these things for any

12   purpose you desire and no purchase being necessary.

13           One other point --

14           THE COURT:  I guess one of the underlying issues,

15   though, with the argument of coupon and what Congress was

16   grappling with is when you have a voucher gift card or even a

17   coupon situation, obviously, you have some benefit that is

18   being given to the defendant in the case.  You have got some

19   continuous business that is being offered.  The hope being

20   that somebody is going to spend more than $10.00 at your

21   store and that because of that it is like a coupon.  It is

22   like the fears that Congress was dealing with when they

23   passed CAFA.

24           MR. DALY:  I will say it is in the same

25   neighborhood, Judge, but that is the point I was trying to

1   make, which is I think that that results in the Court giving

2   it some additional scrutiny than if, say, a $10.00 check had

3   been issued.  But that doesn't make it a coupon that results

4   in these other issues.

5          So I think the Court is very much within its

6   authority to scrutinize this thing, but I don't think that

7   that makes it an actual coupon.  And I think there is a

8   variety of cases that everybody has cited in their briefs

9   where store vouchers and gift certificates just like these

10  have been approved by many, many courts across the country.

11         The only other point on this issue I would make,

12  Judge, is that counsel indicated that because it has an

13  expiration date -- and the reason there is we couldn't have

14  these things floating around forever -- that it therefore

15  cannot be a gift certificate or store voucher.  I would point

16  the Court to 15 U.S.C. 1693l-1(a)(2)(D)(iv), which --

17         THE COURT:  I am so glad we have a court reporter

18  here.

19         MR. DALY:  I am too.  I am too -- which, Judge,

20  excludes from things that cannot -- from gift cards that

21  cannot have an expiration date the following:  General use

22  gift certificates and store gift cards that are under

23  Subsection (iv) that are not marketed to the general public.

24  And that section has been interpreted to deal with cards like

25  this.  So I think the issue -- the notion that because these

1   have expiration dates that can't be store vouchers or gift

2   cards is an incorrect argument.

3         So on that -- on the penalty of perjury, Judge,

4   just a couple statements I -- the -- I was in court that day.

5   The transcript has been attached to I think plaintiffs'

6   brief.  I mean what happened there was we -- we, the

7   plaintiffs, we were -- we, the defendants, we were arguing

8   for -- we wanted more than the penalty of perjury.  We wanted

9   to require the members to attach their receipt if they had

10  it, tell us what store they bought it from if they

11  remembered, tell us the date because this was a rolling

12  rollout of our POS systems, and we wanted to get as much

13  information with that.  Plaintiffs were saying no.

14        We had an argument in front of the Court, and the

15  plaintiff -- the plaintiffs were arguing that, well, they

16  have got this penalty of perjury thing.  And that is the

17  context in which the Judge said, "Well, that is not enough.

18  They are -- I can't imagine the circumstance where

19  RadioShack" --

20        THE COURT:  So you took that comment as Judge Grady

21  saying he was more inclined to go with what you were

22  suggesting as opposed to the plaintiffs?

23        MR. DALY:  Exactly.  He was saying, "That is not

24  enough and I can't imagine why RadioShack isn't entitled to

25  more than that so they can actually tell whether somebody is

1    in the class or not.  How is that not fair?"

2    Now, at the end of the day through negotiations we
3    did -- we gave up on those things with the plaintiffs.  We
4    got something else.  We got the notion that if our claims
5    administrator saw patterns of fraud in the claims, we could
6    investigate it now rather than -- we were not interested in
7    burdening the class with, you know, receipts and go find your
8    receipts, go dig it out of your file and attach it if you
9    have it.  We gave up on that.  And so we took that out, went
10   with only the penalty of perjury argument.  And then if some
11   pattern of fraud like multiple claims by the same person,
12   multiple claims from the same address came in, our
13   administrator was empowered in the settlement agreement to do
14   an investigation of that after the claims came in.  We have
15   -- we are not going to be doing that.  And so that issue, it
16   seems to me, is -- should be a dead letter.

17   And finally, Judge, under the lease language, I
18   think if you read it, I think it is being misinterpreted by
19   Mr. Warner.  I don't think that the plaintiffs are in any
20   position to release any other class member's personal injury
21   claim or product liability claim.  And that is not what the
22   language calls for.  It is limited to the plaintiffs and the
23   claims in this lawsuit.

24   And that is all I have to say, unless you had some
25   questions for me, Judge.

1 THE COURT: I do not. Thank you very much.

2 MR. DALY: Thank you, Judge.

3 THE COURT: All right. Have we heard all the

4 issues on the objections, Mr. Warner?

5 MR. WARNER: There is just one statement that I

6 can't believe that was said considering what has been

7 attached to the objections, and that is the claims process.

8 The claims process does require the claimant, at least

9 online, to indicate the store that they bought it at. They

10 also have to give an approximate date that they have bought

11 it at. The Court can go to the website now -- it is still up

12 there -- and look at it. And those -- that information is

13 within the objectors, Warner's and Gupta's -- I believe it is

14 within their attachments.

15 But that -- that argument, what they just said that

16 happened at Judge Grady, that is not what happened here with

17 the settlement. There is that additional threshold that they

18 had to go through. They have to -- in order to make claims,

19 they have to state the store that they bought it at. In fact

20 to even give an objection, if you look at the settlement

21 agreement, it is still in there. You have to put down what

22 store you bought it at.

23 THE COURT: But the issue that you raised was that

24 I should look to Judge Grady --

25 MR. WARNER: Right.

1          THE COURT:  -- you know, in terms of the issue of

2   collusion.  And Judge Grady had said, you know, that under

3   penalty of perjury wasn't what he wanted.  You had given it a

4   particular spin and now counsel for RadioShack has given it a

5   different spin.

6          MR. WARNER:  Right.  But for counsel for RadioShack

7   to say that that was it, the penalty of perjury was all that

8   -- they didn't have to say what store they bought it at and

9   the date they bought it -- and it is inconsistent with what

10  the settlement agreement said and what the class members had

11  to do.  I mean this is very serious misstatements to the

12  Court of, you know -- of, you know, why some class members --

13         THE COURT:  I simply didn't take his statement --

14         MR. WARNER:  No.

15         THE COURT:  -- as it always was.

16         MR. WARNER:  Well --

17         THE COURT:  It was just this or that.  It went to

18  your issue.  And they tried to question you on, that it was

19  going to lead to a hopefully better return.

20         MR. WARNER:  Right.

21         THE COURT:  And you made a very strong argument

22  that there was some evidence of collusion in part because

23  that Judge Grady made this comment, and based on his comment

24  you believed in part it led to them making the decision to

25  consent to the Magistrate Judge and not have Judge Grady deal

1  with the issues.

2  MR. WARNER:  And all I am saying here, though, is,

3  Judge, when you listen to those statements that have been

4  made by RadioShack's counsel, that is not what happened.

5  That is not what was required by the class.

6  And more serious concern should even be noted is we

7  are -- what else haven't we talked about?  What else don't we

8  know?  I mean of course the objectors are not in the

9  positions, we are not flies on the wall and privy to these

10  conversations.  But it just goes that there are things that

11  -- here that don't make any sense.

12  And for willfulness, as pointed out to you,

13  RadioShack's counsel admitted that they knew about FACTA.  It

14  is -- it is in our -- it is in the objectors' briefs.  And

15  that is another, you know, 800-pound gorilla that is being

16  ignored here.  There is just certain things -- and that last

17  statement is almost the topper of why the Court should use

18  its fiduciary duties to the class members and just say no to

19  the settlement agreement and deny it.

20  Thank you, your Honor.

21  THE COURT:  Thank you very much.

22  All right.

23  MS. HOLYOAK:  Can I just make one --

24  THE COURT:  Miss Holyoak, one more.  And then they

25  get to say one more thing.

1           MS. HOLYOAK:  Absolutely.  I just wanted to make

2     one addition because you did ask about gift cards.  These are

3     even more like coupons than gift cards in that if you go into

4     the store and use your -- that $10.00 and you only buy

5     something that is five, you don't get that remaining five.

6     It is gone.  And so it is more like a coupon in that respect.

7     And courts across the country in analyzing CAFA, they have

8     applied it to things that are called in credits, vouchers,

9     rebates, service membership -- or renewal -- service

10    memberships.  So semantics are not as important as what the

11    -- what is provided here and the in-kind compensation that is

12    being provided.

13          THE COURT:  Thank you very much.

14          All right.  On behalf of the plaintiff class.

15          MR. MARKOFF:  Thank you, Judge.  Paul Markoff for

16    the plaintiff Redman.  Judge, I want to really limit to

17    responding to a couple things that -- primarily that

18    Mr. Warner stated.  One thing, he handed up several exhibits

19    in support of his argument that this is -- anybody can get

20    $10.00 off at RadioShack.  And your Honor called him out on

21    it, and yet he continued to press the issue and -- twice.

22          THE COURT:  I call my children out on things.  I

23    don't call counsel out.

24          MR. MARKOFF:  Sorry.  The point is the

25    inconsistency in the argument that he said twice that he

1  could get on -- you could get on Facebook and get $10.00 off

2  for a purchase of $10.00 or more at RadioShack, and yet the

3  very first exhibit counsel handed up states that it is off

4  $20.00 or more, which would be a coupon.  And the others he

5  handed up were 30 -- $10.00 off 30 or more.  The next one was

6  40 or more.  The next one was 50 or more.  Those are in fact

7  coupons.  So inconsistent with what he exactly said to the

8  Court were the exhibits he used to support his argument.

9      On the claim form counsel also misrepresented what

10  the process was, that everybody was required to state this

11  with certainty and dig up this information about where they

12  made a purchase and when and things like that.  Actually the

13  claim form says month and year you believe you made -- you

14  made a purchase, credit card type you believed you used.  And

15  the penalty of perjury says, "Information contained is true

16  and collect -- true and correct to the best of my knowledge,

17  information and belief."  It actually doesn't say that it is

18  absolutely true.

19      And, frankly, as I explained this to a number of

20  people that would call me on this -- and thousands did -- not

21  on this particular issue but on the settlement in general --

22  I said, "Look, it is to the best of your knowledge.  We know

23  this is going back a couple years."  And this is in here.  We

24  fought against this.  And actually as Mr. Daly commented, for

25  Mr. Warner to stand up and say that this is not how it played

1    out in front of Judge Grady is blatantly incorrect.  Judge

2    Grady was quite adamant that the defendant was going to get

3    more in this claim form than what was ultimately in here.

4    The class members were going to have to submit proof,

5    receipts, things like that.  It was not that he ruled out a

6    penalty of perjury.  It was very clear that that was merely

7    the beginning of what people would have to do.  And in fact

8    not only for the settlement, but if there were not a

9    settlement, that if it were -- that if we got to the class

10   certification stage, that that would be required.  This was a

11   huge hurdle that Judge Grady was setting.  So Mr. Warner is

12   simply incorrect.

13          And to say that, well, dealing with this

14   manageability issue, we, the claimants -- to distinguish

15   between consumers and businesses just check a box and say I

16   am a consumer or I am a business, no way.  Judge Grady would

17   have no part of that.  That was clear.  Not just from what we

18   are representing but from the transcript in front of Judge

19   Grady.  That is the truth, was the transcript, not what

20   counsel represents.  Checking the box was going nowhere.

21          Reaching the due process stage, if we were to

22   continue litigating this and get a judgment, that due process

23   would allow for the reduction of the judgment.  Look, the

24   financials that are submitted here and what went into the

25   assessment of this case -- and this is, you know, back in

1   November when we reached -- we reached this agreement in

2   principle and continuing now -- we wouldn't have reached that

3   stage.  There aren't any analysts that say this company is

4   going to be around in anything short of a bankruptcy.  So we

5   don't -- so reaching the due process reduction of a judgment,

6   it is kind of fanciful because if the company is not around,

7   it is a pyrrhic victory.  So this way we get a settlement for

8   people.  We get something for these class members instead of

9   nothing because somebody wants to fight it for whatever their

10  personal reasons are.

11          The other -- going to the collusion argument,

12  Mr. Warner mentioned there were two hard-fighting parties and

13  all of a sudden there is a settlement.  Your Honor is aware

14  of at least part of this history.  There was no all of a

15  sudden to anything in this case.  Your Honor had this case

16  for months and months.  After your Honor sent the referral

17  back to Judge Grady, it continued for months and months.

18  Even after we got to the agreement in principle, it took

19  another six months to sign on the dotted line for the

20  settlement agreement.  There was no all of a sudden anything

21  in this case.  It was indeed two hard-fighting parties.  He

22  was correct on that part, although there was more because

23  there weres multiple plaintiffs and multiple counsel on the

24  plaintiffs' side.

25          On the gift card Mr. Daly correctly points out that

1   the federal law that I presume is what Mr. Warner cite -- or

2   was referring to, that federal law prohibits expiration

3   dates.  Obviously there is an exclusion, for instance, in

4   this case.  But also these class members could actually take

5   this voucher and go get a gift card at RadioShack, and it

6   would be good for however long those gift cards are good for.

7           THE COURT:  So they could purchase a gift card with

8   the --

9           MR. MARKOFF:  There is no exclusion.  It says, "Any

10  product or service," so they can go buy what they want.

11          The visitors of the website, Mr. Warner came up

12  with the apparently statistical analysis that 40,000 or so

13  people went to the website and didn't bother submitting a

14  claim or that was evidence that they just didn't want to

15  bother with it.  I will tell you I have been to that website

16  several hundred times.  So of those 136,000 visitors, many,

17  many of them were mine.  And the instance where those

18  occurred were people would call me and say, "I am having

19  trouble getting on the website."  So I would immediately go

20  to the website and verify that it works.  It does.  Typically

21  what happened is people would be -- they would put the

22  information in the search bar as opposed to the address bar

23  on their computer, so they would end up on some other

24  website.

25          Similarly if people called and said, "I am having

1    trouble getting through to this toll-free number at the

2    claims administrator," I would immediately, while they are on

3    the phone, call -- pick up my cell phone, call that number,

4    put it on a speaker so they could hear, yes, indeed it is

5    right.   It was probably a dialing error.   And then the issue

6    was taken care of.

7            The claim form required disclosure of personal

8    information.   I am not sure what information that is that

9    counsel refers to, except -- and they were not required --

10   enter the name and address, which most of these claimants

11   already -- RadiowShack already had because they got -- they

12   were sent the notice for five million of them.   E-mail

13   address, if you have one.   I guess that would be -- telephone

14   number, I guess that would be.   But you have to be able to

15   verify these things to get ahold of them.   And then the

16   information to verify the claims that we already went over

17   that Judge Grady was clearly compelling.

18           THE COURT:   There was an argument that he made with

19   respect to objectors and whether the notice provided enough

20   information that in order to object, you had to have filed a

21   claim.

22           MR. MARKOFF:   You know, that is an interesting one,

23   Judge, and here is why:   First of all, there is nothing in

24   there that says you have to do either-or for starters.   But

25   this arises from a very recent 7th Circuit ruling in this, so

1   recent in fact that Mr. Warner filed his objections at one

2   point, this 7th Circuit ruling came out and said these people

3   don't have standing because they didn't file a claim, and

4   then he filed an amended objection after he had his folks

5   file claims.  That is how recent it is.  I have never seen it

6   before in any case.

7        We raised this for one simple reason.  Standing is

8   something the Court has to view on its own.  We don't -- it

9   is nothing we can do to change standing.  We don't have any

10  problem addressing the objections themselves, but I think we

11  do have a duty to raise it with the Court because you

12  wouldn't otherwise know whether they have submitted claims or

13  not.  So it is an interesting argument because it is recent

14  development, at least in our view, in the law because we have

15  not seen it before, to be perfectly honest.  So -- but we

16  have no objection.  If we had the ability to say, oh, you

17  have standing, then go ahead and address the objections, but

18  it is not really our issue.  Standing is the Court's issue.

19       Medieval Times.  Mr. Warner tried to distinguish

20  the Medieval Times settlement.  The Medieval Times settlement

21  had a cash component and a voucher component.  And the cash

22  component of course was comprised of attorney's fees and

23  notice and administration almost exclusively.  It allowed

24  people, if they submitted a receipt, to get some cash

25  component.  And I am curious, maybe Mr. Warner knows how many

1    people actually did that, but I am guessing it is miniscule.

2         But the reason he suggested that the perjury

3    declaration was appropriate was that the stores were out of

4    compliance at different times.  They didn't have a way to

5    verify.  Well, we didn't have anything different here, as Mr.

6    Daly said.  And as what has been said multiple times in front

7    of Judge Grady and your Honor, these stores were rolled out

8    at different times, these POS systems.  So the different

9    stores were in fact compliant or not compliant at diffeent

10   times.  Yet we have an expansive class period date to cover

11   all of them, the outside dates.  So there wasn't really a

12   particularly good way to verify these claims for the

13   defendant and have this information.  And that is why we have

14   this information in the claim form that was required by Judge

15   Grady ultimately, really compelled.  So it is actually quite

16   analogous to the Medieval Times case in that sense.

17        Let's see.  I don't recall if somebody raised this

18   as an objection, but -- and I don't remember if it was

19   Mr. Warner raised the issue of filing the fee motion after

20   the objection deadline.  Actually I believe in every one of

21   his cases where he is class counsel he filed his fee petition

22   after the objection deadline.  And so again a positional

23   conflict there.

24        And he stated that the plaintiffs' counsels clearly

25   -- counsel hitched their wagon to the percentage, which is

1   untrue.  There was nothing tying us to the redemption rate.

2   It was stated as a flat number.  And contrary to the -- Miss

3   Holyoak's argument, the settlement does not say fees up to a

4   million dollars.  It says a million.  There is no --

5           THE COURT:  I think she said the notice said up to

6   a million.

7           MR. MARKOFF:  I would have to look at the notice.

8   The settlement agreement did not say that it was a million

9   dollars.  But in any case that was the outside number.  And

10  it doesn't impact the class because of the number of

11  claimants here.  So the amount available to the class will

12  not be reduced.

13          Miss Holyoak argued that Synfuel -- I think she

14  misrepresented.  Indeed Synfuel was inviting scrutiny,

15  said -- and said, all right, they are an in kind account --

16  they are  in-kind cases, and those might invite more scrutiny

17  or scrutiny similar to a coupon case, which is fine, but that

18  is different than saying they are coupons.

19          Your Honor can put whatever scrutiny is appropriate

20  on this case.  It -- obviously it is what it is.  We think it

21  is fair, reasonable and adequate because people get something

22  without any damages.  And I think that something is a lot

23  better than nothing.  These 80-something thousand people that

24  did submit claims honestly I believe are going to get nothing

25  if this isn't approved.  But it did not hold that an in-kind

65

1    award or in-kind relief is the same as a coupon.

2              I believe that is --

3              THE COURT:  Next.  State your name as you approach.

4              MR. ZIMMERMAN:  Thank you, Judge.  Tom Zimmerman,

5    Z-I-M-M-E-R-M-A-N.  Good afternoon.  I was -- Mr. Markoff and

6    I had agreed that he would handle the argument, but there are

7    just two issues that were raised for the first time by

8    counsel for the objectors, and if I may just respond to

9    those.  The first is Mr. Warner stood here and pointed to me

10   and referenced the fact that we have a pending case.  The

11   Court inquired as to how long that case has been pending in

12   response to his statement that these things can easily be

13   resolved in no time.  And the answer that I am providing to

14   the Court's question is it has been pending for over two and

15   a half years.  It is a FACTA case.  He is a difficult person

16   to deal with and I -- and needless to say we haven't hit it

17   off.

18             He did mention that -- in response to the Court's

19   inquiry with respect to the claim forms that he has used in

20   other cases that required the claimant to sign under penalty

21   of perjury -- and his response was, you know, "This isn't

22   about me."  And I would respectfully suggest to the Court

23   that we are not naive here.  It is entirely about him.  In

24   the other case that we have pending I was able to demonstrate

25   through discovery that his plaintiffs filed frivolous claims

1    and there were Rule 11 issues.  And it goes on and on.

2           And so I just want the Court to understand the
3    context and the background that this class action plaintiffs'
4    attorney is coming from when he stands up and objects to a
5    class action settlement that has very similar requirements to
6    ones that he has proffered and stood up and represented were
7    reasonable in his cases.

8           The other thing is counsel for the other objectors
9    had cited to the Dardarian versus Office Max case, Northern
10   District California case, decided in July of 2013, so just a
11   couple of months ago.  And your Honor may have noticed I have
12   been sitting tying on my phone back in my chair, and the
13   reason is because I was looking that case up.  That -- this
14   is the first time it has been cited.  And I want to see what
15   that was all about.  Apparently that was a denial of a motion
16   for preliminary approval of a class settlement on various
17   grounds, one of which was the notice was found to be
18   insufficient.  But the Court did analyze the settlement and
19   whether or not it constituted a coupon settlement.

20          Now, that Dardarian court sits in the 9th Circuit,
21   so that is subject to the HP Inkjet decision.  But they did
22   cite to some factors and some other California cases in that
23   -- in that ruling dealing with coupon settlements.  One of
24   them is Fleury, F-L-E-U-R-Y, versus Richemont,
25   R-I-C-H-E-M-O-N-T, North American, Inc.  And that case dealt

1    with one of the factors, which is whether or not the class

2    members have the ability to aggregate and transfer the

3    benefits.  And in that case they -- the court looked at that.

4        Here we have that ability.  The settlement provides

5    that class members can stack three coupons and essentially

6    have a $30.00 -- three of the settlement vouchers, have a

7    $30.00 voucher, and they are fully transferable.  So there

8    essentially is a secondary market that these can be, you

9    know, sold on.  And so that is a factor.

10        Another factor was noted from the Browning versus

11    Yahoo, Inc. case.  And that is also cited in this Dardarian

12    opinion.  And that overruled -- that court overruled an

13    objection that the proposed settlement was a coupon

14    settlement because the class members did not have to spend

15    money to realize the benefit.  And so that also is similar

16    here where it has been stated many times that you can walk in

17    and simply buy a product and not have to have any future

18    ongoing business and that type of thing.  You don't have to

19    spend any additional money.

20        There was another case that -- the Young versus

21    Polo retail case that identified transferability of the gift

22    card as a factor in approval of the voucher settlement.  And

23    again these cards are fully transferable.  And -- and so

24    there is a secondary market.

25        And finally with respect to the expiration date, I

A177

1   believe it was -- it was mentioned that you can go in and if

2   you -- if you don't want to use the card within the six-month

3   time period, you can simply buy a gift card and then that

4   does not expire for five years.  So there is always that

5   option as well.

6          And that is all I would like to mention to the

7   Court.  I know that case was just mentioned for the first

8   time, so I wanted to highlight that.

9          THE COURT:  All right.  Thank you very much.

10          The Court will take the matter under submission,

11  unless there is something else that you need to address.

12          Thank you very much.

13          MR. MARKOFF:  Thank you, Judge.

14      (Which were all the proceedings heard.)

15                    CERTIFICATE

16      I certify that the foregoing is a correct transcript

17  from the record of proceedings in the above-entitled matter.

18

19  s/Rosemary Scarpelli/         Date:  September 19, 2013

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6,1**
**Eastern Division**

Scott D.H. Redman, et al.

                                    Plaintiff,

v.                                                  Case No.: 1:11−cv−06741

                                                    Honorable Maria Valdez

Radioshack Corporation

                                    Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, February 7, 2014:

      MINUTE entry before the Honorable Maria Valdez: Plaintiff's Motions for Final Approval of Settlement Agreement [124] and [129] are granted in part and denied in part. Enter Memorandum Opinion and Order. Mailed notice(lp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**Proof of Service**

I hereby certify that on April 18, 2014, I caused to be electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

<div align="right">

/s/ Theodore H. Frank

Theodore H. Frank

Center for Class Action Fairness

1718 M Street NW, No. 236

Washington, DC 20036

Telephone:  (703) 203-3848

Email:  tedfrank@gmail.com

*Attorneys for Michael Rosman and Jessica Kasten*

</div>