Nos. 14-1470 and 14-1658
Consolidated with No. 14-1471

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, *et al.*,
Plaintiffs-Appellees,

v.

RADIOSHACK CORPORATION,
Defendant-Appellee.

APPEAL OF: MICHAEL ROSMAN, *et al.*,
Objectors-Appellants.

On Appeal from the United States District Court
for the Northern District of Illinois, No. 1:11-cv-06741,
Magistrate Judge Maria G. Valdez

Corrected Opening Brief of Appellants Michael Rosman, Jessica Kasten, and
Robert Scott With Required Short Appendix

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C.  20036
(703) 203-3848
*Attorney for Appellants Michael Rosman and
Jessica Kasten* (14-1470)

LAW OFFICES OF DARRELL PALMER PC
Joseph Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, California  92008
(858) 215-4064
*Attorney for Appellant Robert Scott* (14-1658)

# CIRCUIT RULE 26.1    DISCLOSURE STATEMENT

Appellate Court No: __14-1470__

Short Caption: __Michael Rosman, et al. v. RadioShack Corporation__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✓]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

__Michael Rosman__

__Jessica Kasten__

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

__Center for Class Action Fairness__

__The Tucker Firm, LLC (district court local counsel)__

__Stein, Ray & Harris LLP (district court local counsel)__

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

   __N/A__

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

   __N/A__

Attorney's Signature: __/s/ Theodore H. Frank__    Date: __3/7/2014__

Attorney's Printed Name: __Theodore H. Frank__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes __X__  No _____

Address: __Center for Class Action Fairness, 1718 M Street NW No. 236, Washington, DC 20036__

Phone Number: __(703) 203-3848__    Fax Number: _____

E-Mail Address: __tedfrank@gmail.com__

i    rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-1658

Short Caption: Scott Redman et al. v. Radio Shack

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

　　[  ]　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Robert Scott

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Law Offices of Darrell Palmer, PC

(3)　If the party or amicus is a corporation:

　　i)　Identify all its parent corporations, if any; and

　　　N/A

　　ii)　list any publicly held company that owns 10% or more of the party's or amicus' stock:

　　　N/A

Attorney's Signature:　s/  Joseph Darrell Palmer　　　　　　　Date:　3/31/2014

Attorney's Printed Name:　Joseph Darrell Palmer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☒　No ___

Address:　2244 Faraday Avenue, Suite 121

　　　　Carlsbad, CA 92008

Phone Number:　858-215-4064　　　　Fax Number:　866-583-8115

E-Mail Address:　darrell.palmer@palmerlegalteam.com

rev. 01/08 AK

## Table of Contents

Circuit Rule 26.1 Disclosure ....................................................................... i

Table of Contents ...................................................................................... iii

Table of Authorities .................................................................................. v

Statutes and Rules ................................................................................... xiii

Jurisdictional Statement ............................................................................ 1

Statement of the Issues ............................................................................. 2

Statement of the Case ............................................................................... 3

    A.     Redman sues RadioShack ................................................... 3

    B.     The parties settle .............................................................. 4

    C.     Class members object ....................................................... 5

    D.     The fairness hearing and settlement approval. ................... 6

Summary of the Argument ........................................................................ 8

Preliminary Statement .............................................................................. 11

Argument .................................................................................................. 12

I.     The settlement, on its face, violated the Class Action Fairness Act ........................ 12

    A.     A "voucher" that expires in six months and that is redeemable solely for up to ten dollars towards the purchase of a product sold by the defendant is a coupon, even if some class members may hypothetically use the coupon to obtain a free product ........................................... 13

    B.     Because RadioShack vouchers are coupons under CAFA, class counsel's attorneys' fees must be based on the value of the coupons that are redeemed. ........................................... 18

II.    The $2.25 million paid to the settlement administrator to publish notice and distribute 83,332 vouchers is not a settlement benefit. ........................................... 25

III.   The above errors of law caused the district court to abuse its discretion in approving a settlement structured to pay the class counsel nearly $1 million, when class members received only 83,332 ten-dollar coupons—even if the coupons are valued at full face value. ........................................... 29

IV.    The district court erred as a matter of law when it held that the separate fund criticized by *Bluetooth* was actually a class benefit that relieved class counsel of its Rule 23(h) obligations, and when it excused violation of Rule 23(h). ...............36

      A.    The district court's conclusion that the allocation of fees between class counsel and the class did not "present a zero-sum structure" is contrary to law and economic reality. ........................................................................38

      B.    A clear-sailing agreement is another indication of a fee-driven settlement. ......................................................................................41

      C.    Filing the fee motion after the objection deadline further insulated the fee request from scrutiny and violated Fed. R. Civ. P. 23(h). .....................43

Conclusion ....................................................................................................46

Statement Regarding Oral Argument .................................................................48

Certificate of Compliance  with Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 30(d) ........49

Proof of Service.............................................................................................50

## Table of Authorities

<u>Cases</u>

*Anderson v. AB Painting & Sandblasting, Inc.,*
    578 F.3d 542 (7th Cir. 2009) ....................................................................... 22, 31

*In re Aqua Dots Prod. Liab. Litig.,*
    654 F.3d 748 (7th Cir. 2011) ...................................................... 2, 25, 30-31

*In re AT&T Corp. Secs. Litig.,*
    455 F.3d 160 (3d. Cir. 2006) ...................................................................... 34

*In re Baby Products Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ......................................................... 24, 27, 30, 34

*Besinga v. United States,*
    923 F.2d 133 (9th Cir. 1991) ...................................................................... 26

*Blanchard v. Bergeron,*
    489 U.S. 87 (1989) .................................................................................... 22

*Bloyed v. General Motors,*
    881 S.W.2d 422 (Tex. App. 1994) ............................................................ 38-39

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ............................................. 3, 8, 10, 26, 32, 34, 36-40, 42

*Brackett v. Peters,*
    11 F.3d 78 (7th Cir. 1993) ........................................................................ 19

*Buchet v. ITT Consumer Fin. Corp.,*
    858 F. Supp. 944 (D. Minn. 1994) ............................................................. 23

*Cole v. Wodziak,*
    169 F.3d 486 (7th Cir. 1999) ..................................................................... 31

*Crawford v. Equifax Payment Services, Inc.,*
    201 F. 3d 877 (7th Cir. 2000) ............................................................... 31, 36

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
    662 F.3d 913 (7th Cir. 2011) .......................................................................30

*Dardarian v. Officemax N. Am., Inc.*,
    No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653 (N.D. Cal. July 12, 2013)............13-14

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ....................................................... 29-30, 35, 40

*Devlin v. Scardeletti*,
    536 U.S. 1 (2002) .................................................................................. 1-2

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) .......................................... 11, 23, 29, 32, 36, 38

*Exelon Generation Co., LLC v. Local 15, IBEW*,
    676 F.3d 566 (7th Cir. 2012) .......................................................................19

*Fleury v. Richemont N. Am., Inc.*, No. C-05-4525,
    2008 WL 3287154, 2008 U.S. Dist. LEXIS 112459 (N.D. Cal. Aug. 6, 2008) ........16-17

*In re GMC Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979)............................................................... 33, 39

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...........................................................32-33, 38, 40

*Gomez-Perez v. Potter*,
    553 U.S. 474 (2008)...................................................................................15

*Gwin v. Am. River Transp. Co.*,
    482 F.3d 969 (7th Cir. 2007) .......................................................................35

*Hecht v. United Collection Bureau*,
    691 F.3d 218 (2d. Cir. 2012)........................................................................26

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ....................................... 13, 15-16, 18-21, 36

*Johnson v. Comerica Corp.*,
    83 F.3d 241 (8th Cir. 1996) .......................................................................40

*Kamilewicz v. Bank of Boston,*
  100 F.3d 1348 (7th Cir. 1996) ..................................................................27

*In re Katrina Canal Breaches Litig.,*
  628 F.3d 185 (5th Cir. 2010) ...................................................................34

*Luevano v. Wal-Mart Stores, Inc.,*
  722 F.3d 1014 (7th Cir. 2013)....................................................................2

*Manning v. United States,*
  546 F.3d 430 (7th Cir. 2008) ...................................................................12

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,*
  834 F.2d 677 (7th Cir. 1987) ...................................................................33

*Martin v. Blessing,*
  134 S. Ct. 402 (2013)................................................................................44

*Marx v. Gen. Revenue Corp.,*
  133 S. Ct. 1166 (2013)..............................................................................21

*Mayer v. Spanel Int'l Ltd.,*
  51 F.3d 670 (7th Cir. 1995) .....................................................................45

*Maynard v. Nygren,*
  332 F.3d 462 (7th Cir. 2003) ...........................................................25, 29

*McBean v. City of N.Y.,*
  233 F.R.D. 377 (S.D.N.Y. 2006) ...............................................................8

*In re Mercury Interactive Sec. Litig.,*
  618 F.3d 988 (9th Cir. 2010) .............................................................42-43

*Mirfasihi v. Fleet Mortgage Corp.,*
  356 F.3d 781 (7th Cir. 2004) ...........................................9, 11, 25, 36, 44

*Murray v. GMAC Mortg. Corp.,*
  434 F.3d 948 (7th Cir. 2006) ....................................................9, 33, 36

*Perdue v. Kenny A.,*
  559 U.S. 542 (2010)..................................................................................45

*Reynolds v. Beneficial Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002) ...........................................................26, 43-44

*Robert F. Booth Trust v. Crowley,*
    687 F.3d 314 (7th Cir. 2012) ...................................................................31

*Rodas v. Seidlin,*
    656 F.3d 610 (7th Cir. 2011) ...................................................................15

*Scherr v. Marriott Int'l, Inc.,*
    703 F.3d 1069 (7th Cir. 2013)...................................................................20

*Schindler Elevator Corp. v. United States ex rel. Kirk,*
    131 S. Ct. 1885 (2011)..............................................................................13

*Smith v. United States,*
    508 U.S. 223 (1993).............................................................................14-15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .............................................................32, 39

*Strong v. Bellsouth Tel. Inc.,*
    137 F.3d 844 (5th Cir. 1998) ...................................................................38

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.,*
    64 F.3d 1055 (7th Cir. 1995) ...................................................................14

*Synfuel Technologies v. DHL Express (USA),*
    463 F.3d 646 (7th Cir. 2006) ..........................................15-18, 25, 29, 34, 45

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ...................................................................34

*Thorogood v. Sears, Roebuck & Co.,*
    627 F.3d 289 (7th Cir. 2010) (denying rehearing *en banc*),
    *underlying opinion vacated on other grounds,*
    131 S.Ct. 3060 (2011)....................................................... 9, 11, 25, 29-30, 32

*Travelers Prop. Cas. v. Good,*
    689 F.3d 714 (7th Cir. 2012) ................................................................. 3-4

*True v. Am. Honda Motor Co.,*
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................................23

*Twigg v. Sears, Roebuck & Co.,*
    153 F.3d 1222 (11th Cir. 1998)................................................................26

*United States v. Burke,*
    504 U.S. 229 (1992)................................................................................15

*United States v. Costello,*
    666 F.3d 1040 (7th Cir. 2012)................................................................14

*United States v. Lowe,*
    632 F.3d 996 (7th Cir. 2011) ...........................................................25, 29

*Vassalle v. Midland Funding LLC,*
    708 F.3d 747 (6th Cir. 2013) ..................................................................34

*Vought v. Bank of Am., N.A.,*
    901 F. Supp. 2d 1071 (C.D. Ill. 2012) ...................................................42

*Weinberger v. Great Northern Nekoosa Corp.,*
    925 F. 2d 518 (1st Cir. 1991). ...........................................................41-42

*In re Wells Fargo Sec. Litig.,*
    157 F.R.D. 467 (N.D. Cal. 1994) ...........................................................28

*Williams v. Gen. Elec. Capital Auto Lease, Inc.,*
    159 F.3d 266 (7th Cir. 1998) ...................................................................1

## Rules and Statutes

15 U.S.C. § 1681c(g) ..............................................................................1, 3

28 U.S.C. § 636(c) .......................................................................................4

28 U.S.C. § 636(c)(1)...................................................................................1

28 U.S.C. § 636(c)(3)...................................................................................2

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1337 ................................................................................................1

28 U.S.C. § 1711 note §2(a)(3) .........................................................................9

28 U.S.C. § 1712 ..............................................6-7, 10, 12, 15-16, 24, 35, 45

28 U.S.C. § 1712(a) .......................................................... 2, 12, 18-21, 24, 28

28 U.S.C. § 1712(b) .................................................................................20-21

28 U.S.C. § 1712(c) .................................................................................20-21

28 U.S.C. § 1713 .......................................................................................27-28

42 U.S.C. § 1983 .............................................................................................31

42 U.S.C. § 1988 .............................................................................................31

Fed. R. App. Proc. 4(a)(1).................................................................................1

Fed. R. App. Proc. 4(a)(7)(B).........................................................................2

Fed. R. Civ. Proc. 23 .........................................................................9, 29-30

Fed. R. Civ. Proc. 23(a)(4) ..........................................................................32

Fed. R. Civ. Proc. 23(e)........................................... 26, 29-32, 34, 43-46

Fed. R. Civ. Proc. 23(h)............................................. 3, 7, 10, 35, 40-45

Fed. R. Civ. Proc. 23.1 .................................................................................31

Fed. R. Civ. Proc. 58 ......................................................................................2

Other Authorities

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE
    (5th ed., Houghton Mifflin Harcourt Publishing Company 2011) ................... 13, 19

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.05(b) (2010) .................................34

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.05(c) (2010) .................................33

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.05, *comment a* (2010) ...............33-34

Brickman, Lester,
    LAWYER BARONS (2011) ........................................................................41

Cacciola, Scott,
    *West Looms as Knicks Keep Going South*, N.Y. TIMES, Nov. 23, 2013 ........................14

Henderson, William D., *Clear Sailing Agreements: A Special Form of Collusion in
    Class Action Settlements*, 77 TUL. L. REV. 813 (2003) ...................................42

Jones, Ashby,
    *A Litigator Fights Class-Action Suits*, WALL ST. J., Oct. 31, 2011...............................11

Leslie, Christopher R., *A Market-Based Approach to Coupon Settlements in Antitrust
    and Consumer Class Action Litigation*, 49 UCLA L. REV. 991 (2002) ........................23

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and
    Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007)................................33

Liptak, Adam, *When Lawyers Cut Their Clients Out of the Deal*,
    N.Y. TIMES, Aug. 13, 2013, at A12 ........................................................ 11

Notes of Advisory Committee on 2003 Amendments to Rule 23 ............................... 40, 43

SEN. REP. NO. 109-14 (2005), reprinted in 2005 USCCAN 3 ....................................16, 21-22

Silver, Charles, *Due Process and the Lodestar Method*,
    74 Tulane L. Rev. 1809 (2000)....................................................................41

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
    18 GEO. J. LEGAL ETHICS 1443 (2005) ....................................................22-23

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) .................................19

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)....................................13

Wolfman, Brian, *Judges! Stop Deferring to Class-Action Lawyers*,
    2 U. MICH. J.L. REFORM 80 (2013).............................................................33

Wolfman, Brian, and Alan B. Morrison,
  *Representing the Unrepresented in Class Actions Seeking Monetary Relief*,
  71 NYU L. Rev. 439 (1996) ........................................................................39

Wortham, Jenna,
  *Bits: A Breakup on Facebook*, N.Y. TIMES, Jan. 19, 2009 ...............................................14

Zabcik, Brian, *Conscientious Objector*,
  LITIGATION 11, Spring 2013,
  *available at* http://is.gd/alm_frank2013 (redirect) ......................................................11

**Statutes and Rules**

**28 U.S.C. § 1711 note.**

…

§ 2(a) Findings. Congress finds the following: …

(3) Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where—

(A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value;

(B) unjustified awards are made to certain plaintiffs at the expense of other class members; and

(C) confusing notices are published that prevent class members from being able to fully understand and effectively exercise their rights.

**28 U.S.C. § 1712.**

**(a)     Contingent fees in coupon settlements.**– If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

**(b)     Other attorney's fee awards in coupon settlements.**–

**(1)     In general.**– If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

**(2)     Court approval.**– Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a

multiplier method of determining attorney's fees.

**(c)** **Attorney's fee awards calculated on a mixed basis in coupon settlements**.– If a proposed settlement in a class action provides for an award of coupons to class members and also provides equitable relief, including injunctive relief–

    **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and

    **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of coupons shall be calculated in accordance with subsection (b).

…

**(e)** **Judicial Scrutiny of Coupon Settlements.**– In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members. The court, in its discretion, may also require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to 1 or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection shall not be used to calculate attorneys' fees under this section.

**Federal Rule of Civil Procedure 23. Class Actions.**

**(a)** **Prerequisites.**
    One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    …

(4) the representative parties will fairly and adequately protect the interests of the class.

…

**(e)     Settlement, Voluntary Dismissal, or Compromise.**
The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
…
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
…
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

…

**(g)     Class Counsel.**
...
(4) *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

**(h)     Attorney's Fees and Nontaxable Costs.**
In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties agreement. The following procedures apply:
 (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

…

## Jurisdictional Statement

The district court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 because the matter is a civil action arising under the laws of the United States, namely the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g), an Act of Congress regulating commerce. Dkt. 1 at R2-R3.[1] On May 16, 2013, the settling parties consented under 28 U.S.C. § 636(c)(1) for Magistrate Judge Valdez to exercise the district court's jurisdiction. Dkt. 95, R956. This Circuit holds that this decision binds unnamed class members because unnamed class members are not parties. *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998); *but see Devlin v. Scardelletti*, 536 U.S. 1 (2002) (objecting class member may be "party" for some purposes).

The magistrate judge issued a Memorandum Opinion and Order on February 7, 2014, and a Final Approval Order on February 25, 2014. A1-A41. Michael Rosman and Jessica Kasten are married class members who formally objected to the settlement before the lower court. A87; Dkt. 115-1, R1167-R1170. Kasten filed a valid settlement claim on behalf of the two (A110); both she and Rosman appeared at the fairness hearing through counsel and filed a notice of appeal on March 4, 2014. A111; Dkt. 162, R1960. Robert Scott is a class member who filed a valid claim and submitted a *pro se* objection to the settlement; he filed a notice of appeal on March 27, 2014. A110; Dkt. 120, R1187; Dkt. 182. These notices of appeal are timely under Fed. R. App. Proc. 4(a)(1).

---

[1] "Axyz" refers to page xyz of Rosman's and Kasten's Appendix. "Dkt." refers to docket entries in Case No. 1:11-cv-06741 (N.D. Ill.) below. "Rxyz" refers to the PageID xyz of the electronic record as it appears in Dkt. 11-2 through 11-11 of Case No. 14-1470.

Though there is no Rule 58 separate document accompanying the "Final Approval Order," this Court has appellate jurisdiction under 28 U.S.C. § 636(c)(3). *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020 (7th Cir. 2013) (lack of separate document does not affect validity of appeal); Fed. R. App. Proc. 4(a)(7)(B). Appellants, as class-members who objected to settlement approval below, have standing to appeal a final approval of a class action settlement without the need to intervene formally. *Devlin*, 536 U.S. 1.

## Statement of the Issues

1.      Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712(a), "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." Did the lower court err as a matter of law in holding that $10 "vouchers" with a six-month expiration were not "coupons" because it was possible to use the "vouchers" to purchase a whole product; refusing to apply § 1712(a); and in valuing the "vouchers" at face value for determining both settlement fairness and attorneys' fees?

2.      *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751-52 (7th Cir. 2011), holds that notice and administration expenses are a social cost that militate against class certification. Did the lower court err as a matter of law in considering the $2.25 million paid to the settlement administrator to publish notice and distribute 83,332 ten-dollar vouchers a settlement benefit justifying both the settlement fairness and the $1 million attorneys' fees?

3.    The Seventh and other Circuits hold that the allocation of settlement benefit between class counsel and absent class members is fundamental to settlement fairness. Did the magistrate err as a matter of law or abuse its discretion in approving a settlement that paid the class counsel $1 million, while class members received 83,332 ten-dollar vouchers, an unknown number of which will never be redeemed for full value?

4.    The Ninth Circuit holds that attempting to shield the attorney-fee request with a separate fund and a clear-sailing clause indicates self-dealing that requires additional scrutiny. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947-49 (9th Cir. 2011). Did the district court err as a matter of law when it held that the separate fund fee structure criticized by *Bluetooth* was actually a class benefit?

5.    Fed. R. Civ. Proc. 23(h) requires notice of a motion for class counsel attorneys' fees to be "directed to class members in a reasonable manner." Did the district court err in holding that class counsel had no obligation to make its motion before the objection deadline?

## Statement of the Case

**A.    Redman sues RadioShack.**

In late 2011, plaintiff Scott Redman filed a class complaint against RadioShack, alleging the defendant had violated the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g), by printing the expiration date of the customer's credit or debit card upon receipts at the point of sale. Dkt. 1, R3. Redman sought monetary remedies, including statutory damages of up to $1000 per unlawful receipt. *Id.* at R6; *see*

*generally Travelers Prop. Cas. v. Good*, 689 F.3d 714, 716 (7th Cir. 2012) (discussing FACTA).

**B.    The parties settle.**

In May 2013, before any substantive or even any procedural motions were decided on the merits, the parties both settled and consented under 28 U.S.C. § 636(c) to appointment of the magistrate judge to preside over the fairness hearing and settlement approval motion. A57-A75 ("Settlement"); Dkt. 95, R956. The settlement agreement sought to certify and bind a class of individuals who bought products or services from RadioShack using personal credit or debit cards whose electronically printed receipt contained the expiration date of the credit or debit card used for the purchase. Settlement §2.1 (A61). There were potentially 16 million class members, 4 million of whom received notice. A4; A13.

The settlement provided no monetary relief to class members. It gave class members an opportunity to submit a claim form to claim a coupon, which the settlement called a "Settlement Voucher"; no matter how many FACTA claims class members might have, they could each claim only a single coupon. Settlement §2.3(B) (A62).

The coupons will be good for up to a $10 discount on a purchase at RadioShack or the RadioShack website. The coupons expire after six months, after which they may not be used. Settlement §§2.3(B), 1.23, 1.11 (A62, A60, A59). The coupons are transferrable, but are only partially "stackable": they may not be aggregated for more than a $30 discount on a single purchase. Settlement §2.3(B) (A62). The coupons are not "crackable"; a claimant may only use a coupon once. *Id.* In other words, if a class

member uses the coupon to purchase a product worth less than $10, she receives no benefit from the remainder. *Id.*

The settlement permitted the three named representatives to submit unopposed applications for $5,000 awards each. Settlement §2.3(C) (A62). Class counsel was allotted a $1 million cash award, to be moved for without opposition from the defendants. Settlement §2.3(D) (A62). Finally, the settlement provided that if RadioShack's "expenditures" (calculated as including the face value of the coupons, the attorney award, the costs of notice and administration, and the representative incentive awards) were less than $3.25 million, the defendant would make a third-party *cy pres* donation of coupons to the Boys & Girls Club of America. Settlement §2.3(E) (A63). RadioShack's "liability" was capped at $5.35 million under the same calculation; if too many claims were made, the face value of the coupons would be reduced *pro rata* to reach the $5.35 million cap. Settlement §§2.2, 2.3(B) (A61-A62).

Class members waive all claims "relating in any way to FACTA." Settlement §2.4(A) (A63).

## C. Class members object.

Objectors Michael Rosman and Jessica Kasten (collectively "Kasten") are a married couple with a joint credit card who made a purchase at RadioShack, and received a receipt with an expiration date. A87; Dkt. 115-1, R1167-R1170. Kasten made a timely claim on their behalf under the settlement. A110.

Kasten timely filed written objections. A80-A100. Kasten objected that, because the settlement "provided for a recovery of coupons," it did not comply with the Class Action Fairness Act ("CAFA"), and that the resulting excessive fee award, in conjunction with the clear sailing clause and "kicker," meant that the settlement was

structured to unjustly disproportionately benefit counsel and the named plaintiffs at the expense of absent class members. A86; A92-A93; A154. Kasten noted that few coupons would be claimed, and even fewer would be redeemed for full face value, so that under any circumstances, using face value would artificially exaggerate class benefits. A90-A92; A153-A154.

Appellant Robert Scott objected *pro se* on similar grounds, and also made a timely claim. Dkt. 120, R1187; A110.

The Gupta appellants filed objections asserting the settlement value was too low, that the litigation was worth much more money than RadioShack was paying, and that RadioShack could pay a FACTA judgment in the hundreds of millions of dollars. Dkt. 110, R1056-R1057; Dkt. 112 at R1113-R1114.

In response, the settling parties argued the Settlement Vouchers were not coupons for purposes of § 1712 because it was possible that a class member could make a purchase at RadioShack for under $10 and thus get a free product. A119; A158-A160; Dkt. 128 at R1263, Dkt. 129 at R1395-R1397. Moreover, plaintiffs argued, because there would be over $2.25 million in notice and administration costs paid from the Settlement Fund, and such costs should be considered class benefits, the class benefits were not disproportionate to the $1M in fees. Dkt. 129 at R1405; Dkt. 130 at R1436. Plaintiffs submitted substantial evidence and argument regarding the risk of nonpayment from a RadioShack bankruptcy. *E.g.*, Dkt. 128 at R1257-R1259; Dkt. 129 at R1401; Dkt. 130 at R1424-R1427; Dkt. 131 at R1485-R1486; Dkt. 134, R1620.

## D.     The fairness hearing and settlement approval.

Kasten's warning of a low claims rate came to pass: 83,332 class members, well under 1% of the class, submitted timely claims for $10 Settlement Vouchers. A13. (Other

places in the record suggest that only 82,498 coupons will be issued. A103; Dkt. 129 at R1405. We'll use the larger 83,332 figure as the difference is immaterial to the appeal.) Yet the extensive settlement administration expenses of $2,256,301.74—over $27 for every ten-dollar coupon distributed—meant that the *cy pres* settlement provision and the objections to it were mooted. A36; A104-A105; Dkt. 129 at R1405.

On September 17, 2013, the magistrate judge held a fairness hearing where Kasten and other objectors appeared through counsel. A111-A178. At the fairness hearing, Kasten contested the newly-made post-objection assertion that administration expenses were a class benefit. A153-A154. Ten days afterward, RadioShack moved to revise the proposed final approval order to allow plaintiffs' counsel to divide a lump sum fee award, rather than having the court individuate the awards to each firm. Dkt. 140-1, R1736. Kasten objected that this alteration would violate Fed. R. Civ. P. 23(h). Dkt. 143, R1743.

The court issued an opinion on February 7, 2014, and a Final Approval Order on February 25, 2014. A1-A41. The court chose not to apply § 1712 because the "$10 vouchers that class members will receive will provide enough store credit to purchase over 6,000 individual products before tax." A21. While the court cited other district courts that reached similar conclusions, it cited no statutory language, dictionary definitions, or legislative history supporting its reasoning. A20-A21. It calculated fees based on a lodestar approach with a multiplier of 1.25, and argued that such an approach would have been permissible under § 1712 even if the settlement were a coupon settlement. A22-A26. The court found that $1M fee request was reasonable relative to the value of the settlement benefit, which it calculated as $4,096,281.74: the sum of the $1M attorneys' fee request; the $15,000 of incentive payments; 82,498 $10

coupons at face value; and counting $2.25M in notice and administration costs as a class benefit. A26 (citing A104-A105); *cf.* Dkt. 129 at R1405 (proposing this methodology). It awarded nearly the full $1M request. A26; A37.

Kasten had complained that, under *Bluetooth*, the combination of a clear-sailing clause and a separate fund slanted the settlement inequitably in favor of class counsel. *E.g.*, A92-A93. The district court disagreed, arguing that the separate fund meant that the "award will not reduce recovery by class members." A23 (citing *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)). As a result, the court concluded, the Rule 23(h) requirements did not apply. A28-A30. The court neither mentioned *Bluetooth*, nor explained why it thought a pre-*Bluetooth* district-court decision provided more persuasive analysis.

The court made factual findings rejecting Gupta's objection regarding the size of the settlement. "The Gupta Objectors' arguments do not sufficiently present any particular strengths of Plaintiffs' case that would tend to show willfulness." A17. The court further found that RadioShack's precarious financial situation merited the large discount and non-cash relief under which the case settled, especially given the lack of actual injury to the class. A19; A22. The court also rejected Gupta's argument that collusion had occurred. A32-A33.

After the "Final Approval Order" issued, three sets of objectors filed timely notices of appeal (Dkt. 162, 164, and 182) and this Court ordered the cases consolidated.

## Summary of the Argument

Under this settlement, over 16,000,000 class members split 83,332 ten-dollar coupons amongst themselves. Perhaps five cents per class member (at most) is adequate

compensation for class members' statutory claims of $100 to $1000 under FACTA. But then why is class counsel receiving more than both their own lodestar and what the class received? *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (calling less egregious statutory-damages cash settlement "untenable").

This Court has long recognized the inherent conflict of interest between class counsel and the class: "the structure of class actions under Rule 23 of the federal rules gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class members, while at the same time the burden of responding to class plaintiffs' discovery demands gives defendants an incentive to agree to early settlement that may treat the class action lawyers better than the class." *Thorogood v. Sears, Roebuck, & Co.*, 627 F.3d 289, 293 & 293-94 (7th Cir. 2010) (citing authorities) (denying rehearing *en banc*), *underlying opinion rev'd on other grounds*, 131 S.Ct. 3060 (2011); *accord Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). Congress, too, when it passed the Class Action Fairness Act in 2005, expressed concern about class-action settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." 28 U.S.C. § 1711 note § 2(a)(3)(A).

This settlement has the "untenable" problems complained of by this Court and Congress. The "Settlement Vouchers" here are economically and functionally indistinguishable from coupons, differing in name only. Courts and Congress criticize coupons because of the limitations of this in-kind relief, not because they dislike the word "coupon." Calling the coupon a "Settlement Voucher" while maintaining the coupon's economic limitations does not make the remedy more fair or valuable. The district court's refusal to apply the Class Action Fairness Act because class members

*might* use the coupons to purchase a product or products costing less than $10 total had no statutory basis. And even if the coupons were to be valued at face value (contradicting 28 U.S.C. § 1712, this Court's precedents, and common sense) rather than redemption value or some other discounted amount, the settlement "treat[ed] the class action lawyers better than the class": $997,000 in cash is more than 83,332 ten-dollar coupons.

It took $27 in notice and administration costs to generate each of those $10 vouchers. A104-A105. Remarkably, the district court looked at that exorbitant $2.25M administrative expenditure, and held that it made the settlement *more* valuable and thus justified a Rule 23(h) award of just under $1M. This is error, and the false legal premise led to the false conclusion that class counsel was not favoring itself by negotiating more for itself than for class members.

We know that, intentionally or not, class counsel engaged in other self-dealing putting its own interests ahead of the class's. The settlement had a clear-sailing clause; a separate fund for fees; and violated various procedural requirements of Rule 23(h). These settlement provisions—designed to protect fees from scrutiny and prevent redistribution of an excessive fee to class members—are presumptively improper. *In re Bluetooth Prod. Liab. Litig.*, 654 F.3d 935, 947-49 (9th Cir. 2011). The district court, however, accepted the economic fiction that the "separate fund" meant that the class's compensation was not reduced by the excessive fees. This is separate legal error requiring reversal.

Unlike Gupta, Kasten is not challenging the factual finding that the risks of litigation merited a small aggregate settlement. This appeal is not a complaint that the settlement should have been $200 million or $20 million or even $5 million. Rather, the

complaint is that if RadioShack is settling a case by making approximately $1.1M to $1.5M (or, generously, $1.9M) of economic value available to the class, it is unfair for class counsel to structure the settlement to capture the majority of that economic value for itself. This breach of fiduciary duty merely requires an objective analysis of whether the primary beneficiary of the settlement is class counsel or the class. It does not require any showing of collusion: the "adversarial process … extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717 (6th Cir. 2013). A settling defendant is concerned only with its total liability, and not that allocation—unless district courts are required to reject settlements where self-dealing occurs.

This settlement evinces the conflicts of interest that *Thorogood*, *Mirfasihi*, *Dry Max Pampers*, and Congress warned of. The settling parties created an exaggerated illusion of relief to rationalize excessive fees beyond what the class received. This Court should create clear precedent that district courts should not countenance such tactics.

### Preliminary Statement

Attorneys with the non-profit public-interest law-firm Center for Class Action Fairness are representing Kasten *pro bono*. Dkt. 115-2, R1171-R1173. The Center's mission is to litigate on behalf of class members against unfair class-action procedures and settlements. It has won tens of millions of dollars for class members and national acclaim. *See, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013; Brian Zabcik, *Conscientious Objector*, LITIGATION 11, Spring 2013,

*available at* http://is.gd/alm_frank2013 (redirect); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J., Oct. 31, 2011.

## Argument

### I.     The settlement, on its face, violated the Class Action Fairness Act.

**Standard of Review:** The interpretation of 28 U.S.C. § 1712, as a matter of statutory interpretation, is a question of law reviewed *de novo. See, e.g., Manning v. United States*, 546 F.3d 430, 432 (7th Cir. 2008).

"If a proposed settlement in a class action provides for a recovery of coupons to a class member," CAFA imposes a series of restrictions upon the attorney-fee recovery and settlement approval. 28 U.S.C. § 1712. This settlement provided for the recovery of coupons, but the settlement violated the terms of § 1712 by providing for attorney-fee recovery divorced from—and greatly exceeding—the limitations imposed by Congress to protect class members. The lower court's failure to apply CAFA and § 1712(a) was reversible error that permitted class counsel to capture an excessive share of the constructive common fund. While the settlement was also structured so that any reduction from the fee request would redound to the defendant rather than the class, this is just further facial evidence of settlement unfairness, as Section IV discusses below.

**A.** **A "voucher" that expires in six months and that is redeemable solely for up to ten dollars towards the purchase of a product sold by the defendant is a coupon, even if some class members may hypothetically use the coupon to obtain a free product.**

The lower court held "that the vouchers that will be awarded to class members are not 'coupons,' and that the settlement therefore does not fall under CAFA's guidelines." A20. Why? Not because of anything in the statute or dictionary or legislative history. Rather, the district court argued that the coupons were not coupons because the "$10 vouchers that class members will receive will provide enough store credit to purchase over 6,000 individual products before tax." A21. This is wrong, no matter how many other district courts have made a similar legal error at the (often unopposed) behest of settling parties hoping to avoid CAFA limitations.

Congress does not define the term "coupon" anywhere in CAFA. *See* 28 U.S.C. §1711 (definition section). "Where a statute does not define a key term, [courts] look to the word's ordinary meaning." *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1181 (9th Cir. 2013) ("*Inkjet*") (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011)). That ordinary meaning and ordinary usage does not limit "coupons" to discounts on products, but also encompasses vouchers redeemed for free products.

A coupon is "a ticket, card, or advertisement that entitles the holder to a certain benefit, such as a cash refund or a gift." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed., Houghton Mifflin Harcourt Publishing Company 2013), *available at* http://ahdictionary.com/word/search.html?q=coupon. "A coupon may be defined as a certificate or form 'to obtain a discount on merchandise or services,'" and "Webster's also defines coupons as 'a form surrendered in order to obtain an article, service or accommodation.' Coupons are commonly given for merchandise for which no cash payment is expected in exchange." *Dardarian v. Officemax N. Am., Inc.,*

No. 11-cv-00947, 2013 U.S. Dist. LEXIS 98653, at *6-*7 (N.D. Cal. July 12, 2013) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)).

Contemporary usage support this conclusion. A Google query for the phrase "Coupon for a free" returns over nine million hits (searched Mar. 28, 2014). *Cf. United States v. Costello*, 666 F.3d 1040, 1044-45 (7th Cir. 2012) (using Google search to determine common usage of "harboring"). Publications such as the *New York Times* use the word "coupon" to describe vouchers for free products. *E.g.*, Scott Cacciola, *West Looms as Knicks Keep Going South*, N.Y. TIMES, Nov. 23, 2013 ("when Smith misfired on a pair of free throws, everyone in attendance received a coupon for a free chicken sandwich as part of a fan promotion"); Jenna Wortham, *Bits: A Breakup on Facebook*, N.Y. TIMES, Jan. 19, 2009 (discussing "a popular Facebook application that offered users a coupon for a free Burger King sandwich"). *Cf. Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (looking at *Times* usage to help determine whether "sweet-tart" was descriptive). Thus, there should have been no controversy. At least in modern parlance, "[c]oupons are commonly given for merchandise for which no cash payment is expected in exchange." *Dardarian*, 2013 U.S. Dist. LEXIS 98653, at *7

So: coupons are tickets redeemable for either a whole product or a discount towards a whole product. These RadioShack vouchers are tickets redeemable for either a whole product or a discount towards a whole product. Therefore, these RadioShack vouchers are coupons.

The magistrate's reading of "coupon" to mean solely "discount" is inconsistent with the ordinary and dictionary meanings of the word. But if *arguendo* one deemed the magistrate's reading to be consistent with the word's ordinary meaning, it does not follow that this reading must be treated as the only valid definition. Where two

definitions "fall within the plain language" of a non-defined statutory term, and both interpretations apply to "the very dangers and risks that Congress meant … to address," the term should be interpreted to encompass both readings. *Smith v. United States*, 508 U.S. 223, 240-241 (1993); *see also Gomez-Perez v. Potter*, 553 U.S. 474, 481 (2008) (construing the ADEA's prohibition of "discrimination based on age" "as likewise proscribing retaliation"); *United States v. Burke*, 504 U.S. 229, 237 n.6 (1992) (noting how, for tax purposes, "personal injury" is not limited to "physical injury" but should also include nonphysical reputational injury); *Rodas v. Seidlin*, 656 F.3d 610, 627 (7th Cir. 2011) (interpreting "fee" to include both "the amount paid in exchange for services and the amount charged for those services" where "[t]here is no reason to conclude that the legislature adopted a halfway understanding of the term."). The error of the magistrate's reading of "coupon" was exacerbated by insisting that its narrow interpretation must exclude the broader dictionary meaning, which is also an ordinary reading of the word "coupon."

And whole-product coupons present most of the same problems of illusory relief as discount coupons. Section 1712 was born of the recognition that "[c]ompensation in kind is worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("*Synfuel*") (internal quotation omitted). Coupons that can be redeemed for an entire product suffer from the same shortcomings as those which can only be used for a discount: "(1) it is doubtful that they provide meaningful compensation to most class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they may force class members to do future business with the defendant." *Synfuel*, 463 F.3d at 653 (internal quotations omitted). Moreover, the "entire product" argument ignores the primary problem with

coupons: that they "mask[] the relative payment of the class counsel as compared to the amount of money actually received by the class members." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013) ("*Inkjet*") (internal quotation omitted). It "cannot be overemphasized" that "the attorneys' fees provisions of § 1712 are intended to put an end to the 'inequities' that arise when class counsel receive attorneys' fees that are grossly disproportionate to the actual value of the coupon relief obtained for the class." *Id.* (quoting SEN. REP. NO. 109-14, at 29-32 (2005), reprinted in 2005 USCCAN 3).

And even if it were true that § 1712 "coupons" only referred to vouchers used for discounts, it is a mathematical certainty that *some* of the 83,332 vouchers will be used for discounts rather than to purchase whole products. The settlement thus "provides for a recovery of [a discount] to a class member" and is subject to § 1712.

The magistrate's basis for finding that RadioShack vouchers are not coupons was that "a noncash benefit cannot be a coupon if it allows a consumer to by [sic] an entire product." A21 (quoting *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 3287154, 2008 U.S. Dist. LEXIS 112459 at *10 (N.D. Cal. Aug. 6, 2008) ("*Fleury*") (quoting *Synfuel*, 463 F.3d at 654)). This reading of *Fleury* and *Synfuel* was legal error for two reasons.

First, the magistrate misread *Fleury* by ignoring the context immediately following the quoted excerpt. *Fleury* continues from the cited excerpt to read that "the legislative history [of CAFA] suggests that even such a noncash benefit could be a coupon," concluding the opposite of what this district court found when citing *Fleury*. A21 (citing SEN. REP. NO. 109-14 (2005), which provides examples including a free crib repair kit, free spring water, and free golf gloves or golf balls).

Second, *Synfuel* does not support the district court's narrow and exclusive definition of "coupon" under CAFA. It is strange to rely on *Synfuel* in supporting the fairness of this voucher settlement when this court in *Synfuel* stated that "[o]ur confidence in the fairness of the settlement is further undermined by the agreement's bias toward compensating class members with pre-paid Letter Express envelopes instead of cash." 463 F.3d at 654. *Synfuel*, a pre-CAFA case, concluded that even if pre-paid envelopes were not coupons, that sort of in-kind relief should be treated *like* coupons. *Id*.

The issue of whether an "entire product" like the pre-paid envelopes in *Synfuel* is a coupon under CAFA did not arise in *Synfuel* and should not have arisen in this case because these RadioShack vouchers are not even entire products. The pre-paid envelopes in *Synfuel* could have been considered "entire products" because the pre-paid envelopes being claimed were products unto themselves. Here, entire products are not being claimed: vouchers redeemable within six months for a ten-dollar discount from the price of any item sold by RadioShack are being claimed. When they are used to purchase items costing less than ten dollars, they are redeemed for less than ten dollars in retail value. They are only redeemable for an entire product worth ten dollars when that product is priced at exactly ten dollars including tax. When redeemed for any item costing more than ten dollars, these vouchers cannot even be analogized to entire products. They are equivalent to the "credits" at issue in *Fleury*, because "in all likelihood," these vouchers "will often be employed as a discount to purchase items exceeding the value of the credit, rather than be used to purchase" a whole product worth exactly $10, or less. *Fleury*, 2008 U.S. Dist. LEXIS 112459 at *10.

But even when in-kind relief is not technically a coupon, *Synfuel* requires that the district court quantify the "value of the settlement offer to class members." 463 F.3d at 654. Thus, even if CAFA did not apply, the district court should have considered the value of the vouchers as discounted by their expected redemption rates, and by the expectation that they will be redeemed either for goods worth less than $10 or as mere discounts towards goods worth more than $10. But the magistrate not only failed to follow CAFA's mandate to base fees on the actual value of the coupon redeemed, it also neglected *Synfuel* by making no such effort to ascertain *ex ante* these coupons' value to the class, uncritically appraising them at their face value. A26. This appraisal was particularly bizarre when the very reason the court concluded that the vouchers were not "coupons" was that some could be redeemed for *less* than face value. A21.

**B.    Because RadioShack vouchers are coupons under CAFA, class counsel's attorneys' fees must be based on the value of the coupons that are redeemed.**

Even had the district court found that RadioShack vouchers were coupons, it declared that it would have declined to follow 28 U.S.C. § 1712(a), which states that "if a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." Instead, it calculated class counsel's fee award according to a lodestar analysis with a cross-check. A22-A27. But because RadioShack vouchers are, in fact, coupons, and because §1712(a) forbids the lodestar method where fees are "attributable to" the coupon relief, the fee award was error.

The Ninth Circuit confronted this precise statutory interpretation question in *Inkjet*:

> Subsection 1712(a) states, in relevant part, that "the portion of any attorney's fee award to class counsel shall be based on the value to class members of the coupon that are redeemed." Congress's use of the words "any" and "shall" indicate that subsection (a) is not permissive. If the district court awards "any" attorney's fees, and those attorney's fees are "attributable to the award of the coupons," then the fees award must be calculated in the manner prescribed by § 1712(a) (i.e., using the redemption value of the coupons). The crucial question, therefore, is what it means for an attorneys' fees award to be "attributable to" the award of coupons.

716 F.3d 1173, 1181 (9th Cir. 2013) (citations omitted).[2]

The Ninth Circuit held that "attributable to" plainly meant "to explain as caused or brought about by: regard as occurring in consequence of," *id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)), or, alternatively, "to regard as arising from a particular cause or source; ascribe." *Id.* (quoting AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011)). Both of these definitions describe a causal relationship. *See generally Brackett v. Peters*, 11 F.3d 78, 79 (7th Cir. 1993) ("[A]n act is a cause of an event if two conditions are satisfied: the event would not have occurred without the act; the act made the event more likely."). Therefore, "attorneys' fees are 'attributable to' an award of coupons where '*the* [singular] award of the coupons' is the condition precedent to the award of attorneys' fees." *Inkjet*, 716 F.3d at 1181 (brackets and emphasis in original) (quoting 28 U.S.C. § 1712(a)).

Here, attorneys' fees were caused by nothing if not by the settlement's promise of RadioShack vouchers, which is the only relief that class counsel obtained for the

---

[2] The Seventh Circuit similarly notes that "shall" is "mandatory and generally forecloses discretion." *Exelon Generation Co., LLC v. Local 15, IBEW*, 676 F.3d 566, 571 (7th Cir. 2012).

class. Exactly such a scenario was contemplated in *Inkjet*, which invites this Court to "consider a settlement that only provides for coupon relief. In such a case, the portion of any attorneys' fees award that is attributable to the award of the coupons must be one hundred percent. Because the settlement contains only coupons, the fees award cannot be 'attributable to' anything but the coupons." 716 F.3d at 1182.

"An attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method. …Because it is the class relief that is both a necessary and sufficient condition to an award of attorney's fees, it follows that an attorneys' fees award can only be 'attributable to,' or the consequence of, class relief, not the attorney's hard work." *Id.* Therefore, "[a]ttorney's fees are *never* 'attributable to' an attorney's work on the action." *Id.* (emphasis in original). Rather, "[t]hey are 'attributable to' the relief obtained for the class." *Id.*

Consequently, the lower court's alternative holding that "[e]ven if this were a settlement that operated subject to the coupon provision of CAFA, the lodestar method would still be appropriate under CAFA Section 1712(b)" is wrong. A23.

Section 1712(b) states that "[i]f a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action."

Reading § 1712(b) in isolation, the district court found that it could permit a lodestar award in this case. But statutory provisions should not be read in isolation. Rather, courts must construe statutes "in the context of the entire statutory scheme." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (internal quotation

omitted). When read with the adjacent subsections (a) and (c), § 1712(b) allows for lodestar in delineated circumstances, stated in § 1712(c). There, CAFA states that "if a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief,"—two different types of class benefit in a single settlement—then "that portion of the attorney's fee … that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and … that portion of the attorney's fee … that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b)."[3] But reading § 1712(b) to presume indifference between fees based on lodestar and fees based on class benefit "would read § 1712(a) completely out of the statute." *Inkjet*, 716 F.3d at 1184. *See also Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Section 1712(b) thus only applies when class counsel concedes that the coupons have no compensable value in a mixed

---

[3] As the Senate Report explained,

> In some class action settlements, the terms may be a combination of coupon relief, plus some form of equitable relief, including an injunction. In such circumstances, the settlement may also include fees for obtaining the equitable relief. Thus, if a proposed settlement provides for both coupons and equitable relief, then the portion of the award that is a contingent fee based on the value of the coupons must be calculated based on the value of redeemed coupons, and the portion not based on the value of the coupons should be based on the time spent by class counsel on the case. [SEN. REP. NO. 109-14, at 29-32 (2005).]

settlement and are willing to stand on the other components of class relief, such as a settlement for coupons and cash, or coupons and retrospective injunctive relief.

If class attorneys could obtain lodestar-based awards for themselves when they merely attain coupon relief for their clients, then coupon settlements would be placed on par with most other federal lodestar-based fee shifting statutes. The incongruity, of course, is that lodestar-based awards are believed to "encourage" a particular type of litigation practice, not discourage it. *See, e.g., Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545-47 (7th Cir. 2009). Unlike, for example, civil-rights fee-shifting under 42 U.S.C. § 1988, CAFA is intended to discourage coupon relief. *Cf. Blanchard v. Bergeron*, 489 U.S. 87, 95-96 (1989) (contrasting fee-shifting with contingent fees).

The disproportion between class counsel's fee award and the recovery it obtained for the class (discussed at length in Sections II, III, and IV below), coupled with the divergent range of possible recoveries for this class (depending upon how these vouchers are redeemed by class members), illustrates the importance of waiting until actual class benefit is ascertainable before determining the appropriate amount of attorneys' fees. The court rejected Kasten's "request that the Court delay approval of the attorneys' fee award until after the number of settlement vouchers that are redeemed by class members can be established," because it did not find "a compelling reason for delay." A27 n.2. But the compelling reason for delay is that the Congress commanded it, to ensure that if coupons were issued in a settlement, they would be coupons that class members would actually redeem. "Thus, if a settlement agreement promises the issuance of $5 million in coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer's

contingency fee should be based on a recovery of $1 million—not a recovery of $5 million." SEN. REP. NO. 109-14, at 29-32 (2005).

Congress's mandate incentivizes settling parties to design coupon relief to generate higher redemption rates among class members, who are the settlement's purported beneficiaries and the releasors of defendants' liability. Without such incentive, redemption rates are low. *See generally* James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005) ("[R]edemption rates are tiny"—"typically mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%."); Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1035 (2002) (citing study showing "[f]or the ten cases that had consumers as plaintiffs, the redemption rate was 13.1 percent."); *see also, e.g.*, *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1074 (C.D. Cal. 2010) (noting "experience in other cases where less than 2% of the class redeemed similar rebates") (citing cases); *Buchet v. ITT Consumer Fin. Corp.*, 858 F. Supp. 944 (D. Minn. 1994) (redemption rates well below 1%).

In the absence of the redemption rate information, coupons would be inappropriately valued at face (as they were here), or the settling parties would encourage an exaggerated speculative value that minimized the discount. "Cases are better decided on reality than on fiction." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (internal quotation omitted). So although the magistrate was "unwilling to require counsel to become guarantors of circumstances than [sic] cannot be dependably predicted by anyone" (A27)—quoting pre-CAFA caselaw, no less—that requirement is in any case the exact consequence Congress commanded for negotiating for a recovery of coupons.

Such a wait would not prejudice defendants or class members, whose coupon redemption would proceed unaffected. Nor would it unfairly burden class counsel given that class counsel, as a fiduciary to the class, does not have a legally cognizable interest in securing for itself fees that are disproportionate to the relief enjoyed by its clients. The parties would have known within just six months exactly how many vouchers were redeemed, and for how much total retail value. Settlement § 2.3(B) (A62). This procedure aligns class counsel's interests with that of the class; if class counsel is paid no matter how worthless the coupons it negotiates for the class are, class counsel has no incentive to ensure that their putative clients obtain something they are likely to redeem.

Even if the district court were correct that CAFA was inapplicable, its failure to consider the redemption value of the coupon was reversible error. As *In re Baby Products Antitrust Litig.* holds, the amount of class benefit actually realized is of paramount concern; there, the Third Circuit reversed a district court's approval of a settlement hypothetically valued at $35.5 million when it failed to make the inquiry and learn that the class would actually receive less than $3 million. 708 F.3d 163, 174 (3d Cir. 2013) "If the parties have not on their own initiative supplied the information needed to make the necessary findings, the court should affirmatively seek out such information." *Id.* (internal quotations omitted). This process "may also require a court to withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy." *Id.* (internal quotations omitted). Here, too, "[i]n evaluating a fee award, [the district court] should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process." *Id.* at 179 & n.13 (invoking 28 U.S.C. § 1712).

Section 1712(a) dictates the fee award in this case. Because the parties structured the settlement to avoid the § 1712(a) protections for the class to the unfair benefit of class counsel, the settlement could not be approved, and it was reversible error both to fail to apply § 1712(a) and to approve the settlement.

## II.     The $2.25 million paid to the settlement administrator to publish notice and distribute 83,332 vouchers is not a settlement benefit.

**Standard of Review:**  Approval of class settlements is reviewed for abuse of discretion. *Synfuel*, 463 F.3d at 652. "Abuse of discretion occurs when the district court commits a serious error of judgment, such as the failure to consider an essential factor." *United States v. Lowe*, 632 F.3d 996, 997 (7th Cir. 2011). And "[a] district court by definition abuses its discretion when it makes an error of law." *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (internal citation omitted).

In rejecting Kasten's argument that the settlement unfairly benefit class counsel at the expense of the class, the magistrate credited $2.25 million of settlement value to the amount paid for notice. A26 (citing A104-A105); *cf.* Dkt. 129 at R1405. This is wrong as a matter of statute, as a matter of Seventh Circuit precedent, and as a matter of public policy. Unless this Court speaks out against this disturbing trend of district courts, class counsel in future cases will easily be able to create the illusion of relief and structure settlements so that they are the primary beneficiaries at the expense of their putative clients, notwithstanding this Court's warnings in *Thorogood* and *Mirfasihi*.

Notice is a social *cost*, not a benefit. In *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), this Court recognized that notice and attorneys' fees are among the "transactions costs" that can cause a class action to be inferior to other methods of

adjudication. 654 F.3d at 751. How can they be a cost when considering whether to certify a class, but a benefit when actually incurred? If notice and administration expenses were a class benefit, then *Aqua Dots* should have reached the opposite result and held the class action superiority requirement met. It was legal error for the magistrate to contradict *Aqua Dots*.

The class benefit here is the RadioShack voucher. As more money is spent on notice, less money is left in the defendant's coffers for honoring RadioShack vouchers. Notice is not a benefit unto itself. Rather, the benefit to the class is realized when effective notice contributes to a higher claims rate. Because that benefit is reflected in the final tabulation of settlement value, it should not be double-counted by treating notice expenses as another class benefit. It is "the *incremental* benefits" that matter, "not the total benefits." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (emphasis in original).

Indeed, the defendant has every incentive to fund notice because constitutionally adequate notice is a prerequisite for the defendant to obtain the only consideration it receives from a settlement: the waiver and release of class members' claims. *See e.g.*, *Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) (permitting relitigation of class action because of inadequacy of class notice in previous settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998) (same); *Besinga v. United States*, 923 F.2d 133, 136-37 (9th Cir. 1991) (same) (citing cases). The fact that notice costs are not a class benefit is just one example of the principle that costs imposed on the defendant are not the *per se* measure of compensable class value. The standard under Rule 23(e) "is not how much money a company spends on purported benefits, but the value of those

benefits to the class." *Bluetooth*, 654 F.3d at 944 (9th Cir. 2011) (internal quotation and citation omitted).

Treating notice expenses as a class benefit perverts incentives: class counsel will effectively receive a commission on money paid to third parties. If instead attorneys' fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. And, class counsel, in pursuit of a well-deserved fee award, will have a financial interest only in maximizing the *effectiveness* of notice, and not in maximizing the price of notice as well. But if administrative expenses were deemed to be a class benefit, then counsel would be financially indifferent between claims paid to class members and notice costs paid to settlement administrators. The class, needless to say, is not "indifferent to whether funds are distributed to them or to [third parties], and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178. While *Baby Products* was talking about *cy pres*, its principle goes double for settlement administration expenses: class members surely prefer money go to charity, at least, than to the handsomely-paid settlement-administration industry.

Treating administration expenses as a class benefit also has the effect of nullifying two statutory provisions of the Class Action Fairness Act. Imagine a hypothetical settlement under the Class Action Fairness Act. The imaginary class action *Potter v. Bailey Building & Loan* settles: the defendant bank will spend $5 million in notice and administrative expenses to precisely redistribute $1 million of overcharges to the class of Bailey accountholders. Class counsel for Potter, using plaintiffs' argument here, claim that they have produced a $6 million settlement and are entitled to $2 million in fees, to be deducted from the class members' bank accounts. Such a

settlement—where class members pay $2 million to attorneys but receive $1 million in cash—would transgress the language and intent of 28 U.S.C. § 1713, which prohibits settlements where class members lose money. *Cf. Kamilewicz v. Bank of Boston*, 100 F.3d 1348, 1349 (7th Cir. 1996) (Easterbrook, J., dissenting from denial of rehearing *en banc*) (discussing similarly abusive settlement where fees were deducted from class members' accounts based on illusion of relief). But if this Court permits administrative expenses to be counted as a class benefit, the hypothetical Bailey Building & Loan settlement would pass § 1713 muster at the expense of the class members whom § 1713 is meant to protect.[4]

Similarly, take a straightforward unambiguous coupon settlement, where the class receives only coupons. If notice and administration expenses are a class benefit, then 28 U.S.C. § 1712(a) would never have applicability, because *every* settlement has notice and administration expenses. Counting the transactions cost of notice and administration expenses as a class benefit writes § 1712(a) out of the statute.

---

[4] This 7:1 ratio may seem extreme, but this settlement as approved had a remarkable ratio as well: for every $10 voucher distributed to class members, over $27 was paid to the settlement administrator and over $12 will be paid to class counsel. *Compare In re Wells Fargo Sec. Litig.*, 157 F.R.D. 467, 474 (N.D. Cal. 1994) (providing chart of ordinary expense to recovery ratios). And the $10 vouchers are not, on average, worth $10 to class members.

Indeed, class counsel would be arguing that this settlement is fair even if there had not been a single coupon claimed, much less redeemed: $1 million in fees is arguably "proportionate" to $2.25M of "benefit" if settlement administration expenses are a class benefit.

For these reasons, this Court should explicitly hold that notice and administration expenses are a transactions cost and must not be counted as a class benefit.

This legal error caused the lower court to overvalue the settlement, and underestimate the degree to which the settlement was impermissibly self-serving. When the settlement value is accurately calculated, it is plain that the settlement "treat[s] the class action lawyers better than the class" and cannot be approved.

**III.   The above errors of law caused the district court to abuse its discretion in approving a settlement structured to pay the class counsel nearly $1 million, when class members received only 83,332 ten-dollar coupons—even if the coupons are valued at full face value.**

**Standard of Review:**  Approval of class settlements is reviewed for abuse of discretion. *Synfuel*, 463 F.3d at 652. "Abuse of discretion occurs when the district court commits a serious error of judgment, such as the failure to consider an essential factor." *United States v. Lowe*, 632 F.3d 996, 997 (7th Cir. 2011). And "[a] district court by definition abuses its discretion when it makes an error of law." *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (internal citation omitted).

 When "evaluating the fairness of a settlement," the court must inquire whether it "gives preferential treatment" to persons other than class members. *Dry Max Pampers*, 724 F.3d at 718 (internal quotation omitted). For example, when the "settlement benefits class counsel vastly more than it does the consumers who comprise the class," then "[t]he conclusion is unavoidable: this settlement gives 'preferential treatment' to class counsel while only perfunctory relief to unnamed class members." *Id.* at 721 (internal

quotation omitted). Such a settlement "is not fair within the meaning of Rule 23, and the district court abused its discretion in finding the contrary." *Id.* While the ten-dollar vouchers provided to a small subset of the class here are perhaps marginally superior to the relief in *Dry Max Pampers* (if only a miniscule fraction of the statutory damages claimed: at most five cents per class member for 16 million class members), the principle remains the same. A consumer class-action settlement where proceeds are allocated to "treat the class action lawyers better than the class" violates Rule 23(e). *Cf. Thorogood*, 627 F.3d at 293; *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (settlement where attorneys receive 38.9% of constructive common fund "clearly excessive"); *Baby Prods.*, 708 F.3d at 179 (class members, not class counsel, should be the "foremost beneficiaries" of a settlement).

Here, this settlement benefits class counsel and third-party notice administrators vastly more than it does the consumers who constitute the class. Class members receive only RadioShack vouchers, a benefit that will be worth $833,320 in retail value only in the implausible event that every single claimant redeems his voucher for its maximum value—and even then only without discounting for whether the resulting in-kind relief is actually worth ten dollars to class members, who may have preferred $10 in cash to being able to purchase a $30 product for $20 or an $8 product for free. Meanwhile, class counsel enjoys $997 thousand, only a wee bit less than the $1,000,000 it had negotiated for itself under the cover of a clear-sailing agreement with RadioShack. Such an allocation—where class members will enjoy a minority of the settlement's rewards—renders this settlement unfair within the meaning of Fed. R. Civ. P. 23, and the district court abused its discretion in finding the contrary.

A consumer class-action settlement where class members are not the primary beneficiaries should be *per se* unfair under Rule 23(e). This Court has sounded this principle in multiple cases. *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293-94 (7th Cir. 2010) (warning of risk of settlements treating class counsel better than the class); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (counsel must show the district court that "they would prosecute the case in the interest of the class ... rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts."); *cf. Aqua Dots*, 654 F.3d at 752 (7th Cir. 2011) (the class cannot be certified when "the principal effect" would be "to pay the class's lawyers"); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 319 (7th Cir. 2012) (preempting settlement hearing and dismissing Rule 23.1 case because "only goal of this suit appears to be fees for the plaintiffs' lawyers"); *Crawford v. Equifax Payment Servs., Inc.*, 201 F. 3d 877, 882 (7th Cir. 2000) (rejecting settlement providing only injunctive relief and *cy pres*). What was implicit before should be made explicit now: except in extraordinary circumstances, a disproportionate allocation of settlement proceeds where only a fraction of damages are recovered precludes Rule 23(e) settlement approval.

Note that Kasten is not proposing that this rule be applied to 42 U.S.C. § 1983 class actions to enforce civil rights. In such situations, where 42 U.S.C. § 1988 or other statutory fee-shifting applies, the Seventh Circuit recognizes that fees should not be mechanically tied to recovery. "Fee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule"; "[i]n this context, we have rejected the notion that the fees must be calculated proportionally to damages."

*Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 544-46 (7th Cir. 2009) (ERISA) (internal quotations and citations omitted). While FACTA is a fee-shifting statute, the concerns of *Anderson* do not apply to a class action settlement structured so that over 99% of the class will receive no relief and the rest receive coupons worth a fraction of their statutory claims. A fee-shifting claim is not vindicated when the recovery is infinitesimal relative to the damages Congress prescribed: such a result suggests either a nuisance settlement of a "frivolous" suit or a sell-out. *Murray v. GMAC*, 434 F.3d at 952. And even in individual civil rights cases with fee-shifting and without the concern of fairly representing absent class members, this Court requires some consideration of proportionality. *E.g.*, *Cole v. Wodziak*, 169 F.3d 486, 487-88 (7th Cir. 1999).

Kasten is not alleging a sell-out of valuable claims. This is not an argument that the settlement should have been for more than the economic value of what RadioShack provided; if the parties legitimately believed that the litigation was worth only about $1.1 to $1.9 million (depending on how much and whether one discounts the coupon relief) given the risks of class certification, delay, and insolvency, then they may settle for that amount. But if the class is settling for a pittance, with over 99% of class members going entirely uncompensated while waiving statutory claims, class counsel should not be permitted to obtain for itself the lion's share of the benefit as it did here.

The unfairness of the disproportion is manifest regardless of whether the litigation was "adversarial." The district court stated that "[g]iven this Court's first-hand observations of the adversarial nature of the proceedings up to and through protracted settlement negotiations, none of the dialogue presented by the [Gupta and Vasquez] objectors suggests that the settlement was reached in a collusive way." A33. But Kasten does not, and need not, argue that there was actual collusion. A settlement

can be objectively unfair without actual collusion; impermissible self-dealing by class counsel can occur without the settling parties explicitly conniving in a smoke-filled room to unfairly treat the class. An adversarial process protects the interests of the class only with respect "to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Dry Max Pampers*, 724 F.3d at 717. Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Bluetooth*, 654 F.3d at 949 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) and *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *see also Thorogood*, 627 F.3d at 293-94 (citing literature and cases).

Thus, "[w]hile the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948. A settlement's terms can be unfair as a matter of objective disproportion as well as subjective procedural unfairness from collusion or reverse auction.

To the extent that the district court suggested that there exists a presumption of settlement approval (A8), it was wrong. Rather, "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979); *ALI Principles* § 3.05(c). In this case, especially, an even higher degree of scrutiny was required by the fact that this was a pre-certification settlement: "when class certification is deferred, a more careful

scrutiny of the fairness of the settlement is required." *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

The court's most crucial error lies in its neglect of considerations outside of the 5-factor *Synfuel* test that bear heavily on the settlement's fairness.[5] The *Synfuel* test is one helpful means to an end: determining the adequacy of the size of the payment by defendants to the class relative to the value of the release by plaintiffs. But applying the five-factor test is not an end in itself: "a list of factors without a rule of decision is just a chopped salad." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). Sister circuits have recognized that their similar multi-factor tests are not exhaustive of the Rule 23(e) inquiry. *Dry Max Pampers*, 724 F.3d at 718 (looking beyond Sixth Circuit's seven-factor test to find settlement unfair when it constitutes "preferential treatment" for class counsel); *Baby Prods.*, 708 F.3d at 174 (adding to Third Circuit's nine-factor

---

[5] That said, the lower court misapplied the *Synfuel* test. It should not have inferred settlement endorsement from the fact of a low number of objections, nor given deference to the opinions of class counsel. *Compare* A7 with AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05 *comment a* at 206 (2010) ("*ALI Principles*") *and* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH. J.L. REFORM 80 (2013). Just as it is uneconomic to bring class-action litigation as individual litigation, it is even more uneconomic to object to an unfair class-action settlement. Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007); *see also GMC Pick-Up Trucks*, 55 F.3d at 812-13. There will never be a large number of objectors in a class-action settlement, so the absence of thousands of objectors says nothing about the fairness of a settlement. And a test of whether the settling attorneys support the settlement is meaningless: if the settling attorneys did not support the settlement, there would be no settlement for the lower court to evaluate. If this Court reads the five-factor test differently, it should reconcile it with the *ALI Principles*' criticism of such readings.

fairness test a new consideration: "the degree of direct benefit provided to the class"); *Bluetooth*, 654 F.3d at 946 (consideration of eight-factor test "alone is not enough to survive appellate review"); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (finding abuse of discretion even though all factors favored final approval); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (factors in Fifth Circuit test are not sole reasons to reject settlement under Rule 23(e)); *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 165 (3d. Cir. 2006) (same for Third Circuit test). *See generally ALI Principles* § 3.05 *comment* a at 205 ("current case law on the criteria for evaluating settlements is in disarray"); *ALI Principles* § 3.05(b).

The *Synfuel* test does not include as a factor the allocation of attorneys' fees relative to class recovery in a settlement, yet allocation is still an indispensable element of settlement fairness. Here, class counsel's fees are worth about 120% of class members' recovery, even with the most generous assumption that 100% of claimants redeem their coupons for their maximum possible value and there is no discount for in-kind relief. And almost certainly the redemption rate and the redeemed value will be far less than that, and the disparity relative to class counsel's gain will be far greater. But even attorneys' fees worth 38.9% of the constructive common fund can be "clearly excessive." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). More so fees capturing over half to over 90% of the constructive common fund, as is the range here depending on the coupon redemption rate.

Accordingly, the lower court erred in approving a settlement where the attorney recovery was disproportionate to the class recovery.

**IV.    The district court erred as a matter of law when it held that the separate fund criticized by *Bluetooth* was actually a class benefit that relieved class counsel of its Rule 23(h) obligations, and when it excused violation of Rule 23(h).**

**Standard of Review:** Questions regarding the legal principles undergirding review of class settlement approval motions and fee motions are questions of law about the proper interpretation of Rules 23(e) and 23(h). Questions about the interpretation of the rules of civil procedure are reviewed *de novo. Gwin v. Am. River Transp. Co.*, 482 F.3d 969, 974 (7th Cir. 2007).

In a common fund settlement, if class counsel makes an excessive fee request disproportionate to class recovery, the resulting unfairness can be fixed by forbidding class counsel from collecting more than its reasonable share of the common fund. Unfortunately, the disproportion here cannot be fixed because class counsel not only negotiated an abusively high fee request in violation of § 1712 and this Circuit's precedents, but also negotiated self-dealing settlement provisions that shielded the fee request from scrutiny. This means that the excessive fee requires reversal of the settlement approval. *Dry Max Pampers*, 724 F.3d 713; *Inkjet*, 716 F.3d 1173; *Bluetooth*, 654 F.3d 935.

In *Bluetooth*, the Ninth Circuit flagged three particular signs of settlement unfairness that, when present, should bar final approval of a proposed settlement. 654 F.3d at 947. All three signs are present in this case. The first is "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.* (internal quotation omitted) (citing, among other cases, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000)).

The second is "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id.* (internal quotations omitted). The third is "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (citing *Mirfasihi*, 356 F.3d at 785).

As Section III above discussed, class counsel collected a disproportionate share of the proceeds because its fee request outstripped even the face value of the coupons class members would collect, and even more so the redemption value of those coupons.

The second and third red flags—of fees being insulated in a separate fund from challenge by a "clear sailing clause"—is inequitable because such a structure conceals the relationship between the fees and the class recovery, and reduces the scrutiny to which attorneys' fees might otherwise be subjected. It gives the misimpression that there is not a zero-sum relationship between the defendant's willingness to spend money on class relief versus class counsel's fees, and that the absence of fee scrutiny by the defendant is a concession to the class instead of a deprivation of adversarial process and a benefit only to class counsel.

The third red flag, also known as a "kicker"—where fees not awarded to revert to the defendants rather than to augment money going to the class—is inequitable because, complementing the segregation of fees from relief, it discourages courts from scrutinizing class counsel's fee requests (since, after all, reducing a fee award would only benefit the alleged wrongdoer) and deprives class members of funds that the defendant had already committed to pay. In this settlement, the segregation of fees

from benefits creates a *de facto* kicker because there is no mechanism that would allow reductions from the $1,000,000 agreed-upon fee award to be redirected towards class benefit.

Such a structure lures a court towards settlement and fee approval when the court would otherwise recognize the fungibility of fees and class relief and expect fee reductions to become benefit increases, or would otherwise expect to be aided in its role by defendants' scrutiny of class counsel's sought-after fee award.

Here, the lower court took the bait. "The agreed award to class counsel under the settlement is a lump sum that was negotiated after benefits to the class were established. The award will not reduce recovery by class members, and will be paid apart from relief to the class, meaning that this is not a 'common fund' settlement … and therefore does not present a zero-sum structure." A23. This is wrong.

### A.    The district court's conclusion that the allocation of fees between class counsel and the class did not "present a zero-sum structure" is contrary to law and economic reality.

"In class-action settlements, the adversarial process … extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Dry Max Pampers*, 724 F.3d at 717 (emphasis in original).

> For "the economic reality [is] that a settling defendant is concerned only with its total liability[,]" *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998); and thus a settlement's "allocation between the class payment and the attorneys' fees is of little or no interest to the defense." [*GMC Pickup Litig.*], 55 F.3d 768, 820 (3d Cir. 1995) (internal quotation marks omitted).

*Id.*[6]

     Compartmentalizing attorneys' fees from class relief has the effect of insulating those fees from scrutiny. When attorneys' fees and class relief are drawn from a single fund, reductions to the sought-after fee award redound to the class, and the defendant's total liability is unaffected. That is the zero-sum structure that benefits the class and encourages courts to scrutinize attorneys' fees, free from any concern about defendants' pocketing the difference. Otherwise, when segregated funds cause excessive fees to revert to the defendant instead of the class, it discourages the "singularly important"

---

     [6] The fact that fees may not be negotiated until after the rest of the settlement should make no difference. The settling parties are economic actors with rational expectations. Even when the negotiations over fees are severed, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the class reduces the amount the defendants are willing to pay class counsel. Because these future fee negotiations are not an unexpected surprise, the overhang of the future fee negotiations necessarily infects the earlier settlement negotiations. This is invariably at the expense of the class when there is a separate fund for fees as a matter of basic game theory, because both class counsel and defendants have an incentive to leave extra "space" for that future negotiation in a bifurcated negotiation that the parties do not need to have when they are simply negotiating for a single pot of money to go into a common fund. *Cf. Bloyed v. General Motors*, 881 S.W.2d 422, 435-36 (Tex. App. 1994); *Bluetooth*, 654 F.3d at 948 (separation of fee negotiations from other settlement negotiations does not demonstrate that a settlement with disproportionate fee proposal is fair); *see also* Brian Wolfman and Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 NYU L. Rev. 439, 504 (1996). "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award….[T]here is no such thing as a free lunch." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

"[a]ctive judicial involvement in measuring fee awards." Advisory Committee Notes on 2003 Amendments to Rule 23. Courts are, as here, so discouraged when segregated funds cause excessive fees to revert to the defendant instead of the class.

> The effect of such an arrangement is to neutralize the court's power and responsibility to pass upon the reasonableness of the amounts to be paid to plaintiffs' counsel since any reduction by the court in the amount counsel agree upon after the class settlement has been approved will simply go to reduce the aggregate amount defendant(s) will pay and will not increase the amount to be paid to the plaintiffs. As a result, there is little incentive for the judge to reduce the agreed upon fees. On the other hand, the effect of such an arrangement may be to cause counsel for the plaintiffs to be more interested in the amount to be paid as fees than in the amount to be paid to the plaintiffs.

*GMC Engine Interchange Litig.*, 594 F.2d at 1130-1131 (internal quotation omitted). Moreover, class members lose any incentive to challenge the fees in isolation. Because a fee reduction would not benefit the class, objectors cannot win attorneys' fees for challenging an excessive fee request. And if the district court approves an excessive fee request, an objector would not have standing to challenge solely the Rule 23(h) fee unless she also challenges the fundamental fairness of the allocation.

Yes, compartmentalization superficially eliminates this zero-sum relationship prospectively by splitting fees and relief into two separate funds, thus barring reductions in fees from supplementing disproportionately small class relief. But this does not solve a problem; rather, it creates one:

> If the defendant is willing to pay a certain sum in attorneys' fees as part of the settlement package, but the full fee award would be unreasonable, there is no apparent reason the class should not

> benefit from the excess allotted for fees. The clear sailing provision
> reveals the defendant's willingness to pay, but the kicker deprives
> the class of that full potential benefit if class counsel negotiates too
> much for its fees.

*Bluetooth*, 654 F.3d at 949.

In recognition of that fact, funds so compartmentalized are known as "constructive common funds." *See, e.g., Dennis*, 697 F.3d at 862-63; *GMC Pick-Up Litig.*, 55 F.3d at 820-21 (a severable fee structure "is, for practical purposes, a constructive common fund. … [P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal.").

Constructive common funds should certainly not be treated better than common funds are, when they are in fact unambiguously worse for the class by precluding a court from reallocating an excessive fee request to class members. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical). The district court committed reversible error in buying into the economic fiction that the excessive fee request did not come at the expense of the class because it was in a separate fund.

## B.    A clear-sailing agreement is another indication of a fee-driven settlement.

In addition to a disproportion between fees and class benefit and the attempted segregation thereof into separate funds, the settlement contains a "clear sailing"

agreement. A clear-sailing agreement stipulates that attorney awards will not be contested by the defendant. Settlement § 2.3(D) (A62). Such an agreement is unfair because it "by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). Here, the absence of an adversary presentation from the defendant regarding class counsel's motion for fees was made worse by the fact that class members could not contest the fee request with particularity, either, because of the parties' and the court's non-compliance with Fed. R. Civ. P. 23(h), discussed in Section IV.C below. Because its sole effect is to deprive the court of the advantages of the adversary process, the presence of a clear-sailing agreement "suggest[s], strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 525.

A clear-sailing agreement is also an indicator of settlement unfairness because it creates the opportunity for defendants to offer and class counsel to accept "a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524; *accord Bluetooth*, 654 F.3d at 948. This increases the risk of an unfair allocation of settlement benefits:

> Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class.

*Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (internal quotation and citation omitted); *accord* William D. Henderson, *Clear Sailing Agreements: A Special*

*Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing provisions").

**C.     Filing the fee motion after the objection deadline further insulated the fee request from scrutiny and violated Fed. R. Civ. P. 23(h).**

Governing class counsel's fee award, Rule 23(h) states that a "claim for an award must be made by motion … Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner," and that a "class member, or a party from whom payment is sought, may object to the motion."

Depriving objectors of an opportunity to respond to the fee the motion is *per se* insufficient notice in violation of Rule 23(h). "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date *after* the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (emphasis in original). Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* at 993-94. *See also* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("For motion by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e).").

Even before the creation of Rule 23(h) in 2003, clandestine fee awards were viewed as problematic in the Seventh Circuit. "To conceal the application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys

must therefore be given beady-eyed scrutiny by the district judge." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002).

Here, class counsel's fee application was submitted after the objection deadline, nullifying class members' right under Rule 23(h) to evaluate the particulars of class counsel's fee request and decide whether it is objectionable. The magistrate trivialized this concern, noting both that "[t]his settlement does not involve a common fund, so class members will not benefit or suffer based on changes to the fee award," and that "the Notice of Class Action Settlement in this case gave objectors a clear understanding of the amount that class counsel would receive under the settlement terms." A29-A30. This is wrong.

First, relying on the compartmentalization of fees to excuse a violation of Rule 23(h) puts the cart before the horse. The terms of the settlement must conform to Rule 23 and are subordinate to it, not vice versa. Such backwards interpretation of the Rule further illustrates the pernicious effect of fee compartmentalization. It also reflects a narrow conception of class members' interests: class members have broader interests, in assuring that their attorneys are not appropriating a disproportionate amount of the gross settlement, in being adequately represented, and in assuring the integrity of the legal processes in which they are a participant. *Cf. Martin v. Blessing*, 134 S. Ct. 402, 404-405 (2013) (Alito, J., *respecting the denial of certiorari*) ("[A class member] unquestionably has a legitimate interest in ensuring that class counsel is appointed in a lawful manner."). By the district court's theory, class members asked to share amongst themselves one peppercorn of class relief while their counsel receives $1,000,000 in attorneys' fees separated from the peppercorn by a segregated fund would have no interest in scrutinizing the attorneys' fees sought under Rule 23(h) because class

members would not benefit or suffer based on changes to the fee award: either way they'd have their peppercorn. In reality, however, class members have at least as intense an interest in a fair allocation of fees and class relief as do the courts, who in any case evaluate settlement fairness and fees in their capacity as "fiduciary of the class." *See Synfuel*, 463 F.3d at 652-53 (quoting *Reynolds*, 288 F.3d at 280)). As discussed above, an excessive fee can demonstrate settlement unfairness in allocation.

Second, as a result of class counsel's non-compliance with Rule 23(h), class members did not in fact have sufficient information to evaluate class counsel's fee request. The notice to the class contained no information about class counsel's lodestar, which was the purported basis for class counsel's fee award. Dkt. 129 at 1, 6. A fee request based on the lodestar methodology cannot be evaluated without scrutiny of the quality, quantity, and price of labor constituting the final lodestar figure.[7] The district court evidently agrees, having spent six pages of its opinion analyzing class counsel's lodestar submission. A22-A27.

~ ~ ~

For these reasons, this Court should find that the separation of fees and class relief into separate funds and the insulation of fee requests from scrutiny via clear-sailing agreements, far from saving graces, are both indicia of unfairness. It should also avoid fissure with the Ninth Circuit by holding that Rule 23(h) means what it says: motions seeking attorneys' fees must be submitted with reasonable notice prior to class members' objection deadline. A circuit split should not be created "without strong

---

[7] Although Kasten firmly maintains that using lodestar methodology was error given § 1712 (*see* Section I, above), she was nonetheless prejudiced by not being able to challenge the application of the lodestar method in the alternative.

cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 675 (7th Cir. 1995). For the reasons stated in Sections I, II, and III, the settlement can be deemed *per se* unacceptable under CAFA and Rule 23(e). But the district court's error of honoring the economic fiction over economic reality is separate reversible error, requiring remand with instructions to reevaluate the settlement and fee application accordingly.

## Conclusion

This settlement's structure did not comply with CAFA; this is reason enough to reverse settlement approval. Worse, a class action settlement where the attorneys pay themselves $1 million and less than 1% of the class (83,332 members) each receives a $10 coupon is on its face an unfair allocation under Rule 23(e), a problem that is unfixable because of the segregated fee fund that reverts to the defendant instead of the class; for this second independent reason, the Court should reverse the settlement approval. At a minimum, this Court should vacate the settlement approval and remand with instructions to evaluate the settlement under the correct standards of law.

Dated:  April 18, 2014
Corrected: May 15, 2014                    Respectfully submitted,

                                           /s/ Theodore H. Frank
                                           Theodore H. Frank
                                           CENTER FOR CLASS ACTION FAIRNESS
                                           1718 M Street NW, No. 236
                                           Washington, DC 20036
                                           Telephone:  (703) 203-3848
                                           Email:  tedfrank@gmail.com
                                           Attorneys for Appellants Jessica Kasten and
                                                   Michael Rosman (14-1470)

                                           LAW OFFICES OF DARRELL PALMER PC
                                           Joseph Darrell Palmer
                                           2244 Faraday Ave, Ste 121
                                           Carlsbad, CA 92008
                                           Telephone: (858) 215-4064
                                           Attorney for Appellant Robert Scott (14-1658)

## Statement Regarding Oral Argument

Kasten requests under Cir. R. 34(f) that the Court hear oral argument in his case because it presents significant issues concerning settlements in class action cases. These issues, regarding the requirements of Fed. R. Civ. P. 23 and CAFA, are meritorious, and many have not been authoritatively settled in the Seventh Circuit. Exploration at oral argument would aid this Court's decisional process and benefit the judicial system.

The Center for Class Action Fairness has never settled an appeal for a *quid pro quo* payment, and brings Kasten's objection and appeal in good faith to overturn an unlawful settlement and fee award. Kasten's counsel has previously argued and won landmark appellate rulings improving the fairness of class-action and derivative settlement procedure, including the leading post-CAFA coupon case. *E.g., In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). A favorable resolution in this case would improve the class action process by deterring future class-action settlements designed to benefit attorneys at the expense of their putative clients.

## Certificate of Compliance

## with Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 30(d)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, Type Style Requirements, and Appendix Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 13,806 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 12-point Palatino Linotype font.

3.      All materials required by Cir. R. 30(a) & (b) are included in the appendix.

Executed on May 15, 2014.

/s/ *Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tedfrank@gmail.com

*Attorneys for Michael Rosman and Jessica Kasten*

**Proof of Service**

I hereby certify that on May 15, 2014, I caused to be electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

*/s/ Theodore H. Frank*
Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tedfrank@gmail.com

*Attorneys for Michael Rosman and Jessica Kasten*

# Required Short Appendix

**Statement of Compliance**
**with Circuit Rule 30(d)**


All materials required by Cir. R. 30(a) & (b) are included in the Appendix of

Appellants Michael Rosman, Jessica Kasten, and Robert Scott.


/s/ Theodore H. Frank
Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tedfrank@gmail.com

*Attorney for Appellants Michael Rosman and*
*Jessica Kasten*

APPENDIX

TABLE OF CONTENTS

Appendix Page

Memorandum Opinion and Order of
The Honorable Maria Valdez
     filed February 7, 2014 (Docket No. 158) . . . . . . . . . . . . . . . . . . . . . . . A1

Final Approval Order of
The Honorable Maria Valdez
     filed February 25, 2014 (Docket No. 161) . . . . . . . . . . . . . . . . . . . . . A38

APPENDIX
TABLE OF CONTENTS

Appendix Page

Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A42

Exhibit to
Plaintiffs Mario Aliano's, Victoria Radaviciute's, and
Scott D.H. Redman's Motion for Preliminary Approval of
Class Action Settlement
        filed May 16, 2013 (Docket No. 94):

    1.      Class Action Settlement Agreement and Release,
            With Exhibit,
            [Pages 2-20]
                    dated May 16, 2013 (Docket No. 94-1) . . . . . . . . . . . . . A57

Preliminary Approval Order of
The Honorable Maria Valdez
        filed May 29, 2013 (Docket No. 101) . . . . . . . . . . . . . . . . . . . . . . . . A76

Objectors Michael Rosman's and Jessica Kasten's
Objection to Proposed Settlement
        filed August 27, 2013 (Docket No. 115) . . . . . . . . . . . . . . . . . . . . . . A80

Excerpts of Declaration of Jennifer M. Keough
Regarding Notice Dissemination and Claims Administration
[Pages 1-2, 10-12]
        filed September 10, 2013 (Docket No. 135) . . . . . . . . . . . . . . . . . . . A101

Supplemental Declaration of Jennifer M. Keough
Regarding Objectors' Claims Status,
With Exhibit,
[Pages 1-5]
    filed September 17, 2013 (Docket No. 139) . . . . . . . . . . . . . . . . . . . . A106

    <u>Exhibit</u>:

    A.    List of Objectors with Timely, Valid Claim Forms . . . . . . . A109

Transcript of Proceedings before
The Honorable Maria Valdez
[Pages 1-35]
    on September 17, 2013 (Docket No. 150)  . . . . . . . . . . . . . . . . . . . . A111

    Proceedings heard in open court . . . . . . . . . . . . . . . . . . . . . . . . . . . A113

Transcript of Proceedings before
The Honorable Maria Valdez
[Pages 36-68]
    on September 17, 2013 (Docket No. 151)  . . . . . . . . . . . . . . . . . . . . A146

    Proceedings heard in open court . . . . . . . . . . . . . . . . . . . . . . . . . . . A148

Notification of Docket Entry of
The Honorable Maria Valdez
    filed February 7, 2014 (Docket No. 157) . . . . . . . . . . . . . . . . . . . . . A179

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **RADIOSHACK CORP., a Delaware corporation,** | ) ) ) | **No. 11 C 6741** |
| **Defendant.** | ) ) | |
| **MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | **Magistrate Judge Maria Valdez** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **RADIOSHACK CORP., a Delaware corporation,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the court on Plaintiffs' Motion for Final Approval of Settlement Agreement and class counsel's request for attorneys' fees, costs, and expenses, and for approval of incentive awards for class representatives [Doc. Nos. 124 and 129]. For the reasons that follow, the motion for final approval is granted with an adjustment to the requested attorneys' fees, and the objections to the parties' proposed settlement agreement are overruled.

<u>**BACKGROUND**</u>

## I.    PROCEDURAL HISTORY

Plaintiff Scott Redman filed a class action complaint against defendant RadioShack on September 26, 2011. Plaintiff alleges that he made a purchase at RadioShack with a MasterCard credit card and that the information printed on his receipt included the expiration date of that card, in violation of the Fair and Accurate Credit Transactions Act ("FACTA"), which prohibits businesses from printing "more than the last 5 digits of the [purchase] card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g). Plaintiff brought suit on behalf of all RadioShack customers after 2008 whose receipt displayed the expiration date of the credit or debit card used in a purchase. (Compl.¶ 15.) On January 11, 2012, the District Court then presiding consolidated Redman's claims against RadioShack with those of Mario Aliano and Victoria Radaviciute based on relatedness. [Doc. No. 26.]

Beginning in March 2012, the parties engaged in several rounds of arms-length settlement negotiations before this Court. During this time, litigation proceeded before the District Court, including significant discovery motion practice. Thereafter, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 29 U.S.C. § 636(c), and the case was reassigned to this Court on May 17, 2013.

On May 16, 2013, Plaintiffs filed a motion for preliminary approval of the class action settlement agreement, requesting that the Court issue preliminary approval, approve the parties proposed notice plan, appoint Plaintiffs' counsel as settlement class counsel, and set a fairness hearing for final approval of the settlement. The Court granted preliminary approval to the parties' settlement agreement on May 29, 2013, and a fairness hearing on the proposed settlement was held on September 17, 2013.

The Settlement Agreement provides class members $10.00 vouchers, redeemable for purchases at RadioShack. The vouchers are fully transferable and expire six months after issue. Members of the settlement class include individuals who bought products or services from RadioShack using personal credit or debit cards whose electronically printed receipt contained the expiration date of the credit or debit card used for the purchase. (*See* Mem. in Supp. of Pls.' Mot., Ex. 1 ("Settlement Agreement") § 2.1.) Further terms of the settlement provide that class representatives will receive $5,000 to resolve their individual claims and as incentive awards. (*Id.* § 2.3(C).) The original settlement also provided for a *cy pres* distribution to the Boys and Girls Club in the event that disbursements paid as under the settlement totaled less than $3.25 million. (*Id.* § 2.3(E).) However, class counsel has indicated that the disbursements will exceed $3.25 million, thereby eliminating the need for a *cy pres* distribution. (Mem. in Supp. of Pls.' Mot. at 4.) Class counsel requests $1 million in fees and costs. (Settlement Agreement § 2.3(D).)

## II.     NOTICE PLAN

On May 29, 2013, the Court concluded that the notice plan proposed in the original settlement agreement was the best practicable notice under the circumstances and that it satisfied the requirements of Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B). (*See* Prelim. Approval Order at 2 [Doc. No. 101].) The Court therefore ordered that the notice plan be implemented pursuant to the terms of the original settlement agreement. (*Id.* at 3.) The parties have sufficiently complied with the Court's order approving the class notice plan and directing notice. (*See* Keough Decl. ¶¶ 10-12, 14, 16-17 [Doc. No. 135]; Zimmerman Decl. ¶ 17 [Doc. No. 133].)

"Best practicable" notice requires only the best notice "'under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013) (quoting Fed. R. Civ. P. 23(c)(2)(B)). In this case, the class settlement administrator — Garden City Group — sent written notice of the settlement by direct mail to over 4,000,000 known potential class members and emails to over 550,000 class members for whom Defendant had email addresses. (*See* Keough Decl. ¶¶ 10-11.) Notice was also published in four major news magazines with national circulations and large readerships, providing broader notice to unknown class members. (*Id.* ¶ 14.) Finally, Garden City Group operated a settlement website, *www.shacksettlement.com*, which made class notice and claim forms available to

potential class members and also established a toll-free telephone line that claimants could call to obtain claim forms and make inquiries. (*Id*. ¶¶ 15-18.)

The extensive measures taken by the parties and the class settlement administrator provided adequate notice to class members, including individualized notice to those class members that were identifiable using information available to the parties. Thus, the notice plan and its implementation satisfy due process and Rule 23.

## III.    OBJECTIONS

Three formal objections protesting the settlement have been filed by putative class members represented by counsel. On August 20, 2013, Objectors Vanita Gupta, Gregory Runyard and Charles H. Warner, Jr. filed an amended objection ("Gupta Objection") to the settlement, claiming that the terms of the settlement are unfair, that the requirements for submitting a claim had a chilling effect on potential claimants, and the requested $1 million in attorneys' fees and costs violates the Class Action Fairness Act ("CAFA"), 28 U.S.C.§ 1712. (*See* Gupta Obj. [Doc. No. 110].) On August 26, 2013, a separate objection was filed by Eduardo Vazquez, who is represented by the same counsel as the Gupta Objectors and presents virtually identical arguments. [Doc No. 112.] Objectors Michael Rosman and Jessica Kasten filed a third objection ("Rosman Objection") to the settlement on August 27, 2013, alleging that the settlement violates CAFA because the proposed attorneys' fees are disproportionately large when compared to the value of the

5

settlement to the class. [Doc. No. 115.] Additionally, the Rosman Objectors argue that class counsel violated Rule 23(h) in three ways: by failing to provide a fee motion prior to the settlement objection deadline; the *cy pres* provision of the settlement is unfair; and the incentive awards for class representatives are excessive.

In addition to the objections supported by formal briefs, eight letters sent by individual class members between June 28 and September 3, 2013, were filed protesting the settlement. Darryl Burton claims that he and military personnel on active duty might be members of the class but were not sufficiently made aware of the class action and that the proposed attorneys' fees are excessive. [Doc. No. 104.] Lawrence Penna poses several questions regarding the nature of the harm to class members and expresses concern about potential harm to RadioShack as a result of the litigation. [Doc. No. 103.] Joseph Bentley objects to the low value of the settlement vouchers and to the fact that the vouchers must be redeemed at RadioShack. [Doc. No. 106.] Neel Freedman objects to the amount of requested attorneys' fees. [Doc. No. 117.] Edward Siegel objects to the value of the settlement vouchers, to the fact that class members are only eligible to receive one voucher, regardless of the number of purchases made at RadioShack, and to the proposed attorneys' fees under the settlement. [Doc. No. 118.] Paul Spencer voices the same objections as Siegel, and also complains that there may be some difficulty identifying class members due to lost receipts, low claim value, and problems with the settlement website. [Doc. No. 118.] Robert Scott lists several objections to the

6

A6

settlement, including: (1) insufficient notice to the class; (2) the lack of a motion for attorneys' fees; (3) the need to adhere to CAFA; (4) the penalty of perjury requirement to submit a claim; (5) the size of attorneys' fees under the settlement; (6) the need for greater transparency through the settlement website; (7) the *cy pres* component of the settlement; and (8) Scott's belief that the settlement authorizes class counsel to be paid before the settlement is finalized. [Doc. No. 120.]

## **DISCUSSION**

## I.    **LEGAL STANDARD**

Pursuant to Rule 23, "the court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A). Final approval of a class settlement that is binding on class members requires a district court to determine whether "the settlement is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). Factors a court should consider in evaluating the fairness of a class action settlement include "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length, and expense of the litigation, an evaluation of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Evaluations of fairness, reasonableness, and adequacy require that the facts be viewed in a light most favorable to the settlement. *Id.* at 1199. Finally, the reviewing court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998).

## II.    FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE SETTLEMENT

### A.    Strength of Plaintiffs' Case Against the Value of the Settlement.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *see Isby*, 75 F.3d at 1200.

FACTA states that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or

8

A8

the expiration date upon any receipt provided to the cardholder at the point of the

sale or transaction." 15 U.S.C. § 1681c(g)(1).  Under FACTA, if a merchant violates

the statute as a result of negligence, a plaintiff may recover only actual damages.

See § 1681o(a)(1). "If the violation was willful, however, FACTA allows a plaintiff to

elect to recover either actual damages or statutory damages between $100 and

$1000. A court may also award punitive damages in cases involving willful

violations." *Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371, 374 (3d Cir. 2012) (citing

§ 1681n(a)(2)) (internal citation omitted).

Here, there are no actual damages; therefore, the only avenue for monetary

relief would be proof that the Defendant acted willfully. For a violation to be

"willful," the merchant must knowingly violate the statute or exhibit reckless

disregard for its statutory duty. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-57

(2007). This is a heavy burden to meet, and plaintiffs in previous FACTA class

action litigation have struggled to show conclusive evidence of willful violations.

*See, e.g., Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 489, 491 (7th Cir.

2012), *cert. denied*, 133 S. Ct. 983 (2013) (finding no willful violation of FACTA and

expressing consternation that a merchant, if ruled "willful", would have to pay "[a]n

award of $100 to everyone who has used a Shell Card at a Shell station[, which]

would exceed $1 billion, despite the absence of a penny's worth of injury"); *Shurland

v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 156-57 (N.D. Ill. 2009)

(concluding that genuine issues of material fact existed as to whether defendant

had willfully violated FACTA); *Aliano v. Joe Caputo & Sons-Algonquin, Inc.,* 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) (same); *see also In re Toys R US-Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, — F.R.D. —, 2014 WL 198665, at *8 (C.D. Cal. Jan. 17, 2014) (finding that the plaintiffs' high burden to show willfulness under the statute was a factor in favor of a determination that the settlement was fair).

Plaintiffs have acknowledged the difficulty of proving willful violations of FACTA and have accordingly settled for less than full statutory damages of $100 to $1000 available under the statute. (*See* Pls.' Final Approval Mem. at 14-15.) The time and expense of potentially litigating these issues — especially considering the possibility that Plaintiffs will not be successful in meeting the high "willful" burden — strongly suggest that settlement was a reasoned choice.

Additionally, Plaintiffs point out several indicators of financial instability at RadioShack, such as decreasing stock value and a recently lowered credit rating. These financial difficulties present the risk that Defendant may not be able to satisfy an adverse judgment in the event that the case goes to trial and the Plaintiffs prevail. Such risk necessitates a settlement that guarantees compensation for the class should RadioShack become insolvent. (*See* Markoff Decl. ¶ 30 [Doc. No. 131].) The parties have accomplished this by making the settlement agreement an executory contract through the deadline for class claims, protecting class members in the event that RadioShack files for bankruptcy. (*Id.*) Defendant's

10

A10

dwindling assets, weighed against the price of continued litigation and alternative settlement structures resulting in class awards that Defendant could not feasibly pay, suggests that the settlement confers a benefit on class members that may not otherwise be available.

In light of the difficult road to winning and securing FACTA damages, the $10 vouchers that are available to class members under the settlement agreement are adequate compensation. *See Murray v. GMAC Mortg. Corp.* 434 F.3d 948, 952 (7th Cir. 2006) ("[R]isk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty").

A settlement where class members receive a noncash benefit may nonetheless recover significant value, especially where proceeding with litigation would be tenuous. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1027 (N.D. Ill. 2000), *aff'd,* 267 F.3d 743 (7th Cir. 2001) (concluding that $6.00 and $4.25 discounts on money transfers "provide significant value to class members because they are freely transferable, immediately available, and good for 35 months in any transaction, including where Defendants are offering other sales or promotions"). The vouchers are transferable and do not require any additional purchase. More importantly, the vouchers provide immediate value to the class members, who are not otherwise guaranteed an award even following lengthy and difficult litigation.

The class will receive a substantial benefit considering the viable defenses that would be available if the case were to proceed to trial, as well as barriers to the

satisfaction of a judgment in the event that Plaintiffs were to prevail. All of the

noted attributes of the class award weigh in favor of approval of the settlement

under the first *Synfuel* factor.

**B.    Complexity, Length, and Expense of Further Litigation.**

If the Court grants final approval to the proposed settlement, class members

will receive an immediate benefit as a result of the class award. Contrary to

assertions made by objectors, resolving factual and legal questions in this case

would not be cut and dried. If the Court were to refuse to grant final approval,

initial indications are that continued discovery and motion practice would be a

difficult, long, and costly process.

The parties would have to grapple with the issues of proof surrounding the

question of willfulness under FACTA. *See* 15 U.S.C. § 1681n(a). The difficulty of

establishing the willfulness component necessary to trigger the penalty would

require significant build-up to summary judgment and probably end in trial. As one

court noted, "no FACTA class action alleging a willful failure to truncate credit card

numbers has been decided in favor of a plaintiff at the summary judgment stage."

*Shurland v. Bacci Café & Pizzeria On Ogden, Inc.*, No. 08 C 2259, 2011 WL

3840339, at *5 (N.D. Ill. Aug. 30, 2011) (discussing history of FACTA class action

litigation and describing cases denying summary judgment to class action

plaintiffs). The time and resources that would likely be spent on extended discovery,

motions for class certification and for summary judgment, and in preparation for trial weigh in favor of approving the proposed settlement.

### C.    Number of Objections to the Settlement.

Of the estimated 16,000,000 potential members of the settlement class, the Court received only fourteen objections. An additional 1,555 class members requested that they be excluded from the settlement. (Keough Decl. ¶ 21.) The fact that the vast majority of class members — over 99.99% — have not objected to the proposed settlement or opted out suggests that the class generally approves of its terms and structure. *See, e.g. In re Mexico Money Transfer Litig.*, 165 F. Supp. 2d. at 1021 ("99.9% of class members have neither opted out nor filed objections to the proposed settlements. This acceptance rate is strong circumstantial evidence in favor of the settlements.") (citations omitted); *see also In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (same).

As of September 8, 2013, Garden City Group had received and processed 83,332 timely claim forms and was continuing to process late claims. (Keough Decl. ¶ 19.) Even discounting for those who opted out (1,555), there still remains an over 98% acceptance rate from those who responded. The claimants apparently found value in the settlement, to the extent that they were willing to acknowledge the notice and engage in the claim filing process, in spite of what objectors argue to be a nominal recovery under the settlement. This large number of claims filed to this point bolsters a finding of fairness, reasonableness, and adequacy, insofar as class

members appear to be satisfied with what they are recouping. *See Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 586 (N.D. Ill. 2001) (finding that a "high participation rate" of over 100,000 claims favored a finding of fairness, reasonableness, and adequacy).

Thus, the relatively large number of claims filed and the low percentage of objections and opt-outs suggests that the class does not oppose the proposed settlement, which favors approval.

### D.    Opinion of Competent Counsel.

Courts are "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable and adequate." *Isby,* 75 F.3d at 1200. The lawyers for the parties have described their prior work in class action litigation, including decades of experience in class actions in trial and on appeal. (*See* Zimmerman Decl. ¶¶ 2-7, 14; Markoff Decl. ¶¶ 4-5.) These background qualifications are relevant to their ability to recognize cases appropriate for settlement and to craft a fair and reasonable settlement.

Further, the settlement was the result of arms-length negotiations by experienced counsel. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019-20 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"); *Alliance to End Repression v. City of Chi.*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ( "Judges should not substitute their

own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.") (internal citation omitted).

The Court's interactions with the parties through litigation and negotiations leading up to the settlement support the conclusion that class counsel's decision to settle was reasonably based on available information demonstrating likelihood of success at trial, and that a fair settlement was produced . Advocacy by class counsel throughout discovery and settlement negotiations suggests that they have competently represented their clients in reaching the settlement. Given the absence of collusion, as evidenced by time spent in arms-length negotiations under the supervision of this Court, opinion of competent counsel weighs in favor of final approval.

### E.    **Timing of the Settlement.**

The final factor used to determine whether a class action settlement is fair, reasonable, and adequate considers how far a case has progressed prior to the parties' decision to settle. This factor reveals "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980).

At this stage of the litigation, the parties have exchanged a significant amount of information in formal discovery and through informal proceedings in

settlement conferences and other negotiations. (Markoff Decl. ¶ 10.) It is

noteworthy that class action settlements have previously been approved in this

district without any formal discovery taking place. *See In re AT&T Mobility*

*Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 966-67 (finding that the

stage of the proceedings weighed in favor of final approval absent formal discovery).

The information produced by formal discovery and through other exchanges by the

parties is sufficient to enable the Court and counsel to assess the strength of

Plaintiffs' claims and to create a settlement that addresses those claims, and thus

the timing of the settlement weighs in favor of granting final approval. Accordingly,

the Court finds that each of the five *Synfuel* factors support the conclusion that the

settlement is fair, reasonable, and adequate and therefore warrants final approval.


## II.    OBJECTIONS TO THE SETTLEMENT

### A.    <u>Whether the Proposed Settlement is Fair, Reasonable, and Adequate.</u>

The Court is not persuaded by the Gupta Objectors' position that Plaintiffs

would win on the merits**.** To date, there are no definitive examples of FACTA cases

in the Seventh Circuit showing that class action plaintiffs are likely to prevail

where a defendant has knowledge of the statute's truncation requirement, but

nonetheless violates it. The Gupta Objectors rely on *Follman v. Hospitality Plus of*

*Carpentersville, Inc.*, 532 F. Supp. 2d 960 (N.D. Ill. 2007), to show that printing

credit card expiration dates on receipts with reasonable warning constitutes

16

willfulness under FACTA. But *Follman* involved a motion to dismiss, and the court expressly stated that the issue of willfulness "goes beyond the complaint, asking us to consider [the defendant's] interpretation of the statute." *Id.* at 963. On the other hand, plaintiffs have historically struggled to prove willful violations of FACTA as discussed above.

The Gupta Objectors' arguments do not sufficiently present any particular strengths of Plaintiffs' case that would tend to show willfulness. "When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 678 (7th Cir. 2009). The significant hurdles that Plaintiffs face in the event of continued litigation strongly suggest that settlement is a reasonable and beneficial outcome for both parties.

**B.     Value of the Settlement.**

The Gupta Objectors — along with several of the objectors who wrote letters independently — complain that the $10 voucher offered through the settlement is not adequate compensation because FACTA provides for statutory damages between $100 and $1000 in addition to punitive damages for violations. This argument is premised on the supposition that damage awards may only be reduced if the award exceeds constitutional limitations, citing *Murray, v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). The objectors list selected cases from outside of

17

the Seventh Circuit to support their argument that FACTA settlements around the country have produced cash settlements. The arguments presented by the Gupta Objectors are not persuasive as to the need for increased recovery among class members under the settlement.

Neither *Murray* nor any other controlling case sets out a minimum amount that must be made available to a class through settlement negotiations. The dicta in *Murray,* relied upon by objectors, concerned a class settlement that left class members with virtually nothing. *See id.* at 952. However, the decision clarified that "[w]e don't mean by this that all class members must receive [the statute's minimum damages of] $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty." *Id*. The settlement before the Court does not raise the same concerns that the Seventh Circuit dealt with in *Murray*. The considerable portion of class members who have filed claims, the vouchers' value and transferability, and Defendant's financial instability all suggest that the settlement provides adequate compensation to the class.

While the $10 value of the voucher is less than the statutory damages Plaintiffs could potentially pursue through individual FACTA claims, the context of the settlement indicates that the vouchers provide adequate compensation to class members. First, the nature of settlement is such that plaintiffs should expect to see some – and occasionally significant – reduction from the amount that they might have recovered following a full trial. "Parties to a settlement benefit by immediately

18

A18

resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (emphasis in original).

Second, class members will receive an immediate benefit under the settlement, rather than potentially waiting years for a larger recovery that may never come. "To most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 284 (7th Cir. 2002). The possibility that Plaintiffs could face years of continued litigation in this case, without a clear road to victory, mitigates the larger value of the prescribed statutory penalties under FACTA. Furthermore, possible insolvency facing RadioShack raises the value of the vouchers received immediately through the settlement agreement, where the class may receive nothing following trial. *See* Lisa M. Mizetti & Whitney R. Case, *The Coupon Can Be the Ticket: The Use of "Coupon" and Other Non–Monetary Redress in Class Action Settlements,* 18 GEO. J. LEGAL ETHICS 1431, 1433–34 (2005) ("For defendants that are having financial trouble, payments of redress to class members by coupons and similar methods can prevent bankruptcy. In these cases, the defendants keep their business alive while plaintiffs get valuable goods or services rather than a place in line at bankruptcy court.") (citations omitted).

**C.**     **Whether Coupon Provisions of the Class Action Fairness Act Apply.**

The Rosman Objectors insist that many of the elements of the proposed settlement are problematic because they run afoul of CAFA's checks on collusive and unfair settlements in class actions, especially those safeguards concerned with outsized attorneys' fees and nominal awards to class members. The Rosman Objectors specifically argue that CAFA Section 1712(a) dictates that attorneys' fees must be based on the number of vouchers ultimately redeemed by class members. Class counsel respond that this is not a coupon settlement and CAFA therefore does not apply. The Court finds that the vouchers that will be awarded to class members are not "coupons," and that the settlement therefore does not fall under CAFA's guidelines.

Under Section 1712(a) — titled "Coupon settlements" — of CAFA:

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712(a). "The first question is whether the proposed settlement 'provide[s] for a recovery of coupons' within the meaning of CAFA. While CAFA does not expressly define what a coupon is, the legislative history suggests that a coupon is a discount on another product or service offered by the defendant in the lawsuit.'" *In re S.W. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *3 (N.D. Ill. Oct. 3, 2013) (quoting *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008)). Further, another relevant consideration is

20

A20

whether the proposed in-kind consideration "force[s] future business with the defendant." *Synfuel*, 463 F.3d at 654.

The Court agrees with the Northern District of California court's interpretation of *Synfuel*, which concluded that "a noncash benefit cannot be a coupon if it allows a consumer to by an *entire* product." *Fleury*, 2008 WL 3287154, at *2 (citing *Synfuel*, 463 F.3d at 654) (emphasis in original). This case presents a noncash benefit that does not force class members to "do business" with Defendant — *i.e.* spend money — in order to take advantage of the in-kind compensation in question. The $10 vouchers that class members will receive will provide enough store credit to purchase over 6,000 individual products before tax. (*See* Markoff Decl. ¶ 25.) Because class members redeeming settlement vouchers will not be required to benefit Defendant by making purchases at RadioShack stores, the Court finds that the settlement is not subject to CAFA's fee guidelines for coupon settlement cases. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liab. Litig.*, MDL 1967, 2011 WL 1790603, at *3 (W.D. Mo. May 10, 2011) ("The term 'coupon' is not statutorily defined, but the Court notes the vouchers provided in this case are unique in that they do not necessarily require the class members expend money of their own in order to realize the benefits of the settlement"); *see also In re Toys R US-Delaware, Inc.,* 2014 WL 198665, at *11 (approving a class action settlement which included vouchers ranging in value from $5 to $30 where the store at issue had approximately 7,000 items available for purchase under $5).

Nevertheless, the Court has the responsibility to protect the class with careful oversight. *See Synfuel,* 463 F.3d at 654 (noting the need for higher judicial scrutiny where class members are rewarded with in-kind payments rather than cash). The Court concludes that the in-kind award at issue is satisfactory compensation for class members, especially considering the lack of demonstrated harm to the class as a result of Defendant's alleged violation of FACTA. *See id.* ("The fairness of the settlement must be evaluated primarily on how it compensates class members for . . . past injuries.").

### D.   **Class Counsel's Fee Request.**

As discussed above, this Court has concluded that the settlement in question is not a coupon settlement and is therefore not governed by Section 1712(a), and thus the Court is not limited by the statute in awarding fees and costs. "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Evaluating the reasonableness of proposed attorneys' fees requires courts to "balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988). In this case, the approximate fees requested are reasonable when calculated using the lodestar method and further supported by an assessment as a percentage of the settlement's value, suggesting that the fee application should be granted.

The settlement agreement stipulates that "Class Counsel shall be paid $1,000,000. . . ." (Settlement Agreement § 2.3(D).) The agreed award to class counsel under the settlement is a lump sum that was negotiated after benefits to the class were established. The award will not reduce recovery by class members, and will be paid apart from relief to the class, meaning that this is not a "common fund" settlement. *See McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) (describing common funds and distinguishing them class from settlements where payments to class members are separate from attorney compensation). The lodestar approach is the reasonable way to examine the proposed fees because this is not a common fund settlement and therefore does not present a zero-sum structure. *See Yeagley v. Wells Fargo & Co.*, 365 Fed. Appx. 886, 887 (9th Cir. 2010) (unpublished decision) ("Under a fee-shifting statute such as the FCRA . . . the lodestar method is generally the correct method of calculating attorneys' fees.") (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Even if this were a settlement that operated subject to the coupon provision of CAFA, the lodestar method would still be appropriate under CAFA Section 1712(b). *See In re S.W. Airlines Voucher Litig.*, 2013 WL 5497275, at *6 ("[28 U.S.C. § 1712(b)] says, in a straightforward way, that if a portion (percentage) of the coupon recovery is not used to determine the attorney's fee, the lodestar method shall be used.") Hence, the fairness of the proposed attorneys' fees will be assessed using the lodestar method.

23

A23

The lodestar method is calculated by multiplying a reasonable hourly rate for counsel's work by the number of hours spent working on the case. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The Court may adjust the amount awarded based on factors such as the complexity of the legal issues presented by the case, the success achieved by counsel, and whether the case was pursued in the public interest. *Id*. A court "must award a multiplier when attorney's fees are contingent upon the outcome of a case (*i.e.*, there is a possibility that the attorney will not receive any fee)." *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1988). In deciding on an appropriate multiplier, a court should make a "'a retroactive calculation of the probability of success as measured at the beginning of the litigation.'" *Id*. The Court may also consider the risk assumed by plaintiff's counsel that they may recover nothing. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991). Ultimately, "the standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id*. The fee petitioner bears the burden of establishing the reasonableness of the award requested. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Attorneys from Markoff Leinenberger, LLC request fees and costs amounting to $439,615.00 for 865.6 hours of work. (*See* Markoff Decl. ¶ 38.) Co-counsel Zimmerman Law Offices, P.C. requests an award of $352.618.50, representing 716.5 hours of work. The base amount requested by Class Counsel therefore totals $792,233.50. (*See* Zimmerman Decl., Ex. 4.) Both firms have provided declarations

24

and detailed billing statements reflecting the tasks attorneys were engaged in
during billable hours.  Rates requested by participating law firms are as follows:

- Markoff Leinenberger, LLC
    - Paul Markoff: $550 per hour
    - Karl Leinenberger: $500 per hour
    - Non-clerical legal assistance: $100 per hour

- Zimmerman Law Offices, PC
    - Thomas Zimmerman: $550 per hour
    - Adam Tamburelli: $400 per hour
    - Paralegal assistance: $170 per hour

Class Counsel have sufficiently demonstrated that their hourly rates are a
reasonable reflection of services by attorneys with similar experience, skill, and
reputation nationwide.[1] *See, e.g., Crosby v. Reg' l Transp. Auth.*, 07 C 6235, slip op.
at 4 (N.D. Ill. May 24, 2012) (approving $615 hourly rate). Class Counsel further
support their request using the Adjusted Laffey Matrix, a table prepared by the
U.S. Attorney's Office for the District of Columbia designed to estimate appropriate
legal hourly rates based on experience and location. *See Smith v. Dist. of Columbia*,
466 F. Supp. 2d 151, 155-56 (D.D.C. 2006) (describing and approving of the use of
the base Laffey Matrix). The Adjusted Laffey Matrix yields a suggested hourly rate
of $640 for attorneys with 11 plus years of experience working in Chicago, which is
higher that the rate sought by class counsel. (*See* Markoff Decl.¶ 47; Zimmerman
Decl. ¶¶ 23-25.)

---

[1]  Markoff and Zimmerman both have 17 years of practice experience, including class
actions in Illinois. (*See* Markoff Decl. ¶ 2; Zimmerman Decl. ¶ 2.)

In order to approach the agreed upon attorneys' fee amount of $1 million, the base hourly rate suggested by Class Counsel requires a lodestar multiplier of approximately 1.25. Counsel argue that the multiplier is appropriate because there was no certainty of compensation at the outset given the risk that litigation would be unsuccessful. Counsel also assert that their requested multiplier lies at the low end of typical multipliers ranging from one to four. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (noting that while multipliers between one to four have been approved, the higher end of the scale "is quite rare").

The Court finds the risk multiplier of 1.25 to be reasonable. The attorneys who took this case did so knowing that they would have to overcome several obstacles in order to achieve success. As discussed above, class counsel faced the task of establishing a "willful" violation of FACTA, as well as greater risk of non-payment due to RadioShack's financial difficulties. Both of those realities, in addition to the inherent risk borne by attorneys pursuing large, time-consuming cases on a contingent basis, suggest that class counsel faced a real risk of walking away with nothing. All told, the risk of defeat and the relative complexity of the case justify a modest multiplier of 1.25, resulting in a fee award of $990,291.88.

The appropriateness of the proposed attorneys' fee is confirmed when cross-checked as a percentage of the settlement's value. In this case, the value of the settlement was estimated to be $4,096,281.74 at the time class counsel submitted the request for final approval. (*See* Keough Decl. ¶¶ 23-24.) By that estimate, the requested attorneys' fees equal approximately 24% of the settlement's value. This

percentage falls below typical percentages in the Seventh Circuit. *See, e.g., Schulte,*
805 F. Supp. 2d at 598 (33.3% of $9.5 million settlement fund); *Taubenfeld v. AON
Corp.*, 415 F.3d 597, 598-600 (7th Cir. 2005) (30% of $7.25 million fund). The
reasonableness of the requested attorneys' fees as a percentage of the settlement
also supports approval.

As a final matter, class counsel requests $88,877.25 in additional attorneys'
fees based on the suggestion that 175 extra hours will be necessary to assist in
administering benefits to more than 82,000 claimants. Class counsel requests these
additional fees "[t]o the extent Class Counsel's lodestar is less than $1,000,000 . . . ."
(*See* Br. in Supp. of Request for Att'ys' Fees 13.) The Court has awarded nearly the
full requested fee amount, plus costs as laid out below. Because the award
approaches the full amount requested by class counsel and because the Court finds
the sum of these awards to be fair compensation for time spent on the case, the
request for additional compensation for future work is denied.[2]

---

[2] The Rosman Objectors also request that the Court delay approval of the attorneys' fee
award until after the number of settlement vouchers that are redeemed by class members
can be established in order to comply with CAFA and to more accurately reflect the value
of the settlement. The Court declines to defer the fee award, as CAFA does not govern the
settlement, and the objectors fail to offer a compelling reason for delay. *See In re Mexico
Money Transfer Litig.*, 164 F. Supp. 2d at 1034 ("[The court declines to delay the fee award]
pending a determination of the number of coupons that are actually redeemed . . . . [T]he
court . . . is unwilling to require counsel to become guarantors of circumstances than
cannot be dependably predicted by anyone.")

### E.    Class Counsel's Request for Costs.

Federal Rule of Civil Procedure 23(h) gives courts approving class action settlements the discretion to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel request an additional $6,789.66 in costs, composed of $700 in filing fees, $84 for service of process, a $5.66 messenger fee, and a $6000 expert witness fee during the course of litigation. The Court finds that the requested costs are reasonable given the scope of the litigation. The Court awards class counsel costs in the amount of $6,789.66.

### F.    Timing of the Fee Award Application.

The objectors challenge the timing of class counsel's fee application, stating that it violates Federal Rule of Civil Procedure 23(h), which requires that "[a] claim for an award must be made by motion . . . at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The objectors argue that class members were "impeded from understanding the extent of class counsel's improper fee award" because the fee application — filed September 10, 2013 — was submitted after the August 27, 2013 objection deadline. (Rosman Objection at 8-9.) The Rosman Objectors cite *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010), for the proposition that "[t]he plain text of [Rule 23] requires a district court to set the deadline for objections to counsel's fee

request on a date after the motion and documents supporting it have been filed."
(Rosman Objection at 9.)

As the Rosman Objectors acknowledge, the Seventh Circuit has not stated a
requirement that applications for attorneys' fees in class action settlements must
precede the objection deadline. The difficulties highlighted in *In re Mercury* do not
present themselves here. In that case, the Ninth Circuit was markedly concerned
with attorneys' fees being drawn from a common fund, thus compensating the
lawyers at the expense of the class and resulting in an adversarial relationship
between class plaintiffs and their attorneys. *See In re Mercury,* 618 F.3d at 994-95.
This settlement does not involve a common fund, so class members will not benefit
or suffer based on changes to the fee award. District courts in the Ninth Circuit
have declined to follow *In re Mercury* where the benefits of class members are not
directly tied to attorneys' fees awards. *See In re Lifelock, Inc. Mktg. & Sales
Practices Litig.*, No. MDL 08-1977-MHM, 2010 WL 3715138, at *9 (D. Ariz. Aug. 31,
2010) (distinguishing *In re Mercury* as a case that involved a common fund and
therefore required greater oversight); *see also Calloway v. Cash Am. Net of
California LLC*, No. 09-CV-04858, 2011 WL 1467356, at *2 (N.D. Cal. Apr. 12,
2011) ("This lack of a common fund obviates the due process concerns highlighted
by the *Mercury* court.")

Moreover, the Notice of Class Action Settlement in this case gave objectors a
clear understanding of the amount that class counsel would receive under the

29

A29

settlement terms. Ultimately, several objectors were able to challenge the proposed attorneys' fees because the class notice included the amount of the fee award. (*See*, *e.g.*, Rosman Objection at 4; Vasquez Objection at 14-15; Gupta Objection at 15; Siegel Letter at 2.) The facts that objectors in this case identified and protested the requested fees belies any alleged prejudicial impact as a result of the objection deadline falling before the fee application was received.

The Court finds that class counsel's failure to file an application for attorneys' fees prior to the objection deadline does not warrant rejection of the settlement.


**G.     Incentive Awards.**

The Rosman Objectors next argue that the $5,000 award to class representatives is too large in light of lesser recovery by non-named class members. (*See* Rosman Objection 12-13.) The Rosman Objectors are primarily concerned with the size of the incentive awards as they compare with the relief offered to individual class members under the settlement, arguing that *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), dictates that disproportionate awards to class representatives should be rejected.

Incentive awards are valuable insofar as they "induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722-723 (7th Cir. 2001). Factors relevant to deciding whether an incentive award is justified

include actions taken by the plaintiff on behalf of the class, the benefits the class reaps from those actions, and the burden class representatives take on in representing the class. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In this case, the class representatives were unlikely to come forward to act as named representatives in the absence of incentive awards due to the length of the litigation and lack of harm suffered by class members. Furthermore, the class representatives actively participated in the case. Plaintiff Redman offered strategic insights based on his experience as an attorney for venture capitalists and banks. (*See* Markoff Decl. ¶ 30.) The class representatives also acted as a group to monitor the activities of the attorneys by reviewing documents in the case and commenting on the direction of the litigation. (*See id*. ¶¶ 31-33; Zimmerman Decl. ¶ 33.)

Other approved incentive awards in similar class actions suggest that an award of $5000 to each class representative is not unreasonable. *See*, *e.g., In re AT&T Mobility Wireless Data Servs. Sales Litig.,*792 F. Supp. 2d at 1041 ($5000 to named representatives); *In re S.W. Airlines Voucher Litig.*, 2013 WL 4510197, at *11 ($15,000 to named representatives). Because the showing of substantial input by the class representatives in this case comports with the factors laid out in *Cook* and because the award is on par with others from class actions in this district, the Court finds the incentive awards to be justified.

F.    **The Appearance of Collusion.**

The Gupta and Vasquez Objectors assert that the settlement was a collusive effort between class counsel, counsel for Defendant, and the class representatives based on three remarks made during a May 8, 2013 hearing before Judge Grady. The Objectors are first concerned by class counsel's statement that RadioShack "got a good deal on the proposed settlement." (Gupta Objection at 9; Vazquez Objection at 3.)  The fact that class counsel stated that the terms of the proposed settlement were favorable to RadioShack does not preclude the possibility that counsel also fought to reach reasonable and fair terms for the class; good settlements should be designed such that the terms are agreeable to both parties.

Similarly, class counsel's statement that the proposed settlement be done with bankruptcy protections does not imply any malfeasance on the part of the attorneys. Instead, it is more likely that counsel was concerned that there would be no possible recovery for any members of the class in the event that RadioShack entered bankruptcy proceedings and was therefore expressing a desire to shield the settlement fund from the company's financial instability.

Finally, the Gupta and Vasquez Objectors express concern because class counsel indicated that a class representative was "tired of waiting." (Gupta Objection at 9; Vazquez Objection at 3.) It is reasonable that a class representative – like any member of the class – would have an interest in being compensated as soon as possible.

Given this Court's first-hand observations of the adversarial nature of the proceedings up to and through protracted settlement negotiations, none of the dialogue presented by the objectors suggests that the settlement was reached in a collusive way.

## G.    The Penalty of Perjury Requirement for Claims.

The Gupta Objectors state that the number of claims by potential class members have been artificially suppressed by language in the claim forms requiring a certification under penalty of perjury. The Objectors argue that class members were unlikely to submit claim forms given the low value of settlement vouchers when weighed against the perceived seriousness of prosecution for perjury.

The Court finds that this language was a reasonable addition to the claims process as an effort to protect against false claims. Such language is common in claim forms.  *See, e.g.*, *Schulte,* 805 F. Supp. 2d at 568 (declaration "under penalty of perjury" for claims by class members). The inclusion of a penalty of perjury requirement as a nominal safeguard against fraudulent claims does not warrant rejection of the settlement.

**H.      Exclusion and Objection Requirements.**

The Rosman Objectors argue that the exclusion and objection requirements of the settlement have further driven down objections and opt-outs by requiring that objectors deliver three copies of their exclusion request or objection to the Court and one, class counsel, and Defendant's counsel. Objectors assert that these requirements are so onerous that they should result in rejection of the settlement. The Court disagrees.

The Objectors cite no compelling authority in support of their argument that mailing three copies of a letter would drive down opposition among class members to the point of delegitimizing the settlement. *See McClintic v. Lithia Motors, Inc.*, No. C11-869RAJ, 2012 WL 112211, at *6 (W.D. Wash. Jan. 12, 2012) (denying preliminary approval to class settlement but stating that "none of the concerns the court has listed, standing alone, is fatal to the settlement"); *see also Galloway v. Kan. City Landsman LLC*, No. 11-1020-CV-W-DGK, 2012 WL 4862833, at *6 (W.D. Mo. Oct. 12, 2012) (court expressed concern with requiring class members to both mail *and* e-mail exclusion forms). Requiring objectors and opt-outs to post multiple letters allows parties to review objections and prepare responses and to assess overall levels participation in the settlement in anticipation of a final fairness hearing. The Court finds this to be a reasonable aspect of the settlement.

## I.    <u>The Settlement Release.</u>

The Gupta Objectors take issue with the release included in the settlement, whereby class members who fail to opt out waive "claims made or that could have been made by Plaintiffs in the Lawsuits or relating in any way to the alleged printing of expiration dates on credit or debit card receipts or relating in any way to FACTA (the 'Released Claims')." (Settlement Agreement § 2.4.)

The settlement's release of future claims is a common mechanism by which a settling defendant can secure peace by providing compensation to a settlement class. The language of the release is sufficiently precise to ensure that class members do not give up legitimate, unrelated claims against Defendant as a result of participating in the settlement. Furthermore, settlement releases are necessary to free defendants from duplicative causes of action. *See, e.g., In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 944 (granting final approval to a settlement agreement stipulating that plaintiffs who did not opt out would "release and forever discharge AT & T Mobility from any and all claims . . . causes of action, obligations, . . . and costs . . . relating in any way or arising out of [AT & T's alleged violation fo the Internet Tax Freedom Act]").


## J.    <u>The Settlement's Use of *Cy Pres*.</u>

The Rosman Objectors argue that the use of a *cy pres* fund in the settlement is inappropriate because it diverts funds away from the class members and because

35

A35

the proposed *cy pres* award recipient, the Boys and Girls Clubs of America, is insufficiently related to the subject matter of the case.

The concerns associated with *cy pres* funds are moot in this case. The settlement agreement stipulates that vouchers would be provided to the *cy pres* recipient only in the event that the total value of vouchers paid to class members, incentive awards, notice and administration costs, and attorneys fees and costs totaled less than $3.25 million. (*See* Settlement Agreement § 2.3(E).) The settlement's value amounting to more than $3.25 million eliminates any potential harm to class members due to the specification of a *cy pres* recipient, because no money will flow from the settlement to the Boys and Girls Club. As a result, it is unnecessary for the Court to analyze the merits of the *cy pres* language in the settlement agreement.

### K.    Objections Raised through Letter.

As a final matter, the Court does not find that objections raised informally in several letters from class members justify rejecting the settlement. First, the letter objections raise issues fully addressed by the Court in this Opinion; these include objections based on attorneys' fees, notice to the class, the value of the vouchers, the penalty of perjury provision in the claim form and the objections to the *cy pres* provision contained in the settlement agreement. Additionally, Objector Scott's argument that Class Counsel will be paid their fees before the settlement is final is inaccurate. Class Counsel's payment depends on final approval of the settlement by

36

A36

this Court and the resolution of any appeals of that approval, should they be filed.

(*See* Settlement Agreement § 1.17.)

The Court finds that none of the objections filed in opposition to the

settlement warrant rejection of the settlement, and, those objections are overruled.

## **CONCLUSION**

For the reasons above, the Court concludes that the settlement is fair,

reasonable, and adequate. The Court grants the Motion for Final Approval of the

Settlement. The Court has considered the objections and overrules them for the

reasons presented in this opinion. The Court awards class counsel fees in the

amount of $990,291.88 and costs in the amount of $6,789.66. The request for

incentive awards in the amount of $5,000 to each class representative is granted.

**SO ORDERED.**                                **ENTERED:**

_____

**DATE: February 7, 2014**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT D.H. REDMAN, individually and on behalf) of all others similarly situated, )<br>　　　　　　　Plaintiff, )<br>　　　　　　　　　)<br>　　v. 　　　　　)<br>　　　　　　　　　)<br>RADIOSHACK CORPORATION, )<br>a Delaware corporation, )<br>　　　　　　　Defendant. )<br>_____) | No. 11 C 6741<br>(consolidated with 11 C 7819)<br><br>Magistrate Valdez<br>(consent filed) | |
| MARIO ALIANO and VICTORIA )<br>RADAVICIUTE, individually and on behalf of )<br>all others similarly situated, )<br>　　　　　　　Plaintiffs, )<br>　　　　　　　　　)<br>　　v. 　　　　　)<br>　　　　　　　　　)<br>RADIOSHACK CORPORATION, )<br>a Delaware corporation, )<br>　　　　　　　Defendant. ) | | |

## FINAL APPROVAL ORDER

This matter coming before the Court on the request of Plaintiffs and the Class Members for final approval of the Class Action Settlement Agreement and Release ("Settlement Agreement"), and having considered the papers submitted to the Court and proceedings to date,

**THE COURT FINDS AS FOLLOWS**:

1.　　This Court has jurisdiction over the subject matter of the Lawsuits, the Class Representatives, the Class Members and Defendant;

2.　　Class Notice was provided as set forth in the Settlement Agreement;

3.　　The dissemination of Notice, as provided for in the Preliminary Approval Order and the Settlement Agreement, constituted the best practicable notice under the circumstances to all Class Members and fully met the requirements of Fed. R. Civ. P. 23, any and all substantive

and procedural due process rights guaranteed by the United States Constitution and any other applicable law;

    4.    1,555 persons opted out of the Settlement Agreement;

    5.    21 Class Members objected to the Settlement Agreement;

    6.    The Settlement Agreement is fair, reasonable and adequate; and

    7.    The prerequisites to a class action under Fed. R. Civ. P. 23(a) have been satisfied for settlement purposes, in that:

    (a)    there are millions of members of the Settlement Class;

    (b)    there are questions of fact and law that are common to all members of the Settlement Class;

    (c)    the claims of the Class Representatives are typical of those of the other Class Members; and

    (d)    the Class Representatives have fairly and adequately protected the interests of the Settlement Class, and have retained counsel experienced in complex class action litigation who have and will continue to represent the class adequately; and

    8.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) for settlement purposes because:

    (a)    a settlement class is superior to other available methods for the fair and efficient adjudication of this controversy; and

    (b)    questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only individual members; and

    9.    Notice of the settlement has been given to the appropriate state and federal officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715.

**THEREFORE, IT IS HEREBY ORDERED:**

    A.    All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement;

B.      The objections are overruled, the Settlement Agreement is finally approved and the Settling Parties shall implement it pursuant to its terms;

C.      Pursuant to Fed. R. Civ. P. 23(b)(3), and the Court's findings in the Preliminary Approval Order, the Court hereby finally certifies, for settlement purposes, the following Settlement Class:

> All persons who, between August 24, 2010 and November 21, 2011, paid by credit or debit card for products or services and received an electronically-printed receipt from any Store that contained the expiration date of the person's credit or debit card.

> Excluded from the Settlement Class are Defendant, its officers, employees, and attorneys; transactions conducted with business credit or debit cards; and transactions made with RadioShack-branded debit or credit cards, as those cards do not contain expiration dates;

D.      Pursuant to Fed. R. Civ. P. 23(b)(4) and 23(g), Scott D.H. Redman, Mario Aliano and Victoria Radaviciute are appointed as Class Representatives, and Markoff Leinberger LLC and Zimmerman Law Offices, P.C. are jointly appointed as Class Counsel;

E.      Class Counsel are awarded $990,291.88 in attorneys' fees and $6,789.66 in costs, which this Court finds to be reasonable.  Markoff Leinberger LLC and Zimmerman Law Offices, P.C. shall divide the award of fees and costs between them as they may agree, unless otherwise ordered by the Court.  The amount awarded shall be paid in accordance with the terms of this Settlement Agreement;

F.      $5,000 is awarded to each of the Class Representatives for their individual claims and as an incentive award for their service on behalf of the Settlement Class;

G.      The Court hereby dismisses the Lawsuits without prejudice;

H.      Such dismissal shall automatically convert to a dismissal with prejudice exactly six (6) months after (i) the date of expiration for the time for noticing a valid appeal from this

Order if an objection(s) is filed and an appeal is not noticed; or (ii) the date of final affirmation or dismissal of the last pending appeal if an appeal is noticed; provided, however, that if Defendant files for bankruptcy protection prior to six (6) months after the Effective Date, the conversion to dismissal with prejudice will be stayed until such time as the Settling Parties perform all of their respective obligations under the Settlement Agreement;

I.    Until the dismissal of the Lawsuits converts to a dismissal with prejudice pursuant to the paragraph above, all persons, who have not timely and effectively requested exclusions from the Settlement Agreement, are enjoined from filing, commencing or prosecuting any other lawsuit individually or as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction), if such other lawsuit is based on or related to the Claims and causes of action, or the facts and circumstances related to the Lawsuits;

J.    The Court shall retain jurisdiction over this matter until the dismissal converts to a dismissal with prejudice;

K.    Except as otherwise provided in the Settlement Agreement or herein, the Settling Parties are to bear their own attorneys' fees and costs; and

L.    This Court bars and permanently enjoins all Class Members, except any person who timely and effectively requested exclusion from the Settlement Agreement, from instituting or prosecuting any action or proceeding, whether class or individual, against Defendant and all Defendant Releasees for liability based upon the Released Claims.

SO ORDERED ON THIS 25th DAY OF FEBRUARY, 2014

_____
HON. MARIA VALDEZ
United States District Magistrate Judge