Nos. 14-1470 and 14-1658
Consolidated with No. 14-1471

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated,
*et al.*,

Plaintiffs-Appellees,

-vs-

RADIOSHACK CORPORATION,

Defendant-Appellee,

APPEAL OF: MICHAEL ROSEMAN, *et al.* (No. 14-1470) and
VANITA GUPTA, *et al.* (No. 14-1471),

Objectors-Appellants.

---

On Appeal from the U.S. District Court
Northern District of Illinois, Eastern Division
File Number 11 cv 6741
Magistrate Judge Maria G. Valdez, Judge Presiding

---

**BRIEF OF PLAINTIFFS-APPELLEES**

---

Paul F. Markoff
Karl G. Leinberger
Markoff Leinberger LLC
134 N LaSalle Street
Suite 1050
Chicago, Illinois 60602
(312) 726-4162
*Co-Class Counsel*

Thomas A. Zimmerman, Jr.
Adam M. Tamburelli
Frank J. Stretz
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street
Suite 1220
Chicago, Illinois 60602
(312) 440-0020
*Co-Class Counsel*

**ORAL ARGUMENT REQUESTED**

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-1470, 14-1471

Short Caption: Redman v. Radioshack Corporation

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  **[    ]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Scott D.H. Redman

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Markoff Leinberger LLC

(3)    If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

n/a

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

n/a

Attorney's Signature: s/  Paul F. Markoff    Date: March 18, 2014

Attorney's Printed Name: Paul F. Markoff

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** X  **No** _____

Address: Markoff Leinberger LLC

134 N LaSalle St Ste 150, Chicago IL 60602

Phone Number: 312.726.4162    Fax Number: 312.672.7474

E-Mail Address: paul@markleinlaw.com

rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-1470, 14-1471

Short Caption: Redman v. Radioshack Corporation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [    ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Scott D.H. Redman

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Markoff Leinberger LLC

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

n/a

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

n/a

Attorney's Signature:  s/ Karl Leinberger          Date: April 8, 2014

Attorney's Printed Name:  Karl Leinberger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ☒

Address:   Markoff Leinberger LLC

134 N LaSalle St Ste 150, Chicago IL 60602

Phone Number:  312.726.4162               Fax Number:  312.672.7474

E-Mail Address:  karl@markleinlaw.com

rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: __14-1470, 14-1471__

Short Caption: __Redman v. Radioshack Corporation__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [  ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

        __Mario Aliano and Victoria Radaviciute__

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

        __Zimmerman Law Offices, P.C.__

(3)    If the party or amicus is a corporation:

      i)   Identify all its parent corporations, if any; and

          __n/a__

      ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

          __n/a__

Attorney's Signature: __s/  Thomas A. Zimmerman, Jr.__    Date: __April 17, 2014__

Attorney's Printed Name: __Thomas A. Zimmerman, Jr.__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** __X__  **No** _____

Address: __Zimmerman Law Offices, P.C., 77 West Washington, Suite 1220, Chicago, Illinois 60602__

Phone Number: __312-440-0020__    Fax Number: __312-440-4180__

E-Mail Address: __tom@attorneyzim.com__

    rev. 01/08 AK

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 14-1470, 14-1471

Short Caption: Redman v. Radioshack Corporation

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Mario Aliano and Victoria Radaviciute

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Zimmerman Law Offices, P.C.

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

   n/a

   ii)   list any publicly held company that owns 10% or more of the party's or amicus' stock:

   n/a

Attorney's Signature:  s/  Adam M. Tamburelli         Date:  April 17, 2014

Attorney's Printed Name:  Adam M. Tamburelli

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** __✕__

Address:  Zimmerman Law Offices, P.C., 77 West Washington, Suite 1220, Chicago, Illinois 60602

Phone Number:  312-440-0020         Fax Number:  312-440-4180

E-Mail Address:  adam@attorneyzim.com

rev. 01/08 AK

# TABLE OF CONTENTS

PLAINTIFFS'-APPELLEES' JURISDICTIONAL STATEMENT ................... 1

STATEMENT OF THE ISSUES .................................................... 2

STATEMENT OF THE CASE ...................................................... 3

SUMMARY OF THE ARGUMENT ................................................ 7

ARGUMENT ............................................................................ 10

I.    The District Court Did Not Abuse its Discretion in Finding
That the Settlement Is Fair, Reasonable and Adequate. ........... 10

    A.    Standard of Review. .......................................... 10

    B.    Adoption of RadioShack's Appellees' Brief. ....................... 10

    C.    RadioShack's Precarious Economic Standing
Justified Approval. ............................................... 10

    D.    The District Court Properly Rejected the Rosman
Objectors' Argument That the Settlement Was
Improperly Structured. ........................................... 12

    E.    *Bluetooth* Is Inapposite and Misrepresented by the
Rosman Objectors. ............................................... 15

        1.    *Bluetooth* is inapposite. ............................. 15

        2.    Clear-sailing provisions are permitted. ................ 21

        3.    The Rosman Objectors misrepresent the
holding in *Bluetooth*. ................................. 21

II.    The District Court Did Not Abuse its Discretion in
Awarding Attorneys' Fees. ......................................... 23

    A.    Standard of Review. .......................................... 23

    B.    The District Court Correctly Held that the
Settlement Is Not Subject to 28 U.S.C. § 1712
Because the District Court Correctly Found that the
Settlement Vouchers Provided to the Class Are Not
"Coupons" Under CAFA. ......................................... 23

        1.    CAFA's legislative history demonstrates that
no-purchase-necessary vouchers are not
coupons. ............................................... 23

2.    The Settlement Vouchers are more analogous to gift cards, as defined by Congress. ........................ 25

3.    The plain and ordinary meaning of the term "coupon" does not include no-purchase-necessary vouchers. .................................... 26

a.    Everyday use shows that the Settlement Vouchers are not coupons. ............................... 26

b.    The Rosman Objectors' dictionary and Google search references are unenlightening. ................................. 27

c.    Case law supports the district court's finding that the Settlement Vouchers are not coupons. ....................................... 28

C.    Even If this Is a "Coupon" Settlement Under CAFA, the District Court Did Not Abuse its Discretion in Using the Lodestar Method to Calculate Attorneys' Fees and Costs. ..................................................... 36

D.    The District Court Adequately Scrutinized Plaintiffs' Request for Attorneys' Fees and Costs. ............................ 42

1.    The district court thoroughly scrutinized the request for fees. ......................................... 42

2.    The district court did not abuse its discretion in awarding the amount of fees and costs that it did. .................................................................... 42

E.    Notice Costs are Properly Considered a Settlement Benefit. ........................................................................ 46

F.    Plaintiffs' Petition for Attorneys' Fees and Costs Complied with Fed. R. Civ. P. 23(h). .............................. 50

CONCLUSION............................................................................... 58

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7) ............ 60

CERTIFICATE OF SERVICE............................................................. 61

# TABLE OF AUTHORITIES

<u>CASES</u>

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
   743 F.3d 243 (7th Cir. 2014) ................................................................passim

*Balbarin v. North Star Acquisition, LLC*,
   No. 10 C 1846, 2011 WL 211013 (N.D. Ill. Jan. 21, 2011) .......................... 55

*Blessing v. Sirius XM Radio*,
   507 Fed. Appx. 1 (2d Cir. 2012) .................................................................... 41

*Browning v. Yahoo! Inc.*,
   No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)............. 32

*Cassese v. Williams*,
   503 Fed.Appx. 55 (2d Cir. 2012) ........................................................... 50, 56

*Chaikin v. Lululemon USA Inc.*,
   No. 3:12–CV–02481–GPC–MDD, 2014 WL 1245461 (S.D. Cal. Mar.
   17, 2014)......................................................................................................... 30

*Chakejian v. Equifax Information Services, LLC*,
   275 F.R.D. 201 (E.D. Pa. 2011) ............................................................. 12, 31

*City of Livonia Employees' Retirement System v. Wyeth*,
   No. 07 Civ. 10329(RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) ........... 8

*Dardarian v. Officemax N. Am., Inc.*,
   No. 11-CV-00947 YGR, 2013 U.S. Dist. LEXIS 98653 (N.D. Cal, July
   12, 2013)................................................................................................... 32, 33

*Fednav Int'l Ltd. v. Cont'l Ins. Co.*,
   624 F.3d 834 (7th Cir. 2010) ....................................................................... 16

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
   554 U.S. 33, 47 (2008) ................................................................................... 40

*Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL
   3287154 (N.D. Cal. Aug. 6, 2008) ......................................................... 24, 32

*Florin v. Nationsbank of Georgia, N.A.*,
   34 F.3d 560, 566 (7th Cir. 1994) ......................................................... 37, 43

*Foos v. Ann, Inc.*,
   No. 11CV2794, 2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) .......... 31, 34, 35

*Gascho v. Global Fitness Holdings, LLC*,
  No. 2:11-CV-436, 2014 WL 1350509 (S.D. Ohio Apr. 4, 2014).................... 47

*Gittin v. KCI USA, Inc.*
  No. 09-CV-05843 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ........... 58

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011).................................................................. 47

*Held v. Macy's, Inc.*,
  25 Misc. 3d 1219(A), 901 N.Y.S.2d 906 (N.Y. Sup. Ct. 2009) ..................... 29

*In re Aqua Dots Products Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011)........................................................................ 48

*In re Bisphenol–A (BPA) Polycarbonate Plastic Products Liab. Litig.*,
  No. MDL 1967, 2011 WL 1790603 (W.D.Mo. May 10, 2011) ...................... 31

*In re Bisys Securities Litig.*
  no. 04 Civ. 3840(JSR), 2007 WL 2049726 (S.D.N.Y. 2007)......................... 54

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) ....................................................................... 44

*In Re HP Inkjet Printer Litig.*,
  716 F.3d 1173 (9th Cir. 2013) ........................................................ 32, 39, 40

*In re HP Inkjet Printer Litig.*,
  No. 5:05-CV-3580 JF, 2011 WL 1158635 (N.D. Cal. 2011) ......................... 33

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
  280 F.R.D. 364 (N.D. Ill. 2011) ................................................................... 48

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*
  MDL 08-1999, 2010 WL 4386552 (E.D. Wis. Oct. 28, 2010) ...................... 58

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
  733 F.Supp.2d 997 (E.D. Wis. 2010) ..................................................... 32, 58

*In re Lifelock, Inc. Mktg. & Sales Practices Litig.*
  MDL 08-1977-MHM, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010)............. 57

*In re Mercury Interactive Corp. Sec. Litig.*
  618 F.3d 988 (9th Cir. 2010) .................................................................. 55, 57

*In re Mexico Money Transfer Litig.* (W. Union & Valuta),
  164 F.Supp.2d 1002 (N.D. Ill. 2000)............................................................ 48

*In re Mexico Money Transfer Litig.*,
  267 F.3d 743 (7th Cir. 2001) ....................................................................... 48

*In re Southwest Airlines Voucher Litig.*,
  No. 11 C 8176, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013)....................passim

*In re TransUnion Corp. Privacy Litig.*,
  664 F.3d 1081 (7th Cir. 2011) ...................................................... 57

*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012) ........................................................ 42

*Lonardo v. Travelers Indem. Co.*,
  706 F.Supp.2d 766 (N.D. Ohio 2010)................................. 8, 47, 50

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001)...................................................... 48

*McGee v. Continental Tire North America, Inc.*,
  2009 WL 539893 (D.N.J. Mar. 04, 2009)...................................... 47

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F.Supp.2d 806 (E.D. Wis. 2009) .................................... 19, 21

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F.3d 781 (7th Cir. 2004) ........................................................ 19

*Morey v. Louis Vuitton N. Am., Inc.*,
  No. 11CV1517 WQH BLM, 2014 WL 109194 (S.D. Cal. Jan. 9, 2014)........ 30

*Perez v. Asurion Corp.*,
  No. 06–20734, 2007 WL 2591180 (S.D. Fla. Aug. 8, 2007) .......................... 41

*Pickett v. Sheridan Health Care Ctr.*,
  664 F.3d 632 (7th Cir. 2011) ........................................................ 12

*Radosti v. Envision EMI, LLC*,
  760 F.Supp.2d 73 (D.D.C. 2011) .................................................. 41

*Reibstein v. Rite Aid Corp.*,
  761 F.Supp.2d 241 (E.D. Pa. 2011) ....................................... 31, 33

*Reynolds v. Beneficial Nat. Bank*,
  288 F.3d 277 (7th Cir. 2002) ........................................................ 49

*Saccoccio v. J.P. Morgan Chase Bank, N.A.*,
  --- F.R.D. ---, No. 13-21107-CIV, 2014 WL 808653 (S.D. Fla. Feb. 28, 2014)............................................................................................................. 54

*Sanders v. Jackson*,
  209 F.3d 998 (7th Cir. 2000) ........................................................ 27

*Schacht v. Brown*,
  711 F.2d 1343 (7th Cir. 1983) ...................................................... 41

*Schellong v. U.S. I.N.S.,*
   805 F.2d 655 (7th Cir. 1986) ........................................................... 24

*Schulte v. Fifth Third Bank,*
   805 F.Supp.2d 560 (N.D. Ill. 2011) ............................................. 48

*Seebrook v. The Children's Place Retail Stores, Inc.,*
   No. C 11-837 CW, 2013 WL 6326487, (N.D. Cal. Dec. 4, 2013) ............ 31, 35

*Shames v. Hertz Corp.,*
   No. 07-CV-2174-MMA WMC, 2012 WL 5392159 (S.D. Cal. Nov. 5,
   2012) ........................................................................................ 31

*Sherman ex rel. Sherman v. Koch,*
   623 F.3d 501 (7th Cir. 2010) ........................................................... 26

*Silverman v. Motorola Solutions, Inc.,*
   739 F.3d 956 (7th Cir. 2013) ........................................................... 23

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ..................................................... 22, 47

*Swift v. DirectBuy, Inc.,*
   No. 2:11-CV-401 TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) ...... 48, 49

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.,*
   463 F.3d 646 (7th Cir. 2006) ...................................................passim

*Tang v. Pita Inn Inc.*
   no 11 C 3833 (N.D. Ill.) .................................................................. 55

*Todd v. HB Windows and Doors, Inc.*
   no. 10 C 4986 (N.D. Ill.) ................................................................ 55

*U.S. v. Bates,*
   96 F.3d 964 (7th Cir. 1996) ............................................................. 25

*U.S. v. Costello,*
   666 F.3d 1040 (7th Cir. 2012) ..................................................... 27, 28

*United States v. Torres,*
   170 F.3d 749 (7th Cir. 1999) ........................................................... 10

*Williams v. Rohm and Haas Pension Plan,*
   658 F.3d 629 (7th Cir. 2011) ........................................................... 57

*Yeagley v. Wells Fargo & Co.,*
   365 Fed.Appx. 886 (9th Cir. 2010) ................................................. 12

## STATUTES

15 U.S.C. § 1693l-1 .......................................................... 25

28 U.S.C. § 1712 ........................................................ passim

## OTHER AUTHORITIES

2005 U.S.C.C.A.N. 3, 17 (2005) ................................... 24, 28

Frank H. Easterbrook, "Text, History, and Structure in Statutory Interpretation,"
17 *Harv. J.L. & Public Policy* 61, 67 (1994) .............................. 27

Note, "Looking It Up: Dictionaries and Statutory Interpretation,"
107 *Harv. L. Rev.* 1437 (1994) ..................................... 27

Notes of Advisory Committee on 2003 Amendments to Rule 23 ............. 21, 52

*S. Doc. No. 109-14*, 109th Cong., 1st Sess. (2005) ............................. 24, 28, 40

## RULES

Circuit Rule 28 ........................................................... 1

Fed. R. App. P. 28 ...................................................... 10

Fed. R. Civ. P. 23 ................................................... passim

Fed. R. Civ. P. 54 ...................................................... 51

**PLAINTIFFS'-APPELLEES' JURISDICTIONAL STATEMENT**

Pursuant to Circuit Rule 28(b), Plaintiffs-Appellees Scott D.H. Redman, Mario Aliano, and Victoria Radaviciute ("Plaintiffs") state that the jurisdictional statements in the corrected appellants' briefs of Objectors-Appellants Michael Rosman, Jessica Kasten, and Robert Scott ("Rosman Objectors"), and Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr., and Eduardo Vasquez ("Gupta Objectors") are complete and correct.

# STATEMENT OF THE ISSUES

I.    Whether the district court properly exercised its discretion in finding that the $10 no-purchase-necessary Settlement Vouchers that would allow class members to purchase among over 6,000 products from RadioShack without spending any additional money were not "coupons" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712, *et seq*.

II.   Whether the district court correctly held that section 1712(b) of CAFA permits the use of the lodestar method to determine the reasonableness of Class Counsel's attorneys' fees, even if the $10 Settlement Vouchers are deemed to be coupons.

III.  Whether the district court properly exercised its discretion in finding that RadioShack's payment of $2.25 million for class notice and administration of claims constitutes a benefit to the class.

IV.   Whether the district court properly exercised its discretion in granting in part Plaintiffs' petition for attorneys' fees, costs, and incentive awards after carefully scrutinizing the requested amount under the lodestar methodology.

V.    Whether the district court properly exercised its discretion in finding that Plaintiffs' petition for attorneys' fees, costs, and incentive awards complied with Fed. R. Civ. P. 23(h), when Plaintiffs' fee motion was filed prior to the class objection deadline, notice was provided to all parties, notice was directed to class members in a reasonable manner, and objectors had the opportunity to examine and object to the petition prior the district court ruling on it.

## STATEMENT OF THE CASE

To avoid duplication, Plaintiffs adopt RadioShack's statement of the case as set forth in its appellees' brief. However, Plaintiffs submit the following supplemental information for the Court's consideration.

On May 29, 2013, the district court entered an order preliminarily approving the class action settlement in this case ("Settlement"). Ros. A76.[1] The Settlement Agreement executed by the parties provides for a Settlement Amount of up to $5,350,000, with minimum voucher and cash distribution (for notice, administration, attorneys' fees, costs and incentive awards) of $3,250,000. Ros. A61-63.

The Settlement Agreement also provides that Class Counsel would be paid $1,000,000 for attorneys' fees and costs, subject to approval by the district court. Ros. A62. The Settlement Agreement did *not* provide that any portion of a fee award is tied to or attributable to the number or value of Settlement Vouchers issued or redeemed.

Pursuant to the district court's preliminary approval order, class notice was sent by direct mail to 4,397,238 class members for whom RadioShack had physical addresses, by e-mail to 558,075 class members for whom RadioShack had e-mail addresses, by publication in four (4) national

---

[1] Ros. A_ refers to the Rosman Objectors' Appendix.

magazines on five (5) different dates (*People* twice, and *Parade*, *USA Weekend* and *Time* once), and by internet publication on RadioShack's website, Class Counsel's website, and a separate settlement website operated by the Class Settlement Administrator ("CSA"). R. 135, pp. 5-10.[2]

As a result of this class notice campaign, the CSA received 18,007 telephone calls to its toll-free number established for the Settlement, the CSA's settlement website received 136,733 visits, and the CSA mailed out 4,055 notice packets to class members. R. 135, pp. 9-10. Out of the roughly 16,000,000 class members, only 21 (*i.e.*, 0.0001%) class members objected to the settlement. Ros. A104.

The district court held a fairness hearing on the proposed settlement on September 17, 2013. Ros. A53. Counsel for the Rosman Objectors and Gupta Objectors appeared at the fairness hearing. Ros. A111-12. In addition to the lengthy written objections filed by the Rosman Objectors and Gupta Objectors, responsive briefs filed by Plaintiffs and RadioShack, and supplemental briefs filed, the district court heard lengthy oral argument from all counsel. Ros. A111-178.

In Plaintiffs' briefs and during oral argument, Plaintiffs informed the district court that a significant factor in the negotiation of the relief to the class members was RadioShack's precarious and deteriorating financial

---

[2] R. ___ refers to the docket entry number in the district court.

position.  Specifically, Plaintiffs reported in detail the substantial decline in the price of RadioShack's stock prior to and during the pendency of the case, RadioShack's significant operating loss in 2012, the rapid decline of RadioShack's cash and cash equivalents, the then-recent downgrade of RadioShack's corporate credit rating by Standard & Poor's to *non-investment grade* along with the warning that "a default could occur within 12 months, absent a major business turnaround or increased liquidity," and the analysts' predictions that RadioShack could be out of business in less than 2 years.  R. 130, pp. 10-13.  Plaintiffs also offered expert testimony providing further details of RadioShack's woeful financial condition.  R. 134.

On February 7, 2014, the district court issued its memorandum opinion and order overruling all objections and approving the Settlement as fair, reasonable and adequate.  Ros. A37.  The district court's memorandum opinion and order, consisting of 37 pages, addressed the facts and evidence presented to it in the case, standards for approval of class action settlements, RadioShack's financial condition, and the objections to the settlement.  Ros. A1-37.

With respect to Class Counsel's request for attorneys' fees and costs, (R. 129-130), the district court analyzed Class Counsel's billing entries and billing rate, found their rates to be reasonable, and awarded Class Counsel attorneys' fees in the amount of $990,291.88 and costs in the amount of

$6,789.66—which was less than the $1,000,000 provided for in the Settlement Agreement. Ros. A24-25, A37. Notably, although the district court analyzed the reasonableness of Class Counsel's request for attorneys' fees and costs under the lodestar method, the district court also determined that the award of attorneys' fees and costs was reasonable after performing a "cross-check" in relation to the value of the settlement to class members. Ros. A22-23.

## SUMMARY OF THE ARGUMENT

The district court appropriately exercised its discretion in approving the terms of the Settlement and award of negotiated attorneys' fees and costs as fair, reasonable, and adequate.

Before approving the Settlement, the district court was presented with substantial information in the form of briefs and lengthy oral argument about the terms of the settlement, and the district court reviewed those terms in light of the strength of the merits of Plaintiffs' case, the risks Plaintiffs faced proceeding forward with their case, RadioShack's precarious and rapidly deteriorating economic standing, and relevant standards for approval of class action settlements. Additionally, in reviewing Plaintiffs' petition for attorneys' fees and costs, the district court was provided with Class Counsel's detailed billing records and the amount of the relief class members were to receive. The district court was also presented with considerable argument from two groups of objectors who argued that both the terms of the Settlement and the attorneys' fees and costs provision were unfair.

Considering all of those factors, the district court properly exercised its discretion and determined that the Settlement—which provides relief to over 83,000 class members who filed valid claim forms—met the standards for final approval. The district court set forth its basis for its holding that the Settlement is fair, adequate, and reasonable in meticulous detail in its

7

memorandum opinion and order granting final approval of the Settlement. The district court's memorandum reveals that the court highly scrutinized the terms of the Settlement, the objectors' arguments, and Plaintiffs' request for attorneys' fees and costs.

The district court properly found that the no-purchase-necessary Settlement Vouchers class members will receive are not coupons under § 1712 of the Class Action Fairness Act, 28 U.S.C. § 1712 ("CAFA"), and, as such, any directives section 1712 provides for awarding attorneys' fees are inapplicable here. The district court further properly held that, even if the vouchers were coupons, determining a fee award using the lodestar method is allowed. Finally, the district court properly found that under the lodestar method, cross-checked against settlement value, Plaintiffs were appropriately awarded $990,291.88 in attorneys' fees and $6,789.66 in costs.

Neither the Rosman Objectors[3] nor Gupta Objectors provide any valid support for their arguments that the district court abused its discretion. Instead, the objectors misrepresent the holdings of the cases on which they

---

[3] The Rosman Objectors are represented by the Center for Class Action Fairness ("CCAF"), a firm whose practice consists exclusively of objecting to class action settlements generally and attorneys' fee awards specifically. *See* http://centerforclassactionfairness.blogspot.com/. *See also City of Livonia Employees' Retirement System v. Wyeth*, No. 07 Civ. 10329(RJS), 2013 WL 4399015, *5 (S.D.N.Y. Aug. 7, 2013) ("the [CCAF] objection on this count does not seem grounded in the facts of this case, but in her and her attorney's objection to class actions generally."); *Lonardo v. Travelers Indem. Co.,* 706 F.Supp.2d 766, 785 (N.D. Ohio 2010) (finding a brief filed by [CCAF], objecting to a class action settlement to be "long on ideology and short on law.").

rely (most of which were decided in other circuits), misapply the standards for final approval, and argue that this Court should institute a new standard for class action settlements that no court has ever accepted. This Court can and should disregard these arguments, and affirm the district court's grant of final approval of the Settlement.

## ARGUMENT

I. **The District Court Did Not Abuse its Discretion in Finding That the Settlement Is Fair, Reasonable and Adequate.**

A. **Standard of Review.**

The standard of review of the District Court's approval of the settlement is abuse of discretion. *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

B. **Adoption of RadioShack's Appellees' Brief.**

Plaintiffs adopt RadioShack's appellees' brief in order to avoid duplication of arguments. Fed. R. App. P. 28(i); *see also United States v. Torres*, 170 F.3d 749 (7th Cir. 1999).

C. **RadioShack's Precarious Economic Standing Justified Approval.**

In approving the Settlement, the trial court properly considered the most important factor: weighing the strength of the merits against the amount offered in the Settlement. *Synfuel*, 463 F.3d at 653. A subset of this factor is assessing the expected value to the class of continued litigation. *Id*. RadioShack's dire, and deteriorating, financial condition was a critical consideration in assessing this factor.  Ros. A10-11.  In assessing the expected value to the class of continued litigation, the trial court correctly found RadioShack to be in financial distress.  Ros. A19, A26.  This distress

jeopardized its ability to pay any judgment, particularly if it filed for bankruptcy. Ros. A19.

RadioShack's perilous finances created a genuine concern about its ability to provide any benefit to the class. R. 130, pp. 10-13. RadioShack's stock price declined from $12.60 per share when the lawsuit was filed to $2.14 on the day the parties reached a tentative settlement. R. 130, p. 11. The stock price declined more than 85% since 2010. R. 130, p. 11. RadioShack's available cash and cash equivalents declined from $535.7 million on December 31, 2012 to $215 million by the Fairness Hearing on September 17, 2013. R. 130, p. 11. Only two months before the Fairness Hearing, Standard & Poor's lowered RadioShack's credit rating in the *non-investment grade* ranking to CCC, and warned that "a default could occur within 12 months, absent a major business turnaround or increased liquidity." R. 130, p. 12. Plaintiffs provided uncontested expert testimony concerning RadioShack's grim outlook. R. 134. At least two analysts predicted that RadioShack could be out of business in less than 2 years. R. 130, p. 12. Against this backdrop, the trial court correctly found that the proposed class benefit was fair.

**D.    The District Court Properly Rejected the Rosman Objectors' Argument That the Settlement Was Improperly Structured.**

In this case, RadioShack agreed to pay attorneys' fees and costs in the lump sum of $1 million to Class Counsel, which was negotiated after agreeing upon the benefit to the class, and which did not diminish the class recovery. Ros. A23.  Thus, it was not a common fund settlement, and the district court properly analyzed the reasonableness of Plaintiffs' request for attorneys' fees and costs under the lodestar method, as set forth more fully in Section II.C, *infra.  See Pickett v. Sheridan Health Care Ctr*., 664 F.3d 632, 639 (7th Cir. 2011); *see also Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 216 (E.D. Pa. 2011) ("the lodestar method is more commonly applied in statutory fee-shifting cases"); *Yeagley v. Wells Fargo & Co.*, 365 Fed.Appx. 886, 887 (9th Cir. 2010) (same).

After the district court reviewed Plaintiffs' petition for attorneys' fees, costs, and incentive awards, the Rosman and Gupta Objectors' briefs in opposition to that award, and heard lengthy oral argument by the Rosman and Gupta Objectors, the district court granted Plaintiffs' petition in part, and awarded Class Counsel fees in the amount of $990,291.88 and costs in the amount of $6,789.66.  Ros. A37.  In doing so, the district court devoted approximately six (6) pages of detailed analysis to Plaintiffs' request,

12

evaluating factors such as the hours spent by each firm, each attorney's billing rate, and the justification for said rates.  Ros. A22-28.

Despite the thoroughness of the district court's analysis, the Rosman Objectors argue that because the Settlement Agreement was structured so that the negotiated attorneys' fees and costs were separate from class relief (instead of structuring the Settlement as a common fund), Plaintiffs' petition for attorneys' fees and costs was *ipso facto* shielded from scrutiny by the district court.  Rosman Br. § IV.  The Rosman Objectors completely disregard the district court's detailed analysis of Plaintiffs' petition in its memorandum opinion and order, as well as the substantial amount of information the district court had at its disposal in reaching its decision.

Accepting the Rosman Objectors' argument would require this Court to render a bright-line rule that *only* common fund settlements are appropriate, a standard for which the Rosman Objectors offer no authority.  Indeed, the thrust of the Rosman Objectors' argument is that because the class relief and attorneys' fees were not coupled together in a common fund, it was impossible for the district court to properly consider the reasonableness of the negotiated attorneys' fees and costs.

The Rosman Objectors' argue that "[c]ompartmentalizing attorneys' fees from class relief has the effect of insulating those fees from scrutiny." Rosman Br., p. 39.  Regardless of structure, however, courts are duty-bound

to scrutinize fee requests as part of their scrutiny of the proposed settlement. *Synfuel*, 463 F.3d at 652. This Court does not need to look far to see that the Rosman Objectors' statement is patently untrue and belied by the district court's lengthy analysis and its decision *not* to award Plaintiffs' the full amount of the requested attorneys' fees and costs.

Unsurprisingly, the Rosman Objectors cite no authority for their argument that the structure of the Settlement in this case was *per se* unreasonable because it did not create a common fund, and otherwise fail to demonstrate that the district court abused its discretion in evaluating the Settlement and awarding Plaintiffs attorneys' fees and costs.

The disingenuousness of the Rosman Objectors' argument is made obvious by their definitive claim that "funds so compartmentalized are known as 'constructive common funds.'" Rosman Br., p. 41 (citations omitted). Yet, in the *Bluetooth* case upon which the Rosman Objectors lean so heavily, the Ninth Circuit explicitly rejected the same argument that the same attorneys made in that case, stating that "we do not go so far as to hold that the district court must treat the package as a constructive common fund for purposes of analyzing the reasonableness of the fee award…." *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 949 (9th Cir. 2011). The Rosman Objectors misrepresent as law an argument made by their counsel in *Bluetooth* that the Ninth Circuit explicitly rejected.

Many class action settlements are structured such that the attorneys' fees are separated from the class relief, and courts routinely find these settlements to be fair, adequate, and reasonable.  The capacity of courts to adequately assess a fee request is illustrated by the district court's scrutiny of the Settlement in this case.  The Rosman Objectors proffer no persuasive reason for this Court to effect a dramatic shift in well-settled law by changing the standards under which class action settlements are evaluated.

### E.  *Bluetooth* Is Inapposite and Misrepresented by the Rosman Objectors.

#### 1.  *Bluetooth* is inapposite.

The crux of the Rosman Objectors' argument under *Bluetooth* is that the *Bluetooth* court identified three warning signs that the Rosman Objectors claim are all present in this case: (a) class counsel receiving a disproportionate portion of the settlement as compared to the class; (b) the settlement including a "clear-sailing" provision, pursuant to which a defendant agrees not to contest a fee request up to a certain amount; and (c) the settlement including a reversion clause, pursuant to which undistributed settlement funds are repaid to a defendant.  654 F.3d at 947.

Unlike the situation in *Bluetooth*, where the class members received nothing more than safety information, the class members here received a $10

Settlement Voucher.  Therefore, the Rosman Objectors' passing reference to this point can be easily rejected, as there is no disproportionality concern.

The Rosman Objectors allege that this case included a reversion clause, pursuant to which any reduction in fees would inure to RadioShack's benefit rather than benefitting the Class.  Rosman Br., pp. 36-38.  Notably, the Rosman Objectors did not raise this issue before the district court, so this issue is waived on appeal.  *See Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("[A] party who fails to adequately present an issue to the district court has waived the issue for purposes of appeal.").

If this Court decides to reach this issue, the Court should reject the Rosman Objectors' assertion that the Settlement contains a reversion (referred to by the Rosman Objectors as a "kicker" clause), because it is blatantly false.

The Settlement Agreement provides as follows:

> 2.2  **Settlement Amount / Escrow Amount.**  Defendant agrees to settle all claims covered by this Settlement Agreement for a combination of cash and Settlement Vouchers having a combined value of up to $5,350,000 (the "Settlement Amount"), $3,250,000 of which (the "Escrow Amount") will be paid to Escrow Agent and placed in escrow within two (2) business days after execution of this Settlement Agreement ("Escrow Account")….

> 2.3  **Disbursement.**  As set forth in the Escrow Agreement, Escrow Agent shall disburse the Escrow Amount from the Escrow Account as follows:

A.  <u>Notice and Administration Costs</u>.  Costs of Class Notice (set forth in paragraph 2.5) and Administration (set forth in paragraph 2.9) shall be paid by Escrow Agent at the time the Class Settlement Administrator requests such payment.

B.  <u>Class Recovery</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), each Class Member who submits a Valid Claim Form will receive a Settlement Voucher in the amount of $10.00 redeemable at any Store or at www.RadioShack.com for any product or service, subject to *pro rata* reduction identified below.

...

Each Settlement Voucher issued to a Class Member pursuant to this paragraph 2.3(B) or to the *cy pres* recipient pursuant to paragraph 2.3(E) shall have a value of $10.00.  If claims for Settlement Vouchers, multiplied by $10.00, totals an amount in excess of the Settlement Amount remaining after all the deductions that are to be made pursuant to paragraphs 2.3(A), 2.3(C) and 2.3(D) have been taken into account, the amount of the Settlement Vouchers shall be reduced *pro rata*, and their value shall be reduced *pro rata* as well.  The total value of all Settlement Vouchers issued up to the Escrow Amount shall be wire-transferred to Defendant on the date the Settlement Vouchers are sent to Participating Claimants.

C.  <u>Payment to Class Representatives</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), Class Representatives shall be paid $5,000 each for their individual claims and as an incentive award for their services as Class Representatives.

D.  <u>Payment to Class Counsel</u>.  If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), Class Counsel shall be paid $1,000,000 (18.69% of the Settlement Amount) as compensation for their reasonable attorneys' fees and costs as set forth in paragraph 2.9 below.  Defendant shall not contest any request by Class Counsel for an amount equal to or less than $1,000,000 (18.69% of the Settlement Amount) as payment for attorneys' fees and costs.

17

E. <u>Cy Pres</u>. If the Court enters a Final Approval Order (<u>see</u> paragraph 2.8 below), and if the total amount paid under paragraphs 2.3(A), 2.3(B), 2.3(C) and 2.3(D) totals less than $3,250,000, Settlement Vouchers having a combined total value that is equivalent to the difference between such total and $3,250,000 will be provided to the independent, 501(c)(3) organization of the Boys & Girls Club of America (or such other independent, non-profit 501(c)(3) organization that the Parties agree to and the Court approves)....

Ros. A61-A63; R. 130, pp. 3-4.

As is clear from the Settlement Agreement, no reversion was ever possible, because, despite a cap on exposure, RadioShack did not create a $5.35 million common fund from which a reversion could come. RadioShack did pay $3.25 million into escrow, but none of that could revert to RadioShack, because the Settlement Agreement required a minimum payment of $3.25 million. Therefore, even if the district court were to award attorneys' fees and costs of less than $1 million, the reduction would not go to RadioShack and would not affect class recovery.

If enough claims were received, such that claims payments, notice and administration costs and agreed upon incentive awards and attorneys' fees and costs exceeded the $5.35 million cap, a reduction in fees from the agreed upon $1 million could have reduced or eliminated a *pro rata* reduction in Settlement Voucher face value, but that scenario was unlikely given expected claims rates, and it never came to pass. The result that came to pass is RadioShack does not have to provide enough Settlement Vouchers to bring

the Settlement Amount to the full $5.35 million cap, but it will not get a reversion.  Put simply, the claimants here will not be impacted one iota by the amount of a fee award.

Regardless, as this Court has recognized, a reversion provision does not *presumptively* render a settlement unfair, and actually "might encourage a more generous settlement offer" by a defendant.  *See Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F.Supp.2d 806, 813 (E.D. Wis. 2009) ("Indeed, a reverter clause can be a useful tool in negotiating a settlement when the total number of eventual claimants is unknown.").

No reported case—not even *Bluetooth*, the foundation of the Rosman Objectors' argument—has held that a reversion clause is absolutely prohibited in class action settlements.  Moreover, the fact that the district court in this case carefully scrutinized Plaintiffs' request for attorneys' fees and costs and awarded Plaintiffs less than the negotiated amount demonstrates that Plaintiffs' petition was not insulated from scrutiny, as the Rosman Objectors claim.

Rather, unlike the district court in *Bluetooth*,[4] the district court here honored its obligation to assure itself that the fees awarded were not

---

[4] As set forth in Section I.E,3, *infra*, the *Bluetooth* court overturned approval of the class settlement in that case not because it had the three warning signs, but

19

unreasonably high.  In its memorandum opinion and order, the district court found that "[i]n this case, the approximate fees requested are reasonable when calculated using the lodestar method *and further supported by an assessment as a percentage of the settlement's value*, suggesting that the fee application should be granted."  Ros. A22 (emphasis added).  This conclusion was reached after the district court analyzed the fairness of the Settlement as a whole, as well as the objections by the Rosman and Gupta Objectors.  Ros. A1-A22.

Thus, even if *Bluetooth* were binding here, the district court's award of attorneys' fees and costs in this case would still be appropriate because the district court adequately justified its award, including consideration of the benefit provided to the class members.[5]  Given the district court's careful scrutiny and comprehensive findings and reasoning, there is no basis for a finding that the district court abused its discretion in granting Plaintiffs' request for attorneys' fees and costs.

---

because the district court there failed to detail the basis for its ruling.

[5] Moreover, as set forth above, the Settlement in this case is distinguishable from the settlement in the *Bluetooth* case in that the Settlement in this case provided direct compensation to class members, whereas the settlement in *Bluetooth* provided nothing to class members.  *Bluetooth,* 654 F.3d at 947.  Therefore, the disproportionality concern noted by the Ninth Circuit is absent here.

### 2.      Clear-sailing provisions are permitted.

The one *Bluetooth* "warning sign" present in this case is a "clear-sailing" provision. However, "clear-sailing" provisions are not only allowable, but they deserve deference from courts. The Advisory Committee notes that "[c]ourts have also given weight to agreements among the parties regarding the fee motion." *See* Notes of Advisory Committee on 2003 Amendments to Rule 23, Subdivision (h). The Committee went further to state that "[t]he agreement by a settling party not to oppose a fee application up to a certain amount, for example, *is worthy of consideration*, but the court remains responsible to determine a reasonable fee." *Id.* (emphasis added); *see also McKinnie*, 678 F.Supp.2d at 813 ("The reverter clause and clear sailing provision do not render the settlement agreement unfair or unreasonable when viewed against all other relevant considerations.").

### 3.      The Rosman Objectors misrepresent the holding in *Bluetooth*.

Aside from *Bluetooth* not being binding on this Court and otherwise inapposite, the Rosman Objectors misrepresent the Ninth Circuit's holding in that case—a misrepresentation that is especially egregious considering the Rosman Objectors' counsel here also represented the objectors in *Bluetooth*.

The Rosman Objectors represent that the Ninth Circuit "flagged three particular signs of settlement unfairness that, when present, should bar final

21

approval of a proposed settlement…. All three signs are present in this case." Rosman Br., p. 36. As set forth above, all three signs are definitively not present here. Nonetheless, the Ninth Circuit did *not* conclude that if those three enumerated "signs of unfairness" were present, final approval of a settlement is presumptively barred. Rather, the Ninth Circuit held that "confronted with these multiple indicia of possible implicit collusion, the district court had a special 'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high….' " *Bluetooth*, 654 F.3d at 947, citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). In other words, the Ninth Circuit's ultimate conclusion was that even if all three factors are present in a settlement, a settlement can still be approved as long as the district court applies appropriate scrutiny to the settlement.

The Ninth Circuit reversed and remanded the case in *Bluetooth* so that the district court could re-evaluate the fairness of the $800,000 attorneys' fee award because it found that the district court failed to adequately explain why that fee was justified when class members received nothing. *Bluetooth*, 654 F.3d at 949-950. The Ninth Circuit did *not* hold that the $800,000 award in that case was unreasonable based on the amount of hours expended or that the award was unfair because "warning signs" were present. Unlike *Bluetooth*, the district court below provided a detailed explanation for granting final approval of the Settlement.

22

## II.     The District Court Did Not Abuse its Discretion in Awarding Attorneys' Fees.

### A.     Standard of Review.

This Court reviews attorneys' fee and cost awards in a class action under an abuse of discretion standard.  *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir. 2014); *see also Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).  The Rosman Objectors' proffered standard of review, *de novo*, for their arguments in section IV of their appellants' brief is incorrect.

### B.     The District Court Correctly Held that the Settlement Is Not Subject to 28 U.S.C. § 1712 Because the District Court Correctly Found that the Settlement Vouchers Provided to the Class Are Not "Coupons" Under CAFA.

The district court correctly ruled that the $10 Settlement Vouchers in this case are not "coupons" under CAFA, thus not subjecting this settlement to CAFA's attorneys' fees provisions.[6]  Ros. A20.

#### 1.     CAFA's legislative history demonstrates that no-purchase-necessary vouchers are not coupons.

Unfortunately, CAFA does not define the term "coupon," but the meaning of "coupon" may be determined using CAFA's legislative history and

---

[6] The Rosman Objectors incorrectly state that the "district court argued that the coupons were not coupons."  *See* Rosman Br., p. 13.  District courts find, hold and reason, but Magistrate Valdez's role as a neutral judge does not lend itself to arguing a particular position.

other authoritative sources. *See Schellong v. U.S. I.N.S.*, 805 F.2d 655, 662 (7th Cir. 1986) ("Although the term ["persecution"] is not defined in the Immigration and Nationality Act, it is explained in its legislative history.").

As the district court found, "the legislative history suggests that a coupon is a discount on another product or service offered by the defendant in the lawsuit." Ros. A20 (*quoting In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, *3 (N.D. Ill. Oct. 3, 2013) (Kennelly, J.) (*quoting Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, *2 (N.D. Cal. Aug. 6, 2008) (*citing S. Doc. No. 109-14*, 109th Cong., 1st Sess. (2005)))). CAFA's legislative history shows that "coupon" refers to a *discount* off of the purchase of a higher-priced good or service, providing the following example of a "coupon" settlement emanating from this Circuit: consumers in a state court class action alleged that the beer goblets served at a Chicago restaurant chain were misrepresented to be 12 ounces, when they held only 10.6 ounces. In settlement, the company will give away 50,000 coupons for $1 off every subsequent $5 purchase at its 22 Chicago-area restaurants. *S. Doc. No. 109-14*, *16*, 109th Cong., 1st Sess. (2005), 2005 U.S.C.C.A.N. 3, 17 (2005). Congress expressed concern that such settlements compelled class members to spend out-of-pocket at a defendant's business to get a settlement benefit (a partial price abatement). Unlike the

24

Congressional example, the voucher here does not require class members to spend additional money in order to attain the class benefit.

### 2.    The Settlement Vouchers are more analogous to gift cards, as defined by Congress.

The Settlement Vouchers function as gift cards, not coupons.  To define a term used in a statute, courts can look to the construction of similar terms used in other statutes.  *See*, *e.g.*, *U.S. v. Bates*, 96 F.3d 964, 968 (7th Cir. 1996).  In the Electronic Fund Transfers Act, another federal consumer protection statute, Congress defined a "store gift card" as

> [A]n electronic promise, plastic card, or other payment code or device that is-- (i) redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo; (ii) issued in a specified amount, whether or not that amount may be increased in value or reloaded at the request of the holder; (iii) purchased on a prepaid basis in exchange for payment; and (iv) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

15 U.S.C. § 1693l-1(a)(2)(C).

Congress defined "gift certificate" to have the same substantive definition as "store gift card."  *Id.* § 1693l-1(a)(2)(B).  The $10 voucher here meets Congress' definition of "store gift card."  Because Congress knows how to use and define "gift cards" (vouchers), its failure to use or define "coupons" to encompass them in CAFA indicates it did not intend for "coupons" to encompass vouchers and gift cards.

### 3. The plain and ordinary meaning of the term "coupon" does not include no-purchase-necessary vouchers.

Ultimately, the Court must use the plain and ordinary meaning of "coupon" to decide whether the Settlement Vouchers are coupons. *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 524 (7th Cir. 2010). That meaning can potentially be derived from a number of sources, as addressed below.

### a. Everyday use shows that the Settlement Vouchers are not coupons.

Perhaps the best indicators of the plain and ordinary meaning of "coupon" are the Sunday paper, advertising flyers in the mail, and online coupon web sites, such as www.retailmnot.com, www.coupons.com and www.valpak.com. The newspapers, flyers and these web sites are the centers of the coupon universe, and the coupons they provide are for *discounts* off larger purchases made with out-of-pocket funds, not vouchers for free products or services with no purchase necessary.

Moreover, in a variety of retail stores (*e.g.*, Walgreens), there are displays where consumers can purchase cards with pre-set values for use at a single retailer (*e.g.*, Red Lobster, Best Buy). These displays are marketed as "gift card" displays, not "coupon" displays. Logically, these retailers do not identify these displays as "coupon" displays because it would be incongruous with the common usage of the term.

### b. The Rosman Objectors' dictionary and Google search references are unenlightening.

"[D]ictionaries must be used as sources of statutory meaning only with great caution." *U.S. v. Costello*, 666 F.3d 1040, 1043 (7th Cir. 2012). "The choice among meanings [of words in statutes] must have a footing more solid than a dictionary—which is a museum of words, an historical catalog, rather than a means to decode the work of legislatures." *Id.* (*quoting* Frank H. Easterbrook, "Text, History, and Structure in Statutory Interpretation," 17 *Harv. J.L. & Public Policy* 61, 67 (1994)).

> It makes no sense to declare a unitary meaning that "the dictionary" assigns to a term. There are a wide variety of dictionaries from which to choose, and all of them usually provide several entries for each word. The selection of a particular dictionary and a particular definition is not obvious and must be defended on some other grounds of suitability. This fact is particularly troubling for those who seek to use dictionaries to determine ordinary meaning. If multiple definitions are available, which one best fits the way an ordinary person would interpret the term?

*Id.* (*quoting* Note, "Looking It Up: Dictionaries and Statutory Interpretation," 107 *Harv. L. Rev.* 1437, 1445 (1994) (footnote omitted)); *see also Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) ("[W]hen interpreting this statute our task is to find the ordinary and usual meaning of the term [ ], not the broadest possible meaning of the term [ ].").

The Rosman Objectors' reliance on dictionary definitions is not helpful, because dictionaries include every definition of a word, rather than its plain

and ordinary meaning.  Additionally, the Rosman Objectors' proposed construction contravenes a clear legislative intent that "coupons" are price abatement discounts off of a larger purchase.  *See e.g.*, *S. Doc. 109-14, 20.*, 2005 U.S.C.C.A.N. 3, 20 (noting examples such as where "[i]n a settlement of a state court class action against Packard Bell alleging a product defect, class members were offered a six-month extended service contract for which they were each required to pay $25").

The Rosman Objectors' alternative attempt to define coupons using a Google search is similarly unhelpful. They assert that a Google search for "coupon for a free" resulted in over 9 million hits.  Rosman Br., p. 14.  As this Court recognizes, the number of Google search hits does not go far enough; the searcher looking a bit deeper will find that words, as they are actually used, have connotations in context.  *Costello*, 66 F.3d at 1044.  A volume of 9 million hits on Google does not illuminate the plain and ordinary meaning of "coupon," especially since the actual Google results refer to coupons allowing for "free" items with additional purchases (*e.g.*, buy one get one "free" or get a "free" item with a minimum purchase).

### c.   Case law supports the district court's finding that the Settlement Vouchers are not coupons.

This Court has held that a "whole product" is not a coupon, stating, "We recognize that the pre-paid envelopes are not identical to coupons, since

they represent an entire product, not just a discount on a proposed purchase."[7] *Synfuel,* 463 F.3d at 654.  In that case, the class benefit was up to four pre-paid Airborne shipping envelops or up to $30 in cash.  *Id.* at 649. This Court found that a whole product class benefit was not a "coupon."  *Id.* at 654.

The plain and ordinary meaning of "coupon" is a document that entitles customers to a partial price abatement (discount) when they spend money out-of-pocket for a good or service.  The abatement could be a percentage discount or a fixed amount (*e.g.,* $20 off with a minimum purchase of $50). *See*, *e.g.*, *Held v. Macy's, Inc.*, 25 Misc.3d 1219(A), 901 N.Y.S.2d 906 (N.Y. Sup. Ct. 2009) ("the language of the coupon at issue makes clear that it was a typical store coupon—akin to the free discount coupons disseminated to the general public in store flyers—and not the functional equivalent of cash.  The front of the coupon states '$15 off your next Macy's Card purchase of $50 or more' and its back states 'Discount will be deducted from the regular, sale or clearance price as applicable.…  Nowhere on the coupon is it suggested that the $15 off could be used for anything other than a discount on merchandise

---

[7]  While *Synfuel Technologies* noted that CAFA did not apply there, it recognized that CAFA's "coupon" provisions were highly relevant with respect to the level of scrutiny required for the class settlement, *i.e.,* that "in-kind" settlements are subject to increased scrutiny.  *Id.* at 654.  Here, the district court acknowledged and applied such a standard.  Ros. A22.

purchased (not returned) totaling $50 or more."). The consumer must spend money out-of-pocket to realize the benefit of the "coupon."

In no plausible scenario is a 100% "discount" a coupon. In this Settlement, the Settlement Vouchers provide for a 100% discount enabling class members to obtain among more than 6,000 "entire products" from RadioShack.

The Rosman Objectors concede, as they must, that numerous other courts have relied on the same reasoning that the district court here employed in concluding that CAFA did not apply to no-purchase-necessary vouchers. Rosman Br., p. 13. *See*, *e.g.*, *Chaikin v. Lululemon USA Inc.*, No. 3:12–CV–02481–GPC–MDD, 2014 WL 1245461, *5 (S.D. Cal. Mar. 17, 2014) ("[T]he Court adopts the approach of the line of federal district court cases distinguishing credit vouchers, which require no additional purchase to redeem and therefore operate like cash, from coupons, which provide a discount or subsidy from a larger purchase and thus fall under the restrictions of section 1712(e)."); *Morey v. Louis Vuitton N. Am., Inc.*, No. 11CV1517 WQH BLM, 2014 WL 109194, *8 (S.D. Cal. Jan. 9, 2014) ("The Court finds that the Merchandise Certificates [for $41] are vouchers and not coupons, and CAFA does not apply."); *Seebrook v. The Children's Place Retail Stores, Inc.*, No. C 11-837 CW, 2013 WL 6326487, *2 (N.D. Cal. Dec. 4, 2013) ("the Court finds that the ten dollar certificate is not a coupon and thus does

not trigger the provisions of 28 U.S.C. § 1712."); *Foos v. Ann, Inc.*, No. 11CV2794, 2013 WL 5352969, *3 (S.D. Cal. Sept. 24, 2013) (voucher for $15 of free merchandise is not a coupon); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, *16 (S.D. Cal. Nov. 5, 2012) ("Persuasive authority supports Defendants' position that CAFA does not apply to settlements, such as this one, that offer the option between cash and vouchers for free products (as opposed to discounts on products where class members are required to purchase the products and pay the difference between the full and coupon-discounted price)."); *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 255-56 (E.D. Pa. 2011) ($20 gift card that can buy thousands of products is not a coupon); *In re Bisphenol–A (BPA) Polycarbonate Plastic Products Liab. Litig.*, No. MDL 1967, 2011 WL 1790603, *3 (W.D. Mo. May 10, 2011) ("the Court notes the vouchers provided in this case are unique in that they do not necessarily require the class members to expend money of their own in order to realize the benefits of the settlement"); *Chakejian*, 275 F.R.D. at 215 ("[C]ourts have generally considered a coupon settlement to be one that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant.  I do not find this case to present a coupon settlement, as class members do not have to purchase a product in order to obtain a benefit." (internal citations and quotations omitted)); *In re*

31

*Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733
F.Supp.2d 997, 1007 (E.D. Wis. 2010) ("Warranty benefits are not coupons, to
be sure, since they represent an entire product, not just a discount on a
proposed purchase." (internal quotations omitted)); *Fleury*, No. C-05-4525
EMC, 2008 WL 3287154, *2 ("While CAFA does not expressly define what a
coupon is, the legislative history suggests that a coupon is a *discount* on
another product or service offered by the defendant in the lawsuit." (emphasis
in original)); *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL
4105971, *5 (N.D. Cal. Nov. 16, 2007) ("the in-kind relief offered in this case
is not a 'coupon settlement' because it does not require class members to
spend money in order to realize the settlement benefit.").

The sole case cited by the Rosman Objectors holding otherwise is
*Dardarian v. Officemax N. Am., Inc.*, No. 11-CV-00947 YGR, 2013 U.S. Dist.
LEXIS 98653, *8 (N.D. Cal, July 12, 2013), which found merchandise
vouchers to be coupons, in part, because they had a 90-day redemption
deadline, could not be combined with other vouchers or coupons, could not be
used to buy gift cards, and could not be used to pay for prior purchases. The
*Dardarian* court held as it did despite citing no cases supporting its
conclusion, but citing many cases to the contrary.[8]    Nonetheless, the

---

[8] The *Dardarian* court cited *In Re HP Inkjet Printer Litig.,* 716 F.3d 1173 (9th Cir.
2013), but the Ninth Circuit did not have a "voucher" case there.  It had a true

Settlement Vouchers here function as gift cards, can be stacked, are fully transferrable, do not require class members to spend any additional money and can be used to pay for anything.  Ros. A62, A176-177.  They have a 6-month redemption deadline, but they can be used to buy gift cards with no expiration date.  Thus, *Dardarian* is inapposite.

Contrary to *Dardarian*, the plaintiffs in *Reibstein* asserted a FACTA claim against a national drug store chain, 761 F.Supp.2d at 244-46, resulting in a class settlement providing to class members a $20 gift card usable at Rite Aid.  The court found that the gift cards, which did not require class members to spend money out-of-pocket, had "actual cash value … to a class of (mostly) regular customers, have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers, including class members, have need."  *Id.* at 255-56.  In approving the settlement, the court found that the gift cards were not coupons, reasoning:

> Under these circumstances, the gift cards are more like "cash" than "coupons." In fact, because the class members are likely to shop at Rite Aid again, they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award.

---

coupon case, because the e-credits there could not buy whole products.  *In re HP Inkjet Printer Litig.*, No. 5:05-CV-3580 JF, 2011 WL 1158635, *6 (N.D. Cal. 2011) rev'd and vacated, 716 F.3d 1173 (9th Cir. 2013).  The distinction is evidenced by the many post-*HP Inkjet* district court cases within the Ninth Circuit, cited above, holding that vouchers are not coupons.

*Id.* at 256.

In *Foos*, "class members could choose between 20% off a future purchase at Ann Taylor or a voucher in the amount of $15.00 for merchandise which allows class members to select items for free." 2013 WL 5352969, *2. As here, class members were not required to spend any out-of-pocket money and would not get a refund of the difference if class members used it to buy an item costing less than $15. *Id.* at *1. As here, the voucher was also transferrable and good for six months. *Id.* The court held that the $15 merchandise voucher was clearly *not* subject to CAFA. The court reasoned:

> The distinction between a coupon and a voucher is that a coupon is a *discount* on merchandise or services offered by the defendant and a voucher provides for *free* merchandise or services. … A coupon <u>requires</u> a class member to purchase a product or services and pay the difference between the full price and the coupon discount. … In contrast, a voucher is more like a gift card or cash where there is an actual cash value, is freely transferable and does not require class members to spend additional money in order to realize the benefits of the settlement.

*Id.* at *2 (italics in the original; underscore added). The court went on to hold that, while the 20% off component of the class benefit was a "coupon" under CAFA, the settlement as a whole was not a "coupon" settlement subject to CAFA because class members had the option of choosing the non-coupon voucher. *Id.* at *3.

34

In *Seebrook*, class members could choose between a transferrable $10 gift certificate with no minimum purchase and a coupon for 35% off merchandise. 2013 WL 6326487, *1. After noting that CAFA does not define "coupon," the court stated that " '[t]he distinction between a coupon and a voucher is that a coupon is a discount on merchandise or services offered by the defendant and a voucher provides for free merchandise or services.' " *Id.* (*quoting Foos*, 2013 WL 5352969, *4). The court found that class members could use the certificate to purchase numerous products—over half of the retailer's products were priced less than $10—for free without spending any money out-of-pocket. *Id.* at *2.

Similarly, the Settlement Vouchers here require no out-of-pocket payments, are transferrable, can be stacked and can be used to buy anything at RadioShack, including more than 6,000 products under $10 and non-expiring gift cards. The Rosman Objectors' characterization of the vouchers as "whole product coupons" providing "illusory relief" is inaccurate. Rosman Br., p. 15. A "whole product coupon" is not a "coupon" at all; it is a gift. Obtaining one (or more) of 6,000 items for free is not illusory.

**C.    Even If this Is a "Coupon" Settlement Under CAFA, the District Court Did Not Abuse its Discretion in Using the Lodestar Method to Calculate Attorneys' Fees and Costs.**

The district court could have ended its inquiry with its correct determination that the Settlement Vouchers at issue in this case are not "coupons" within the meaning of CAFA, but instead went a step further in its analysis and held that lodestar would be an appropriate method for awarding attorneys' fees even if the class benefit was a "coupon" under CAFA.  Ros. A23.  The Rosman Objectors dispute this conclusion, and contend that CAFA prevents courts from using the lodestar method to calculate attorneys' fees in coupon cases, instead requiring fees to be determined as a percentage of voucher redemption.  Rosman Br., pp. 18-25.

The Rosman Objectors' argument fails for two independent reasons. First, the argument hinges on the erroneous premise that the class benefit is a "coupon."  *See* Section II.B, *supra*.  Therefore, the district court has discretion in choosing to use the lodestar method.  *See Americana Art*, 743 F.3d at 247 (explaining that district courts have discretion to choose between the lodestar and percentage method, and that lodestar has an advantage over the percentage method by alleviating concerns of overcompensation to attorneys); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) ("[W]e are of the opinion that both the lodestar approach and the

percentage approach may be appropriate in determining attorney fee awards, depending on the circumstances.").[9]

Second, CAFA allows the lodestar method to calculate attorneys' fees *even if* the class benefit is a "coupon" under CAFA. The starting point is the text of § 1712:

> (a) Contingent fees in coupon settlements.—If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

> (b) Other attorney's fee awards in coupon settlements.—
>     (1) In general.—If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
>     (2) Court approval.—Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with multiplier method of determining attorney's fees.

> (c) Attorney's fee awards calculated on a mixed basis in coupon settlements.—If a proposed settlement in a class action provides

---

[9] The Rosman Objectors attempt to paint the lodestar method as tainted because it supposedly encourages a "particular" (excessive) approach to litigation. Rosman Br., p. 22. Given this Court's clear allowance of, if not preference for, the lodestar methodology, the Rosman Objectors' proposed categorical dismissal of the lodestar methodology is unfounded. Moreover, it belittles the capability of district courts and magistrate judges to scrutinize fee petitions appropriately.

for an award of coupons to class members and also provides
equitable relief, including injunctive relief—

    (1) that portion of the attorney's fee to be paid to class
counsel that is based upon a portion of recovery of the coupons
shall be calculated in accordance with subsection (a); and

    (2) that portion of the attorney's fee to be paid to class
counsel that is not based upon a portion of the recovery of
coupons shall be calculated in accordance with subsection (b).

28 U.S.C. § 1712(a)-(c).

The plain language of this portion of CAFA shows, as the district court
held, that a lodestar analysis is an option even if the benefit to the class is a
"coupon." The district court in *Southwest Airlines* rejected the same
argument made by the Rosman Objectors that in coupon settlements,
attorneys' fees must be based only on the value of the coupons redeemed by
class members, when that argument was raised by the attorneys for the
Rosman Objectors in that case. 2013 WL 5497275, *5. Instead, the court
concluded that subsection 1712(b) authorizes the use of the lodestar
methodology in cases where the class benefit is a "coupon" under CAFA. In
dissecting subsection 1712(b), the court reasoned

The first [part of § 1712(b)] makes it clear that subsection 1712(b)
applies here: the class settlement in this case "provides for a
recovery of coupons to class members." The second clause permits
a fee award to be based on something other than the value of the
coupons: "a portion of the recovery of the coupons is not used to
determine the attorney's fee." The third clause authorizes use of
the lodestar method: when clauses one and two apply, the fee
award "shall be based upon the amount of time class counsel
reasonably expended working on the action."

*Id.* at *5.

The *Southwest Airlines* holding is consistent with the dissent in *HP Inkjet*, 716 F.3d at 1187-99. As the analysis in *Southwest Airlines* shows, the *HP Inkjet* majority impermissibly read § 1712 as requiring attorneys' fees to be based solely on the value of redeemed coupons, contrary to the plain language of the statute. As explained by the *Southwest Airlines* court,

> [T]he statute says, in a straightforward way, that if a portion (percentage) of the coupon recovery is not used to determine the attorney's fee, the lodestar method shall be used. *The Court does not see how this can appropriately be read as precluding a lodestar-type award in a coupon settlement case.*

2013 WL 5497275, *6 (emphasis added).[10]

Beyond the plain language, the structure of section 1712 and its headings also confirm the availability of the lodestar method in "coupon" cases and suggest that the three methods provided for in section 1712— percentage of redeemed coupons; lodestar; or a combination of the two—are "alternative methodologies for determining fee awards in coupon settlement cases." *Id.* ("[P]laintiff is not limited to a coupon-value-based fee award;

---

[10] Here, nothing in the Settlement Agreement suggests that Class Counsel's fees are contingent and are to be calculated as a percentage of coupon redemption rates, nor did Plaintiffs petition for such an award. The negotiated fee was not even based on a percentage of the Settlement Amount. It was a set amount based on estimated lodestar. *If* the Settlement Agreement had provided for a redemption rate contingency fee, section 1712(a) would surely provide the mechanism for calculating the fee amount, but it does not dictate that a redemption rate-based contingency award is required in the first instance and none was requested here. *See Southwest Airlines*, 2013 WL 5497275, *7.

under subsection 1712(b), the plaintiff may seek a lodestar-based fee."); *see also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for resolution of a doubt about the meaning of a statute.").[11]

In addition to the clear textual allowance for lodestar awards, CAFA's legislative history shows that lodestar is allowed in "coupon" cases.

> In some cases, the *proponents of a class settlement* involving coupons *may decline to propose* that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the *settlement proponents may propose that class counsel fees be based upon the amount of time class counsel reasonably expended* working on the action. *Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis* in connection with a settlement based in part on coupon relief. As is stated on its face, nothing in this section should be construed to prohibit using the 'lodestar with multiplier' method of calculating attorney's fees.

*S. Doc. No. 109–14 at 30* (2005) (emphasis added).

For the reasons articulated in *Southwest Airlines*, the holding in *HP Inkjet* (upon which the Rosman Objectors heavily rely, despite the opinion not

---

[11] Contrary to the Rosman Objectors' assertion that "CAFA is intended to discourage coupon relief," Rosman Br., p. 22, section 1712 of CAFA was designed to prevent contingent, percentage-based fee awards using the total face value of available coupons as the starting point (*e.g.*, 33% of $100 million in facially valued, unredeemed coupons would result in a $33 million fee on the assumption that all coupons will be used and at full value). *See Southwest Airlines*, 2013 WL 5497275, *6 ("1712(a)'s purpose and effect is to preclude basing an attorney's fees on a percentage of the face (i.e., unredeemed) value of coupons."). The Settlement Agreement here does not provide for a contingent, redemption rate-based fee award, so section 1712 is inapplicable. Regardless, if Congress wanted to "discourage" coupon relief settlements, it could have prohibited them altogether.

addressing no-purchase-necessary vouchers) is an incorrect reading of section 1712. Other courts have also held that the lodestar method is available under CAFA for "coupon" settlements. *Southwest Airlines*, 2013 WL 5497275, *8 (*citing Blessing v. Sirius XM Radio*, 507 Fed. Appx. 1, 4 (2d Cir. 2012) ("Even assuming that the coupon provisions of CAFA were applicable, the district court's approval of the proposed settlement and the attorneys' fee award was appropriate…. The district court approved the fee award after determining it was reasonable under the lodestar method…and is therefore consistent with CAFA."); *Radosti v. Envision EMI, LLC*, 760 F.Supp.2d 73, 77-78 (D.D.C. 2011) ("The statute explicitly contemplates application of the lodestar method with a multiplier, but it does not explicitly require that approach."); *Perez v. Asurion Corp.*, No. 06-20734, 2007 WL 2591180, *2 (S.D. Fla. Aug. 8, 2007) ("CAFA gives the Court the discretion to award fees using the lodestar method.")).

The Rosman Objectors seek to extend subsection 1712(a) to cases where Congress already indicated (via text and legislative history) it does not apply. Rosman Br., pp. 22-25. They assert a policy argument which has no application in the courts when Congress has already spoken and is directed to the wrong branch of government. *See Schacht v. Brown*, 711 F.2d 1343, 1355 (7th Cir. 1983) (rejecting an argument based on a "dispute with the very design, and not the mere application, of the statute"). Consequently, this

Court should reject the Rosman Objectors' arguments and affirm the district court's use of the lodestar methodology in this case even if it finds the class recovery to be a "coupon," which, as discussed above, it is not.

### D. The District Court Adequately Scrutinized Plaintiffs' Request for Attorneys' Fees and Costs.

#### 1. The district court thoroughly scrutinized the request for fees.

As set forth in Section I.D., *supra*, the district court undertook a thorough analysis of Plaintiffs' request for attorneys' fees and costs, having considered a bevy of submissions, and produced a comprehensive, well-reasoned explanation for its findings.

#### 2. The district court did not abuse its discretion in awarding the amount of fees and costs that it did.

The Rosman Objectors argue that the district court abused its discretion when it approved the Settlement with an attorneys' fees component of approximately $1 million. Rosman Br., pp. 29-35. This Court reviews a district court's approval of class settlements generally and fee awards specifically on an abuse of discretion standard. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 500 (7th Cir. 2012); *see also Americana Art*, 743 F.3d at 246.

The Rosman Objectors' main argument is that the settlement allegedly "gives preferential treatment" to the attorneys at the expense of class

members,[12] because, they contend, the fee award is disproportionately large compared to class benefits. Rosman Br., at pp. 29-35. They propose a bright line rule that class counsel cannot receive more than the amount distributed to a class. Just months ago, however, this Court rejected that bright line.

In *Americana Art*, this Court affirmed a fee award of $1,147,698.70 (lodestar with a 1.5 multiplier) despite the class payments totaling only $397,426.66. 743 F.3d at 246-47. This Court reaffirmed that the district court has discretion to choose to apply the lodestar method, and that the district court did not abuse its discretion in (a) considering the settlement outcome when deciding *whether* to use lodestar, and (b) not considering settlement outcome when deciding the *amount* of the fee award. *Id*. at 247 (affirming and finding no abuse of discretion in the district court's decision not to consider the ultimate outcome *at all* in calculating a reasonable fee under the lodestar method) (emphasis in original). Therefore, this Court, in *Americana*, upheld a fee award 2.89 times greater than class payments based on a 1.5 multiplier, whereas the district court here awarded fees 1.19 times the distribution (excluding notice and administration costs) to the class using a 1.25 multiplier. Ros. A26. This is well within the range of reasonableness. *See Florin*, 34 F.3d at 565 ("Because class counsel have requested a

---

[12] They contend in passing that the settlement benefits the class administrators "vastly more" than the class members, *id*. at 30, but since they do not develop any argument for this point, no issue has been appropriately raised for consideration.

multiplier of 1.53, the district court need not worry about exceeding what we have suggested is a sensible ceiling of double the lodestar.").  In light of the risks associated with proceeding on the merits and the substantial risk of RadioShack not surviving financially, a much higher multiplier could be justified.  Additionally, the district court issued a lengthy and well-reasoned opinion that addressed all of the Rosman Objectors' concerns.  Ros. A16-37.

The Rosman Objectors primarily rely on *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013), a wildly distinguishable case.  *Dry Max Pampers* provided no award to absent class members who were required to produce documentary evidence from purchases made years earlier to prove their claim (named plaintiffs were to receive payment), while class counsel was to receive $2.73 million in fees, despite having conducted no discovery. *Id.* at 716, 718.  Here, Class Counsel conducted discovery and class members get something of value without having to produce documentary evidence disposed of years earlier, so *Dry Max Pampers* is inapposite.

The Rosman Objectors also cite *Dry Max Pampers* and other cases for the proposition that in all cases, defendants only care about total exposure and not allocation of a settlement fund, thus leading to self-dealing by acquiescence.  Rosman Br., p. 33.  Here, however, there was no acquiescence (*e.g.,* RadioShack offering a $5.35 million settlement fund to be allocated however Class Counsel chooses).  Undisputed evidence proves how the case

was settled for the class first based on expected claim rates, then adding notice and administration costs, then adding lodestar attorneys' fees and costs, then adding incentive payments for the named plaintiffs. R. 131, pp. 3-4. Theoretically, acquiescent self-dealing *could* occur, but it definitively did not occur here, so this argument is irrelevant.

While Class Counsel would have liked to have negotiated a large common fund for the class, RadioShack's perilous financial condition—which no objectors contest—and factors related to certification and the merits precluded that as a viable option. The district court was acutely aware of these factors through its extensive involvement in mediating the Settlement and assessing the fairness, adequacy, and reasonableness of the Settlement. Ros. A19.

The Rosman Objectors also argue that this Court should create an additional factor required to assess class action settlements, namely allocation of a settlement fund. Rosman Br., pp. 32-35. This argument overlooks the facts that (a) this case did not have a common fund, and (b) the allocation of funds is already a component of the fairness analysis. The district court properly considered allocation as part of its fairness assessment and concluded that it was not problematic. Ros. A7-A16. The district court properly applied the fairness factors this Court discussed in *Synfuel Technologies*:

> the strength of plaintiffs' case compared to the amount of
> defendants' settlement offer, an assessment of the likely
> complexity, length and expense of the litigation, an evaluation of
> the amount of opposition to settlement among affected parties,
> the opinion of competent counsel, and the stage of the
> proceedings and the amount of discovery completed at the time of
> settlement.

*Synfuel Technologies, Inc.*, 463 F.3d at 653 (internal quotations omitted).

The district court also evaluated the proper amount of attorneys' fees (Ros. A22-A27), as it was required to do. *See Americana Art*, 743 F.3d at 246-47 (holding that the district court did not abuse its discretion in utilizing the lodestar method). The dual determinations of the fairness of the Settlement to class members and amount of attorneys' fees necessarily addressed any allocation issues. Hence, there is no need for a duplicative rule that the Rosman Objectors would have this Court engraft on top of the long-standing, existing analysis.

### E. Notice Costs are Properly Considered a Settlement Benefit.

The Rosman Objectors argue—for the first time on appeal, so the argument is properly considered waived—that crediting notice costs to the total settlement value "is wrong as a matter of statute, as a matter of Seventh Circuit precedent, and as a matter of public policy." Rosman Br., p. 25. They fail to cite, however, a single case that actually supports this position. Instead, their argument rests on inapposite hypotheticals and

quotes lifted out of context from Seventh Circuit opinions, cobbled together into a position that flies in the face of extensive, consistent authority establishing that the payment of notice costs by a defendant represents a benefit to a settlement class.

Federal courts routinely allocate notice and administration costs to the total settlement benefit.  Where, as here, "the defendant pays the justifiable cost of notice to the class … it is reasonable … to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees."  *Staton*, 327 F.3d at 975; *see also Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509, *36 (S.D. Ohio Apr. 4, 2014) ("[Defendant's] independent agreement to pay administration costs and attorneys' fees and costs is a benefit to the class and is included in the Total Class Benefit."); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011) (including notice and administration costs in the entire settlement fund representing the benefit to the class); *Lonardo*, 706 F.Supp.2d  at 802-03 ("[the cost of notice and administration] is an expense that could have been borne by either party, but the Settlement Agreement provides that [defendant] will assume it. Therefore, it is a benefit to the Settlement Class."); *McGee v. Continental Tire North America, Inc.*, 2009 WL 539893, *14 (D.N.J. Mar. 4, 2009) (allocating notice and administration costs to the common fund benefitting the class).

47

Moreover, courts in this Circuit consistently treat notice and administration costs as a settlement benefit. *See*, *e.g.*, *Swift v. DirectBuy, Inc.*, No. 2:11-CV-401 TLS, 2013 WL 5770633, \*5 (N.D. Ind. Oct. 24, 2013) (including notice and administration costs in a list of settlement "benefits that can be measured in dollars"); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 386 (N.D. Ill. 2011) ("[T]he costs of notice and claims administration are properly considered part of the fund"); *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 583 (N.D. Ill. 2011) (including the notice and administration borne by defendants as part of the settlement value to class members); *Mangone v. First USA Bank*, 206 F.R.D. 222, 225 (S.D. Ill. 2001) (same); *In re Mexico Money Transfer Litig.* (W. Union & Valuta), 164 F.Supp.2d 1002, 1012 (N.D. Ill. 2000) ("Defendants will pay the costs of extensive notice and will administer the settlement, a benefit the parties value at more than $16 million.") *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001).

Without even an acknowledgement of this contrary authority, the Rosman Objectors instead rely on two inapposite cases. In *In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), this Court affirmed denial of class certification where litigation was an inferior alternative to a defendant-administered recall program. The Court characterized attorneys' fees and the cost of giving notice as "transaction costs" of a class action, that

48

would have been unnecessary, even pointless, to incur given that at best litigation could provide "relief that duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class." *Id.* at 752. Where, as here, notice and administration costs are not duplicative or pointless but necessary to any recovery, it simply makes no sense to argue that they are not a benefit to the class. In *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 286 (7th Cir. 2002), this Court reversed the approval of a class action settlement, and set forth a discussion of attorneys' fees for guidance on remand. Against a backdrop of possible collusion,[13] the Court questioned a $4.25 million fee award where counsel could have obtained a settlement of $20 million in 1997 "with minimal effort," and only pushed the award to $25 million in 1999 after "prodding by the judge." The Court's admonition that "class counsel's compensation must be proportioned to the *incremental* benefits they confer on the class, not the total

---

[13] *See Swift*, 2013 WL 5770633, *4 ("In *Reynolds*, the history of the parties' settlement negotiations suggested that the parties may have colluded and performed a 'reverse auction'—where the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. The *Reynolds* court was particularly concerned because the settlement would have extinguished a similar pending lawsuit that appeared promising without providing the class with consideration for releasing the claims involved in that suit. In such a case, the district court must perform a more searching inquiry into the fairness of the settlement." (internal citations omitted)).

benefits" refers to the class counsel's effectiveness, rather than the characterization of the necessary costs of litigation.

Neither case supports the Rosman Objectors' argument that the district court abused its discretion in considering notice and administration costs as class benefits when cross-checking the fee award against the settlement value. This is, perhaps, another instance where the Rosman Objectors' counsel tends, in its briefs, to being "long on ideology and short on law." *Lonardo,* 706 F.Supp.2d at 785.

### F. Plaintiffs' Petition for Attorneys' Fees and Costs Complied with Fed. R. Civ. P. 23(h).

The district court's finding that Plaintiffs complied with Rule 23(h) is reviewed under an abuse of discretion standard. *See Cassese v. Williams*, 503 Fed.Appx. 55, 57 (2d Cir. 2012).

The Rosman Objectors contend that, pursuant to Rule 23(h), Plaintiffs were required to submit their petition for attorneys' fees and costs before objections were due, but cite no Seventh Circuit precedent directly on point to support their argument. Notably, in the proceedings below, they admitted no such precedent exists. Ros. A94. Regardless, Plaintiffs complied with Rule 23(h).

Rule 23(h) provides that a claim for an award of fees and costs must be made by motion pursuant to Rule 54(d)(2), with notice to all parties and

50

directed to class members in a reasonable manner.  Fed. R. Civ. P. 23(h)(1).

Rule 23(h) does not identify what content is required in the motion, but Rule

54(d)(2) does.  Rule 54(d)(2) requires that the motion specify the statute, rule

or other grounds entitling the movant to the award; state the amount sought

or provide a fair estimate of it; and disclose, if the court so orders, the terms

of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B)(ii)–(iv).  Here, in *Plaintiffs' Motion for Preliminary*

*Approval of Class Action Settlement Agreement* (R. 94, p. 3), Plaintiffs

properly requested attorneys' fees and costs pursuant to Rules 23(h) and

54(d)(2).  In their request for settlement approval, Plaintiffs sought an award

of fees and costs of $1 million, as specified in the Settlement Agreement

attached to the motion (R. 94-1, p. 6; Ros. A62) and supporting brief.  R. 99, p.

3.  It identified the grounds for the award, namely the Settlement Agreement

relating to the Fair Credit Reporting Act, a fee-shifting statute.  R. 99, p. 1.

It specified the exact amount sought, $1 million.  It was noticed to all parties

(R. 98) and directed to class members in a reasonable manner.  Specifically,

the motion was posted on the settlement website, www.shacksettlement.com,

from June 19, 2013 to the present (R. 135, p. 5), and the amount of fees and

costs sought was included in the Class Notice.  R. 94-1, p. 25.

    While Rule 23(h) does not give full detail as to the content, timing and

notice requirements of a request for fees and costs, the Advisory Committee

Notes make clear that Plaintiffs complied with Rule 23(h), providing that when a class settlement is proposed, "notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself."   Notes of Advisory Committee on 2003 Amendments to Rule 23, Subdivision (h).  Here, class members were advised that Plaintiffs sought $1 million in fees and costs and directed class members to the Settlement website, which contained Plaintiffs' motion for settlement approval.

The Advisory Committee Notes also provide that "[f]or motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)."   Notes of Advisory Committee on 2003 Amendments to Rule 23, Subdivision (h).  As set forth above, this was done.  Indeed, "[i]n cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e)."   *Id.*  As such, Plaintiffs followed the exact course recommended by the Advisory Committee by requesting fees and costs in a combined request for preliminary approval.

Finally, the Advisory Committee notes state that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." *Id.* First, the Advisory Committee's use of the word "full" indicates that the initial request for fees (here, with the request for preliminary approval) is not *the only* fee motion contemplated. Second, Plaintiffs submitted a "full" fee motion prior to the Fairness Hearing, and sent copies to all objectors. R. 129. The Advisory Committee does not define "sufficient time" to examine the motion, but importantly, *no* class member or objector requested additional time to examine, or respond to, the "full" fee motion, either prior to the Fairness Hearing, during the Fairness Hearing, or in the five (5) months between the Fairness Hearing and the district court's final approval of the settlement—a period during which the district court accepted supplemental authority and briefing. R. 116, 146-147, 152, 154, 156.

Against that backdrop, the Rosman Objectors contend that Plaintiffs failed to comply with Rule 23(h). Rosman Br., § IV.C. As set forth above, the facts belie their assertions. Highlighting the adequacy of Plaintiffs' notice about their request for fees and costs is the fact that several class members, including the Rosman and Gupta Objectors, objected to Plaintiffs' request for attorneys' fees and costs. They did not just object generally, but rather

specifically to the $1 million requested award, a detail given to them in multiple forms.  Ros. A16-21, A80; R. 110.

In a similar case, *Saccoccio v. J.P. Morgan Chase Bank, N.A.*, --- F.R.D. ---, No. 13-21107-CIV, 2014 WL 808653, *14 (S.D. Fla. Feb. 28, 2014), the court overruled a similar objection when the court set an objection deadline of January 15, 2014 but class counsel did not file a fee petition until January 27, 2014.  The court, nonetheless, found that class counsel complied with Rule 23(h), because the preliminary approval order stated that class counsel would apply for up to $20 million in attorneys' fees, class notice advised class members that class counsel would apply for up to $20 million in attorneys' fees, and class counsel, in fact, applied for exactly $20 million in attorneys' fees and costs.  *Id.*  Similarly, in *In re Bisys Securities Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, *1 (S.D.N.Y. July 16, 2007), the court overruled a similar objection when the class notice advised that class counsel would seek up to 33% of the settlement fund in attorneys' fees, rather than specifying the exact amount sought, and the petition requesting a specific dollar amount was filed after the deadline for objections had passed.  The court found that "members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund and so had every reason to raise an objection if they thought this was excessive."  *Id.*  Having adequately notified the class of the intended fee request, the court found that "[o]verall, in the context of

this case, the Court finds that there has been adequate compliance with Rule 23(h)." *Id.*

Additionally, this Court can take judicial notice of the many cases in the Northern District of Illinois approving class settlements when fee petitions post-date the objection deadline, including the following settlements negotiated by the Gupta Objectors' counsel, Curtis Warner. *See*, *e.g.*, *Tang v. Pita Inn Inc.*, Case No. 11 C 3833, at DE 56, 59, 61 (N.D. Ill.) (objection deadline was 2/27/2012; motion for final approval and fees was filed 4/24/2012; and Fairness Hearing was 5/2/2012); *Balbarin v. North Star Acquisition, LLC,* No. 10 C 1846, at DE 257, 260, 265; 2011 WL 211013 (N.D. Ill. Jan. 21, 2011) (objection deadline was 1/23/2012; motion for final approval and fees was filed 4/3/2012; and the Fairness Hearing was 4/6/2012); *Todd v. HB Windows and Doors, Inc.*, Case No. 10 C 4986, at DE 61, 65, 68 (N.D. Ill.) (objection deadline was 7/25/2011; motion for final approval and fees was filed 8/4/2011; and the Fairness Hearing was 8/18/2011). R. 123, pp. 3-4.

The Rosman Objectors rely on *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), in which attorneys' fees were to be deducted from a common fund, and in which the Ninth Circuit held that class counsel's failure to submit a fee petition prior to the objection deadline violated class members' due process rights. The court reasoned that an earlier fee petition was required because the relationship between plaintiffs

and their attorneys turns adversarial at the fee-shifting stage of the case, as each is vying for as large of a portion of the same common fund as possible. Thus, the amount distributed to the attorneys directly diminished the amount received by the class, necessitating that the class be given an opportunity to examine and object to the attorneys' fee motion. *Id.* at 990-91.

In contrast, the Second Circuit rejected the Ninth Circuit's holding in *Mercrury*. In *Cassese*, the court faced the same objection as the Rosman and Gupta Objectors raise here. 503 Fed.Appx. at 57. In that case, the class notice advised class members that class counsel would apply for attorneys' fees not to exceed $3.9 million and costs not to exceed $50,000. *Id.* at 58. The objection deadline was August 31, 2011, and a fairness hearing was set for September 15, 2011. *Id.* Class counsel file a fee motion after the objection deadline passed, in which they requested the exact amounts specified in the class notice and included additional information about counsel's billing rates, hours worked and tasks performed. *Id.* The Second Circuit rejected the objectors' argument that class counsel violated Rule 23(h), because the objectors were still able to object timely and could have further crystallized their objections and requested further information between the filing of the fee motion and the fairness hearing. "With the objectors here having availed themselves of those opportunities, we identify no abuse of discretion or due process denial…." *Id.*

This Court has held that in common fund cases, district courts must scrutinize fee requests when attorneys' fees are to be deducted from the class common fund damages, thus affecting class net recovery. *See*, *e.g.*, *In re TransUnion Corp. Privacy Litig.*, 664 F.3d 1081, 1084 (7th Cir. 2011); *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011). But this is not a common fund case, and class recovery is not affected by the amount of attorneys' fees awarded. Therefore, the concerns expressed in *Mercury* are not present. *See*, *e.g.*, *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, MDL 08-1977-MHM, 2010 WL 3715138, *9 (D. Ariz. Aug. 31, 2010) (distinguishing *Mercury* on the basis that the fees in *Lifelock* were to be paid separately from the class relief; thus, "there is no 'adversarial' relationship at the fee setting stage requiring the Court to assume the 'role of fiduciary for the class plaintiffs' because the fee award is not coming from a common fund and will not affect class members' rights.'").

Furthermore, the instant case was brought under FACTA, a fee-shifting statute, and Plaintiffs sought fees based on a lodestar with multiplier methodology. This methodology necessarily required close scrutiny by the district court of the request for attorneys' fees and costs, and the district court scrutinized Class Counsel's hourly rates and hours billed. This methodology obviates the due process concerns highlighted by the *Mercury* court. *See In re Lifelock,* No. 2010 WL 3715138, *9; *Gittin v. KCI USA, Inc.*,

09-CV-05843 RS, 2011 WL 1467360, *2 (N.D. Cal. Apr. 12, 2011) (the plaintiffs requested a separate award of attorneys' fees, and the Court held "this lack of a common fund obviates the due process concerns highlighted by the *Mercury* court.").

Even if a final fee petition were required prior to the objection deadline, which it is not, the district court's consideration of the request was appropriate. *See In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, MDL 08-1999, 2010 WL 4386552, *2 (even if the Seventh Circuit were to find that the petition for fees and costs needs to be filed before the objection deadline, the district court's consideration and grant of a later-filed petition was harmless error, as class members had objected to the fee request and the district court conducted its own investigation). Similarly, in this case, class members objected to the fee request, and the district court conducted its own investigation and ultimately reached an informed result.

## CONCLUSION

The Settlement in this case is the product of compromise and reflects the litigation risk that Plaintiffs would have faced if their case had not settled. It provides meaningful benefits to the class and achieves one of the principal goals of the litigation, which is to ensure that RadioShack stops printing customers' private information on debit and credit card receipts.

The district court carefully deliberated before granting final approval of the Settlement. The district court applied the correct legal standard and did not abuse its discretion in approving the Settlement. For the foregoing reasons, this Court should affirm the district court's order approving the Settlement and the award of attorneys' fees and costs.


Dated June 2, 2014.                    Respectfully submitted,


                                       s/Thomas A. Zimmerman, Jr.
                                       Thomas A. Zimmerman, Jr. (IL #6231944)
                                       Adam M. Tamburelli (IL #6292017)
                                       Frank J. Stretz (IL #6310264)
                                       ZIMMERMAN LAW OFFICES, P.C.
                                       77 West Washington Street, Suite 1220
                                       Chicago, Illinois 60602
                                       (312) 440-0020 telephone
                                       (312) 440-4180 facsimile
                                       www.attorneyzim.com

                                       Paul F. Markoff
                                       Karl G. Leinberger
                                       Markoff Leinberger LLC
                                       134 N LaSalle Street, Suite 1050
                                       Chicago, Illinois 60602
                                       (312) 726-4162 telephone
                                       (312) 674-7272 facsimile

                                       *Co-Class Counsel*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,682 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 13 point Century Schoolbook font.


　　　　　　　　　　　　　　　　　s/ Thomas A. Zimmerman, Jr.

# CERTIFICATE OF SERVICE

I, Paul Markoff, certify that I served the foregoing **Brief of Plaintiffs-Appellees**, by electronic service pursuant to Circuit Rule 25 of the Circuit Rules of the Seventh Circuit Court of Appeals, to the persons set forth below on June 2, 2014.


_____ s/ Thomas A. Zimmerman, Jr._____
Pursuant to 28 U.S.C. § 1746, I certify under
penalty of perjury that the foregoing is true
and correct.  Executed on June 2, 2014.

James R. Daly
Irene S. Fiorentinos
Elizabeth H. Marino
JONES DAY
77 West Wacker
Chicago, IL  60601
*Attorneys for Defendant-Appellee RadioShack Corporation*

Theodore H. Frank
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
*Attorney for Objectors-Appellants Michael Rosman and Jessica Kasten*

Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
*Attorney for Objector-Appellant Robert Scott*

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave., Ste. 425

Des Plaines, IL 600618

*Counsel for Objector-Appellants Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr. and Eduardo Vasquez*