**No. 14-1471**
**Consolidated with 14-1470 and 14-1658**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, *et al.*,

Plaintiffs-Appellees,

v.

RADIOSHACK CORPORATION,

Defendant-Appellee.

Appeal of: Michael Roseman et al. and Vanita Gupta et al.,
Objectors-Appellants.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern, Division.
Case No. 1:11-cv-6741, consolidated with 1:11-cv-7819
The Honorable Maria Valdez, Magistrate Judge

---

## REPLY BRIEF OF THE OBJECTOR-APPELLANTS
## Vanita Gupta, Gregory Runyard, Charles H. Warner, Jr.,
## and Eduardo Vasquez

---

Curtis C. Warner (Counsel of Record)
WARNER LAW FIRM, LLC
1400 E. Touhy Ave., Ste. 425
Des Plaines, IL 600618
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com
*Counsel for Objector-Appellants*
*Vanita Gupta, Gregory Runyard,*
*Charles H. Warner, Jr. and Eduardo Vasquez*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................ i

ARGUMENT ............................................................................................. 1

I.   The Most Important Factor in *Synfuel* was not Correctly Applied ........... 3

    A.   Whether RadioShack Willfully Violated 15 U.S.C. § 1681c(g)(1) is a Question of Law ........................................................................ 3

    B.   Alternatively, RadioShack Willfully Violated 15 U.S.C. § 1681c(g)(1) as an Issue of Fact ....................................................... 5

    C.   The District Court Failed to Properly Calculate the Valuation of the Settlement ................................................................. 8

II.  CAFA, the Coupons and Attorney's Fees ............................................. 14

CONCLUSION ....................................................................................... 15

TYPE VOLUME CERTIFICATION .............................................................. 16

# TABLE OF AUTHORITIES

## *Cases*

*Armalite, Inc. v. Lambert*, 544 F.3d 644, 650 (6th Cir. 2008) ....................... 13

*Bryan v. United States*, 524 U.S. 184 (1998) ................................................................. 13

*Eubank v. Pella Corp., et al.*, Nos. 13-2091, 2014 U.S. App. LEXIS 10332 (7th Cir. June 2, 2014)..................1,8,9,11,14

*Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834 (7th Cir. 2010) ...................................................... 2

*Ferron v. RadioShack Corp*, 175 Ohio App. 3d 257 (Ohio App. 2008)..................................... 5

*Harlow v Fitzgerald,* 457 U.S. 800 (1982) .................................................... 4

*Hepokoski v. Brickwall of Chicago*, 09 C 611,
2009 U.S. Dist. LEXIS 122389 N.D. Ill.  Sep. 22, 2009).............................. 3

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
728 F.3d 682 (7th Cir. 2013) cert. denied 134 S. Ct. 1318 (2014)............... 9

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
559 U.S. 573 (2010) ..................................................................... 13

*Long v. Tommy Hilfiger U.S.A., Inc.*,
671 F.3d 371 (3d Cir. 2012)......................................................... 4

*Maunard v. Nygren*,
332 F.3d 462 (7th Cir. 2003) ......................................................... 5

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ...................................................... 8,9

*Murray v. New Cingular Wireless Servs.*,
523 F.3d 719 (7th Cir. 2008) ........................................................ 13

*Reynolds v. Benefit Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ......................................................... 8

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ............................................................... 3,4,12

*Saucier v Katz*, 533 U.S. 194 (2001) ........................................... 4

*Shlahtichman v. 1-800 Contacts, Inc.*,
615 F.3d 794, 795-76 (7th Cir. 2010) ........................................... 4

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ......................................................... 2

*Transworld Airlines, Inc. v. Thurston*,
469 U.S. 111 (1985)` ................................................................ 12

*Todd v. Target Corp.*, 10 C 5598,
2012 U.S. Dist. LEXIS 44362 (N.D. Ill. March 30, 2012) .......................... 4,5

*United States v. Lowe*,
632 F.3d 996 (7th Cir. 2011) ......................................................... 6

*United States v. Ozuna*,
561 F.3d 728 (7th Cir. 2009) ........................................................ 11

*Van Straaten v. Shell Oil Prods. Co. LLC,*
678 F.3d 486 (7th Cir. 2012) ............................................................. 4,5,12

*Wood v. Strickland,* 420 U.S. 308 (1975)....................................................... 4

### Statutes and Other Authorities

15 U.S.C. § 1681c(g)(1) ............................................................2,3,4,5,8,12

15 U.S.C. § 1681n(d) .................................................................................. 2

*Hepokoski v. Brickwall of Chicago,* 09 C 611, Doc. 37, Response of the
United States in Opposition to Defendant's Rule 12(b)(6) Motion to
Dismiss, (N.D. Ill. June 23, 2009) ........................................................... 2,3

http://survey.medallia.com/radioshack/?feedless-radioshack-
f1f381c5c0277cccc4a19b22537314f7 (last visited June 12, 2014).
 .................................................................................................................. 6,7

http://www.tellradioshack.com ................................................................ 6

RadioShack Corp, 10-Q/A (Amendment No. 1) filed 7/23/2013
*available at http://yahoo.brand.edgar-*
*online.com/displayfilinginfo.aspx?FilingID=9409973-1174-*
*160448&type=sect&dcn=0000096289-13-000025*   .............................9-10

*Sosinov v. RadioShack* et al., Case BC449675, Los Angeles County
Superior Court, Settlement Agreement and Release ................................. 14

## ARGUMENT

It is beyond debate that from August 24, 2010 to November 21, 2011, RadioShack violated a ubiquitous known federal law approximately sixteen million times. Discovery prior to the parties' settlement agreement was not "extensive" as the record does not reflect a single deposition being taken. In exchange for the promise of $1,000,000 in attorney's fees and costs with a free sailing clause and $5,000 for each of the three Plaintiffs, Plaintiffs and their counsel admittedly gave RadioShack a "good deal." (R. 102, Tr. 3:12-13).

The 16 million class members in exchange for their release could make a claim from the settlement fund of $2.1 million in coupons, or a $0.13 coupon[1] if each class member made a claim. The amount available to each class member was less than the $10 publically available coupons available on RadioShack's Facebook page, (AG 28), or for participating in a survey regarding their previous purchase, directions of which were printed on each class members' receipt. *See e.g.* (R. 115-1, PageID: # 1170). RadioShack labels the class members participation as a "large number", (RadioShack Resp., p. 21), a statement that simply overlooks that the actual participation rate here was just over one half of one percent, 0.52%, (R. 135, PageID #:1641-42), a percentage lower than the 0.56% rate to which this Court took issue with in *Eubank v. Pella Corp., et al.*, Nos. 13-2091, 2014 U.S. App. LEXIS 10332 * 25 (7th Cir. June 2, 2014).

In proceeding under an incorrect reading of *Safeco* and ignoring

---

[1] The district court did not calculate a cash value for the coupon, which would undoubtedly would have resulted in a lower valuation of the settlement.

RadioShack's admitted knowledge of the Act and the prior *Ferron* lawsuit against RadioShack involving the same conduct at issue here, printing payment cards' expiration dates on receipts, the magistrate judge ultimately incorrectly found that the most important factor set forth in *Synfuel v. Techs., Inc. v. DHL Express (USA) Inc.*, 463 F.3d 646 (7th Cir. 2006), the strength of plaintiffs' case compared to the amount the settlement obtained met, factoring in additional length and costs of the case, had been met.

RadioShack argues that making available a settlement fund of $2.1 million in coupons being made available to 16 million class members, coupons that on a *pro rata* basis under the agreement would be $0.13 (thirteen cents) if each class member made a claim, was fair, reasonable and adequate. In support of RadioShack's fairness position it quotes the Congressional record related to the codification of 15 U.S.C. § 1681n(d), which eliminated from a finding willfulness a merchant who printed the expiration date only but otherwise complied with the 15 U.S.C. § 1681c(g)(1) prior to June 3, 2008. (RadioShack Resp., p. 6)[2]. However, what was stated in the Congressional record is wishful thinking, as its statement did not become the law. In *Hepokoski v. Brickwall of Chicago*, 09 C 611, Doc. 37, Response of the United States in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss, (N.D. Ill. June 23, 2009), the United States labeled that defendant's argument about the same Congressional findings as RadioShack quotes here, as a "wishful

---

[2] Furthermore, RadioShack did not make such an argument before the district court and therefore this argument should been deemed to have waived. *See Fednav Int'l Ltd. v. Cont'l Ins. Co.,* 624 F.3d 834, 841 (7th Cir. 2010).

misreading of the Congressional findings underlying the Clarification Act" and further stated:

> It was within this context that Congress made the finding, mischaracterized by [the defendant], that 'Experts in the field agree that proper truncation of the card number, by itself, . . . regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.' Pub.L. 110-241, § 2(a)(6). Nonetheless, and despite the view of these 'experts,' Congress made the printing of a card's expiration date after June 3, 2008, even on a receipt on which the card number is properly truncated, a violation. It is Congress that determines what it laws require and prohibit; and Congress, having acted to remedy any prior misunderstanding with respect to FACTA's expiration date prohibition, *determined that the willful printing of a card's expiration date on a receipt after June 3, 2008, justified statutory damages.*

> *Id.*, pp. 9-10 (emphasis added).

The court in *Brickwall* ultimately denied the defendant's motion to dismiss framing the issue as, "whether statutory damages are available for claims asserting willful noncompliance with FACTA by virtue of a merchant's failure to truncate a credit card expiration date on a point of sale receipt for claims arising after June 3, 2008." *Brickwall*, 2009 U.S. Dist. LEXIS 122389 * 5-6 (N.D. Ill. Sep. 22, 2009).

## I.    The Most Important Factor in *Synfuel* was not Correctly Applied

### A.    Whether RadioShack Willfully Violated 15 U.S.C. § 1681c(g)(1) is a Question of Law

In *Safeco Ins. Co. v. Burr,* 551 U.S. 47 (2007), the Supreme Court in establishing the willfulness test considered that Congress included within the Fair Credit Reporting Act ("FCRA") damages for both negligent and willful conduct. *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 53 (2007). Notably RadioShack does not address the Gupta Objectors' argument that the Supreme Court in

*Safeco* analogized the test for willfulness under the FCRA to the standard of qualified immunity in civil rights cases. *Safeco*, 551 U.S. at 70 (*citing Saucier v Katz,* 533 U.S. 194 (2001)). That standard is of course an objective one that, "involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Harlow v Fitzgerald,* 457 U.S. 800, 815 (1982) (*quoting Wood v. Strickland,* 420 U.S. 308, 322 (1975)).

RadioShack relies on district court cases for its position that whether a willful violation of 15 U.S.C. § 1681c(g)(1) occurred is an issue of fact. As the Gupta Objectors correctly point out this Court interpreting *Safeco*, the Third Circuit Court of Appeals and one district court has found that whether willful violation of 15 U.S.C. § 1681c(g)(1) occurred is a question of law. *Van Straaten v. Shell Oil,* 678 F.3d 486, 490-91 (7th Cir. 2012) (noting "the Supreme Court of the United States treated willfulness [in an FCRA case] as a question of law and directed that judgment be entered in a defendant's favor without a trial."); *Id.,* at 491 (Cudahy, J) (*concurring*) ("According to *Safeco*, at least with unclear text and in the absence of authoritative guidance or case law, the appropriate and sole measure of recklessness is objective reasonableness. *Safeco*, 551 U.S. at 70 n.20. Following *Safeco*, this may be determined as a matter of law and without trial. *See id.* at 71."); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3rd Cir. 2012) *(citing Shlahtichman v. 1-800 Contacts, Inc.,* 615 F.3d 794, 803-04 (7th Cir. 2010)) ("actual knowledge or intent as to FACTA's requirements is immaterial to the objective reasonableness analysis.")*; Todd v. Target Corp.*, 2012 U.S. Dist. LEXIS 44362 * 15-16 (N.D. Ill Mar. 30, 2012)

(analyzing *Safeco* and rejecting the defendant's argument that a "sales audit copy" was not a receipt under the Act and holding, "[t]hus, if Todd can prove that the merchant copy was intentionally provided to her to keep, then she will have successfully proven a willful violation of FACTA.")

Even Plaintiffs counsel initially correctly represented to the district court that RadioShack's counsel was, "simply misrepresenting *Safeco's* holding." (AG11). Yet for almost $1,000,000 in attorney's fees and costs, Plaintiffs' counsel supports RadioShack's position on appeal.

The magistrate judge in determining whether Plaintiffs' and RadioShack's settlement agreement was fair, reasonable and adequate incorrectly held that under *Safeco* willfulness is an issue of fact. Willfulness is a question of law.[3] "A district court by definition abuses its discretion when it makes an error of law." *Maunard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (internal citation omitted).

### B. Alternatively, RadioShack Willfully Violated 15 U.S.C. § 1681c(g)(1) as an Issue of Fact

Alternatively, the magistrate judge failed to articulate that she had taken into consideration that RadioShack was sued before for illegally printing payment cards' expiration dates on receipts in *Ferron v. RadioShack Corp*, 175 Ohio App. 3d 257 (Ohio App. 2008), and that admittedly RadioShack had knowledge its is legal requirements under 15 U.S.C. § 1681c(g)(1) regarding its

---

[3] The pending appeal before this Court in *Nicaj v. Shoe Carnival Inc.*, No. 14-1320, also presents the issue that willfulness is a question of law. *Nicaj v. Shoe Carnival Inc.*, No. 14-1320, Doc. 12, Brief of the Appellant, p. 2 ("Whether under *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007), is determining a willful violation of 15 U.S.C. § 1681c(g)(1) a question of law?").

point of sale terminals.  "Abuse of discretion occurs when the district court commits a serious error of judgment, such as the failure to consider an essential factor." *United States v. Lowe*, 632 F.3d 996, 997 (7th Cir. 2011).

RadioShack concedes that it knew what the law required, but then states it, "did not know of the violation."  (RadioShack Resp., p 10).  The printing of an electronically printed credit card receipt requires programming of the point of sales terminal to print out the specific information that the merchant requires.  *See e.g.* (R. 53-1, PageID: # 261) (Rules for Visa Merchants, p. 62). The Rosman objectors attached a copy of the actual receipt one of them received from RadioShack.  (R. 115-1, PageID: # 1170).  An enlarged copy of the receipt is included for the Court convenience ease of ease of readability as follows:



```
            THE SHACK THANKS YOU.

                  RADIOSHACK
               8125 WISCONSIN AVE
             BETHESDA, MD  20814-3643
                  (301) 986-8844


   27800320                          $10.49
   PK4 GP 18GA SPKPN


   SubTotal                         $10.49
   Tax                 1.00%         $0.63
   TOTAL                            $11.12

   V-SA                             $11.12
   CHANGE                            $0.00

   Total Items Sold: 1

   Card number:  ***************1502  N
   Exp Date:  04/2012
   Tran # 33670941
   Authorization  02318C
   Host Captured Y      $11.12
```



It is a stretch of the imagination that RadioShack knew nothing about the content that it printed on approximately 16 million of its receipts.  The class member's receipt above provides the address, telephone number, and the store number of the RadioShack store the purchase was made from, the SKU assigned the item that was purchased and its price, the sales tax charged for the state of Maryland, the initials of the sales associate who rung the transaction, and that the purchaser could tell RadioShack about their shopping experience at http://www.tellradioshack.com, and if they completed the survey they would "receive a coupon good for $10 off. . . ."  (Id.).  Those who take the survey via the website identified on the receipt, and indicate that they have their receipt, are directed to look for specific information on the receipt

http://survey.medallia.com/radioshack/?feedless-radioshack-f1f381c5c0277cccc4a19b22537314f7 (last visited June 12, 2014).

Because RadioShack knew what its exact legal requirements under 15 U.S.C. § 1681c(g)(1) and was sued in 2006 for the same illegal conduct in *Ferron* the district court failed to consider such factual matters which are more than enough factually to make a finding of willfulness, if willfulness is a question of fact.

### C.    The District Court Failed to Properly Calculate the Valuation of the Settlement

In *Eubank*, this Court once again in reversing a district court's approval of a class action settlement stated that, "[the district court] didn't estimate the likely outcome of a trial, as he should have done in order to evaluate the adequacy of the settlement.   *Eubank*, 2014 U.S. App. LEXIS 10332 at * 30 (*citing Reynolds v. Beneficial National Bank,* 288 F.3d 277, 285 (7th Cir. 2002)). The district court here likewise failed to make that same required evaluation, which amounts to reversible error.   *Id.*

RadioShack further incorrectly argues that the district court properly valuated the settlement under *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006).   Not so.   The settlement here was clearly disproportional as under the terms Plaintiffs' counsel was to receive $1,000,000, each of the three Plaintiffs $5,000 and each of the class members, if all made a claim, would receive a $0.13 coupon.   Given that the liability in the case is at a minimum $100 per transaction, the coupon relief available, valuating in *arguendo* a penny coupon's worth is a penny cash, the chance of success in this matter is

0.13%. In *GMAC*, this Court took issue with the amount the class representative received compared to the chance of success established by the class relief, and also stated that, "if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny." *GMAC*, 434 at 952. Under *GMAC*, if this case truly had the low value the parties represented to the district court this case had, this case would have been better dismissed, rather than providing almost $1,000,000 to Plaintiffs' attorneys and each Plaintiff $5,000. Instead, the district court approved an impermissible sellout.[4]

The district court was required to calculate the outcome of a trial as a staring point in determining the valuation of the settlement. *Eubank*, 2014 U.S. App. LEXIS 10332 at * 30. *GMAC*, however provides the district court with authority to make an adjustment in the damages downward that are obtained by a judgment that are "unconstitutionally excessive" thereby the calculation of pennies on the dollar for a settlement may be warranted. *Id.*, at 954 (*citation omitted*). Here the district court's opinion is void as to what this unconstitutionally excessive dollar amount was in this case and ignored the Gupta objectors' citation to RadioShack's SEC filing that RadioShack's July 23,

---

[4] Even the stated potential *cy pres* award to Boys' and Girls' Club if $3,250,000 was not distributed by the settlement was a sham. $2,250,000 (administration costs) + $1,000,000 (attorney's fees and costs) + $15,000 (Plaintiffs' awards) = $3,265,000 which is greater than $3,250,000. RadioShack, however falsely represents to this Court that "the high number of claims—83,332—mooted the possibility of a *cy pres* distribution." (RadioShack Resp., p. 5) (*citing* A13). A misleading class notice should be a basis for rejecting the approval of a class action settlement. *See Eubank,* 2014 U.S. App. LEXIS 10332 at * 30-31. Nor was the intended recipient of the *cy pres* permissible as a matter of law. (R. 115) (citing *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) *cert. denied* 134 S. Ct. 1318 (2014)).

2013 filing with the Securities and Exchange Commission ("SEC"), that its expected loss contingencies in the aggregate up to $16.6 million "will not materially adversely affect" RadioShack.    RadioShack Corp, 10-Q/A (Amendment No. 1) filed 7/23/2013, p. 10.    (R. 112, PageID #:1114).    If RadioShack's SEC filing was truthful, around the time of the parties' settlement a $16.6 million settlement would seemingly "not materially adversely affect" RadioShack.

Likewise Plaintiffs do not contest the Gupta Objector's position that Plaintiffs never informed the district court whether their belief of an impending RadioShack bankruptcy would be a Chapter 11 reorganization or a Chapter 7 liquidation, which would have left the class members holding worthless $10 coupons with RadioShack's doors being shuttered.    Nor does RadioShack contradict the Gupta Objector's position that the record does not reflect any statement by RadioShack that it was ever going to file bankruptcy of any type. As such, the district court abused her discretion ruling in an uninformed vacuum regarding Plaintiffs' bankruptcy arguments.    Without knowing whether the RadioShack bankruptcy only Plaintiffs' stated they believed would occur would be a Chapter 11 or a Chapter 7, the district could not properly evaluate whether $2.1 million in coupons that had only a 6 month redemption period available to 16 million class members was adequate compensation.

Plaintiffs however press that the district court's opinion was sufficient in light of them providing "expert testimony" (Plts. Resp., p. 5) (citing R. 134). Plaintiffs' approval memorandum was filed seven days before the final approval

hearing, thereby effectively shielding the purported "expert" from a meaningful *Daubert* challenge. At the final approval hearing the Gupta objectors noted that based on the "expert's" website, the purported "expert" was really nothing more than a "stock picker", not a CPA or a person who conducts financial audits of companies. (A128-129); (R.170, PageID: #2148). The district court's opinion is void of any consideration given the proffered "expert." The district court was required to conduct a *Daubert* analysis regarding Plaintiffs' purported expert. *United States v. Ozuna*, 561 F.3d 728, 737 (7th Cir. 2009). Failure to conduct a *Daubert* analysis of purported "expert testimony" is an abuse of discretion. *See id.*

RadioShack argues that the district court in determining as a factual matter the strength of Plaintiffs case was entitled to ignore that RadioShack was sued for the same conduct in 2006 in *Ferron* and rely on "Plaintiffs' counsel's assessment of the difficulty in proving willfulness." (RadioShack Resp., p. 13). Indeed, the district court's opinion makes no reference to *Ferron* or RadioShack's admission of knowledge of the Act and therefore the record does not reflect any consideration was on this two material factors was made and just followed Plaintiffs' counsels' lead.

In *Eubank*, this Court noted that judges expect adverse parties to generate case related information and are at a "disadvantage in evaluating the fairness of the settlement to the class" when the parties for the purposes of settlement agree with each other. *Eubank*, 2014 U.S. App. LEXIS 10332 at * 8 (citations omitted). Here Plaintiffs counsel originally argued correctly before the

11

district court that RadioShack's application of the law regarding the question of law presented in *Safeco* was, "simply misrepresenting Safeco's holding." (AG 11).

To bolster Plaintiffs' new tune in settlement, RadioShack here misconstrues *Transworld Airlines, Inc. v. Thurston,* 469 U.S. 111, 129 (1985), for the proposition that an act cannot be willful even if the defendant knew the law but failed to comply. (RadioShack Resp., p. 14). In *Transworld Airlines,* the Supreme Court found that a willful violation of the ADEA could not be established were, "TWA officials met with their lawyers to determine whether the mandatory retirement policy violated the Act. Concluding that the company's existing plan was inconsistent with the ADEA, David Crombie, the airline's Senior Vice President for Administration, proposed a new policy." *Id.* at 129. The Court ultimately held, "The record makes clear that TWA officials acted reasonably and in good faith in attempting to determine whether their plan would violate the ADEA." *Id. Transworld Airlines* simply follows *Safeco's* holding that a company that tries to determine its legal obligations, and implements a policy, although be it wrong is reasonable, the company will not be held to have willfully violated the act. *Safeco*, 551 U.S. at 70 n. 20; *Shell Oil*, 678 at 491-92 (Cudahy, J) (*concurring*). Here, RadioShack admittedly knew its legal responsibilities under 15 U.S.C. § 1681c(g)(1) and did not comply with the Act approximately 16 million times.

RadioShack's additional argument that a defendant must actually know that law and voluntarily or intentionally violated it does not hold water. *Safeco*,

551 U.S. at 57) (*quoting Bryan v. United States*, 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998) ("'[W]illfully'" is a "'word of many meanings'" dependent on context, "we have generally taken it [when used as a statutory condition of civil liability] to cover not only knowing violations of a standard, but reckless ones as well."); *Murray v. New Cingular Wireless Servs.*, 523 F.3d 719, 726 (7th Cir. 2008 ("recklessness [is] something more than negligence but less than knowledge of the law's requirements."); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 650 (6th Cir. 2008) (A reckless disregard for known legal obligations is willful conduct); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 582-583 (2010) ("Our law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.")

RadioShack next argues that the district court correctly valued this FACTA case as having very low value in light of the settlement in the Northern District of Illinois such as *Dudzieneski v. GMRI, Inc. d/b/a The Olive Garden Italian Restaurant*, 1:07-cv-3911 (N.D. Ill.) Doc. 68, a case settled by one of the Plaintiffs' same counsel here.  The Gupta Objectors' opening brief correctly pointed out that in fact the district court overlooked several other FACTA settlements in this district that ranged from $40 - $100 in cash for class claimants.  (Gupta Obj. Br., p. 13, n.6) (*citing* R. 112, PageID #:1118).  The district court simply applied the wrong valuation to this case; especially a case where the damages could be higher than $100 per violation in light of the *Ferron* lawsuit and RadioShack's admitted knowledge of FACTA.

13

RadioShack, and apparently the district court, viewed the coupon settlement in *Sosinov v. RadioShack Corp.*, in the same light; $11 guaranteed coupon in *Sosinov*, compared to the "$10" coupon offered. The amounts are not similar in that the $10 was not guaranteed, it was to be distributed on a *pro rata* basis if the 16 million class members made less that $2.1 in claims.[5] However in *Sosinov*, all of the class members were sent automatically the $11 coupon, (AG 20), while in this case, RadioShack did not automatically send each of the 4,449,805 class members who were sent direct notice of the settlement that was not returned. (R. 135, PageID #:1641-42). In *Sosinov*, the RadioShack agreed to pay the class representative $2,000, (AG 20-21), here each of the three class representatives will each receive $5,000. In *Sosinov*, class counsel RadioShack agreed to pay class counsel $375,000, (Id. 20), here class counsel was promised $1,000,000. The *Sosinov* settlement highlights the disproportionality of this agreement to which *GMAC* suggests that the district court abused its discretion in approving.

## II.    CAFA, the Coupons and Attorney's Fees

In addition to the opening brief and its incorporation of the Rosman's opening arguments, the Gupta Objectors further state that neither RadioShack

---

[5] Here as noted by the Gupta Objectors before the district court, the electronic claim form asked for the class member to provide arcane data under the penalty of perjury, data RadioShack would have for the class members it send direct notice to, (R. 110, 110-2 at PageID #: 1088, 1090). Requiring such arcane data under the penalty of perjury was specifically designed to improperly reduce participation. *See Eubank,* 2014 U.S. App. LEXIS 10332 at * 24.

or Plaintiffs contradict the evidence that RadioShack does not sell goods over $10 dollars, and thus a $10 coupon is not a whole product.

Plaintiffs also argue that the $1 million to Class Counsel was not a "common fund settlement[.]" (Plts. Resp., p. 12). However the settlement agreement sets for a percentage of the total fund as the basis for the payoff. (A61-31; R. 130, pp. 3-4) ("Class Counsel shall be paid $1,000,000 (18.69% of the Settlement Amount) as compensation for their reasonable attorney's fees and costs. . . .") The plain reading of the settlement agreement indicates that Plaintiffs' attorney's fees and costs was part of a common fund settlement, and combined with CAFA's requirements in coupon settlements, limits Plaintiffs' counsels attorney's fees to 18.69% of the redeemed coupons.

## CONCLUSION

For all these reasons and those stated in the Gupta Objectors' opening brief, this Court should reverse the district court's decision as the settlement was not fair, reasonable or adequate, or alternatively as incorporated the Rosman position that the proposed class relief is a "coupon" under CAFA, reverse the district court's order regarding the award of attorney's fees.

Respectfully submitted,

/s/ Curtis C. Warner

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave., Ste. 425
Des Plaines, IL 600618
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com
*Counsel for Objector Appellants Vanita Gupta, Gregory Runyard,Charles H. Warner, Jr. and Eduardo Vasquez,* (Appeal No. 14-1471)

**CERTIFICATE OF COMPLIANCE**
**FED. R. APP. P. 32(a)(7)(C) and**

    1.    This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A).

    2.    This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 12-point Bookman Old Style font.

Respectfully submitted,

/s/ Curtis C. Warner

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave., Ste. 425
Des Plaines, IL 600618
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com
*Counsel for Objector Appellants*
*Vanita Gupta, Gregory Runyard,*
*Charles H. Warner, Jr. and Eduardo Vasquez*
(Appeal No. 14-1471)


Dated: June 16, 2014

16

**CERTIFICATE OF SERVICE**

I hereby certify that June 16, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

/s/ Curtis C. Warner

Curtis C. Warner
WARNER LAW FIRM, LLC
1400 E. Touhy Ave., Ste. 425
Des Plaines, IL 600618
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com
*Counsel for Objector Appellants*
*Vanita Gupta, Gregory Runyard,*
*Charles H. Warner, Jr. and Eduardo Vasquez*
(Appeal No. 14-1471)


Dated: June 16, 2014