Nos. 14-1470, 14-1658

Consolidated with No. 14-1471

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

SCOTT D.H REDMAN, *et al.*,

Plaintiffs – Appellees,

v.

RADIOSHACK CORPORATION,

Defendant – Appellee,

APPEAL OF: MICHAEL ROSMAN, Objector, *et al.*,

On Appeal from the United States District Court

for the Northern District of Illinois, No. 1:11-cv-06741,

Magistrate Judge Maria G. Valdez

Reply Brief

of Appellants Michael Rosman, Jessica Kasten, and Robert Scott

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*Attorneys for Appellants Michael Rosman and Jessica Kasten* (14-1470)

LAW OFFICES OF DARRELL PALMER PC
Joseph Darrell Palmer
2244 Faraday Ave, Ste 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
*Attorney for Appellant Robert Scott* (14-1658)

# Table of Contents

Table of Contents.................................................................................................. ii

Table of Authorities ............................................................................................. iii

Introduction ............................................................................................................1

I.    The settlement violates the Class Action Fairness Act. .............................4

      A.    The "vouchers" are "coupons." ........................................................4

            1.    Plaintiffs rely on a logical fallacy. ........................................5

            2.    The Electronic Fund Transfer Act is inapposite...................7

            3.    Plaintiffs' other arguments for their definition also fail..........8

      B.    Section 1712(a) applies.....................................................................9

            1.    *Inkjet* is correct..................................................................9

            2.    The fees are "attributable to the award of coupons."..........13

II.   The $2.25 million for settlement administration is not a class benefit. ..13

III.  The disproportion of the settlement should result in *per se* rejection....16

IV.   The lower court committed other independent reversible legal errors. ...19

      A.    Rule 23(h) means what it says. ......................................................19

      B.    As a matter of law, the lower court failed to appropriately recognize the
            "red flags" of the inappropriate reversion and the clear-sailing clause.....21

            1.    The lower court's endorsement of reversions was error........21

            2.    There is no waiver. .............................................................23

Conclusion ............................................................................................................24

Certificate of Compliance with Fed. R. App. P. 32(a)(7)(C)................................26

Proof of Service....................................................................................................27

# Table of Authorities

<u>Cases</u>

*Amcast Indus. Corp. v. Detrex Corp.*,
    2 F.3d 746 (7th Cir. 1993) ........................................................................23

*Americana Art China v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) ....................................................................17

*In re Aqua Dots Prod. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ..........................................................14-15, 24

*Asher v. Baxter Int'l, Inc.*,
    377 F.3d 727 (7th Cir. 2004) ....................................................................13

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ..................................................................13-15

*Bailey v. International Brotherhood of Boilermakers*,
    175 F.3d 526 (7th Cir. 1999) ....................................................................23

*Bew v. City of Chicago*,
    252 F.3d 891 (7th Cir. 2001) ....................................................................23

*Blessing v. Sirius XM Radio*,
    507 Fed. Appx. 1 (2d Cir. 2012) ..................................................................9

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................. 15, 17-18, 21, 24

*County of Santa Clara v. Superior Ct.*,
    50 Cal. 4th 35 (2010) ..............................................................................18

*Davis v. Cole Haan, Inc.*,
    2013 U.S. Dist. LEXIS 151813 (N.D. Cal. Oct. 21, 2013) ............................3

*Dixon v. ATI Ladish LLC*,
    667 F.3d 891 (7th Cir. 2012) ....................................................................23

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ................................................................17-18

*EEOC v. Illinois Dept. of Employment Sec.*,
    995 F. 2d 106 (7th Cir. 1993) ..................................................................11

*Elder v. Holloway*,
    510 U.S. 510 (1994) ..................................................................................24

*Eubank v. Pella Corp.*,
    No. 13-2091, __ F.3d __,
    2014 U.S. LEXIS App. 10332 (7th Cir. Jun. 2, 2014) ............................ 1-2, 4, 13, 16-23

*Fraley v. Facebook*,
    2013 U.S. Dist. LEXIS 124023 (N.D. Cal. Aug. 26, 2013) ...........................................14

*Gen. Dynamics Land Sys. v. Cline*,
    540 U.S. 581 (2004)..................................................................................11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)........................................................................20-21

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ........................................................3, 4, 9-13

*In re HP Laser Printer Litig.*,
    2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ............................................12

*Lindh v. Murphy*,
    521 U.S. 320 (1997) ..................................................................................11

*Mayer v. Spanel Int'l Ltd.*,
    51 F.3d 670 (7th Cir. 1995) .......................................................................9

*McCutcheon v. FEC*,
    134 S. Ct. 1434 (2014)...............................................................................23

*National City Healthcare Finance v. Refine 360, LLC*,
    607 F. Supp. 2d 881 (N.D. Ill. 2009)........................................................18

*Robinson v. Alter Barge Line, Inc.*,
    513 F.3d 668 (7th Cir. 2008) .....................................................................23

*Russello v. United States,*
    464 U.S. 16 (1983) ...........................................................................................11

*In re Southwest Airlines Voucher Litig.,*
    2013 WL 5497275, 2013 U.S. Dist. LEXIS 143146 (N.D. Ill. Oct. 3, 2013)..................3

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................................15

*Synfuel Technologies v. DHL Express (USA),*
    463 F.3d 646 (7th Cir. 2006) ...............................................................4-5, 13

*United States v. Anchor Mortg. Corp.,*
    711 F.3d 745 (7th Cir. 2013) ........................................................................14

*Valero Energy Corp. v. United States,*
    569 F.3d 626 (7th Cir. 2009) ..........................................................................7

*Weinberger v. Great Northern Nekoosa Corp.,*
    925 F. 2d 518 (1st Cir. 1991). .......................................................................21

*Yee v. Escondido,*
    503 U.S. 519 (1992)....................................................................................23

<u>Rules and Statutes</u>

15 U.S.C. § 1693*l*-1(a)(2)(C) ...........................................................................7

15 U.S.C. § 1693*l*-1(a)(2)(C)(iv) ......................................................................8

15 U.S.C. § 1693*l*-1(a)(2)(D)(iv) ......................................................................8

15 U.S.C. § 1693*l*-1(b)(1) .................................................................................8

15 U.S.C. § 1693*l*-1(c)(1) .................................................................................8

15 U.S.C. § 1693m(a) .......................................................................................8

28 U.S.C. § 1711 note §2(a)(3)(A) .................................................................12

28 U.S.C. § 1712 ....................................................................................*passim*

28 U.S.C. § 1712(a) ...................................................................................................9-13

28 U.S.C. § 1712(b) ...................................................................................................9, 12

28 U.S.C. § 1712(b)(2) ..............................................................................................10

28 U.S.C. § 1712(c) ...................................................................................................12

28 U.S.C. § 1712(c)(1) ..............................................................................................10

28 U.S.C. § 1712(e) ...................................................................................................11

86 Ill. Adm. Code. 130.2125(c) (2008)...................................................................7

Fed. R. Civ. Proc. 23 .................................................................................................12

Fed. R. Civ. Proc. 23(a)(4) .......................................................................................18

Fed. R. Civ. Proc. 23(e) ................................................................................. 3, 15, 17

Fed. R. Civ. Proc. 23(e)(1) .......................................................................................20

Fed. R. Civ. Proc. 23(h).................................................................................17, 18-21

Fed. R. Civ. Proc. 23(h)(1) ..........................................................................18-21, 23-24

Second Cir. Loc. R. 32.1.1(a) ...................................................................................9

## Other Authorities

Brickman, Lester,
    LAWYER BARONS (Cambridge University Press 2011) .........................................21-22

Issacharoff, Samuel,
    *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805 (1997) .............................................2

LOVE AND DEATH (United Artists 1975)...................................................................6

Nimoy, Leonard,
    *Highly Illogical*, on TWO SIDES OF LEONARD NIMOY (Dot Records 1968) ...................6

Sale, Hillary A.,
    *Judges Who Settle*, 89 WASH. U. L. REV. 377 (2011).......................................................2

SEN. REP. NO. 109-14 (2005), reprinted in 2005 U.S.C.C.A.N. 3 ......................................7, 12

## Introduction

Kasten's appeal complains that class counsel structured a settlement to pay themselves $1 million—a premium from their lodestar—while their 16 million clients would get substantially less than that for waiving statutory claims of $100 to $1000: 83,332 $10 coupons that expire in six months. In their brief, plaintiffs *admit* that "expected claims rates" would indeed be as low as the 0.5% range. PB18.[1] Thus, the settlement is not just unfairly one-sided, but plaintiffs all but acknowledge an intentional breach of fiduciary duty, rather than one that occurred by happenstance.

In her opening brief, Kasten argued that the district court's proposed standard would suggest that a settlement that solely issued a single $10 coupon to a single class member after paying $2.25 million in notice while paying the attorneys $1 million would be "fair." OB28 n.4. Appellees never dispute that this is the absurd consequence of the legal rule of decision they ask this Court to affirm. If Rule 23(e) settlement fairness means anything, Kasten must be correct that there was reversible error here.

But there's more.

On June 2, this Court issued *Eubank v. Pella Corp.*, which agrees with Kasten on the central dispositive allocation issue. No. 13-2091, __ F.3d __, 2014 U.S. App. LEXIS 10332 (7th Cir.). *Eubank* reversed a settlement approval over a number of "red flags," many of which Kasten identified in this case: the problem of disproportionate one-sided recovery; the district court's decision to value the settlement using illusory measures of maximum possible redemptions rather than actual benefit to the class; and the

---

[1] PB refers to plaintiffs-appellees' brief; DB to defendant-appellee's brief; OB to the opening brief of appellants Rosman, Kasten, and Scott; A to the Rosman appendix.

"questionable" settlement provision that reversion of excess fee demands accrue to the defendant rather than the class. *Id.* at *27, *33 (calling ratio of $8.5 million recovery to $11 million in fees "one-sided[]"); *id.* at *27 ("We don't understand the judge's valuing the settlement at $90 million…"); *id.* at *17 (referring to fee segregation as "questionable" provision). *Eubank* by itself requires reversal, for the district court erroneously singled out the fee-segregation provision that objectors and this Court criticized, and held it to be a reason for settlement approval, rather than for additional scrutiny.[2]

Yes, plaintiffs can point to several (though not a unanimous number of) district courts that, when faced with an *ex parte* presentation of a settlement proposal and an opportunity to clear a complex class action off of their docket, ignore statutory language and sound public policy and agree with plaintiffs' position in this case about application of the Class Action Fairness Act ("CAFA") to coupon settlements, the "questionable" provision of reversion settlements, and whether to count payments to a third party for notice as a class benefit for which class counsel is entitled to a commission. *Cf. Eubank*, 2014 U.S. LEXIS App. 10332 at *8 (noting problem when judges are required to scrutinize settlements without assistance of adversary proceeding); Samuel Issacharoff, *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805, 829 (1997); Hillary A. Sale, *Judges Who Settle*, 89 WASH. U. L. REV. 377, 411-12 (2011). But courts of appeals

---

[2] *Eubank* also agrees with Kasten that *of course* a settlement will have relatively few objections, pulling the rug out from under the district court's erroneous reliance on this meaningless fact. *Compare id.* at *30-*34 *and* OB34 n.5 *with* A13-14.

dictate to district courts, not the other way around.[3] Simply put, the other district courts' decisions are also wrong; a review of the precedent shows their reasoning to be conclusory or otherwise unpersuasive for failing to address the arguments Kasten makes here. That the district court's legal errors in this case are repeated by several other district courts does not mean they are not legal errors. Rather, it emphasizes the need for a comprehensive opinion in this case to resolve the conflict.

Plaintiffs ask to create a gratuitous circuit split with *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ("*Inkjet*"), and the Court should decline this invitation.

One additional note: RadioShack characterizes Kasten as "challeng[ing] only the reasoning for the district court's approval of attorneys' fees." DB8. Plaintiffs seem to similarly mischaracterize Kasten's argument. PB23. This is incorrect: Kasten makes a Rule 23(e) argument about the unfair allocation of the meager settlement benefit between class counsel and the class. OB8-11; OB29-35. Kasten takes the further position that a settlement structured to violate 28 U.S.C. §1712 cannot be approved. OB12-25.

Reversal and remand is required because the lower court applied the wrong legal standards on several independent issues, but this Court should go further and reject the red-flag-laden and one-sided settlement.

---

[3] Thus, Kasten's brief did not rely on such CAFA cases as *Davis v. Cole Haan, Inc.*, 2013 U.S. Dist. LEXIS 151813, at \*7-\*8 (N.D. Cal. Oct. 21, 2013) and *In re Southwest Airlines Voucher Litig.*, 2013 WL 5497275, 2013 U.S. Dist. LEXIS 143146, at \*8-\*11 (N.D. Ill. Oct. 3, 2013) (appeal pending), which agree with Kasten that coupons for whole products are still coupons. Plaintiffs cite *Southwest* for one of its two CAFA holdings, but ignore the other.

## I.    The settlement violates the Class Action Fairness Act.

### A.    The "vouchers" are "coupons."

Appellees do not and cannot dispute that:

- CAFA does not define "coupon" or "recovery of coupons" and that the ordinary meaning applies (OB13);

- the *New York Times* and dictionaries and numerous websites use "coupon" to include vouchers for free products (OB13-14);

- courts can legitimately consider the *Times* and Google in finding common usage (OB14);

- the "settlement vouchers" have expiration dates and other limitations that will cause many to go unused (OB4-5; OB18; OB23-24);[4] nor that

- the coupons issued in this settlement have the same problems of the discount coupons that *Inkjet* and *Synfuel Technologies v. DHL Express (USA),* 463 F.3d 646 (7th Cir. 2006) criticized (OB15-16).

Nevertheless, plaintiffs insist that there is "no plausible scenario" where a 100% discount is a coupon, and that only vouchers that provide partial discounts are "coupons." PB29-31. Even if this were true, appellees do not and cannot dispute that it is all but mathematically certain that some of the $10 vouchers will be used to obtain

---

[4] Well, perhaps plaintiffs dispute this when they assert that Kasten is wrong in calling the relief "illusory." PB35. As Kasten acknowledged (OB4-5), these coupons have features such as transferability and some limited stacking; $10 coupons are more likely to be used than $0.75 coupons. But Kasten never claimed that the coupons had zero value; her complaint is that the actual value is less than the illusory face value the district court erroneously used. OB18; OB23-24. Under *Eubank*, that is legal error whether or not these are coupons. 2014 U.S. App. LEXIS 10332 at *26-*27.

discounts on products that cost more than $10 (OB16). This waiver by appellees by itself concedes reversible error: the settlement provides for a "recovery of coupons," even under appellees' narrow definition of coupon.

Even if plaintiffs were correct and one *also* ignored that some or most of the coupons in this settlement will be used as discounts, there is still reversible error. *First*, because plaintiffs neither dispute that some of the vouchers will not be used before they expire nor that other vouchers will not be used for their full $10-face-value (OB18), plaintiffs have waived any argument that the lower court incorrectly valued the settlement relief. *Second*, as Kasten pointed out in her opening brief, *Synfuel* holds that even things that are not precisely CAFA coupons—such as in-kind relief of distribution of free products in a pre-CAFA settlement—should be treated like CAFA coupons. OB17 (citing *Synfuel*, 463 F.3d at 654). On the spectrum of similarity to coupons, $10 vouchers that expire are much more like coupons than like *Synfuel*'s pre-paid envelopes (provided without the intermediate step of redeeming a voucher), so *Synfuel* dictates that the CAFA standards apply.

But even the definitional arguments plaintiffs do make are based on both faulty logic and faulty premises.

### 1.    Plaintiffs rely on a logical fallacy.

It is not unfair to summarize plaintiffs' proposed syllogism as follows:

1.    There exist websites that offer coupons where each coupon provides only a partial discount. PB26.

2.    There exists legislative history that criticizes a coupon settlement where the coupons offered provided only partial discounts. PB24-25; PB28.

3.    Therefore all "coupons" provide only partial discounts.

4.     Therefore a voucher for a free product is not a "coupon." PB29-31.

The formal fallacy in plaintiffs' logic is even more apparent in the following analogy:

1.     There exists a dog racing track where each racing dog is a greyhound.

2.     Actor Leonard Nimoy owns a dog that is a greyhound.

3.     Therefore all dogs are greyhounds.

4.     Therefore a collie is not a dog.

Nimoy's most famous character had a catchphrase for this.[5]

Plaintiffs repeat this mistake elsewhere. Kasten noted that Google identifies millions of webpages offering "coupons for a free" product. OB14. Plaintiffs respond that some of those webpages include coupons for free products that require purchases. PB28. Perhaps, but so what? It doesn't change the fact that thousands, and perhaps millions, of these pages offer coupons for 100% discounts. For example, the first page of search results on June 9 included http://www.sleepwithneuro.com/, which then offered a coupon for a free beverage without purchase. Such coupons are not uncommon promotions to induce consumers to try new products.

But even if plaintiffs' logic were correct, their premises are not. Plaintiffs point the Court to http://www.retailmenot.com, and argue that the only coupons there are for partial discounts. PB26. Not so. On June 9, RetailMeNot offered, for example, coupons for a free movie rental for first-time Redbox kiosk customers. It also offered a coupon

---

[5] *Cf.* Leonard Nimoy, *Highly Illogical* on TWO SIDES OF LEONARD NIMOY (Dot Records 1968). Or, as Woody Allen once said, "All men are mortal. Socrates is a man. Therefore all men are Socrates." LOVE AND DEATH (United Artists 1975).

(expiring June 17) from Shutterfly for a free 5"x7" photo card. The other two websites plaintiffs mention have also had similar Redbox offers.

Even the Senate Report plaintiffs rely on (PB24-25; PB28) hurts their case. SEN. REP. NO. 109-14 (2005) also criticized settlements that provided free spring water and free golf balls without any purchase required. 2005 U.S.C.C.A.N. 3, 17-18. The Report even criticized a Cellular One settlement with "$15 vouchers" like the $10 RadioShack voucher that could be used to obtain free products. *Id.* at 20. Of course, even if plaintiffs' view of the legislative history were correct, the legislative history does not trump the text of the statute. *E.g.*, *Valero Energy Corp. v. United States*, 569 F.3d 626, 634 (7th Cir. 2009). The text of § 1712 creates no exception for coupons for free products.

Finally, there exist state laws that expressly assume that "coupons" include coupons for free products. *E.g.*, 86 Ill. Adm. Code. 130.2125(c) (2008) (taxability of transaction involving "a coupon that entitles the bearer to obtain an item of tangible personal property free of any charge whatever").

### 2.     The Electronic Fund Transfer Act is inapposite.

Plaintiffs argue that the coupons in this case are gift cards under the Electronic Fund Transfer Act, 15 U.S.C. §1693*l*-1(a)(2)(C), and that Congress's "failure to use or define 'coupons' to encompass [gift cards] in CAFA indicates it did not intend for 'coupons' to encompass vouchers and gift cards." PB25.

But plaintiffs' reasoning cuts both ways. Congress did not define coupons to *exclude* gift cards, either. The settlement vouchers are members of both the genus "coupon" and the species "gift cards" without any contradiction, just as Lassie is simultaneously in the genus *Canis*, a dog, and a collie.

That said, plaintiffs misread the statute. The settlement vouchers are not "marketed to the general public," nor honored if one tries to use more than three at once; they therefore cannot be statutory "store gift cards." 15 U.S.C. §1693*l*-1(a)(2)(C)(iv), (a)(2)(D)(iv). If they are store gift cards, as plaintiffs contend, they are illegal, because they have a six-month expiration date. 15 U.S.C. §1693*l*-1(c)(1); OB4. Nor is it permissible to confiscate a store gift card used for less than its full amount. 15 U.S.C. §1693*l*-1(b)(1). At oral argument, the Court should ask RadioShack's counsel whether their settlement coupons are store gift cards. If so, RadioShack is potentially liable for over $80 million in statutory damages. 15 U.S.C. §1693m(a).

### 3.    Plaintiffs' other arguments for their definition also fail.

Plaintiffs argue that it is inappropriate to rely on Kasten's citations to dictionary definitions. PB27. But their cited cases' argument applies only to situations where opposing sides rely solely upon competing dictionary definitions without any reason to prefer one definition to another, and to the problem of using dictionary definitions out of context. Plaintiffs offer not a single dictionary definition that supports their crabbed reading that the common meaning of "coupon" means only "coupons for partial discounts." There is a reason that dog did not bark. Kasten relies not just on multiple dictionary definitions, but also the context of the demonstrated common usage of the word by everyone from *The New York Times* to plaintiffs' own cited websites. OB13-14; Section I.A.1, above. Coupons that can hypothetically be used to purchase an entire product are still coupons.

The settlement "provides for a recovery of coupons to a class member," even though the coupons are called "settlement vouchers." All of the vouchers in this case are coupons, even if one assumes against common sense that every voucher will be

exchanged for a product worth exactly $10. The district court committed reversible error in holding otherwise.[6]

**B.     Section 1712(a) applies.**

**1.     *Inkjet* is correct.**

The sole precedential appellate decision agrees with Kasten.[7] Plaintiffs ask this Court to create an unnecessary circuit split and side with the dissent in *Inkjet*. But a circuit split should not be created "without strong cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 675 (7th Cir. 1995).

Not only do plaintiffs provide no such strong cause, but the *Inkjet* majority is correct, and its dissent is incorrect.

The central question is whether §1712(a) and (c)(1) limit the discretion of the court when calculating attorney's fees. *Inkjet* provided five pages of detailed textual analysis of §1712 explaining why it does limit a court's discretion. 716 F.3d at 1180-85. The *Inkjet* dissent, plaintiffs, and the district-court cases plaintiffs cite fail to answer *Inkjet*'s textual arguments.

Plaintiffs focus on §1712(b), which says, in relevant part, that "[n]othing in this subsection shall be construed to prohibit application of a lodestar … method of

_____

[6] Plaintiffs also misstate the facts of *Inkjet*, claiming that the coupons there were only for partial discounts. PB32 n.8. But *Inkjet* claimants could receive e-credits as large as $13 if their purchase qualified in each of three classes. 716 F.3d at 1176 n.2. Though one can purchase numerous items for less than $13 on the HP.com website, the settling *Inkjet* parties did not have the *chutzpah* to claim that this exempted them from CAFA.

[7] Plaintiffs cite *Blessing v. Sirius XM Radio*, 507 Fed. Appx. 1, 4 (2d Cir. 2012), but "Rulings by summary order do not have precedential effect." Second Cir. Loc. R. 32.1.1(a).

determining attorney's fees." No one is contesting that. Subsection (b)(2) does not limit the court's discretion. Subsections (a) and (c)(1) and their "shall" language do.

*Inkjet* provides two dictionary definitions of the key phrase "attributable to," both of which support a reading that suggests "attorneys' fees are 'attributable to' an award of coupons whenever '*the* [singular] award of the coupons' is the condition precedent to the award of attorneys' fees." 716 F.3d at 1181 (emphasis and brackets in original opinion). This reading, combined with the presence of the word "shall," led the majority to correctly hold that the portion of the fee award for which coupon relief was a condition precedent that "must be calculated in the manner prescribed by § 1712(a) (*i.e.*, using the redemption value of the coupons)." *Id.*

In contrast, the *Inkjet* dissent starts with the word "award," which is used twice in §1712(a): "the *portion of any attorney's fee award* attributable to the *award of the coupons* shall be based on the value of the coupons … redeemed" (emphasis added). The dissent argues that in the first bolded phrase, the word "portion" must refer to a "divisible item or amount," and therefore the word "award" must be synonymous with "monetary value," because it would "make little sense" to speak of a portion of a grant. *Id.* at 1193 (Berzon, J., dissenting). With this definition of "award" as "value," the dissent proceeds to interpret the second bolded phrase, relying on the consistent meaning canon to argue that "the 'award of the coupons' refers to the monetary value of the coupons," and therefore that the phrase "attributable to" serves simply to connect the two values. *Id.* at 1194 (Berzon, J., dissenting).

This approach is deeply flawed. The majority's interpretation that "the award of the coupons" means the "grant," "conferral," or "bestowal" of the coupons is the superior interpretation. *Id.* at 1181 n.10.

The *Inkjet* dissent's error is to rely so heavily on the consistent usage canon. "Canons of construction" are, of course, of limited use. *Cf., e.g., EEOC v. Illinois Dept. of Employment Sec.*, 995 F. 2d 106, 108 (7th Cir. 1993). This is especially true here when one can play "badminton" with another canon of construction. *Id.* The canon of meaningful variation cuts strongly against the dissent's interpretation. The dissent would have us believe that the phrase "award of the coupons" is synonymous with the value of the coupons. But the phrase "value … of the coupons" is used in the exact same sentence in the statute, and a variation of terms suggests a variation in meaning. *E.g., Russello v. United States*, 464 U.S. 16, 23 (1983); *see also Lindh v. Murphy*, 521 U.S. 320, 330 (1997). The canon of meaningful variation also cuts against the dissent's interpretation of the "portion of any attorney's fee award" as referring to the "value of fees" assessed. 716 F.3d at 1193 (Berzon, J., dissenting).  In §1712(e), the statute refers to the "portion of the *value* of unclaimed coupons." The canon of consistent meaning is a shaky ground on which to base one's entire interpretive scheme. *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 595 (2004).

The weakness of the consistent usage canon argument suggests that ordinary meaning should trump it. And with regard to §1712(a), ordinary meaning cuts heavily against the dissent. "Award" does not ordinarily mean "value." *Id.* at 1181 n.10.[8]

Plaintiffs again rely upon S. Rep. 109-14, but to the extent the legislative history merits weight, the *Inkjet* majority cites much more authority from the Senate Report

---

[8] Nor does "redeemed" mean "requested in a claim," which is the dissent's other attempt to sweep away the restrictions on coupon settlements in CAFA. *Compare id.* at 1189 n.4 (Berzon, J., dissenting) *with id.* at 1179 n.6 *and id.* at 1185-86.

supporting its interpretation than the plaintiffs purport to do; the plaintiffs fail to address *Inkjet*'s extensive analysis and citations. 716 F.3d at 1177-78, 1179-80, 1185-86.

But plaintiffs' quoted legislative history language (PB40) is inconsistent with their own interpretation: they argue that §1712(b) permits lodestar to be used even for a coupon-only settlement, when the Report says merely that lodestar can be used "in connection with a settlement based ***in part*** on coupon relief." 2005 U.S.C.C.A.N. at 30 (emphasis added). Yes, class counsel "may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement" and instead seek a lodestar award. This simply means that if the parties concede *arguendo* that the value of the coupons is zero, they can avoid the redemption calculation, and seek a lodestar calculation based on the non-coupon relief in the settlement. *E.g., In re HP Laser Printer Litig.,* 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) (using lodestar after excluding coupons from fee calculation). But if the coupons are needed as a basis for the attorneys' fees, then a court must use §1712(a) or §1712(c) to calculate the value of the coupons and fees attributable to the coupons. The alternative is to "tolerate the precise abuse § 1712 set about to eliminate." 716 F.3d at 1186.[9]

Section 1712 does not permit the use of lodestar for a coupon-only settlement.

---

[9] Plaintiffs argue that (notwithstanding the plain language of §1711 *note* §2(a)(3)(A) and this Court's holding in *Synfuel*, 463 F.3d at 654) Congress could not have meant to discourage coupon relief because it did not go so far as to prohibit it. PB40 n.11. But legislation is compromise, and Congress could compromise short of banning coupon settlements. *Cf. Asher v. Baxter Int'l, Inc.,* 377 F.3d 727, 732-33 (7th Cir. 2004).

## 2.     The fees are "attributable to the award of coupons."

Plaintiffs protest that the settlement permitted a $1 million fee request on a non-percentage basis, divorced from the value of the settlement. PB3; PB39 n.10. If so, that does not save them: settling parties affecting the rights of absent class members have no more authority to contract out of CAFA's requirements than they do to contract out of Rule 23 protections. If the settlement required a fee calculation CAFA forbids, it could not be approved, and the district court's failure to comply with §1712(a) was reversible error. OB25.

But plaintiffs' premise is wrong, too, and contradicts their own brief. The fees are explicitly defined as being "18.69% of the 'Settlement Amount'" (PB17 (Settlement §2.3(D)) and "Settlement Amount" is defined to include the maximum possible face value of claimed "Settlement Vouchers." PB16 (Settlement §2.2).[10] So the Court need not even decide between *Inkjet*'s majority and dissent, because even under the settlement terms, the fees are "attributable to the award of coupons" and §1712(a) necessarily applies.

## II.     The $2.25 million for settlement administration is not a class benefit.

According to the magistrate and the plaintiffs, the bulk of the value of the settlement was $2.25 million paid to the settlement administrator to distribute 83,332 coupons. A26. Kasten explained why this methodology makes no sense as a matter of

---

[10] Of course, it is legal error for a district court to *value* a settlement as Settlement §2.2 defines settlement value, rather than on the actual incremental benefit to the class. *Eubank*, 2014 U.S. App. LEXIS 10332 at *26-*27.

public policy, leads to absurd results (and led to absurd results here), and contradicts *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013). OB25-29.

The plaintiffs do not deny that Kasten is correct that attributing settlement value to notice creates perverse incentives; they do not deny that their argument means that a settlement that pays the class a peppercorn but the attorneys a million dollars is "fair" so long as millions more are spent on notice; they do not deny that notice costs are a prerequisite before a defendant can receive the benefit of the class-action bargain for a release, and is thus better viewed as a defendant benefit; they do not mention or distinguish *Baby Products*. They mention that some district courts reflexively consider administration a benefit. But others do not. *E.g., Fraley v. Facebook, Inc.*, 2013 U.S. Dist. LEXIS 124023, at *7 (N.D. Cal. Aug. 26, 2013); *see also generally* pp. 2-3 above. Plaintiffs rely on the *ipse dixit* that "it simply makes no sense to argue that they are not a benefit to the class," yet they acknowledge that this Court has previously called such expenditures a "transactions cost." PB48-49.

Plaintiffs' argument implies that settling parties worried that the relief given to the class is too small can fix any fairness problems by purchasing a couple of $3-million 30-second Super Bowl television ads.

Two other arguments bear short mention. *First*, plaintiffs argue that Kasten failed to raise the issue below. This is wrong: counsel raised it at the fairness hearing. A154 ("Of course the real winners are the administrators who get 2.2 million, *which is not a benefit to the class*" (emphasis added) (citing *Aqua Dots*)). This is sufficient to preserve the issue on appeal. *E.g., United States v. Anchor Mortg. Corp.*, 711 F.3d 745, 749 (7th Cir. 2013). *See also generally* Section IV.B.2 below.

*Second*, plaintiffs note (PB47) that *Staton v. Boeing, Inc.*, stated it "reasonable" to include the cost of notice to the class. 327 F.3d 938, 975 (9th Cir. 2003). *Staton* cited no authority and provided no reasoning for this *dictum*. In the context of the *Staton* opinion—which found the attorneys' fee award in that case impermissibly high even including the costs of notice as a class benefit—it appears that the Ninth Circuit was merely assuming *arguendo* that the costs of notice were a class benefit. But in any event, the Ninth Circuit neither considered nor rejected the arguments made by Kasten here, nor the later *Baby Products* and *Aqua Dots* precedents. As the Ninth Circuit points out elsewhere, "The standard under Rule 23(e) is not how much money a company spends on purported benefits, but the value of those benefits to the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) (internal quotation and brackets and citations omitted).

No one disputes that counting settlement administration costs as a class benefit leads to absurd results. This settlement approval, where the magistrate approved a settlement that gave a 16-million-member class 83,332 $10 coupons and the attorneys a million dollars *because* the defendant also gave the settlement administrator $2.25 million, is one such absurd result. Thus, even if it were to create a circuit split to do so (and Kasten does not think it does), this Court should hold it reversible error. The alternative of affirming this methodology creates a loophole that guarantees more of the sort of one-sided settlements *Eubank* criticized and that we see here.

**III.    The disproportion of the settlement should result in *per se* rejection.**

As discussed above, the lower court committed multiple errors of law in evaluating the settlement. But this court should go further than simply remanding, and hold, as it did in *Eubank*, that the settlement as currently structured is unapprovable.

In *Eubank*, this Court held that a settlement that (among other problems) paid the class at most $8.5 million, but the attorneys $11 million, was evidence of unacceptable "one-sidedness." 2014 U.S. App. LEXIS 10332 at *27, *33. This criticism of a settlement where the attorneys received "56 percent of the total settlement" (*id.* at *27) reinforces Kasten's position that the Seventh Circuit should make its previous implicit criticisms explicit, and establish a bright-line rule against settlements that "treat the class action lawyers better than the class." OB9-11; OB29-35. This settlement presents nearly exactly the same ratio as *Eubank*: *at most* $833,320 to the class (though likely substantially less because of coupon expiration, low redemption rates,[11] and coupons not used for the full $10 (OB18)), and just under $1M to the attorneys: 54%, rather than *Eubank*'s 56%. *Eubank* never suggested that the 56% settlement was *almost* good enough not to be "one-sided[]," so it would seem that even the most generous estimate of attorneys collecting 54% here is similarly unacceptable. And using the sort of discounting that *Eubank* estimated to calculate the actual value to the class here would push the figure well over *Eubank*'s 56%.

---

[11] Appellees each note that the coupons are transferable. This will no doubt increase the redemption rate and thus the "cost" to RadioShack, but class members who transfer their $10 coupons will not receive $10. No one engages in the transactions costs of negotiating to pay $10 to save $10.

Plaintiffs rely on *Americana Art China v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014), claiming that it rejected the "bright line rule that class counsel cannot receive more than the amount distributed to the class." PB42. It did no such thing. In *American Art China*, class counsel appealed *ex parte* from a district court's Rule 23(h) award, seeking augmentation. 743 F.3d at 245. No class members objected on appeal to the fee award, much less Rule 23(e) settlement approval; because of a clear-sailing clause, there was not even an appellee in *Americana Art China*. *Id.* This Court simply held that class counsel was lucky to as much as they got. *Id.* at 247 (criticizing appeal). *Americana Art China* never suggested that the unchallenged abusive and disproportionate settlement in that case created a benchmark of minimum fairness that no future objector could challenge. It simply says nothing about Kasten's Rule 23(e) challenge.

Plaintiffs do not say much more. Plaintiffs argue that *Bluetooth* and *Pampers* only apply to the specific bad settlements in those cases: "Unlike the situation in *Bluetooth*, where the class members received nothing more than safety information, the class members here received a $10 Settlement Voucher." PB15-16; PB44. Well, no, 0.5% of class members received a $10 coupon; the other 99.5% received nothing. *Bluetooth*'s holding criticized settlements "when counsel receive a disproportionate distribution of the settlement, **_or_** when the class receives no monetary distribution but class counsel are amply rewarded." 654 F.3d at 947 (emphasis added). Plaintiffs' reading eliminates the first clause entirely. Plaintiffs' argument further implies that it matters not how much the class receives in total, so long as a single class member receives something. That is not the law. *Bluetooth*, *Pampers* and *Eubank*, like most judicial opinions, create precedential rules of general applicability. They do not stand for the proposition that a

settlement need only hop over the low bar of "better than *Bluetooth*" to pass muster. And while this case may not have *Eubank*'s Rule 23(a)(4) problems,[12] *Eubank* stands for broader principles "on multiple grounds" for settlement disapproval. 2014 U.S. App. LEXIS 10332 at *18.

Plaintiffs improbably argue that RadioShack did not "acquiesce" to the self-dealing disproportionate allocation in this case. PB44-45. The fact that RadioShack signed a settlement agreement that paid class counsel more than the class, and agreed to "clear sailing" to boot, demonstrates otherwise. That there is a legally binding settlement that RadioShack is not challenging shows acquiescence as a matter of law.

Plaintiffs argue that one cannot look at the allocation of the settlement fund in this case because there was no common fund. PB45. That not just ignores economic reality and Kasten's discussion of the constructive-common-fund concept (OB41), but also *Bluetooth* and *Pampers*, neither of which had a common fund, but stood for the same principles that Kasten argues for here. Nor did *Eubank*, which, as discussed above, endorsed the principle that proportionality could be measured in the absence of a common fund. 2014 U.S. App. LEXIS 10332 at *27.

Class counsel received more than the class under any measurement of what the class actually received. *Eubank* confirms that such one-sidedness is unacceptable. This Court should not just remand, but hold that the settlement must be rejected.

---

[12] Though it may. No one inquired into the relationship between lead plaintiff Scott Redman, an attorney with Crowley Barrett & Karaba, and class counsel Paul Markoff and Karl Leinberger, who used to work there. *Cf. County of Santa Clara v. Superior Ct.*, 50 Cal. 4th 35, 41 (2010); *Nat'l City Healthcare Fin. v. Refine 360, LLC*, 607 F. Supp. 2d 881 (N.D. Ill. 2009).

## IV. The lower court committed other independent reversible legal errors.

The lower court committed several other independent reversible legal errors, including overlooking what *Eubank* calls "red flags."

Plaintiffs incorrectly claim that Kasten asks for the wrong review standard. PB23. With these appellate issues, Kasten argues that the lower court applied incorrect legal standards. OB36. They are thus questions of law reviewed *de novo*.

## A. Rule 23(h) means what it says.

Rule 23(h) requires a request for an attorney award to be made by a motion, and that "motions by class counsel" "***must be***" "directed to class members in a reasonable manner." Fed. R. Civ. Proc. 23(h)(1) (emphasis added). There is no dispute that class counsel's motion for a Rule 23(h) award was not made until well after the objection deadline. Class counsel's previous motion for preliminary approval (PB51) was not a motion for Rule 23(h) fees, and no contortion of the English language can fit that peg into the Rule 23(h) requirement.

This was no mere technicality. Without any notice of what the theory of Rule 23(h) fee entitlement was, Kasten was required to object in the dark. Kasten's objection below suffers from insufficient cynicism: appellants never *dreamed* that the parties would spend $27 for every $10 coupon on settlement administration and that the plaintiffs planned to claim that half of the value of the settlement was the money paid to the administrator. As a result, the objection (limited to fifteen pages under local rules) focuses on ultimately moot *cy pres* issues because of the faulty guess that there would be a few hundred thousand dollars spent on settlement administration and that money would revert to a third-party charity instead of the even more objectionable reality that settlement administrators would collect millions, class counsel would call

that a class benefit, and fee reductions would revert to defendants. And plaintiffs now claim that Kasten's lack of omniscience in failing to anticipate the sandbagged data before oral argument at the fairness hearing constitutes waiver. *See* Sections II above and IV.B.2 below.

*Eubank*, without reliance on a particular rule, criticized as improper a class notice that failed to disclose adverse information about the settlement that would have permitted meaningful objections. 2014 U.S. App. LEXIS 10332 at *30-*31. Here, class counsel did not even comply with what the Federal Rules explicitly require, though if the fee motion had been "directed to class members in a reasonable manner," it would have let Kasten and other class members know many objectionable facts about the settlement that were not previously disclosed before the objection deadline. The notice problem here was worse than the notice problem in *Eubank* because class counsel flouted the mandatory Rule 23(h)(1) rule rather than erred in a discretionary judgment call about what to include and exclude in a Rule 23(e)(1) notice. Who else might have objected if the disproportion had been fairly disclosed before the objection deadline?

And the lower court erred as a matter of law in inventing an exception to Rule 23(h)(1) on the basis of the so-called "separate" fund. A29. *First*, there was no basis in the Rules for the exception the court created, and plaintiffs identify none. *Second*, it is perverse to create an exception because of a "questionable provision" that prejudices the class and is itself objectionable. *See* Section IV.B.1 below. *Third*, the claim that the class has no interest in the contents of the fee motion is falsified by plaintiffs' arguments in their appellate brief that objectors were required to correctly anticipate those contents on pain of waiver when the district relies upon erroneous legal arguments made in such a motion—even when the objectors object at the fairness hearing. Given the requirement

that settlements not be one sided, "the fee agreement clearly does impact [class members'] interests" in settlement fairness. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995).

This was error as a matter of law.

**B.    As a matter of law, the lower court failed to appropriately recognize the "red flags" of the inappropriate reversion and the clear-sailing clause.**

**1.    The lower court's endorsement of reversions was error.**

The lower court held that the creation of a separate fund to pay fees that would revert to the defendant rather than the class was commendable for avoiding a zero-sum structure. A23. This is an error of both economics and law; a reversion of excessive fees to the defendant after clear sailing prejudices the class, and is a sign of self-dealing. OB38-41.

Plaintiffs argue that there is no "authority" for this argument. PB13. But Kasten cited *Bluetooth* and Professor Lester Brickman, who argues that such clauses are "*per se* unethical.*" OB40-41. And *Eubank* has now singled out such a clause as a "questionable provision," implying it error for a "judge [to] refuse[] to delete." 2014 U.S. App. LEXIS 10332 at *17; *id.* at *33 (citing *Bluetooth*, 654 F.3d at 946-47). *Eubank* also implicitly criticized the same "clear sailing" clause Kasten does by citing precedent on subject. *Compare Eubank*, 2014 U.S. App. LEXIS 10332 at *33 (citing *Bluetooth* and *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991)) *with* OB41-42 (same).

Plaintiffs chide Kasten at length for saying *Bluetooth* factors "should bar" settlement approval, noting that *Bluetooth* left open the possibility that a settlement could be fair even in the presence of red flags. PB21-22. In hindsight, the challenged

sentence was imprecise and could be read to conflate our positive argument with our normative argument:

- As a positive matter of law, the lower court committed reversible error by holding that the "danger sign" of the "questionable provision" of a reversion criticized by *Bluetooth* and *Eubank* was actually a reason to approve the settlement. A23.

- As a normative matter, *Bluetooth* noted that there was "no apparent reason" for such reversions of separate fee funds to defendants. 654 F.3d at 949. We agree, and believe this Court should go further and explicitly hold the "questionable provision[s]" and "red flags" of reversion and clear-sailing clauses *per se* inappropriate; a judge must demand "delet[ion]." *Eubank*, 2014 U.S. App. LEXIS 10332 at *17. *See generally* Lester Brickman, LAWYER BARONS 522-25 (2011). (Plaintiffs assert that a reversion can lead to larger settlements for the class (PB19), but give no explanation how, nor any reason to think that that happened here.)

We regret any ambiguous conflation of these two separate arguments—but stand by both arguments as correct.

Plaintiffs claim that there was no reversion. PB18-19. But there is no dispute class counsel asked for $1M, the district court reduced the figure a wee bit that reverted to RadioShack, and that further reversions would have redounded in RadioShack's favor. That is exactly Kasten's objection.

### 2.     There is no waiver.

The lower court's legal error here is just one of many independent reversible errors, but plaintiffs claim that Kasten has waived it. PB16. This is wrong for multiple reasons.

First, the legal error was one created *sua sponte* by the lower court in its opinion without prompting by the settling parties. A23. An objector has no obligation to anticipate every possible mistake a lower court might make. The lower court "recognized and addressed" the reversion issue, and came to exactly the opposite conclusion *Eubank* did; this Court can review the resulting purely legal question, because "this question can be answered without resort to the special factfinding competence of the trial court." *Bailey v. Int'l Brotherhood of Boilermakers*, 175 F.3d 526, 529-30 (7th Cir. 1999). Because review here is plenary, and both sides have fully briefed the issue, there is no reason to deem the issue forfeited. *Compare Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749-750 (7th Cir. 1993) *with Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 674-675 (7th Cir. 2008). *Cf. also McCutcheon v. FEC*, 134 S. Ct. 1434, 1447 n.4 (2014) (appellate court can resolve "purely legal" question not explored below).

This is especially true here where the reversion issue is part and parcel of the self-dealing complaint Kasten preserved below. A88; A92-93; A153-154. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. Escondido*, 503 U.S. 519, 534 (1992). Thus, "when a new argument supports a claim made before the district court, we will usually address it." *Bew v. City of Chicago*, 252 F.3d 891, 895-96 (7th Cir. 2001). "A litigant does not forfeit a position just by neglecting to cite its best authority…" *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 895 (7th Cir. 2012). And Kasten

specifically cited the then-"best authority," *Bluetooth,* with reference to its discussion of red flags. A92-93; *see also* A88; A154:19.

*Aqua Dots* further supports the argument there is no waiver here. Appellants *on appeal* failed to raise the winning argument against class certification, but the Seventh Circuit applied the controlling law. 654 F.3d at 752 (citing *Elder v. Holloway*, 510 U.S. 510 (1994)).

Certainly, Kasten in hindsight would have preferred to raise more explicitly the red flag of reversion on top of all of the settlement's other flaws, especially if Kasten had the foresight to guess that the magistrate would wander so far off track on this issue without prompting. But as noted in Section IV.A above, the lack of Rule 23(h)(1) notice hamstrung Kasten's objection. Kasten was incorrectly insufficiently cynical, and failed to guess that the undisclosed settlement administration costs would be $2.25 million, or even half that; her objection, limited to fifteen pages, thus focused on what she believed would be the more relevant *cy pres* provision of the settlement. If the Court finds waiver, it *per se* demonstrates prejudice from the Rule 23(h)(1) violation.

## Conclusion

This Court should vacate the settlement approval and remand with instructions to evaluate the settlement under the correct standards of law. Those instructions should require settlement rejection.

Dated: June 16, 2014                    Respectfully submitted,

                                        /s/ *Theodore H. Frank*
                                        Theodore H. Frank
                                        CENTER FOR CLASS ACTION FAIRNESS
                                        1718 M Street NW, No. 236
                                        Washington, DC 20036
                                        Telephone:  (703) 203-3848
                                        Email:  tedfrank@gmail.com
                                        *Attorneys for Appellants Jessica Kasten and*
                                                *Michael Rosman* (14-1470)

                                        LAW OFFICES OF DARRELL PALMER PC
                                        Joseph Darrell Palmer
                                        2244 Faraday Ave, Ste 121
                                        Carlsbad, CA 92008
                                        Telephone: (858) 215-4064
                                        *Attorney for Appellant Robert Scott* (14-1658)

**Certificate of Compliance with Fed. R. App. P. 32(a)(7)(C)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 6,861 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 12-point Palatino Linotype font.

Executed on June 16, 2014.

> /s/ *Theodore H. Frank*
> Theodore H. Frank
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone:  (703) 203-3848
> Email:  tedfrank@gmail.com
>
> *Attorneys for Michael Rosman and Jessica Kasten*

**Proof of Service**

I hereby certify that on June 16, 2014, I caused to be electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

*/s/ Theodore H. Frank*

Theodore H. Frank

Center for Class Action Fairness

1718 M Street NW, No. 236

Washington, DC 20036

Telephone:  (703) 203-3848

Email:  tedfrank@gmail.com

*Attorneys for Michael Rosman and Jessica Kasten*
